# EXHIBIT
# 1



LIBERTY | JUSTICE | EQUALITY

*By Facsimile, Certified Mail, Return Receipt Requested*

January 29, 2009

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

**Department of Justice**
FOIA/PA Mail Referral Unit
Department of Justice
Room 115, LOC Building
Washington, DC 20530-0001
Fax: (301) 341-0772

Federal Bureau of Investigation
David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
170 Marcel Drive
Winchester, VA 22602-4843
(540) 868-4591

Federal Bureau of Investigation
Los Angeles Field Office
Attn: FOIA Office
Suite 1700, FOB
11000 Wilshire Blvd.
Los Angeles, CA 90024-3672

INTERPOL – United States National Central Bureau
Allison Tanaka
FOIA/PA Specialist
Office of General Counsel
Washington, DC 20530-0001
(202) 616-9000

National Security Division
Arnetta James
FOIA Initiatives Coordinator
Room 6150, 950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
(202) 307-3525

43



**LIBERTY | JUSTICE | EQUALITY**

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Chief Executive Officer
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Tracy Rice

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

**Department of State**
Margaret P. Grafeld
Office of Information Programs and Services
A/ISS/IPS/RL
U. S. Department of State
Washington, D. C. 20522-6001
Fax: (202) 261-8579

**Central Intelligence Agency**
Adolfo Tarasiuk, Jr.
Chief Information Officer
Washington, D.C. 20505

**Department of Defense**
Jim Hogan
Defense Freedom of Information Policy Office
1155 Defense Pentagon
Washington, D.C. 20301-1155
Fax: (703) 696-4506

Defense Intelligence Agency
Alesia Y. Williams
ATTN: DIAC, DAN-1A
Bldg. 6000
Washington, D.C. 20340-5100
Fax: (301) 394-5356
E-mail: foia@dia.mil

Defense Security Service
Les Blake
Chief, Office of FOIA and Privacy, GCF
1340 Braddock Place
Alexandria, VA 22314-1651
Fax: (703) 325-5341
E-mail: leslie.blake@mail.dss.mil

National Security Agency
Marianne Stupar
FOIA Requester Serivvce Center/DJP4
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax: (301) 688-4762



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Office of the Inspector General
Dave Henshall
Senior Advisor, Information and Privacy
400 Army Navy Drive, Suite 1021
Arlington, VA 22202-4704
Fax: (703) 602-0294

**Department of Homeland Security**
Catherine M. Papoi
Deputy Chief FOIA Officer
Director, Disclosure & FOIA
The Privacy Office
245 Murray Drive, S.W.
STOP-0550
Washington, DC 20528-0550
Fax: (703) 235-0443
E-mail: foia@dhs.gov

Bureau of Customs and Border Protection
Mark Hanson
Director
FOIA Division
799 9th Street, NW
Mint Annex
Washington, DC 20229
Fax: (202) 325-0154

United States Immigration and Customs Enforcement
Catrina Pavlik-Keenan
800 N. Capitol Street
Fifth Floor, Suite 585
Washington, D.C. 20536
Fax: (202) 732-0310

Transportation Security Administration
Kevin J. Janet
FOIA Officer, TSA-20
601 South 12th Street
Arlington, VA 22202-4220
Fax: (571) 227-1406



LIBERTY | JUSTICE | EQUALITY

Under Secretary Office of Intelligence and Analysis
U.S. Department of Homeland Security
FOIA Officer / Requester Service Center- Quinton Mason
Washington, D.C. 20528
Fax: (202) 282-8191
Email: Quinton.mason@dhs.gov

**Office of the Director of National Intelligence**
Washington, D.C. 20511
Fax: (703) 275-1299
Email: dni-foia@ugov.gov

Re: **Request Under Freedom of Information Act and Privacy Act**
*Expedited Processing Requested*

Dear FOIA Officer:

This letter constitutes a request for records made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, by the American Civil Liberties Union Foundation of Southern California (ACLU/SC) on behalf of Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman (hereinafter "Requestors"). *See* Exhibit A (Privacy Act authorizations for Requestors).

The ACLU/SC and Requestors make this request for records to obtain information about the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan. Mr. Hamdan's brother, Hossam Hemdan, and associate, Jehad Suliman, make this request for information pertaining to themselves because they also underwent substantial surveillance, monitoring, questioning and investigation because of their relationship to Mr. Hamdan.

### THE REQUESTORS

The **ACLU/SC** is a non-profit organization dedicated to defending and securing the rights granted by the U.S. Constitution and Bill of Rights. ACLU/SC's work focuses on the First Amendment, equal protection, due process, privacy, and furthering civil rights for disadvantaged groups. As part of its work, ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials.

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Mauli

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg



LIBERTY | JUSTICE | EQUALITY

The ACLU/SC represented Mr. Naji Hamdan and Mr. Hossam Hemdan in a federal lawsuit challenging Mr. Hamdan's overseas detention in the United Arab Emirates, *Mallouk, et al. v. Obama, et al.*, CV 08-2003 (JR) (D.D.C. 2009). The ACLU/SC also represented Mr. Jehad Suliman for the purposes of reclaiming property unlawfully obtained from his home during the execution of a search warrant.

**Naji Jawdat Hamdan** is an American citizen, who was born in Lebanon on May 26, 1966. He moved to the United States in the early 1980s and lived mostly in the Los Angeles area until 2006. Mr. Hamdan is married to Mona Mallouk and has three children: Khaled, Hamza and Noor Hamdan.

Mr. Hamdan studied in the United States at Northrup University, and later started a successful auto parts business, called Honda Acura Palace or Hapimotors. He also was a founding member and part of the leadership of the Islamic Center of Hawthorne, a mosque in Hawthorne, CA. Mr. Hamdan served as a volunteer imam at that mosque.

For nearly a decade, Mr. Hamdan was subject to FBI surveillance. He was first visited by FBI agents at his home in December 1999, at which point agents asked him, among other things whether he knew Osama Bin Laden. The FBI approached him again shortly after September 11, 2001. In the following years, FBI agents returned to his home and to his workplace to question him on numerous other occasions. Mr. Hamdan also had difficulty traveling and was frequently pulled into secondary inspection at airports for questioning both leaving and returning to the United States.

In August 2006, Mr. Hamdan and his family moved to the United Arab Emirates (U.A.E.). Several months later, Mr. Hamdan returned to the United States for a brief visit. During that visit, he was subject to constant FBI surveillance. Three to four FBI cars also followed him around throughout the duration of his trip. Around the same time, the U.S. government began to question Mr. Hamdan's associates about him.

Then, sometime in 2007, on a return trip from Lebanon to the U.A.E., Lebanese intelligence officers detained Mr. Hamdan for no apparent reason. The authorities detained Mr. Hamdan for one week and subjected him to interrogation and physical abuse.

In July 2008, several months after Mr. Hamdan's detention in Lebanon, the FBI contacted Mr. Hamdan's brother Hossam Hemdan. The FBI official told Mr. Hossam Hemdan that FBI agents wanted to question Mr. Hamdan at the U.S. Embassy in Abu Dhabi. Hossam Hemdan contacted Mr. Hamdan, who agreed to meet with the agents. Two agents, Joshua Stone and Jerry Price, FBI agents from the Los Angeles Field Office, then flew from Los Angeles to the U.A.E. to interrogate him. They met Mr.

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Hamdan at the Embassy and interrogated him for several hours.  Approximately one month later, on August 26, 2008, the State Security forces of the United Arab Emirates (the "Amn al-Dawla") arrested Mr. Hamdan at his house, in the presence of his family, for no apparent reason.  The State Security officials put a hood over Mr. Hamdan's head and took him away.  They detained him in a secret location somewhere in Abu Dhabi for three months.

On November 19, 2008, the ACLU/SC filed a lawsuit in federal court alleging that Mr. Hamdan was in the constructive custody of the U.S. because the U.S. had asked the U.A.E. to detain him.  One week after filing the lawsuit, Mr. Hamdan was criminally charged with three counts of terrorism and transferred from the secret location to criminal custody in Abu Dhabi.  At that time, Mr. Hamdan reported that U.A.E. officials had severely tortured him during lengthy interrogation sessions.  He also reported that he believed that at least one U.S. official was present for at least one torture and interrogation session.  After a lengthy criminal trial before the Federal Supreme Court in the U.A.E., bereft of due process and transparency, Mr. Hamdan was convicted and sentenced to time served.  In October 2009, the U.A.E. deported Mr. Hamdan to Lebanon where he is now recovering from this ordeal.

**Hossam (a.k.a. Sam or Sammy) Hemdan** is an American citizen, who was born in Lebanon on April 4, 1970.  He moved to the United States in approximately 1987 and has resided in the Los Angeles area ever since.  Mr. Hemdan currently lives in Hawthorne, California and owns and manages a car emissions testing company called Redondo Smog in Hawthorne, California.

Mr. Hemdan, like his brother, was subjected to FBI questioning, monitoring and surveillance beginning in 1999.  Over the course of several years, Mr. Hemdan received numerous visits by the FBI to his home and workplace for questioning.  On several occasions, he noticed FBI vehicles parked outside his shop.  Since 2006, he has experienced routine difficulties leaving and entering the United States at airports and is routinely pulled into secondary inspection by federal authorities for questioning, including extensive questioning about his brother, Naji Hamdan.  In addition, beginning in 2006, Mr. Hemdan began to have trouble receiving his mail at his home and has reason to believe that the FBI intercepted his mail.

**Jehad Suliman** is an American citizen, who was born in Palestine on September 29, 1963.  Mr. Suliman moved to the United States in 1982 and to Los Angeles in 1988.  He currently resides in Hawthorne, California.  Mr. Suliman is the manager of Hapimotors, the business that Mr. Hamdan started and owned.  He and Mr. Hamdan are close friends and associates.

Mr. Suliman, like Mr. Hamdan and Mr. Hemdan, has also been subject to FBI



LIBERTY | JUSTICE | EQUALITY

questioning, monitoring and surveillance. Beginning around 2002, Mr. Suliman was questioned by FBI agents at the Hapimotors shop on at least two occassions. After Mr. Hamdan was detained in Lebanon in 2008, FBI agents again approached Mr. Suliman for questioning about Mr. Hamdan. Also, beginning in 2006, Mr. Suliman experienced problems leaving and returning to the U.S. at airports. On one trip, federal agents questioned him extensively at the airport before and after a trip about Mr. Hamdan and Hapimotors. Finally, in July 2009, during the time of Mr. Hamdan's trial in the U.A.E., about one dozen law enforcement agents searched Mr. Suliman's home and property subject to a valid search warrant and seized some of Mr. Suliman's possessions. According to the search warrant, authorities were investigating Mr. Suliman for MediCal fraud. However, documents unrelated to MediCal, but pertaining to Naji Hamdan and Hapimotors, were seized.

### THE REQUEST FOR RECORDS

We seek disclosure of **any** records[1] from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and **any** of their sub-agencies or divisions **relating to** or **concerning:**[2]

(1) Mr. Naji Jawdat Hamdan;

(2) Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan)

(3) Mr. Jehad Suliman; and

(4) Hapimotors (a.k.a Honda Acura Palace or HondAcura Palace). The business is currently located at 1848 East 55th St, Los Angeles, CA 90058 and maintains a website at www.hapimotors.com.

---

[1] The term "records" as used herein includes but is not limited to all communications preserved in electronic or hard copy form, including but not limited to correspondence, documents, data, videotapes, audio tapes, CDs, DVDs, floppy disks, zip disks, faxes, files, e-mails, notes (including handwritten notes), letters, summaries or records of personal conversations, reports and/or summaries of interviews, reports and/or summaries of investigations, guidelines, evaluations, instructions, analyses, memoranda, agreements, orders, prescriptions, charts, expressions of statements of policy, procedures, protocols, reports, rules, training manuals, or studies.

[2] The term "concerning" means referring to, describing, evidencing, commenting on, responding to, showing, analyzing, reflecting, or constituting.

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

FOUNDATION

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

As is apparent from the plain language of this request, we seek not only the contents of any primary or main files on the Requestors and Hapimotors, but also any records relating to or concerning any of the Requestors or Hapimotors that may be cross-listed, cross-referenced or contained in the main file pertaining to another individual or entity. The request is also meant to include, but not be limited to the entirety of any document that includes the name of any of the requestors.

## SUGGESTED SEARCH TERMS FOR ELECTRONIC SEARCHES

To enable an adequate search of all electronic databases, we suggest that you use the following search terms, among others, to locate responsive records:

1. Naji Jawdat Hamdan
2. Hamdan, Naji Jawdat
3. Naji Hamdan
4. Hamdan, Naji
5. N. Hamdan
6. Hamdan, N.
7. Naji J. Hamdan
8. Hamdan, Naji J.
9. Hossam Hemdan
10. Hemdan, Hossam
11. Hossam Hamdan
12. Hamdan, Hossam
13. Sam Hemdan
14. Hemdan, Sam
15. Samy Hemdan
16. Hemdan, Samy
17. Sammy Hemdan
18. Hemdan, Sammy
19. Sammy Jawdat Hemdan
20. Hemdan, Sammy Jawdat
21. Jehad Suliman
22. Suliman, Jehad
23. Honda Acura Palace
24. HondAcura Palace
25. Hapimotors
26. Hapimotors.com
27. Authentic auto parts

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

## REQUEST FOR EXPEDITED PROCESSING

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Expedited processing is warranted when there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E). For requests made by organizations "primarily engaged in disseminating information," "an urgency to inform the public about actual or alleged federal government activity" constitutes a "compelling need." 5 U.S.C. § 552(a)(6)(E)(v)(II).[3]

This request implicates a matter of urgent public concern: namely, the nature and extent of the federal government's surveillance and detention of American citizens in the name of national security. Information regarding the federal government's handling of the Naji Hamdan case – both his surveillance in the U.S. and his detention and torture abroad – is of particularly urgent public concern because Mr. Hamdan and many others believe that the U.S. government requested that he be detained by a foreign government known for torturing prisoners, in order to obtain additional information from him. Whether or not the federal government had one of its citizens detained and tortured by a foreign government is a matter of urgent public concern. In addition, information responsive to this request will shed light on the extensive FBI surveillance, monitoring and questioning that Mr. Hamdan and his associates underwent for many years. In particular, the information may show whether the surveillance was suspicion-less or whether there was specific criminal activity that the FBI was investigating. Such information is of urgent public concern as the federal government seeks to improve its surveillance and investigative techniques in the face of new terrorism threats, while balancing concerns for civil liberties.

This request is also made by an organization, the ACLU/SC, "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(d)(1)(ii).

---

[3] *See also Amer. Civil Liberties Union v. U.S. Dep't of Defense*, 2006 WL 1469418 (N.D. Cal. 2006) (ordering expedited processing of a request for records under the FOIA statute where plaintiffs had alleged a compelling need to know about the Department of Defense's practice of gathering information on political protests in the United States); *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.C.C. 2006) (holding that expedited processing of a request for information from the Secret Service about who visited Vice-President Cheney during CIA-leak investigation was proper under the statute where plaintiff had asserted "statutory entitlement to expedited review of the FOIA request, based on the statutory predicate that the plaintiff has a 'compelling need' for the information."); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C.2006) (granting a preliminary injunction and ordering expedited processing and disclosure of documents concerning the Bush Administration's policy of conducting surveillance of domestic communications).

51



LIBERTY | JUSTICE | EQUALITY

*See American Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primary engaged in disseminating information"). Dissemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.

The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Expedited processing is also warranted because the information sought relates to "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request relates to the case of Naji Hamdan, a matter of exceptional media interest, which is reflected in the widespread news coverage of his case in local, national and international media outlets. *See, e.g.,* Jonathan S. Landay, *Did U.S. Push Detention of American without Charges?*, McClatchy Newspapers, Nov. 17, 2008; Jonathan S. Landay, *ACLU Suing Bush, Others Over Illegal Detentions Abroad*, McClatchy Newspapers, Nov. 18, 2008; Denise Nix, *ACLU Suing to Free U.S. Citizen*, Daily Breeze, Nov. 18, 2008; Jonathan S. Landay, *Are Overseas Detentions of U.S. Citizens Unconstitutional?*, The Sacramento Bee, Nov. 18, 2008; Denise Nix, *ACLU Suing to Free U.S. Citizen*, Contra Costa Times, Nov. 18, 2008; Raja Abdulrahim, ACLU Seeks Release of American, *Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. Times, Nov. 20, 2008; Jonathan S. Landay, *American Alleges Torture in UAE Detention*, McClatchy Newspapers, Dec. 2, 2008; Denise Nix, *Former Hawthorne Resident Describes Torture Abroad*, Daily Breeze, Dec. 3, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. Times, Dec. 4, 2008; Jesse J. Holland, *Lawsuit: US Responsible for Man's UAE Imprisonment*, Associated Press, Dec. 13, 2008; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, The Wash. Post, Mar. 23, 2009,

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

at A2; Anna Schecter, *American Detained, Tortured in UAE at U.S. Gov'ts Behest, ACLU Says Naji Hamdan Says He Was Beaten Until Losing Consciousness in Abu Dhabi Prison*, ABC NEWS, June 8, 2009; Muhammad Shamsaddin Megalommatis, *Amnesty Int'l Report 2009 on the UAE – the Impermissible Territory of Human Degeneration*, AMERICAN CHRONICLE, July 2, 2009; *American Held in UAE: "Proxy Detention"?, U.S. Citizen Faces Terror Charges in Dubai; Attorneys Says He Was Tortured, Forced to Confess*, CBS NEWS, July 19, 2009; Barbara Surk, *UAE Prosecutor: U.S. Man had Al-Qaida Ties, American on Trial Alleges He was Tortured, Denies Terror-Related Charges*, ASSOCIATED PRESS, Aug. 24, 2009; Barbara Surk, *American Naji Hamdan Convicted by Emirates Court on Terror Charges*, ASSOCIATED PRESS, Oct. 12, 2009.

Accordingly, the Requestors are entitled to expedited processing of this request.

## LIMITATION OR WAIVER OF SEARCH AND REVIEW FEES

We request a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media ...") and 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged to "representatives of the news media"). The information sought in this request is not sought for a commercial purpose. The Requestors include a non-profit organization who intends to disseminate the information gathered by this request to the public at no cost.

The "term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). The statutory definition does not require that the requester is a member of the traditional media. As long as the requester meets the definition in any aspect of its work, it qualifies for limitation of fees under this section of the statute.

For the reasons stated above with respect to expedited processing, the ACLU/SC qualifies as a "representative of the news media" under the statutory definition, because the ACLU/SC routinely gathers information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public. *See Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Accordingly, any fees charged must be limited to duplication costs.

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

## WAIVER OR REDUCTION OF ALL COSTS

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

We request a waiver or reduction of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester"); *see also* 6 C.F.R. § 5.11(k).

The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987). The Requestors need not demonstrate that the records would contain evidence of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, good or bad. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003).

Disclosure of the information sought is in the public interest and will contribute significantly to public understanding of the federal government's policies and practices of monitoring, surveillance, questioning, and participation in overseas detention and torture of American citizens. As shown by the news reporting cited above, these issues are of intense public concern. The requested records relate directly to operations or activities of the government that potentially impact or infringe fundamental rights and freedoms. The records are not sought for commercial use, and the Requestors plan to disseminate the information disclosed through print and other media to the public at no cost, and through meetings with members and affected communities. As demonstrated above, the Requestors have both the intent and ability to convey any information obtained through this request to the public.

The Requestors state "with reasonable specificity that [their] request pertains to operations of the government," and "the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Health and Human Services*, 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006).

In the event a waiver or reduction of costs is denied, please notify me in advance if the anticipated costs exceed $100.

**ACLU**
**FOUNDATION**
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

## CONCLUSION

If this request is denied in whole or part, please justify all deletions by reference to specific FOIA exemptions. We expect you to release all segregable portions of otherwise exempt material. For example, we expect you to redact names of individuals for whom privacy waivers are not enclosed, if such redaction is required by the Privacy Act or other law, and release any otherwise disclosable records as redacted. We also expect that this FOIA request will be processed in accordance with the presumption of disclosure and President Obama's directive to federal agencies on January 26, 2009. Pres. Obama, Memo. for the Heads of Exec. Offices and Agencies, Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 26, 2009) ("The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears.").

We reserve the right to appeal a decision to withhold any information, or to deny expedited processing or a waiver of fees. We look forward to your reply to the request for expedited processing within ten (10) calendar days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Notwithstanding your decision on the matter of expedited processing, we look forward to your reply to the records request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I).

If you have questions, please contact Jennie Pasquarella at 213-977-5236 or via e-mail at jpasquarella@aclu-sc.org. Thank you in advance for your timely consideration of this request. Please furnish records as soon as they are identified to the undersigned at:

ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

I certify that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU of Southern California

## AUTHORIZATION

I, NAJI JAWDAT HAMDAN hereby authorize attorneys from the ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90026, to submit a request under the Freedom of Information Act and the Privacy Act to the federal government and to receive responsive documents on my behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 17, 2009, in Abu Dhabi, United Arab Emirates.

NAJI JAWDAT HAMDAN
Name (print)

_____
Address

ABU DHABI, U.A.E
City, State Zip

_____
Signature

56

# AUTHORIZATION

I, HOSSAM HEMDAN, hereby authorize attorneys from the ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90026, to submit a request under the Freedom of Information Act and Privacy Act to the federal government and to receive responsive documents on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 04, 2009, in Hawthorne, California.

Hossam Hemdan
Name (print)

12636 Truro Av.
Address

Hawthorne CA 90250
City, State Zip

Signature

State of California County of
LOS ANGELES
Subscribed and sworn to (or affirmed)
Before me on this 04 day of 09, 2009, by
Hossam Hemdan
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.

Signature Hushmet Ali Khan

HUSHMET ALI KHAN
Commission # 1822868
Notary Public - California
Los Angeles County
My Comm. Expires Nov 16, 2012

57

# AUTHORIZATION

I, _Jehad Suliman_ , hereby authorize attorneys from the ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90026, to submit a request under the Freedom of Information Act and Privacy Act to the federal government and to receive responsive documents on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September _04_ , 2009, in _Hawthorne_ , California.

_Jehad Suliman_
Name (print)

_14107 Ramona Ave._
Address

_Hawthorne, CA 90250_
City, State Zip

Signature

State of California County of
_LOS ANGELES_
Subscribed and sworn to (or affirmed)
Before me on this _04_ day of _09_ , 20_09_ by
_Jehad Suliman_ —
personally Known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.

Signature _Hushmet Ali Khan_

HUSHMET ALI KHAN
Commission # 1822868
Notary Public - California
Los Angeles County
My Comm. Expires Nov 16, 2012

58

# EXHIBIT
# 2

**U.S. Department of Justice**

*Washington, D.C. 20530*

FEB 2 2 2010

Jennie Pasquarella
1333 West Eighth Street
Los Angeles, CA  90017

Dear Ms. Pasquarella:

Your Freedom of Information Act and/or Privacy Act (FOIA/PA) request was received by this office which serves as the receipt and referral unit for FOIA/PA requests addressed to the Department of Justice (DOJ).   Federal agencies are required to respond to a FOIA request within 20 business days.   This period does not begin until the request is actually received by the component within the DOJ that maintains the records sought, or ten business days after the request is received in this office, whichever is earlier.

We have referred your request to the DOJ component(s) you have designated or, based on descriptive information you have provided, to the component(s) most likely to have the records. The component(s) to which your request has been forwarded are indicated on the enclosed FOIA/PA Referral/Action Slip.   All future inquiries concerning the status of your request should be addressed to the office(s) listed below:

> FOIA/PA
> Federal Bureau of Investigation
> Department of Justice
> 935 Pennsylvania Avenue, NW, Room 6958
> Washington, DC  20535-0001
> (202) 324-9486

Sincerely,

Paula A. Scholz, Assistant Director
Conference and Contract Section
Facilities and Administrative
    Services Staff
Justice Management Division

Enclosure
FOIA/PA Referral/Action Slip

**U.S. Department of Justice**
Justice Management Division

**Freedom of Information Act/Privacy Act Referral/Action Slip**

Clerk:  K. Thornton

Date:   FEB 2 2 2010

Organization:  JMD/FASS

Building & Room:  LOC, 113

| To | From | To | From |
|---|---|---|---|
| ☐ | ☐ Office of Information & Privacy | ☐ | ☐ Immigration Review, Executive Office for |
| | _____ | ☐ | ☐ Inspector General, Office of |
| | _____ | ☐ | ☐ Intelligence Policy and Review, Office of |
| | _____ | ☐ | ☐ INTERPOL, U.S. National Central Bureau |
| ☐ | ☐ Antitrust Division | ☐ | ☐ Justice Management Division Staff: _____ |
| ☐ | ☐ Bureau of Alcohol, Tobacco, Firearms and Explosives | ☐ | ☐ Justice Programs, Office of |
| ☐ | ☐ Civil Division | ☐ | ☐ Legal Counsel, Office of |
| ☐ | ☐ Civil Rights Division | ☐ | ☐ National Drug Intelligence Center |
| ☐ | ☐ Community Relations Service | ☐ | ☐ Pardon Attorney, Office of |
| ☐ | ☐ Community Oriented Policing Services | ☐ | ☐ Professional Responsibility Advisory Office |
| ☐ | ☐ Criminal Division | ☐ | ☐ Professional Responsibility, Office of |
| ☐ | ☐ Dispute Resolution, Office of | ☐ | ☐ Solicitor General, Office of |
| ☐ | ☐ Drug Enforcement Administration | ☐ | ☐ Tax Division |
| ☐ | ☐ Environment & Natural Resources Division | ☐ | ☐ U.S. Attorneys, Executive Office for |
| ☐ | ☐ Federal Bureau of Prisons | ☐ | ☐ U.S. Marshals Service |
| ☑ | ☐ Federal Bureau of Investigation | ☐ | ☐ U.S. Parole Commission |
| ☐ | ☐ Federal Detention Trustee, Office of | ☐ | ☐ U.S. Trustees, Executive Office for |
| ☐ | ☐ Foreign Claims Settlement Commission | ☐ | ☐ _____ |

Requester: Jennie Pasquarella

Ref: _____

Date of Request: January 29, 2010

Received By:  FOIA/PA Mail Referral Unit          Type of Request:  FOIA

Remarks:  Requester advised of this referral.

FORM JMD-481
Rev. Mar. 2004

# EXHIBIT
# 3



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

February 17, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

FOIPA Request No.: 1143419- 000
Subject: HAMDAN, NAJI JAWDAT
HAPIMOTORS

Dear Ms. Pasquarella:

☒     This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐     For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant 28 U.S.C. § 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒     We are searching the indices to our Central Records System for the information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the FBI. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Please note that your request for a fee waiver is pending, and you will be advised of a decision at a later date. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

61



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

February 17, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

FOIPA Request No.: 1143422- 000
Subject: SULIMAN, JEHAD

Dear Ms. Pasquarella:

☒     This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐     For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant 28 U.S.C. § 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒     We are searching the indices to our Central Records System for the information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the FBI. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Please note that your request for a fee waiver is pending and you will be advised of a decision at a later date. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

February 17, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

FOIPA Request No.: 1143421- 000
Subject:  HEMDAN, HOSSAM JAWDAT

Dear Ms. Pasquarella:

☒  This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐  For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐  To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant 28 U.S.C. § 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐  If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒  We are searching the indices to our Central Records System for the information you requested, and will inform you of the results as soon as possible.

☐  Processing delays have been caused by the large number of requests received by the FBI. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Please note that your request for a fee waiver is pending and you will be advised of a decision at a later date. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

# EXHIBIT

# 4



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 9, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

FOIPA Request No.:  1143419- 000
Subject: HAMDAN, NAJI JAWDAT
HAPIMOTORS

Dear Ms. Pasquarella:

This is in reference to your letter dated January 29, 2009, directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information Act  (FOIA) request.

You have requested expedited processing of your request pursuant to the Department of Justice (DOJ) standard permitting expedition for requests involving  "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5 (d)(1) (ii).  Based on the information you have provided, I cannot find that there is a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally.

In addition, you have requested expedition for "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5 (d)(1)(iv).  This request is also denied pursuant to the decision made by the Office of Public Affairs of the DOJ on March 1, 2010.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal.  Appeals should be directed in writing to the Director, Office of Information Policy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C.  20530-0001.  Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.  The envelope and the letter should be clearly marked "Freedom of Information Appeal."  Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Very truly yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

March 9, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

FOIPA Request No.: 1143421- 000
Subject: HEMDAN, HOSSAM JAWDAT

Dear Ms. Pasquarella:

This is in reference to your letter dated January 29, 2009, directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information Act (FOIA) request.

You have requested expedited processing of your request pursuant to the Department of Justice (DOJ) standard permitting expedition for requests involving "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5 (d)(1) (ii). Based on the information you have provided, I cannot find that there is a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally.

In addition, you have requested expedition for "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect pubic confidence." 28 C.F.R. § 16.5 (d)(1)(iv). This request is also denied pursuant to the decision made by the Office of Public Affairs of the DOJ on March 1, 2010.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal. Appeals should be directed in writing to the Director, Office of Information Policy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Very truly yours,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

65

U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 9, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

FOIPA Request No.: 1143422- 000
Subject: SULIMAN, JEHAD

Dear Ms. Pasquarella:

This is in reference to your letter dated January 29, 2009, directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information Act (FOIA) request.

You have requested expedited processing of your request pursuant to the Department of Justice (DOJ) standard permitting expedition for requests involving "an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F.R. § 16.5 (d)(1) (II). Based on the information you have provided, I cannot find that there is a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally.

In addition, you have requested expedition for "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5 (d)(1)(iv). This request is also denied pursuant to the decision made by the Office of Public Affairs of the DOJ on March 1, 2010.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal. Appeals should be directed in writing to the Director, Office of Information Policy, U.S. Department of Justice, 1425 New York Ave,, NW, Suite 11050, Washington, D.C. 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Very truly yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

66

# EXHIBIT
# 5

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

April 16, 2010

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Deputy Executive Director**
James Gilliam

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Director, Office of Information Policy
U.S. Department of Justice
1425 New York Ave., N.W.
Suite 11050
Washington, D.C. 20530-0001

  Re: FOIPA Request Nos: 1143419-000 (Subject: Hamdan, Naji Jawdat;
Hapimotors); 1143422-000 (Subject: Suliman, Jehad); 1143421-000 (Subject: Hemdan,
Hossam Jawdat)

Dear Sir or Madam:

  This is a consolidated appeal under the Freedom of Information Act (FOIA), 5
U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of the Federal Bureau of
Investigation's ("FBI") refusal to grant expedited processing and its failure to timely
respond to our request.

  On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the
disclosure of any records in the possession of the Department of FBI "relating to or
concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman,
and Hapimotors. The principle reason we seek such records is to shed light on "the federal
government's surveillance, monitoring, questioning, investigation, and participation in the
overseas detention and torture of Mr. Naji Jawdat Hamdan." A copy of the FOIA request is
attached as Exhibit A.

  On February 17, 2010, the FBI responded to our request by assigning three separate
FOIA Request Nos. as referenced above, and stated that it was "searching the indices of our
Central Records System for the information [we] requested" and that it "will inform [us] of
the results as soon as possible." To date, however, we have not heard back from the FBI
regarding the status of its search for our requested records. Further, on March 9, 2010, we
received two letters from the FBI stating that it was denying our request for expedited
processing of records relating to Naji Jawdat Hamdan and Hapimotors (FOIPA Request No.
1143419-000) and Jehad Suliman (FOIPA Request No. 1143422-000). We did not receive
a similar denial of our request for expedited processing of records related to Hossam Jawdat
Hemdan (1143421-000). On April 14, 2010 we contacted the FBI FOIA office to inquire
into the status of our request. We left a message with Anthony Stoffer in which we
identified each of the above-referenced FOIPA Request Nos. and requested that he call us
back to discuss this matter. To date, no one has responded to that call.

<u>Expedited Processing</u>

In your March 9, 2010 letters (attached as Exhibit B), you first denied our request for expedited processing on the ground that we did not provide information to show that there is "an urgency to inform the public about an actual or alleged federal government activity." *See* 28 C.F.R. §16.5(d)(1)(ii). We disagree with that assessment.

The information is urgently needed for the reasons already discussed in our request. More specifically, the information involves a "breaking news story of general public interest." As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times. *See Attorneys Say He Was Tortured, Forced to Confess*, CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen*, THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, last month a leading national magazine published a feature-length article about Mr. Hamdan. *See* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010.

Furthermore, the information sought through our request will answer many of the unresolved questions about why Mr. Hamdan was detained in the United Arab Emirates and to what extent the U.S. government was involved. This information has diminishing value to the public and the media who seek immediate answers to these questions and to hold the government accountable for its treatment of Mr. Hamdan and other individuals like him, who have been detained by foreign governments at the request of the United States.

Finally, the requested information clearly concerns actions of the Federal Government, as the entire purpose of this FOIA request is to understand exactly what role various components of the Federal Government played in Mr. Hamdan's ordeal.

The FBI also denied our entitlement to expedited processing on the grounds that our request does not relate to "a matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 18 C.F.R. §16.5(d)(1)(iv). However, the FBI failed to provide any basis for this denial. Rather, it cited as a basis for its denial a "decision" made by the DOJ's Office of Public Affairs on March 1, 2010 but failed to provide us a copy of that "decision." Nor did it explain why that "decision" justifies denying our request for expedited processing given that we have clearly established that we meet the standards set forth in 18 C.F.R. §16.5(d)(1)(iv). See the 16 news articles cited in our FOIA request, Ex. A, between the dates November 17, 2008 through October 12, 2009; *see also* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010. The sheer number of national news articles relating to our request demonstrates that it is "a matter of widespread and exceptional

2

media interest." 18 C.F.R. §16.5(d)(1)(iv).  Further, as set forth in these articles and in our request, the U.S. government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan, raises "possible questions about the government's integrity which affect public confidence." *Id.*

Pursuant to DOD 5700.7-R a compelling need by a requester shall be made by a statement certified by the requester to be true and correct to the best of their knowledge.  For the above-mentioned reasons, the FBI's denial of our request for expedited processing should be overturned and our request should be processed in accordance with your expedited processing procedures.

Untimely Disclosure of Records

Agencies generally are required, within 20 days of receipt of even a non-expedited FOIA request, to process the request and inform the requesting party of their determination to either comply or not comply, absent "unusual" or "exceptional" circumstances. *See* 5 U.S.C. § 552(a)(6)(A), (B), (C). With respect to production, FOIA provides that "[u]pon determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." *See* 5 U.S.C. § 552(a)(6)(C)(i).  Here, we sent our request to the FBI two and a half months ago.  The FBI then waited two weeks to acknowledge receipt of the request.  Then, almost another month later, it summarily denied our request for expedited processing without providing and specific reasons for the denial.  Now, over a month later, the FBI has a failed to respond to our inquiry as to the status of its search for our requested records.

Because the FBI has failed to comply with the statutory requirement to make our records "promptly available" to us, we therefore file this FOIA appeal.[1]  We believe that all of the requested records are subject to disclosure, and we request their expedited processing and release.  If any records are withheld, please state the exemption.

We look forward to your timely written response.  Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq / JLP
Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

---

[1] Under these circumstances, while we are not obliged to file an administrative appeal, we do so in attempt to avoid potential litigation to obtain the requested records. *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.")

3

# EXHIBIT

# 6

**U.S. Department of Justice**

Office of Information Policy

---

Telephone: (202) 514-3642                    Washington, D.C. 20530

**MAY 2 4 2010**

Jennie Pasquarella, Esq.                     Re:  Appeal Nos. 2010-1762, 2010-1763 &
American Civil Liberties Union                    2010-1764
 of Southern California Foundation               Request Nos. 1143419-000,
1313 West Eighth Street                          1143422-000 & 1143421-000
Los Angeles, CA 90017                            KWC:PED

Dear Ms. Pasquarella:

This responds to your letter dated April 16, 2010, received in this Office on April 28, 2010, in which you appealed from the decisions of the Federal Bureau of Investigation (FBI) denying expedited processing of your requests for access to records pertaining to Naji Jawdat Hamdan, Hossam Jawdat Hemdan, Jehad Suliman, and Hapimotors. You also attempted to appeal from the failure of the FBI to respond to your requests.

The Director of Public Affairs considered your requests for expedited processing under the fourth standard and determined that your requests should be granted because it is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv) (2009). I concur in that determination. Accordingly, your requests will be processed as quickly as practicable.

Regarding your attempt to appeal from the failure of the FBI to respond to your requests, please be advised that Department of Justice regulations provide for an administrative appeal only after there has been an adverse determination by a component. See 28 C.F.R. § 16.9(a) (2009). Except for the FBI's denial of your requests for expedited treatment, no adverse determination has been made, and there is no additional action for this Office to consider on appeal. Indeed, the Freedom of Information Act itself contemplates the filing of a lawsuit by the requester, rather than an administrative appeal, when an agency has failed to respond to a request within the statutory time limits. See 5 U.S.C. § 552(a)(6)(C)(I).

If you are dissatisfied with my action on your appeals from the FBI's denial of your requests for expedited treatment, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(6)(E)(iii).

Sincerely,

Janice Galli McLeod
Associate Director

# EXHIBIT

# 7



U.S. Department of Justice


Federal Bureau of Investigation

*Washington, D.C. 20535*
July 21, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

Request No:  1143419-000
Subject:  HAMDAN, NAJI
JAWDAT/HAPIMOTORS

Dear Ms. Pasquarella:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). Currently your request is being reviewed by an analyst. The analyst will confirm that all records are responsive to your request and apply exemptions allowed under FOIPA. If your request is for sensitive national security information, then the records must undergo a systematic declassification review prior to application of FOIPA exemptions. Large requests take the longest time to be processed by an analyst.

You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division

71



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

July 21, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

Request No:  1143421-000
Subject:  HEMDAN, HOSSAM JAWDAT

Dear Ms. Pasquarella:

The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI).  Currently your request is being reviewed by an analyst.  The analyst will confirm that all records are responsive to your request and apply exemptions allowed under FOIPA.  If your request is for sensitive national security information, then the records must undergo a systematic declassification review prior to application of FOIPA exemptions.  Large requests take the longest time to be processed by an analyst.

You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*
July 21, 2010

MS. JENNIE PASQUARELLA
ACLU OF SOUTHERN CALIFORNIA
1313 WEST EIGHTH STREET
LOS ANGELES, CA 90017

Request No:  1143422-000
Subject:  SULIMAN, JEHAD

Dear Ms. Pasquarella:

    The purpose of this letter is to advise you of the status of your pending Freedom of Information/Privacy Acts (FOIPA) request at the Federal Bureau of Investigation (FBI). Currently your request is being reviewed by an analyst. The analyst will confirm that all records are responsive to your request and apply exemptions allowed under FOIPA. If your request is for sensitive national security information, then the records must undergo a systematic declassification review prior to application of FOIPA exemptions. Large requests take the longest time to be processed by an analyst.

    You may inquire as to the status of your request by calling the FBI's FOIPA Public Information Center at 540-868-4593.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information Dissemination Section
Records Management Division

73

# EXHIBIT

# 8



**U.S. Department of Justice**

INTERPOL – U.S. National Central Bureau

_Washington D.C. 20530_

February 19, 2010

FOIA # 2010-054

Ms. Jennie Pasquarella
Staff Attorney
ACLU of Southern California
1313 West Eighth Street
Los Angeles, CA  90017

Dear Ms. Pasquarella:

 This responds to your request to the INTERPOL-U. S. National Central Bureau (USNCB) pursuant to the Freedom of Information Act/ Privacy Act (FOIA/PA) for information relating to or concerning Naji Jawdat Hamdan, Hossam Jawdat Hemdan, Jehad Suliman and Hapimotors.  You provided a list of 27 search terms.  We received your request on February 17, 2010.  Please refer to the above FOIA number assigned to your request in any additional correspondence.

 A search of the USNCB indices produced no records.  Since we located no records, either no records ever existed in our system of records, or if a criminal investigative record existed in the USNCB system of records and the criminal investigation was closed on any date up through 1999, those records would have been destroyed and would no longer be available for retrieval. You may be interested to know that the USNCB investigative records are retained only for a period of seven (7) years from the date a case is closed.

 If you are not satisfied with the USNCB's action on your request, you may appeal by writing to:

   Co-Director
   Office of Information Policy
   U.S. Department of Justice
   Suite 11050
   1425 New York Avenue, NW
   Washington, DC  20530-0001

74

You must make your appeal in writing and it must be received by the Office of Information Policy within 60-days of the date of the letter denying your request. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you have any questions concerning this request, please contact Allison Tanaka at (202) 353-0803.


                                        Sincerely,


                                        Timothy A. Williams
                                        Director


                                        *Kevin R. Smith*

                        By:     Kevin R. Smith
                                General Counsel

75

# EXHIBIT
# 9



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Deputy Executive Director**
James Gilliam

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

April 20, 2010

Department of Justice
Co-Director
Office of Information Policy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, NW
Washington, DC 20530-0001

Re:   FOIA # 2010-054
      Freedom of Information Act Appeal

Dear Sir or Madam:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, on the ground that Interpol failed to conduct an adequate search for the records identified in our FOIA request.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Interpol "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." A copy of the FOIA request is attached as Exhibit A.

In response to our request, Interpol sent us a letter dated February 19, 2010, in which it stated that it received our request on February 17, 2010. Interpol acknowledged that our request provided a list of 27 search terms. However, without identifying whether it used those terms to search for our requested records, Interpol concluded that "[a] search of the USNCB indices produced no



LIBERTY | JUSTICE | EQUALITY

1313 WEST EIGHTH STREET  LOS ANGELES CA  90017  t 213.977.9500  f 213.977.5299  ACLU-SC.ORG

Page -2-

records." Interpol failed to identify what search terms or other search methods it used to locate our requested records in the "USNCB indices." Interpol also did not describe its system for record-keeping including identifying all of its available databases. Nor did it explain why the "USNCB indices" was the proper database to search for responsive records. A copy of Interpol's February 17, 2010 letter is attached as Exhibit B.

Despite its alleged search of "the USNCB indices," we believe that Interpol has not met its obligation to "make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, the agency should "denote which files were searched or by whom ... [apply] a systematic approach to document location, and ... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, while Interpol identified that it has searched "the USNCB indices," it does not identify what method was used to search that database, e.g. whether this is an electronic database in which an agency representative conducted a query for our requested records using each of the search terms we provided, or used some other "systematic approach to document location." See *Weisberg* at 371. Nor does Interpol identify what kinds of records are maintained and organized under "the USNCB indices," and what other files (whether they be electronic databases or hard-copy files) it maintains and the kinds of documents contained therein that might contain the records we are requesting. Interpol's failure to provide such "specific" information in its February 19 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, *id.*, demonstrates that its search for our requested records was likely not complete. As such, Interpol should be required to conduct a subsequent search for our requested records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search, including the information described above.

Further, Interpol concludes based on its apparently incomplete search for records that "either no records [we requested] ever existed in [its] system of records, or if a criminal investigative record existed in the USNCB system of records and the criminal investigation was closed on any date up through 1999, those records would have been destroyed and would no longer be available for retrieval." See Ex. B. However, we have reason to believe that Interpol should have records related to at least one of the subjects of our request, Naji Jawdat Hamdan. As set forth in our request, on a trip from Lebanon to the U.A.E. sometime 2007, Mr. Hamdan was detained by Lebanese intelligence officers for one week, during which time he was subjected to interrogation and physical abuse. See Ex. A at 5. Mr. Hamdan can now clarify that his detention in Lebanon actually took place in early January 2008. Since that detention, Mr. Hamdan has learned that his detention in Lebanon in early 2008 may have been pursuant to a warrant for his arrest issued by Interpol. In addition, the ACLU has learned through a separate FOIA request that Interpol has issued similar warrants for the arrest of individuals the U.S. Government seeks to subject to its



LIBERTY | JUSTICE | EQUALITY

Page -3-

Extraordinary Rendition policy.  See Exhibit C (Interpol record referencing arrest in connection with Extraordinary Rendition).  Like what happened to Mr. Hamdan, Extraordinary Rendition involves detention and interrogation abroad.  We therefore request that Interpol be required to
conduct a further search for records related to our request, specifically including a search for any Interpol warrant issued against Mr. Hamdan that was effective in 2008 and any related documents.

For the above-mentioned reasons, our appeal should be granted and Interpol should conduct a more thorough search, identifying the universe of files available for search and their general contents, each of those files it actually searched and their general contents, and the methodology it applied to its search for our requested records (e.g., what search terms it used in searching any electronic system of records).

We look forward to your timely written response.  Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611



LIBERTY | JUSTICE | EQUALITY

78

# EXHIBIT 10



**U.S. Department of Justice**

Office of Information Policy

_Telephone: (202) 514-3642_          _Washington, D.C. 20530_

MAY 2 5 2010

Jennie Pasquarella, Esq.
American Civil Liberties Union
  of Southern California          Re:    Appeal No. 2010-1765
1313 West Eighth Street                  Request No. 2010-054
Los Angeles, CA  90017                   CAS:SRO

Dear Ms. Pasquarella:

        You appealed on behalf of your clients, Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman, from the action of INTERPOL-U.S. National Central Bureau (USNCB) on your clients' request for access to certain records pertaining to themselves and to "Hapimotors."

        After carefully considering your appeal, I am affirming USNCB's action on your clients' request.  USNCB informed you that it could locate no records responsive to your clients' request in its files.  I have determined that USNCB's response was correct and that it conducted an adequate, reasonable search for records responsive to your clients' request.

        If your clients are dissatisfied with my action on your appeal, they may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

                                  Sincerely,

                                  Janice Galli McLeod
                                  Associate Director

                                  By: _Anne D. Work_

                                  Anne D. Work
                                  Acting Senior Counsel
                                  Administrative Appeals Staff

# EXHIBIT
# 11



**LIBERTY | JUSTICE | EQUALITY**

*By Facsimile and Certified Mail, Return Receipt Requested*

June 11, 2010

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

National Security Division
Arnetta James
FOIA Initiatives Coordinator
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001
Fax: (202) 307-3525

**Re: Request Under Freedom of Information Act and Privacy Act**
*Fee Waiver and Expedited Processing Requested*

Dear Ms. James:

This letter constitutes a renewed request for records made pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, by the American Civil Liberties Union Foundation of Southern California (ACLU/SC) on behalf of Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman (hereinafter "Requestors"). *See* Exhibit A (Privacy Act authorizations for Requestors).

We make this request for records to obtain information about the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan.

We originally served the National Security Division ("NSD") with a FOIA request seeking the information sought here on January 29, 2010. At that time the Requestors also sought a fee waiver and expedited processing of their FOIA request. However, on February 23, 2010, NSD responded to our FOIA request by stating that it was denying our request for a fee waiver and expedited processing, but that it would process our request on a "first-in, first-out basis." See FOIA/PA # 10-070. While we intended to appeal NSD's denial of our requests for a fee waiver and expedited processing, we inadvertently missed the deadline to do so.

We therefore now request that the NSD provide us additional time to file an appeal of the NSD's February 23 denial of our requests for a fee waiver and expedited processing. We are enclosing here a copy of our appeal of these issues, which we will be concurrently submitting to the Appeals office. Should you decide that you cannot excuse our untimely appeal, we hereby re-submit our FOIA request with this letter. In doing either of these things, the NSD will not be prejudiced in any way as the NSD still



**LIBERTY | JUSTICE | EQUALITY**

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Chief Executive Officer
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Tracy Rice

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

has yet to provide us a substantive response to our request. Indeed, on May 20, 2010 we spoke to a representative of the NSD who indicated that he did not know whether NSD had begun processing our request and could not even estimate how long it would take before NSD would do so, intimating that it would be many months before NSD would provide a substantive response. As such, NSD should provide us additional time to seek an appeal of its denial of our requests for a fee waiver and expedited processing either by granting us this additional time outright, or by processing our request anew. Please advise us in writing as to whether you will grant us an extension to file our administrative appeal or whether you will treat our FOIA request as re-submitted.

## THE REQUESTORS

The ACLU/SC is a non-profit organization dedicated to defending and securing the rights granted by the U.S. Constitution and Bill of Rights. ACLU/SC's work focuses on the First Amendment, equal protection, due process, privacy, and furthering civil rights for disadvantaged groups. As part of its work, ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials.

The ACLU/SC represented Mr. Naji Hamdan and Mr. Hossam Hemdan in a federal lawsuit challenging Mr. Hamdan's overseas detention in the United Arab Emirates, *Mallouk, et al. v. Obama, et al.*, CV 08-2003 (JR) (D.D.C. 2009). The ACLU/SC also represented Mr. Jehad Suliman for the purposes of reclaiming property unlawfully obtained from his home during the execution of a search warrant.

**Naji Jawdat Hamdan** is an American citizen, who was born in Lebanon on May 26, 1966. He moved to the United States in the early 1980s and lived mostly in the Los Angeles area until 2006. Mr. Hamdan is married to Mona Mallouk and has three children: Khaled, Hamza and Noor Hamdan.

Mr. Hamdan studied in the United States at Northrup University, and later started a successful auto parts business, called Honda Acura Palace or Hapimotors. He also was a founding member and part of the leadership of the Islamic Center of Hawthorne, a mosque in Hawthorne, CA. Mr. Hamdan served as a volunteer imam at that mosque.

For nearly a decade, Mr. Hamdan was subject to FBI surveillance. He was first visited by FBI agents at his home in December 1999, at which point agents asked him, among other things whether he knew Osama Bin Laden. The FBI approached him again shortly after September 11, 2001. In the following years, FBI agents returned to his home and to his workplace to question him on numerous other occasions. Mr. Hamdan

81

**ACLU**
FOUNDATION
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

also had difficulty traveling and was frequently pulled into secondary inspection at airports for questioning both leaving and returning to the United States.

In August 2006, Mr. Hamdan and his family moved to the United Arab Emirates (U.A.E.). Several months later, Mr. Hamdan returned to the United States for a brief visit. During that visit, he was subject to constant FBI surveillance. Three to four FBI cars also followed him around throughout the duration of his trip. Around the same time, the U.S. government began to question Mr. Hamdan's associates about him.

Then, sometime in 2007, on a return trip from Lebanon to the U.A.E., Lebanese intelligence officers detained Mr. Hamdan for no apparent reason. The authorities detained Mr. Hamdan for one week and subjected him to interrogation and physical abuse.

In July 2008, several months after Mr. Hamdan's detention in Lebanon, the FBI contacted Mr. Hamdan's brother Hossam Hemdan. The FBI official told Mr. Hossam Hemdan that FBI agents wanted to question Mr. Hamdan at the U.S. Embassy in Abu Dhabi. Hossam Hemdan contacted Mr. Hamdan, who agreed to meet with the agents. Two agents, Joshua Stone and Jerry Price, FBI agents from the Los Angeles Field Office, then flew from Los Angeles to the U.A.E. to interrogate him. They met Mr. Hamdan at the Embassy and interrogated him for several hours. Approximately one month later, on August 26, 2008, the State Security forces of the United Arab Emirates (the "Amn al-Dawla") arrested Mr. Hamdan at his house, in the presence of his family, for no apparent reason. The State Security officials put a hood over Mr. Hamdan's head and took him away. They detained him in a secret location somewhere in Abu Dhabi for three months.

On November 19, 2008, the ACLU/SC filed a lawsuit in federal court alleging that Mr. Hamdan was in the constructive custody of the U.S. because the U.S. had asked the U.A.E. to detain him. One week after filing the lawsuit, Mr. Hamdan was criminally charged with three counts of terrorism and transferred from the secret location to criminal custody in Abu Dhabi. At that time, Mr. Hamdan reported that U.A.E. officials had severely tortured him during lengthy interrogation sessions. He also reported that he believed that at least one U.S. official was present for at least one torture and interrogation session. After a lengthy criminal trial before the Federal Supreme Court in the U.A.E., bereft of due process and transparency, Mr. Hamdan was convicted and sentenced to time served. In October 2009, the U.A.E. deported Mr. Hamdan to Lebanon where he is now recovering from this ordeal.

**Hossam (a.k.a. Sam or Sammy) Hemdan** is an American citizen, who was born in Lebanon on April 4, 1970. He moved to the United States in approximately 1987 and has resided in the Los Angeles area ever since. Mr. Hemdan currently lives in



**LIBERTY | JUSTICE | EQUALITY**

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Chief Executive Officer
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Tracy Rice

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

Hawthorne, California and owns and manages a car emissions testing company called Redondo Smog in Hawthorne, California.

Mr. Hemdan, like his brother, was subjected to FBI questioning, monitoring and surveillance beginning in 1999. Over the course of several years, Mr. Hemdan received numerous visits by the FBI to his home and workplace for questioning. On several occasions, he noticed FBI vehicles parked outside his shop. Since 2006, he has experienced routine difficulties leaving and entering the United States at airports and is routinely pulled into secondary inspection by federal authorities for questioning, including extensive questioning about his brother, Naji Hamdan. In addition, beginning in 2006, Mr. Hemdan began to have trouble receiving his mail at his home and has reason to believe that the FBI intercepted his mail.

Jehad Suliman is an American citizen, who was born in Palestine on September 29, 1963. Mr. Suliman moved to the United States in 1982 and to Los Angeles in 1988. He currently resides in Hawthorne, California. Mr. Suliman is the manager of Hapimotors, the business that Mr. Hamdan started and owned. He and Mr. Hamdan are close friends and associates.

Mr. Suliman, like Mr. Hamdan and Mr. Hemdan, has also been subject to FBI questioning, monitoring and surveillance. Beginning around 2002, Mr. Suliman was questioned by FBI agents at the Hapimotors shop on at least two occassions. After Mr. Hamdan was detained in Lebanon in 2008, FBI agents again approached Mr. Suliman for questioning about Mr. Hamdan. Also, beginning in 2006, Mr. Suliman experienced problems leaving and returning to the U.S. at airports. On one trip, federal agents questioned him extensively at the airport before and after a trip about Mr. Hamdan and Hapimotors. Finally, in July 2009, during the time of Mr. Hamdan's trial in the U.A.E., about one dozen law enforcement agents searched Mr. Suliman's home and property subject to a valid search warrant and seized some of Mr. Suliman's possessions. According to the search warrant, authorities were investigating Mr. Suliman for MediCal fraud. However, documents unrelated to MediCal, but pertaining to Naji Hamdan and Hapimotors, were seized.

## THE REQUEST FOR RECORDS

We seek disclosure of **any** records[1] from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of

---

[1] The term "records" as used herein includes but is not limited to all communications preserved in electronic or hard copy form, including but not limited to correspondence, documents, data, videotapes, audio tapes, CDs, DVDs, floppy disks, zip disks, faxes, files, e-mails, notes (including handwritten notes), letters, summaries or records of

83



LIBERTY | JUSTICE | EQUALITY

Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and **any** of their sub-agencies or divisions **relating to** or **concerning**:[2]

(1) Mr. Naji Jawdat Hamdan;

(2) Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan)

(3) Mr. Jehad Suliman; and

(4) Hapimotors (a.k.a Honda Acura Palace or HondAcura Palace). The business is currently located at 1848 East 55th St, Los Angeles, CA 90058 and maintains a website at www.hapimotors.com.

As is apparent from the plain language of this request, we seek not only the contents of any primary or main files on the Requestors and Hapimotors, but also any records relating to or concerning any of the Requestors or Hapimotors that may be cross-listed, cross-referenced or contained in the main file pertaining to another individual or entity. The request is also meant to include, but not be limited to the entirety of any document that includes the name of any of the requestors.

## SUGGESTED SEARCH TERMS FOR ELECTRONIC SEARCHES

To enable an adequate search of all electronic databases, we suggest that you use the following search terms, among others, to locate responsive records:

1. Naji Jawdat Hamdan
2. Hamdan, Naji Jawdat
3. Naji Hamdan
4. Hamdan, Naji
5. N. Hamdan
6. Hamdan, N.
7. Naji J. Hamdan
8. Hamdan, Naji J.

personal conversations, reports and/or summaries of interviews, reports and/or summaries of investigations, guidelines, evaluations, instructions, analyses, memoranda, agreements, orders, prescriptions, charts, expressions of statements of policy, procedures, protocols, reports, rules, training manuals, or studies.

[2] The term "concerning" means referring to, describing, evidencing, commenting on, responding to, showing, analyzing, reflecting, or constituting.

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Chief Executive Officer
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Chief Financial Officer
Brenda Mault

Communications Director
Gordon Smith

Development Director
Tracy Rice

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

9.  Hossam Hemdan
10.  Hemdan, Hossam
11.  Hossam Hamdan
12.  Hamdan, Hossam
13.  Sam Hemdan
14.  Hemdan, Sam
15.  Samy Hemdan
16.  Hemdan, Samy
17.  Sammy Hemdan
18.  Hemdan, Sammy
19.  Sammy Jawdat Hemdan
20.  Hemdan, Sammy Jawdat
21.  Jehad Suliman
22.  Suliman, Jehad
23.  Honda Acura Palace
24.  HondAcura Palace
25.  Hapimotors
26.  Hapimotors.com
27.  Authentic auto parts

## REQUEST FOR EXPEDITED PROCESSING

Expedited processing is warranted when there is a "compelling need" for the information. 5 U.S.C. § 552(a)(6)(E). For requests made by organizations "primarily engaged in disseminating information," "an urgency to inform the public about actual or alleged federal government activity" constitutes a "compelling need." 5 U.S.C. § 552(a)(6)(E)(v)(II).[3]

---

[3] *See also Amer. Civil Liberties Union v. U.S. Dep't of Defense,* 2006 WL 1469418 (N.D. Cal. 2006) (ordering expedited processing of a request for records under the FOIA statute where plaintiffs had alleged a compelling need to know about the Department of Defense's practice of gathering information on political protests in the United States); *Washington Post v. Dep't of Homeland Sec.,* 459 F. Supp. 2d 61, 66 (D.C.C. 2006) (holding that expedited processing of a request for information from the Secret Service about who visited Vice-President Cheney during CIA-leak investigation was proper under the statute where plaintiff had asserted "statutory entitlement to expedited review of the FOIA request, based on the statutory predicate that the plaintiff has a 'compelling need' for the information."); *Elec. Privacy Info. Ctr. v. Dep't of Justice,* 416 F. Supp. 2d 30 (D.D.C.2006) (granting a preliminary injunction and ordering expedited processing and disclosure of documents concerning the Bush Administration's policy of conducting surveillance of domestic communications).

1313 WEST EIGHTH STREET   LOS ANGELES CA   90017   t 213.977.9500   f 213.977.5299   ACLU-SC.ORG

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

FOUNDATION

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

This request implicates a matter of urgent public concern: namely, the nature and extent of the federal government's surveillance and detention of American citizens in the name of national security. Information regarding the federal government's handling of the Naji Hamdan case – both his surveillance in the U.S. and his detention and torture abroad – is of particularly urgent public concern because Mr. Hamdan and many others believe that the U.S. government requested that he be detained by a foreign government known for torturing prisoners, in order to obtain additional information from him. Whether or not the federal government had one of its citizens detained and tortured by a foreign government is a matter of urgent public concern. In addition, information responsive to this request will shed light on the extensive FBI surveillance, monitoring and questioning that Mr. Hamdan and his associates underwent for many years. In particular, the information may show whether the surveillance was suspicion-less or whether there was specific criminal activity that the FBI was investigating. Such information is of urgent public concern as the federal government seeks to improve its surveillance and investigative techniques in the face of new terrorism threats, while balancing concerns for civil liberties.

This request is also made by an organization, the ACLU/SC, "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II); 6 C.F.R. § 5.5(d)(1)(ii). *See American Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primary engaged in disseminating information"). Dissemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.

The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.



**LIBERTY | JUSTICE | EQUALITY**

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Chief Executive Officer
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Tracy Rice

Legal Director
Héctor O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

Expedited processing is also warranted because the information sought relates to "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request relates to the case of Naji Hamdan, a matter of exceptional media interest, which is reflected in the widespread news coverage of his case in local, national and international media outlets. *See, e.g.*, Jonathan S. Landay, *Did U.S. Push Detention of American without Charges?*, MCCLATCHY NEWSPAPERS, Nov. 17, 2008; Jonathan S. Landay, *ACLU Suing Bush, Others Over Illegal Detentions Abroad*, MCCLATCHY NEWSPAPERS, Nov. 18, 2008; Denise Nix, *ACLU Suing to Free U.S. Citizen*, DAILY BREEZE, Nov. 18, 2008; Jonathan S. Landay, *Are Overseas Detentions of U.S. Citizens Unconstitutional?*, THE SACRAMENTO BEE, Nov. 18, 2008; Denise Nix, *ACLU Suing to Free U.S. Citizen*, CONTRA COSTA TIMES, Nov. 18, 2008; Raja Abdulrahim, ACLU Seeks Release of American, *Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Jonathan S. Landay, *American Alleges Torture in UAE Detention*, MCCLATCHY NEWSPAPERS, Dec. 2, 2008; Denise Nix, *Former Hawthorne Resident Describes Torture Abroad*, DAILY BREEZE, Dec. 3, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008; Jesse J. Holland, *Lawsuit: US Responsible for Man's UAE Imprison*ment, ASSOCIATED PRESS, Dec. 13, 2008; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASH. POST, Mar. 23, 2009, at A2; Anna Schecter, *American Detained, Tortured in UAE at U.S. Gov'ts Behest, ACLU Says Naji Hamdan Says He Was Beaten Until Losing Consciousness in Abu Dhabi Prison*, ABC NEWS, June 8, 2009; Muhammad Shamsaddin Megalommatis, *Amnesty Int'l Report 2009 on the UAE – the Impermissible Territory of Human Degeneration*, AMERICAN CHRONICLE, July 2, 2009; *American Held in UAE: "Proxy Detention"?, U.S. Citizen Faces Terror Charges in Dubai; Attorneys Says He Was Tortured, Forced to Confess*, CBS NEWS, July 19, 2009; Barbara Surk, *UAE Prosecutor: U.S. Man had Al-Qaida Ties, American on Trial Alleges He was Tortured, Denies Terror-Related Charges*, ASSOCIATED PRESS, Aug. 24, 2009; Barbara Surk, *American Naji Hamdan Convicted by Emirates Court on Terror Charges*, ASSOCIATED PRESS, Oct. 12, 2009.

Accordingly, the Requestors are entitled to expedited processing of this request.

## LIMITATION OR WAIVER OF SEARCH AND REVIEW FEES

We request a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by ... a representative of the news media ...") and 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged to "representatives of the news media"). The information sought in this request is not sought for a commercial purpose. The Requestors include a non-profit



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg

organization who intends to disseminate the information gathered by this request to the public at no cost.

The "term 'a representative of the news media" means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii). The statutory definition does not require that the requester is a member of the traditional media. As long as the requester meets the definition in any aspect of its work, it qualifies for limitation of fees under this section of the statute.

For the reasons stated above with respect to expedited processing, the ACLU/SC qualifies as a "representative of the news media" under the statutory definition, because the ACLU/SC routinely gathers information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public. *See Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) (non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Accordingly, any fees charged must be limited to duplication costs.

## WAIVER OR REDUCTION OF ALL COSTS

We request a waiver or reduction of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester"); *see also* 6 C.F.R. § 5.11(k).

The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987). The Requestors need not demonstrate that the records would contain evidence of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, good or bad. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1314 (D.C. Cir. 2003).

Disclosure of the information sought is in the public interest and will contribute significantly to public understanding of the federal government's policies and practices of monitoring, surveillance, questioning, and participation in overseas detention and torture of American citizens. As shown by the news reporting cited above, these issues are of intense public concern. The requested records relate directly to operations or activities of the government that potentially impact or infringe fundamental rights and



LIBERTY | JUSTICE | EQUALITY

freedoms. The records are not sought for commercial use, and the Requestors plan to disseminate the information disclosed through print and other media to the public at no cost, and through meetings with members and affected communities. As demonstrated above, the Requestors have both the intent and ability to convey any information obtained through this request to the public.

The Requestors state "with reasonable specificity that [their] request pertains to operations of the government," and "the informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of the government." *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Health and Human Services,* 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006).

In the event a waiver or reduction of costs is denied, please notify me in advance if the anticipated costs exceed $100.

## CONCLUSION

If this request is denied in whole or part, please justify all deletions by reference to specific FOIA exemptions. We expect you to release all segregable portions of otherwise exempt material. For example, we expect you to redact names of individuals for whom privacy waivers are not enclosed, if such redaction is required by the Privacy Act or other law, and release any otherwise disclosable records as redacted. We also expect that this FOIA request will be processed in accordance with the presumption of disclosure and President Obama's directive to federal agencies on January 26, 2009. Pres. Obama, Memo. for the Heads of Exec. Offices and Agencies, Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 26, 2009) ("The Freedom of Information Act should be administered with a clear presumption: In the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears.").

We reserve the right to appeal a decision to withhold any information, or to deny expedited processing or a waiver of fees. We look forward to your reply to the request for expedited processing within ten (10) calendar days, as required under 5 U.S.C. § 552(a)(6)(E)(ii)(I). Notwithstanding your decision on the matter of expedited processing, we look forward to your reply to the records request within twenty (20) business days, as required under 5 U.S.C. § 552(a)(6)(A)(I).

If you have questions, please contact Jennie Pasquarella at 213-977-5236 or via e-mail at jpasquarella@aclu-sc.org. Thank you in advance for your timely consideration

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Chief Executive Officer
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Chief Operating Officer
Heather Carrigan

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Tracy Rice

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg



**LIBERTY | JUSTICE | EQUALITY**

of this request. Please furnish records as soon as they are identified to the undersigned at:

> ACLU of Southern California
> 1313 W. Eighth Street
> Los Angeles, CA 90017

I certify that the information provided supporting the request for expedited processing is true and correct to the best of our knowledge and belief.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU of Southern California

Laboni Hoq
Associate
Traber & Voorhees

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Chief Executive Officer**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Chief Operating Officer**
Heather Carrigan

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Tracy Rice

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

## AUTHORIZATION

I, __NAJI JAWDAT HAMDAN__, hereby authorize attorneys from the ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90026, to submit a request under the Freedom of Information Act and the Privacy Act to the federal government and to receive responsive documents on my behalf.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 1, 2009, in Abu Dhabi, United Arab Emirates.

_____ NAJI JAWDAT HAMDAN _____
Name (print)

_____
Address:

_____ ABU DHABI, U.A.E. _____
City, State Zip

_____
Signature

## AUTHORIZATION

I, HOSSAM  HEMDAN , hereby authorize attorneys from the ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90026, to submit a request under the Freedom of Information Act and Privacy Act to the federal government and to receive responsive documents on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 04, 2009, in Hawthorne , California.

Hossam  Hemdan
Name (print)

12636  TRURO AV.
Address

HAWTHORNE  CA  90280
City, State Zip

Signature

State of California County of
LOS ANGELES
Subscribed and sworn to (or affirmed)
Before me on this 04 day of 09, 2009 by
Hossam Hemdan
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.
Signature Hushmet Ali Khan

HUSHMET ALI KHAN
Commission # 1822868
Notary Public - California
Los Angeles County
My Comm. Expires Nov 16, 2012

92

## AUTHORIZATION

I, _Jehad Suliman_, hereby authorize attorneys from the ACLU of Southern California, 1313 West 8th Street, Los Angeles, CA 90026, to submit a request under the Freedom of Information Act and Privacy Act to the federal government and to receive responsive documents on my behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September _04_, 2009, in _Hawthorne_, California.

_Jehad Suliman_
Name (print)

_14107 Ramona Ave._
Address

_Hawthorne, CA 90250_
City, State Zip

Signature

State of California County of
_LOS ANGELES_
Subscribed and sworn to (or affirmed)
Before me on this _04_ day of _09_, 20_09_, by
_Jehad Sulaiman_
personally known to me or proved to me on
the basis of satisfactory evidence to be the
person(s) who appeared before me.
Signature _Hushmet Ali Khan_

HUSHMET ALI KHAN
Commission # 1822868
Notary Public - California
Los Angeles County
My Comm. Expires Nov 16, 2012

93

# EXHIBIT

# 12



**U.S. Department of Justice**

National Security Division

---

*Washington, D.C. 20530*

ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA  90017
Attn:  Jennie Pasquarella

**JUN 2 4 2010**

Re: FOIA/PA # 10-140

Dear Ms. Pasquarella:

This is to acknowledge receipt of your letter dated June 11, 2010 seeking information on Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan a.k.a. Sammy Hemdam or Sam Hemdan, Mr. Jehad Suliman and Hapimotors a.k.a. Honda Acura Palace or HondAcura Palace. Your Freedom of Information Act request was received on June 24, 2010.

Our policy is to process FOIA requests on a first-in, first-out basis.  Consistent with this policy, every effort will be made to respond to your request as quickly as possible.  The actual processing time will depend upon the complexity of the request, whether it involves sensitive or voluminous records, and whether consultations with other agencies or agency components is appropriate.

Also, you requested expedited processing of your FOIA request and a waiver of processing fees.  Both requests are under consideration and you will be notified our decision.  If you have any questions concerning your request, feel free to contact me on (202) 307-3525.  Thank you in advance for your continuing patience.

Sincerely,

Arnetta James
FOIA Coordinator

94

# EXHIBIT

# 13



**United States Department of State**

*Washington, D.C.  20520*

MAR 1 2 2010
Case Number:  201000711

Ms. Jennie Pasquarella, Esq.
*American Civil Liberties Union*
*Of Southern California*
1313 West Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request, dated January 29, 2010 on behalf of Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman, for copies of documents concerning records regarding the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan, his brother, Mr. Hossam Hemdan, and his associate, Mr. Jehad Suliman.  The time period of your request is from January 1, 1998 to the present.

We will begin the processing of your request based upon the information provided in your communication.  We will notify you as soon as responsive material has been retrieved and reviewed.

We wish to advise you that the cut-off date for retrieving records is either the date you have given the Department by specifying a particular time frame, or the date the search initiated.

**Fees**

The Freedom of Information Act (FOIA) requires agencies to assess fees to recover the direct costs of processing requests, unless a fee waiver has been granted.

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
    *Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

- 2 -

According to our regulations, by making a FOIA request, you have agreed to pay all applicable fees up to $25 unless a fee waiver has been granted. You may specify a willingness to pay a greater amount. If the estimated fees exceed this limit, you will be notified.

☐   You have stated your willingness to pay the fees incurred in the processing of this request up to $_____.

☒   Please let us know if you are willing to pay the fees that will be incurred in the processing of your request. You may set a limit of the maximum amount that you wish to pay. Please be advised that, without an agreement to pay fees, your request will be processed without cost up to the required first 2 hours of search time (for all other requester category only) and duplication of the first 100 pages (for all other, media, educational and non-commercial scientific requester categories).

We will notify you of the costs incurred in processing your request as soon as the search for, and review of, any responsive documents have been completed.

Based upon the information that you have provided, we have placed you in the requester category checked below. This request will be processed in accordance with the fee schedule designated for that category (see 22 C.F.R. 171, enclosed).

☐   Commercial Use Requesters – Requires us to assess charges that recover the full direct costs of searching for, reviewing for release, and duplicating the record(s) sought.

☐   Educational Institution Requesters – Requires us to assess charges that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

☐   Non-commercial Scientific Institution Requesters – Requires us to assess charges that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

☒   Representatives of the News Media – Requires us to assess charges that recover the cost of duplicating the record(s) sought only, after the first 100 pages of duplication.

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
   *Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

☐    All Other Requesters – Requires us to assess charges that recover the full reasonable direct cost of searching for and duplicating the record(s) sought, after the first 100 pages of duplication, and the first two hours of search time.

     ☐    You have indicated your inclusion in a category different than the one indicated above.  Please forward the information requested on the enclosed sheet titled "Requester Categories" to substantiate your inclusion in a particular category of requester.

## Fee Waiver

☐    Your request for a fee waiver has been granted; therefore, your request will be processed at no charge to you.

☒    Based upon the information provided in your letter, your request for a fee waiver has been denied.  If you wish to appeal this decision, you may write to the Chief, Requester Liaison Division, at the address given on the bottom of this page.  Your appeal should address the points listed in the enclosed sheet titled "Requests for Fee Waivers."  Your appeal must be sent to us within 30 days from the date that you receive this letter.

## Expedition

☐    After consideration of your request for expedited processing under the Department's rules governing Freedom of Information Act requests, we have determined that your request does warrant expedited processing.

     Although we cannot promise that the processing of your request will be completed by a specific date, it will be processed ahead of all other requests now pending with the Department, except for those other requests already determined to warrant expedition.

☒    Our published regulations regarding expedition, 22 C.F.R. 171.12(b), require a specific showing of a compelling need.  Expeditious

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
    *Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

processing is granted only in the following situations:  (1) imminent
threat to the life or physical safety of an individual; (2) urgently
needed by an individual primarily engaged in disseminating
information in order to inform the public concerning actual or alleged
Federal Government activity and the information is urgently needed in
that a particular value of the information would be lost if not
disseminated quickly; (3) substantial humanitarian reasons; and
(4) loss of substantial due process rights.  Your request does not meet
any of the established criteria.  Regrettably, I must advise that you
have not provided adequate justification for expedition.  However, you
may be assured that we will make every effort to process your request
in as timely a manner as possible.  For your convenience, I have
enclosed a copy of the Department's expeditious processing criteria.

If you wish to appeal the denial of expedition, you may write to the
Chief, Requester Liaison Division, at the address below, within 30
days of receipt of this letter.

## Other Agency Material

☐   Some of the material that you seek appears to have been originated by
another agency(ies).  If you wish to contact the Freedom of
Information/Privacy Office of that agency(ies), the address(es) can be
found on the attached list.

☐   Some of the records you seek are no longer in the possession of the
State Department.  The majority of Department of State records
(excluding passport and visa records) which are 25 years or older are
transferred to the National Archives and Records Administration
(NARA) in accordance with Title 22, Code of Federal Regulations,
Part 171.6.  Accordingly, requests for such records should be
addressed to:

National Archives and Records Administration
8601 Adelphi Road, Room 311
College Park, MD 20740-6001

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
*Website:  www.foia.state.gov*

*Inquiries:*
*Phone:  1-202-261-8484*
*FAX:  1-202-261-8579*
*E-mail:  FOIAStatus@state.gov*

98

☐   For pre-1925 passport records, and visa records dating 1910-1940,
please contact:

> Civil Records
> National Archives & Records Administration
> Washington, DC 20408

If you wish to review further information on our requirements for
maintenance or disposal of records, please visit the following website:
foia.state.gov/records.asp.

While we will make every effort to meet the time limits cited in the FOIA
(5 U.S.C. § 552), unusual circumstances may arise for extending the time
limit (see enclosure).  We appreciate your patience in this matter.

If you have any questions, please do not hesitate to contact us at the number
or address below.  We can provide faster service if you include the case
number of your request in your communications with us.

We are pleased to be of service to you.

> Sincerely,
>
> Wilma M. Manning
> Requester Communications Branch
> *ISO 9001:2000 Certified*

Enclosures:  As stated.

---

*Office of Information Programs and Services*
*U.S. Department of State, SA-2*
*Washington, DC 20522-8100*
        *Website: www.foia.state.gov*

*Inquiries:*
*Phone: 1-202-261-8484*
*FAX: 1-202-261-8579*
*E-mail: FOIAStatus@state.gov*

99

§ 171.15 Fees to be charged—
categories of requesters.

Under the FOIA, there are four
categories of requesters:
Commercial use requesters,
educational and noncommercial
scientific institutions,
representatives of the news
media, and all other requesters.
The fees for each of these
categories are:

(a) *Commercial use requesters.*
When the Department receives a
request for documents for
commercial use as defined in §
171.11(l), it will assess charges
that recover the full direct costs
of searching for, reviewing for
release, and duplicating the
record sought. Commercial use
requesters are not entitled to two
hours of free search time or 100
free pages of reproduction of
documents. The Department may
recover the cost of searching for
and reviewing records even if
there is ultimately no disclosure
of records (*see* § 171.16(b)).

(b) *Educational and non-
commercial scientific institution
requesters.* The Department shall
provide documents to requesters
in this category for the cost
of reproduction alone, excluding
charges for the first 100 pages.
To be eligible for inclusion in
this category, a requester must
show that the request is being
made as authorized by and under
the auspices of a qualifying
institution, as defined in §
171.11(m) and (n), and that the
records are not sought for a
commercial use, but are sought
in furtherance of scholarly (if the
request is from an educational
institution) or scientific (if the
request is from a noncommercial
scientific institution) research.

(c) *Representatives of the news
media.* The Department shall
provide documents to requesters
in this category for the cost of
reproduction alone, excluding
charges for the first 100 pages.
To be eligible for inclusion in
this category, a requester must
meet the criteria in § 171.11(o),
and the request must not be
made for a commercial use. A
request for records supporting

the news dissemination function
of the requester shall not be
considered to be a commercial
use request.

(d) *All other requesters.* The
Department shall charge
requesters who do not fit into
any of the categories above fees
that recover the full reasonable
direct cost of searching for and
reproducing records that are
responsive to the request, except
that the first 100 pages of
reproduction and the first two
hours of search time shall
be furnished without charge.

§ 171.15 Fees to be charged—categories of requesters.

Under the FOIA, there are four categories of requesters: Commercial use requesters, educational and noncommercial scientific institutions, representatives of the news media, and all other requesters. The fees for each of these categories are:

(a) *Commercial use requesters.* When the Department receives a request for documents for commercial use as defined in § 171.11(l), it will assess charges that recover the full direct costs of searching for, reviewing for release, and duplicating the record sought. Commercial use requesters are not entitled to two hours of free search time or 100 free pages of reproduction of documents. The Department may recover the cost of searching for and reviewing records even if there is ultimately no disclosure of records (*see* § 171.16(b)).

(b) *Educational and non-commercial scientific institution requesters.* The Department shall provide documents to requesters in this category for the cost of reproduction alone, excluding charges for the first 100 pages. To be eligible for inclusion in this category, a requester must show that the request is being made as authorized by and under the auspices of a qualifying institution, as defined in § 171.11(m) and (n), and that the records are not sought for a commercial use, but are sought in furtherance of scholarly (if the request is from an educational institution) or scientific (if the request is from a noncommercial scientific institution) research.

(c) *Representatives of the news media.* The Department shall provide documents to requesters in this category for the cost of reproduction alone, excluding charges for the first 100 pages. To be eligible for inclusion in this category, a requester must meet the criteria in § 171.11(o), and the request must not be made for a commercial use. A request for records supporting the news dissemination function of the requester shall not be considered to be a commercial use request.

(d) *All other requesters.* The Department shall charge requesters who do not fit into any of the categories above fees that recover the full reasonable direct cost of searching for and reproducing records that are responsive to the request, except that the first 100 pages of reproduction and the first two hours of search time shall be furnished without charge.

## Expeditious Processing Information Sheet

Expedited processing shall be granted to a requester after the requester requests such and demonstrates a compelling need for the information. A compelling need in deemed to exist where the requester can demonstrate one of the following:

1. **A Compelling Need** means that the failure to obtain the records on an expedited basis could reasonably be expected to pose an imminent threat to the life or physical safety of an individual.

2. **A Compelling Need** means that the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. An individual primarily engaged in disseminating information to the public. Representatives of the news media would normally qualify; however, other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public, not just to a particular segment or group.

    (a) **Urgently Needed** means that the information has a particular value that will be lost if not disseminated quickly. Ordinarily this means a breaking news story of historical interest only, or information sought for litigation or commercial activities would not qualify nor would a news media publication or broadcast deadline unrelated to the news breaking nature of the information.

    (b) **Actual or Alleged Federal Government Activity.** The information concerns some actions taken, contemplated, or alleged by or about the Government of the United States, or one of its components or agencies, including the Congress.

3. **Substantial Due Process** rights of the requester would be impaired by the failure to process immediately; or

4. **Substantial Humanitarian** concerns would be harmed by the failure to process immediately.

A demonstration of compelling need by a requester shall be made by a statement certified by the requester to be true and correct to the best of their knowledge.

RC-IS-7.5.1b-1
July 6, 2005

§ 171.11 Definitions.
Unusual Circumstances
As used in this subpart, the following definitions shall apply:
(a) *Freedom of Information Act* or *FOIA* means the statute codified at 5 U.S.C. 552, as amended.
(b) *Department* means the United States Department of State, including its field offices and Foreign Service posts abroad;
(c) *Agency* means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government (including the Executive Office of the President), or any independent regulatory agency;
(d) *Information and Privacy Coordinator* means the Director of the Department's Office of Information Programs and Services (IPS) who is responsible for processing requests for access to information under the FOIA, the Privacy Act, E.O. 12958, and the Ethics in Government Act;
(e) *Record* means all information under the control of the Department, including information created, stored, and retrievable by electronic means, regardless of physical form or characteristics, made in or received by the Department and preserved as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Department or because of the informational value of the data contained therein. It includes records of other Government agencies that have been expressly placed under the control of the Department upon termination of those agencies. It does not include personal records created primarily for the personal convenience of an individual and not used to conduct Department business and not integrated into the Department's record keeping system or files. It does not include

records that are not already in existence and that would have to be created specifically to meet a request. However, information available in electronic form shall be searched and compiled in response to a request unless such search and compilation would significantly interfere with the operation of the Department's automated information systems.
(f) *Control* means the Department's legal authority over a record, taking into account the ability of the Department to use and dispose of the record as it sees fit, to legally determine the disposition of a record, the intent of the record's creator to retain or relinquish control over the record, the extent to which Department personnel have read or relied upon the record, and the degree

63937 Federal Register / Vol. 69, No. 212 / Wednesday, November 3, 2004 / Rules and Regulations
to which the record has been integrated into the Department's record keeping system or files.
(g) *Direct costs* means those costs the Department incurs in searching for, duplicating, and, in the case of commercial requests, reviewing documents in response to a FOIA request. The term does not include overhead expenses.
(h) *Search costs* means those costs the Department incurs in looking for, identifying, and retrieving material, in paper or electronic form, that is responsive to a request, including page-by-page or line-by-line identification of material within documents. The Department shall attempt to ensure that searching for material is done in the most efficient and least expensive manner so as to minimize costs for both the Department and the requester.
(i) *Duplication costs* means those costs the Department incurs in copying

a requested record in a form appropriate for release in response to a FOIA request. Such copies may take the form of paper copy, microfiche, audio-visual materials, or machine-readable electronic documentation (*e.g.*, disk or CD-ROM), among others.
(j) *Review costs* means costs the Department incurs in examining a record to determine whether and to what extent the record is responsive to the FOIA request and the extent to which it may be disclosed to the requester. It does not include costs of resolving general legal or policy issues that may be raised by a request.
(k) *Unusual circumstances.* As used herein, but only to the extent reasonably necessary to the proper processing of the particular request, the term "unusual circumstances" means:
(1) The need to search for and collect the requested records from Foreign Service posts or other separate and distinct Department offices;
(2) The need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records that are demanded in a single request; or
(3) The need for consultation with another agency having a substantial interest in the determination of the request or among two or more components of the Department that have a substantial subject matter interest therein. Such consultation shall be conducted with all practicable speed.
(l) *Commercial use request* means a request from or on behalf of one who requests information for a use or purpose that furthers the commercial, trade, or profit interest of the requester or the person on whose behalf the request is made. In determining whether a requester belongs within this category, the Department will look at the use to which the requester will put the information requested.

# EXHIBIT
# 14



**LIBERTY | JUSTICE | EQUALITY**

April 13, 2010

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased*

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Chief
Requester Liaison Division
Office of Information Programs and Services
U.S. Department of State, SA-2
Washington, DC 20522-8100

> Re:   Case Number 201000711
>         FOIA Appeal on Expedited Processing and Fee Waiver

To Whom It May Concern:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and Department of State regulations, 22 C.F.R. 171.50, of your decision to deny our request for expeditious processing and a fee waiver.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of State "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

<u>Expedited Processing</u>

In your letter dated March 12, 2010, you denied our request for expeditious processing on the grounds that we had not provided adequate justification for expedition. DOS Letter (attached as Exhibit B). We disagree with that assessment.

The FOIA establishes that a requester may be eligible for expedited processing where "the person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i). Under implementing regulations for the Department of State, a person demonstrates a compelling need where the information is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 22 C.F.R. 171.12(b)(2). *See also* 5 U.S.C. § 552(a)(6)(E)(v)(II). A person is "primarily engaged in disseminating information in order to inform the public" if they are news media requesters or they can "demonstrate that their primary activity involves publishing or otherwise disseminating information to the public, not just a particular segment or

104

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

group." 22 C.F.R. 171.12(b)(2). The information is urgently needed if "[t]he information has a particular value that will be lost if not disseminated quickly," such as a "breaking news story of general public interest." *Id.* at 171.12(b)(2)(i). Finally, the information concerns actual or alleged Federal Government activity if it "concerns some actions taken, contemplated, or alleged by or about the government of the United States, or one of its components or agencies, including the Congress." *Id.* at 171.12(b)(2)(ii).

As we have already demonstrated in our request, we have a compelling need for the information that meets these specific standards for expedited processing.

First, the ACLU is "primarily engaged in disseminating information" within the meaning of the statute and the regulations. In *American Civil Liberties Union v. Dep't of Justice*, 321 F.Supp. 2d 24, 30 n.5 (D.D.C. 2004), the district court found that a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information" for the purposes of expedited processing. This is precisely the work of the ACLU. To restate our request,

> [d]issemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.
>
> The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Ex. A (FOIA Request) at 10. Indeed, information dissemination to the public is so central to the work of the ACLU that our office, the ACLU of Southern California, has a



**LIBERTY | JUSTICE | EQUALITY**

Communications Department and three full time staff members and outside consultants devoted to that task.

Second, the information is urgently needed for the reasons already discussed in our request. More specifically, the information involves a "breaking news story of general public interest." As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times. *See Attorneys Say He Was Tortured, Forced to Confess,* CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen,* THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE,* THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months,* L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured,* L.A. TIMES, Dec. 4, 2008. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, earlier this month a leading national magazine published a feature-length article about Mr. Hamdan. *See* Anna Louise Sussman, *Naji Hamdan's Nightmare,* THE NATION, Mar. 4, 2010.

Furthermore, the information sought through our request will answer many of the unresolved questions about why Mr. Hamdan was detained in the United Arab Emirates and to what extent the U.S. government was involved. This information has diminishing value to the public and the media who seek immediate answers to these questions and to hold the government accountable for its treatment of Mr. Hamdan and other individuals like him, who have been detained by foreign governments at the request of the United States.

Finally, the requested information clearly concerns actions of the Federal Government, as the entire purpose of this FOIA request is to understand exactly what role various components of the Federal Government played in Mr. Hamdan's ordeal.

For the above-mentioned reasons, our request for expedited processing should be overturned and our request should be processed in accordance with your expedited processing procedures.

Fee Waiver

In your letter, you also deny our request for a fee waiver without explanation.

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg



**LIBERTY | JUSTICE | EQUALITY**

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

The FOIA and the State Department regulations provide that "fees otherwise chargeable in connection with a request for disclosure of a record shall be waived or reduced where it is determined that disclosure is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." 22 C.F.R. § 171.17(a). *See* 5 U.S.C. § 552(a)(4)(A)(iii). In deciding on a fee waiver request, the State Department considers four factors:

(i)     The subject of the request, i.e., whether the subject of the requested records concerns the operations or activities of the government;

(ii)    The informative value of the information to be disclosed, i.e., whether the disclosure is likely to contribute to an understanding of government operations or activities;

(iii)   The contribution to an understanding of the subject by the general public likely to result from disclosure, i.e., whether disclosure of the requested information will contribute to public understanding, including whether the requester has expertise in the subject area as well as the intention and ability to disseminate the information to the public; and

(iv)    The significance of the contribution to public understanding, i.e., whether the disclosure is likely to contribute significantly to public understanding of government operations or activities.

22 C.F.R. § 171.17(a)(1)(i-iv).

We clearly meet these standards for a public interest fee waiver. First, you have already recognized that we are not seeking this information for a commercial purpose given your determination that we are "Representatives of the News Media," Exh. B (DOS Letter) at 3. Second, we have already established that we meet the four factors. As described above, we seek records pertaining to Naji Hamdan, his brother (Hossam Hemdan), his business partner (Jehad Suliman) and his former business (Hapimotors) in order to obtain information about the federal government's surveillance of Mr. Hamdan and eventual participation in Mr. Hamdan's detention, torture, interrogation and prosecution in the United Arab Emirates. As such, the subject of our request clearly concerns the operations or activities of the government. The requested information is likely to contribute to an understanding of government operations because it will expose the role that the federal government plays in the overseas detention and criminal proceedings of United States citizens accused of terrorism. This information will significantly contribute to public understanding because, as of now, the public has very

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

FOUNDATION

LIBERTY | JUSTICE | EQUALITY

little to no information about the role that our government is playing in requesting foreign governments to detain terrorism suspects, like Naji Hamdan, on its behalf and the subsequent role that it plays in that person's detention, interrogation and criminal proceedings. And, finally, this information is of enormous significance to the public because no such information has yet been publicly disclosed from our government and the information would expose a key aspect of the government's counterterrorism activity, conduct which may violate the U.S. Constitution.

In addition, as a non-commercial "Representative of the News Media" who make this FOIA request in the public interest, you are required to liberally construe our fee waiver request in our favor. *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (A public interest fee waiver request "is to be liberally construed in favor of waivers for noncommercial requesters."); *Federal CURE v. Lappin*, 602 F.Supp.2d 197, 203 (D.D.C. 2009).

For the abovementioned reasons, the denial of our public interest fee waiver request should be overturned.

In addition, although your agency's letter indicates that you will process our request in accordance with FOIA, your agency has not specified a timetable within which it intends or anticipates completing the search, nor does it identify any extraordinary circumstances justifying additional time to process our request. Your agency has already failed to meet the statutory time requirements for searching for and disclosing to us responsive records. If we do not receive a substantive response to our request by April 26, 2010, we will proceed to file an administrative appeal of your agency's failure to search for and disclose responsive records in a timely manner.

We look forward to your written response to this appeal. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

# EXHIBIT
# 15



United States Department of State

*Washington, D.C. 20520*

MAY   7 2010

Ms. Jennie Pasquarella, Esq.
American Civil Liberties Union
Of Southern California
1313 West Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This is in response to your April 13, 2010 Freedom of Information Act (FOIA) request appeal of the Department's decision to deny your request for expeditious processing and a waiver of fees concerning the request for documents regarding Mr. Naji Jawdat Hamdan, Mr. Hossman Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors.

We have considered the information supplied in your appeal and have determined that expedited processing is not warranted. Our upheld decision to deny the request for expedited processing is based on the fact that the FOIA request appeal did not contain information that would permit expedited processing under 22 C.F.R. § 171.12(b).

We have also considered your appeal of our denial of a fee waiver. A waiver or reduction of fees may be appropriate when the disclosure of records is in the public interest because the disclosure is likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the interest of the requester. *See* 22 C.F.R. § 171.17. In light of the new information supplied in your letter of April 13, we will now defer our decision to grant or deny your request for a fee waiver until we are able to determine whether the disclosure of any records responsive to your request is in the public interest, consistent with the application of 22 C.F.R. § 171.17.

For further communications, please note our contact information at the bottom of this page. You may also refer to our website for general information and guidelines. We can provide faster service if you include your request case number 201000711 in your communications with us.

We are pleased to be of service to you.

Sincerely,

Patrick D. Scholl
Division Chief
Requester Liaison Division

# EXHIBIT

# 16

Central Intelligence Agency



Washington, D.C. 20505

25 February 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA  90017

Reference:  F-2010-00687

Dear Ms. Pasquarella:

        This is a final response to your 29 January 2009 [sic] Freedom of Information Act (FOIA) request, on behalf of your clients Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman, received in the office of the Information and Privacy Coordinator on 17 February 2010, for records pertaining to:

  1.  Mr. Naji Jawdat Hamdan;
  2.  Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan);
  3.  Mc. Jehad Suliman; and
  4.  Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace).

We have assigned your request the reference number above.  Please use this number when corresponding with us so that we can identify it easily.  Items 1-3 falls under the purview of the Privacy Act and will be addressed via separate correspondence under P-2010-00382, P-2010-00383, and P-2010-00384, respectively.

        In accordance with section 3.6(a) of Executive Order 12958, as amended, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to Item 4 of your request.  The fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended.  Therefore, your request is denied pursuant to FOIA exemptions (b)(1) and (b)(3).  I have enclosed an explanation of these exemptions for your reference and retention.  As the CIA Information and Privacy Coordinator, I am the CIA official responsible for this determination.  You have the right to appeal this response to the Agency Release Panel, in my care, within 45 days from the date of this letter.  Please include the basis of your appeal.

                                        Sincerely,

                                        Delores M. Nelson

                                        Delores M. Nelson
                                        Information and Privacy Coordinator

## Explanation of Exemptions

### Freedom of Information Act:

(b)(1) exempts from disclosure information currently and properly classified, pursuant to an Executive Order;

(b)(2) exempts from disclosure information, which pertains solely to the internal personnel rules and practices of the Agency;

(b)(3) exempts from disclosure information that another federal statute protects, provided that the other federal statute either requires that the matters be withheld, or establishes particular criteria for withholding or refers to particular types of matters to be withheld. The (b)(3) statutes upon which the CIA relies include, but are not limited to, the CIA Act of 1949;

(b)(4) exempts from disclosure trade secrets and commercial or financial information that is obtained from a person and that is privileged or confidential;

(b)(5) exempts from disclosure inter-and intra-agency memoranda or letters that would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) exempts from disclosure information from personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy;

(b)(7) exempts from disclosure information compiled for law enforcement purposes to the extent that the production of the information (A) could reasonably be expected to interfere with enforcement proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source or, in the case of information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source ; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law; or (F) could reasonably be expected to endanger any individual's life or physical safety;

(b)(8) exempts from disclosure information contained in reports or related to examination, operating, or condition reports prepared by, or on behalf of, or for use of an agency responsible for regulating or supervising financial institutions; and

(b)(9) exempts from disclosure geological and geophysical information and data, including maps, concerning wells.

**January 2007**