# EXHIBIT 17

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

April 5, 2010

Delores M. Nelson
Agency Release Panel
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Re:   FOIA Appeal/ Case No. F-2010-00687

Dear Ms. Nelson or the Agency Release Panel:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of the CIA's denial of our FOIA request with respect to the request for records pertaining to Hapimotors.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the CIA "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

In a letter dated February 25, 2010, you denied our FOIA request, stating that "the CIA can neither confirm nor deny the existence or nonexistence of records responsive to Item 4 [Hapimotors] of your request. The fact of the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended." CIA Letter (attached as Exhibit B). The letter claims that FOIA exemptions 1 and 3, see 5 U.S.C. § 552(b)(1) and (3), justify the inability of the agency to confirm whether responsive records exist, but it fails to provide any explanation specifically tailored to the requested information as to why these exemptions apply. Id.

The CIA has failed to comply with its obligations under FOIA to search for and produce records responsive to our request regarding Hapimotors for a few reasons. First, regardless of whether or not it can confirm or deny the existence of responsive records, it is first obligated to "make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dept. of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Indeed, an agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." Weisberg v. Department of Justice, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Here, however, the CIA provides no indication that it has searched for responsive records at all.

**ACLU FOUNDATION**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Second, the agency's claim that it can neither confirm nor deny the existence of responsive records, known as a *Glomar* response, is insufficiently detailed as to be sufficient under the requirements of FOIA. *See Phillippi v. C.I.A.*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (request for records related to the CIA's connection to the activities of a ship named the *Hughes Glomar Explorer*). Where an agency makes a *Glomar* response, it must "explain[] in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Id.* (adapting the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (1973) to situations where an agency asserts that the mere fact of whether responsive documents exist is exempt under FOIA from disclosure). *Cf. Hunt v. C.I.A.*, 981 F.2d 1116, 1118 (9th Cir. 1992) (finding CIA affidavits were sufficiently detailed to justify its *Glomar* response under FOIA Exemption 3). Indeed, in recent FOIA litigation against the N.S.A. challenging the agency's *Glomar* response, the Second Circuit reaffirmed the *Phillippi* Court's finding, stating that the "agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption" through the submission of "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotations omitted).

Here, the CIA has provided no such detailed explanation as to why the existence of the requested information (information about Hapimotors) is exempt. To the contrary, the letter makes only the conclusory statement that "the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure" without explaining the basis for its claim in any detail whatsoever. *See* Exh. B (CIA Letter).

For the abovementioned reasons, we hereby request that the CIA overturn its decision to deny our request with respect to the records pertaining to Hapimotors and that it process our request within the requirements of FOIA, including providing us a detailed explanation tailored to our specific request for the agency's *Glomar* response.

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

113

Central Intelligence Agency



Washington, D.C. 20505

23 April 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA  90017

Reference:  F-2010-00687

Dear Ms. Pasquarella:

We received your 5 April 2010 letter on 13 April 2010 appealing our 25 February 2010 final response to your Freedom of Information Act (FOIA) request for **"any records…from 1 January 1998 to the present…relating to….Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace)."** Specifically, you appealed our determination that we can neither confirm nor deny the existence or nonexistence of records responsive to your request on the basis of FOIA exemptions (b)(1) and (b)(3).

Your appeal has been accepted and arrangements will be made for its consideration by the appropriate members of the Agency Release Panel.  You will be advised of the determinations made.

In order to afford requesters the most equitable treatment possible, we have adopted the policy of handling appeals on a first-received, first-out basis.  Despite our best efforts, the large number of appeals that CIA receives has created unavoidable processing delays making it unlikely that we can respond within 20 working days.  In view of this, some delay in our reply must be expected, but every reasonable effort will be made to respond as soon as possible.

Sincerely,

Delores M. Nelson

Delores M. Nelson
Information and Privacy Coordinator

114

# EXHIBIT 18

Central Intelligence Agency



Washington, D.C. 20505

23 April 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA  90017

Reference:  F-2010-00687

Dear Ms. Pasquarella:

We received your 5 April 2010 letter on 13 April 2010 appealing our 25 February 2010 final response to your Freedom of Information Act (FOIA) request for **"any records...from 1 January 1998 to the present...relating to....Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace)."** Specifically, you appealed our determination that we can neither confirm nor deny the existence or nonexistence of records responsive to your request on the basis of FOIA exemptions (b)(1) and (b)(3).

Your appeal has been accepted and arrangements will be made for its consideration by the appropriate members of the Agency Release Panel.  You will be advised of the determinations made.

In order to afford requesters the most equitable treatment possible, we have adopted the policy of handling appeals on a first-received, first-out basis.  Despite our best efforts, the large number of appeals that CIA receives has created unavoidable processing delays making it unlikely that we can respond within 20 working days.  In view of this, some delay in our reply must be expected, but every reasonable effort will be made to respond as soon as possible.

Sincerely,

Delores M. Nelson

Delores M. Nelson
Information and Privacy Coordinator

EXHIBIT
19

Central Intelligence Agency



Washington, D.C. 20505

April 27, 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

Reference: P-2010-00383

Dear Ms. Pasquarella:

On 29 March 2010 we received your facsimile providing additional information pertaining to your client Hossam Hemdan's Privacy Act request referenced above.

Since you have provided the necessary information, we have accepted Mr. Hemdan's request. It will be processed in accordance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, and the Privacy Act of 1974, 5 U.S.C. § 552a. Unless you object, we will search for CIA-originated records existing through the date of this acceptance letter. We will not charge fees.

The large number of FOIA requests CIA receives has created unavoidable processing delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you tell us otherwise.

Sincerely,

Delores M. Nelson

Delores M. Nelson
Information and Privacy Coordinator

116

Central Intelligence Agency



Washington, D.C. 20505

May 6, 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

Reference:  P-2010-00628 (formerly P-2010-00382)

Dear Ms. Pasquarella:

On 27 April 2010 we received your 21 April 2010 letter providing additional information pertaining to your client Naji J. Hamdan's Privacy Act request referenced above.

Since you have provided the necessary information, we have accepted Mr. Hamdan's request. It will be processed in accordance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended, and the Privacy Act of 1974, 5 U.S.C. § 552a. Unless you object, we will search for CIA-originated records existing through the date of this acceptance letter. We will not charge fees.

The large number of FOIA requests CIA receives has created unavoidable processing delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you tell us otherwise.

Sincerely,

Delores M. Nelson

Delores M. Nelson
Information and Privacy Coordinator

# EXHIBIT
# 20

Central Intelligence Agency



Washington, D.C. 20505

June 28, 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

Reference: P-2010-00628

Dear Ms. Pasquarella:

This is a final response to your 29 January 2009 request for information pertaining to your client Naji J. Hamdan. We processed your request under the Freedom of Information Act and the Privacy Act.

We conducted a search for CIA-originated responsive records that might reflect an open or otherwise acknowledged Agency affiliation existing through 6 May 2010, the date we accepted your request. We were unable to locate any such information or records.

With respect to responsive records that would reveal a classified connection to the CIA, in accordance with section 3.6(a) of Executive Order 13526, as amended, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request. The fact of the existence or nonexistence of requested records is currently and properly classified and relates to CIA intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended. Therefore, you may consider this portion of the response a denial of your request pursuant to FOIA exemptions (b)(1) and (b)(3), and PA exemptions (j)(1) and (k)(1). I have enclosed an explanation of these exemptions for your reference and retention.

You have the right to appeal this response within 45 days of the date of this letter. You may address your appeal to the Agency Release Panel, in my care. Please explain the basis of your appeal.

We appreciate your patience while we were processing this request.

Sincerely,

Delores M. Nelson
Information and Privacy Coordinator

Enclosure

Central Intelligence Agency



Washington, D.C. 20505

June 28, 2010

Jennie Pasquarella, Esq.
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA  90017

Reference: P-2010-00383

Dear Ms. Pasquarella:

This is a final response to your 29 January 2009 request for information pertaining to your client Hossam Hemdan.  We processed your request under the Freedom of Information Act and the Privacy Act.

We conducted a search for CIA-originated responsive records that might reflect an open or otherwise acknowledged Agency affiliation existing through 27 April 2010, the date we accepted your request.  We were unable to locate any such information or records.

With respect to responsive records that would reveal a classified connection to the CIA, in accordance with section 3.6(a) of Executive Order 13526, as amended, the CIA can neither confirm nor deny the existence or nonexistence of records responsive to your request.  The fact of the existence or nonexistence of requested records is currently and properly classified and relates to CIA intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended.  Therefore, you may consider this portion of the response a denial of your request pursuant to FOIA exemptions (b)(1) and (b)(3), and PA exemptions (j)(1) and (k)(1).  I have enclosed an explanation of these exemptions for your reference and retention.

You have the right to appeal this response within 45 days of the date of this letter.  You may address your appeal to the Agency Release Panel, in my care.  Please explain the basis of your appeal.

We appreciate your patience while we were processing this request.

Sincerely,

Delores M. Nelson
Information and Privacy Coordinator

Enclosure

119

## Exemptions Under the Privacy Act

(d)(5) exempts from disclosure information compiled in reasonable anticipation of a civil action or proceeding;

(j)(1) exempts from disclosure certain information maintained by the Central Intelligence Agency;

(j)(2) exempts from disclosure certain information maintained by law enforcement agencies;

(k)(1) exempts from disclosure information properly classified, pursuant to an Executive Order;

(k)(2) exempts from disclosure material compiled for criminal investigative law enforcement purposes, by nonprincipal function criminal law enforcement entities and material compiled for other investigative law enforcement purposes, by any agency;

(k)(3) exempts from disclosure information pertaining to the protective services afforded the President of the United States and others;

(k)(4) exempts from disclosure information that statutes require to be maintained and used solely as statistical records;

(k)(5) exempts from disclosure  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for federal civilian employment, or access to classified information, but only to the extent the disclosure  of which would reveal the identity of a confidential source who furnished information after the government's express promise to keep that source's identity confidential;

(k)(6) exempts from disclosure testing or examination material used solely to determine individual qualifications for appointment or promotion in the Federal service, the disclosure of which would compromise the objectivity or fairness of the testing or examination process; and

(k)(7) exempts from disclosure evaluation material the armed forces use to determine an individual's potential for promotion, but only if disclosure would reveal the identity of a source who furnished information after the government's express promise to keep that source's identity confidential.

[Central Intelligence Agency, 2007]

## Explanation of Exemptions
## Under the Freedom of Information Act

(b)(1) exempts from disclosure information currently and properly classified, pursuant to an Executive Order;

(b)(2) exempts from disclosure information, which pertains solely to the internal personnel rules and practices of the Agency;

(b)(3) exempts from disclosure information that another federal statute protects, provided that the other federal statute either requires that the matters be withheld, or establishes particular criteria for withholding or refers to particular types of matters to be withheld. The (b)(3) statutes upon which the CIA relies include, but are not limited to, the CIA Act of 1949;

(b)(4) exempts from disclosure trade secrets and commercial or financial information that is obtained from a person and that is privileged or confidential;

(b)(5) exempts from disclosure inter-and intra-agency memoranda or letters that would not be available by law to a party other than an agency in litigation with the agency;

(b)(6) exempts from disclosure information from personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy;

(b)(7) exempts from disclosure information compiled for law enforcement purposes to the extent that the production of the information (A) could reasonably be expected to interfere with enforcement proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source or, in the case of information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source ; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law; or (F) could reasonably be expected to endanger any individual's life or physical safety;

(b)(8) exempts from disclosure information contained in reports or related to examination, operating, or condition reports prepared by, or on behalf of, or for use of an agency responsible for regulating or supervising financial institutions; and

(b)(9) exempts from disclosure geological and geophysical information and data, including maps, concerning wells.

[Central Intelligence Agency, Jan 2007]

# EXHIBIT
# 21



LIBERTY | JUSTICE | EQUALITY

July 16, 2010

Agency Release Panel
c/o Dolores Nelson
Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

RE:   FOIA Appeal/ Request Nos. P-2010-00628 (formerly P-2010-00382) (Subject: Naji Hamdan) and P-2010-00383 (Subject: Hossam Hemdan)

Dear Agency Release Panel:

This is a consolidated appeal under the Freedom of Information Act (FOIA), 5 U.S.C. §552(a)(6), and the Privacy Act, 5 U.S.C. §552a of the above-referenced FOIA requests.

In your letters dated June 28, 2010, which you identify as a "final response" to our request for information about Naji Hamdan (P-2010-00628) and Hossam Hemdan (P-2010-00383), you stated that you conducted a search for records responsive to these requests in CIA originated records that are "open" or have an "acknowledged Agency Affiliation" and that you were unable to locate the requested information. CIA Letters (attached as Exhibit A). You also stated that "[w]ith respect to responsive records that reveal a classified connection to the CIA … the CIA can neither confirm nor deny the existence or nonexistence of requested records responsive to [the] request. *Id.* Your response identifies the exemptions you believe justify your failure to turn over potentially responsive records, however it fails to provide any explanation specifically tailored to the requested information as to why these exemptions apply. *Id.*

We hereby appeal the CIA's final response to our request relating to Naji Hamdan and Hossam Hemdan because it both fails to demonstrate that it has conducted an adequate search for the requested records, and because it has failed to specifically explain why the stated exemptions apply to the requested records.

<u>Failure to Conduct Adequate Search for Non-Classified Records</u>

While the CIA claims to have conducted a search for what appears to be non-classified information responsive to our request, it failed to provide requisite information about the nature of the search. Specifically, it failed to identify the specific files and/or databases in which it searched for responsive records, and what search terms or other search methods it used to locate those records. Nor did it provide a description of its system for record-keeping, including information about all of the files and/or databases contained therein and why the files it searched would be likely to contain the information we requested.

122



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Despite its alleged search for non-classified information, we do not believe that the CIA has met its obligation to "make a good faith effort to conduct a search for [our] requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, the agency should "denote which files were searched or by whom ... [apply] a systematic approach to document location, and ... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, the CIA failed to identify any of the files and/or databases in which it searched for our requested records and why those files and/or databases would most likely contain the records we requested, let alone describe its system for record-keeping and all of the files and/or databases contained therein. It also did not identify what method it used to conduct its search, *e.g.* whether it searched its files and/or databases using each of the search terms we provided in our request, or used some other "systematic approach to document location." *See Weisberg* at 371. CIA's failure to provide such "specific" information in its June 28 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, *id.*, demonstrates that its search was likely not complete.

As such, the CIA should be required to conduct a subsequent search for our requested records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search. Specifically, the CIA should identify the universe of files available for search and their general contents, each of those files it actually searched and their general contents, and the methodology it applied to its search (*e.g.*, what search terms it used in searching any electronic system of records).

<u>Failure to Conduct Adequate Search for Classified Records and/or Justify Exemptions</u>

The CIA also has failed to comply with its obligations under FOIA to search for records that it appears to claim are classified pursuant to four separate FOIA exemptions (FOIA exemptions (b)(1) and (b)(3) and PA exemptions (j)(1) and (k)(1)). The CIA's response is inadequate for several reasons. First, regardless of whether or not it can confirm or deny the existence of responsive records, as noted above, it is first obligated to "make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby* at 68; *Weisberg* at 1350-51. Here, however, the CIA provides no indication that it has searched for responsive records at all.



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster\*
Irving Lichtenstein, MD\*
Jarl Mohn
Laurie Ostrow\*
Stanley K. Sheinbaum
\*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg

Second, the CIA's claim that it can neither confirm nor deny the existence of responsive records, known as a *Glomar* response, is insufficiently detailed so as to be sufficient under the requirements of FOIA and the PA. *See Phillippi v. C.I.A.*, 546 F.2d 1009, 1013 (D.C. Cir. 1976). Where an agency makes a *Glomar* response, it must "explain[] in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Id.* (adapting the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (1973)) to situations where an agency asserts that the mere fact of whether responsive documents exist is exempt under FOIA from disclosure). *Cf. Hunt v. C.I.A.*, 981 F.2d 1116, 1118 (9th Cir. 1992) (finding CIA affidavits were sufficiently detailed to justify its *Glomar* response under FOIA Exemption 3). Indeed, in recent FOIA litigation challenging an agency's *Glomar* response, the Second Circuit reaffirmed the *Phillippi* Court's finding, stating that the "agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption" through the submission of "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotations omitted).

Here, the CIA has provided no such detailed explanation as to why the existence of the requested information (information about two individuals) is exempt. To the contrary, the CIA's June 28 letter makes the conclusory statement "the existence or nonexistence of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure" without identifying *any* basis for this claim.

For the abovementioned reasons, we hereby request that the CIA conduct a thorough search for our requested records in the manner set forth above, including providing us a detailed explanation for why any records are being withheld on grounds of a valid FOIA or PA exemption.

We look forward to your timely response to this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

1313 WEST EIGHTH STREET   LOS ANGELES CA  90017  t 213.977.9500  f 213.977.5299  ACLU-SC.ORG

124

# EXHIBIT
# 22



**DEFENSE INTELLIGENCE AGENCY**
WASHINGTON, D.C. 20340-5100



U-4,500-10/DAN-1A (FOIA)

FEB 1 8 2010

Ms. Jennie Pasquarella
ACLU of Southern California
1313 W. English Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

We have received your Freedom of Information Act request for information concerning the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan, as well as information pertaining to Mr. Hossam Hamdan and associate Jehad Suliman. Your request received on, February 1, 2010 has been assigned case number 0139-2010. Please use this number in all future correspondence with us about this matter.

I note that you requested expedited processing of your request. Please be advised that we have reviewed your stated reasons that the processing of your request should be expedited. Based on this review, we have determined that your request for expedited processing must be denied since you have not demonstrated a "compelling need" for this information pursuant to Section C1.5.4.3 of Department of Defense FOIA Regulation 5400.7-R. This regulation is available at the following website: www.dia.mil/Foia/readingrm.html. To qualify for expedited processing, requesters must demonstrate that:

> the failure to obtain the records will reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

> the information is urgently needed (such as a breaking news story of general public interest) by an individual primarily engaged in disseminating information in order to inform the public concerning Federal Government activity;

> the failure to obtain the records will result in an imminent loss of substantial due process rights. See DOD 5400.7-R §§ C1.5.4.3.1 – C1.5.4.3.4.

I regret that there is currently a substantial delay in processing requests and it impossible for us to forecast when your case will be completed. Your request will be processed in the order in which it was received. We solicit your patience and understanding and assure you that we will process your request as soon as possible. If you have any questions, please contact the DIA FOIA Requester Service Center at 301-394-5587.

You are advised that a requester may appeal, within 60 days, this determination.  Should you wish to exercise this right, you may do so by referring to the case number assigned to this request and addressing your appeal to:

Defense Intelligence Agency
ATTN: DAN-1A (FOIA)
Washington, D.C.  20340-5100

Sincerely,

Alesia Y. Williams
Chief, Freedom of Information Act Staff

# EXHIBIT
# 23



LIBERTY | JUSTICE | EQUALITY

April 19, 2010

Department of Defense
Defense Intelligence Agency
AATN: DAN-1A (FOIA)
Washington, D.C. 20340-5100

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Deputy Executive Director**
James Gilliam

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

Re:   Case Number 0139-2010
      Freedom of Information Act Appeal

To Whom It May Concern:

This is a consolidated appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), the Privacy Act, 5 U.S.C. § 552a, and Department of Defense ("DOD") regulations, DOD 5400.7-R, of the Defense Intelligence Agency's ("DIA") decision to deny our request for expeditious processing and failure to timely respond to our request.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the DIA "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A). We also sought expedited processing of our request pursuant to 5 U.S.C. §552(a)(6)(E).

On February 18, 2010, the DIA denied our request for expedited processing pursuant DOD regulation 5400.7-R. DIA's response further stated that it had received our request on February 1, 2010, that there "is currently a substantial delay in processing requests" and that our request "will be processed in the order in which it was received." On April 15 we contacted the DOD's FOIA office to inquire about the status of our requested records. We spoke to Crystal in the FOIA office who stated that our request was "awaiting tasking for search," which she explained means that "no search has been conducted" in response to our request. She could not tell us how long our request would remain in this "limbo" status. On April 19, 2010 we spoke to Donny at the customer service desk of the DOD FOIA office. He informed us that there were 1,561 requests ahead of us in the queue that would be processed before ours. He estimated that it would take "at least one year" for the agency to process our request at the current rate of processing. He also informed us that while our request was filed in early 2010, the agency was only now processing requests that had been filed in 2002-2004.

## Expedited Processing

In DIA' February 18, 2010 letter, it denied our request for expeditious processing on the grounds that we "had not demonstrated a 'compelling need' for this information pursuant to Section C1.5.4.3 of the Department of Defense FOIA Regulation 5400.7-R." DIA Letter (attached as Exhibit B). We disagree with that assessment and ask that it be overruled.

The DIA's February 18 letter cites three separate bases on which a requestor can demonstrate a "compelling need" for the requested records and therefore qualify for expedited processing under the DOD regulations. A requestor need only establish one of those bases to be entitled to expedited processing. As we have already demonstrated in our request and reiterate here, we have a compelling need for the requested information under at least two of the bases set forth in the DOD regulations: DOD 5400.7-R, §C1.5.4.3.2 and §C1.5.4.3.4.

First, we have established that we are entitled to expedited processing on the ground that "the information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." DOD 5400.7-R §C1.5.4.3.2. *See also* 5 U.S.C. § 552(a)(6)(E)(v)(II). An individual is "primarily engaged in disseminating information in order to inform the public" if they are a member of the news media, "their primary activity involves publishing or otherwise disseminating information to the public," or their "primary activity involves publishing or otherwise disseminating information to the public. *Id.* The information is urgently needed if "[t]he information has a particular value that will be lost if not disseminated quickly," such as a "breaking news story of general public interest." *Id.* at C1.5.4.3.2.1

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute and the regulations. In *American Civil Liberties Union v. Dep't of Justice*, 321 F.Supp. 2d 24, 30 n.5 (D.D.C. 2004), the district court found that a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information" for the purposes of expedited processing. This is precisely the work of the ACLU. To restate our request,

> [d]issemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which the ACLU/SC disseminates information to the public on numerous issues. See www.aclu-sc.org/news_stories.



LIBERTY | JUSTICE | EQUALITY

The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Ex. A (FOIA Request) at 10. Indeed, information dissemination to the public is so central to the work of the ACLU that our office, the ACLU of Southern California, has a Communications Department and three full time staff members and outside consultants devoted to that task.

Further, the information is urgently needed for the reasons already discussed in our request. More specifically, the information involves a "breaking news story of general public interest." As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times. *See Attorneys Say He Was Tortured, Forced to Confess*, CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen*, THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, last month a leading national magazine published a feature-length article about Mr. Hamdan. See Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010.

The information sought through our request will answer many of the unresolved questions about why Mr. Hamdan was detained in the United Arab Emirates and to what extent the U.S. government was involved. This information has diminishing value to the public and the media who seek immediate answers to these questions and to hold the government accountable for its treatment of Mr. Hamdan and other individuals like him, who have been detained by foreign governments at the request of the United States.

The requested information clearly concerns actions of the Federal Government, as the entire purpose of this FOIA request is to understand exactly what role various components of the Federal Government played in Mr. Hamdan's ordeal.

Second, our request is entitled to expedited processing under DOD 5400.7-R §C1.5.4.3.4, on the ground that the request concerns an "imminent loss of substantial due process rights and humanitarian need." "Humanitarian need means that disclosing the information will promote the welfare and interests of mankind." Id. As set forth in our request, we seek information about the federal government's surveillance, monitoring, questioning and investigation of Naji Jawdat Hamdan, as well as Mr. Hamdan's brother, Hossam Hemdan, and his business associate, Jehad



LIBERTY | JUSTICE | EQUALITY

Suliman because of their relationship to Mr. Hamdan. The request concerns "imminent loss of substantial due process rights" because we believe each of these individuals have had, and continue to have, their due process rights curtailed by the government's activities and they have a right to understand better the basis for such governmental activities so that they can oppose and seek to enjoin those activities in the appropriate forum.

For example, Mr. Hamdan has reason to believe that the federal government was involved in his overseas detention and torture. As set forth in our request, Mr. Hamdan reported at the time of his detention in the U.A.E. that "at least one U.S. official was present for at least one torture and interrogation session." Ex. A (FOIA Request) at 6. Only upon obtaining records to further establish this belief can he exercise his due process right to seek to enjoin the government from engaging in such activities in the future, as well as to seek restitution for his suffering through this ordeal. There also is a clear "humanitarian need" for disclosing information related to Mr. Hamdan's unlawful detention and torture. Exposing such government practices, including those that condone torture, surely "promotes the welfare and interests of mankind," as the public can then seek to stop such unlawful practices from continuing. As we have reason to believe such practices are still continuing, see, e.g., Barack Obama to Allow Anti-terror Rendition to Continue, U.K. Telegraph, February 1, 2009, the need to expose such practices implicates an "*imminent* loss of substantial due process rights and humanitarian need." DOD 5400.7-R §C1.5.4.3.4 (Emphasis added).

Likewise, both Mr. Hemdan and Mr. Suliman have been the subject of what appears to be improper surveillance, monitoring, questioning and investigation by the federal government. Such improper activity is ongoing. As set forth in our request, Mr. Hemdan "is routinely pulled into secondary inspection by federal authorities for questioning, including extensive questioning about his brother, Naji Hamdan," and also has "trouble receiving his mail at his home and has reason to believe that the FBI intercepted his mail." Mr. Suliman also has been subjected to obtrusive FBI questioning, and recently was the subject of an investigation into MediCal fraud in which approximately 12 law enforcement agents seized documents unrelated to MediCal, but pertaining to Naji Hamdan and Hapimotors, the business he operated with Mr. Hamdan. Thus, our request is entitled to expedited processing of records related to Mr. Hemdan and Mr. Suliman (as well as his business Hapimotors) because without immediate access to the requested records the ongoing treatment they have been facing by the government will continue to subject them to "imminent loss of substantial due process rights." There also is a "humanitarian need" for this information to help expose the improper practices so that they are not perpetrated against others.

Pursuant to DOD 5700.7-R §§C1.5.4.3.3 and C1.5.4.3.4, based on the above facts, we hereby certify as true and correct to the best of our knowledge that we have a compelling need for the requested documents and that our request implicates an imminent loss of substantial due process rights and humanitarian need. For these reasons, the DIA's decision to deny our request for expedited processing should be overturned and our request should be processed in accordance with DIA's expedited processing procedures.



LIBERTY | JUSTICE | EQUALITY

<u>Untimely Disclosure of Records</u>

　　　　Agencies are required, within 20 days of receipt of even a non-expedited FOIA request, to process the request and inform the requesting party of their determination to either comply or not comply, absent "unusual" or "exceptional" circumstances. See 5 U.S.C. § 552(a)(6)(A), (B), (C). With respect to production, FOIA provides that "[u]pon determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." See 5 U.S.C. § 552(a)(6)(C)(i). Here, the DIA received our request two and a half months ago. It then waited two weeks to summarily deny our request for expedited processing, without providing and specific reasons for the denial. Now, another two months later, we have been informed by the DIA that we have 1,561 requests ahead of us in the queue and that it will take at least a year to respond to our request if the DIA continues to process requests at the current rate. Such a prolonged response time surely violates the statutory requirement that the agency make our records "promptly available" to us.

　　　　We therefore file this FOIA appeal.[1]   We believe that all of the requested records are subject to disclosure, and we request their expedited processing and release. If any records are withheld, please state the exemption.

　　　　We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq /JuP
Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

---

[1]Under these circumstances, while we are not obliged to file an administrative appeal, we do so in attempt to avoid potential litigation to obtain the requested records. *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.")

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA
FOUNDATION

LIBERTY | JUSTICE | EQUALITY

# EXHIBIT

# 24



**DEFENSE INTELLIGENCE AGENCY**
WASHINGTON, D.C. 20340-5100



U-10-4,500/DAN-1A (FOIA)

APR 2 8 2010

Ms. Jennie Pasquarella
American Civil Liberties Union
1313 West Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This is an interim response to your April 19, 2010, Freedom of Information Act
Appeal request, appealing the denial of expedited processing and failure to timely
respond to the original request in case number 0139-2010. We received your Appeal
request on April 27, 2010 and assigned it case number APP-0035-2010. Please use this
number in all future correspondence with us about this matter.

We will be unable to respond to your request within the FOIA's 20 day statutory time
period due to unusual circumstances. These unusual circumstances are: (a) the need to
search for and collect records from a facility geographically separated from this office;
(b) the potential volume of records responsive to your request; and (c) the need for
consultation with one or more other agencies which have substantial interest in either the
determination or the subject matter of the records. For these reasons, your request has
been placed in our queue and will be worked in the order the request was received. Our
current administrative workload is in excess of 244 requests.

We regret that there is currently a substantial delay in processing requests and solicit
your patience and understanding. We assure you that we will process your request as
soon as possible. If you have any questions, please contact the DIA FOIA Requester
Service Center at 301-394-5587.

Sincerely,

Alesia Y. Williams
Chief, Freedom of Information Act Staff

# EXHIBIT
# 25



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case:  60766
5 February 2010

Jennie Pasquarella, Esquire
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This responds to your Freedom of Information Act (FOIA) request submitted via facsimile on 29 January 2010, which was received by this office on 1 February 2010, for "any records from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and any of their sub-agencies or divisions relating to or concerning:  (1) Mr. Naji Jawdat Hamdan; (2) Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan); (3) Mr. Jehad Suliman; and (4) Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace)."  Your letter has been assigned FOIA Case Number 60766.  Please refer to this case number when contacting us about your request.  For purposes of this request and based on the information you provided in your letter, you are considered an "all other" requester.  There are no assessable fees for this request; therefore, we did not address your request for a fee waiver.  Also, since this is a final response letter within ten calendar days, we are not addressing your request for expedited processing.  Your request has been processed under the provisions of the FOIA.

You may be aware that one of the NSA/CSS missions is to collect, process, and disseminate communications or signals intelligence information for intelligence and counter intelligence purposes and to support military operations.  NSA collects information on unspecified persons and entities to prevent and protect against terrorist attacks, the proliferation of weapons of mass destruction, intelligence activities directed against the United States, international criminal drug activities, and other hostile activities directed against the United States.  The roles and responsibilities that NSA exercises are delineated in Executive Order, 12333, as amended.

FOIA Case:  60766

The classified nature of the National Security Agency's efforts prevents us from either confirming or denying the existence of intelligence records responsive to your request, or whether any specific technique or method is employed in those efforts.  The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended.  Thus, your request is denied pursuant to the first exemption of the FOIA, which provides that the FOIA does not apply to matters that are specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign relations and are properly classified pursuant to such Executive Order.

Moreover, the third exemption of the FOIA provides for the withholding of information specifically protected from disclosure by statute.  Thus, your request is also denied because the fact of the existence or non-existence of the information is exempted from disclosure pursuant to the third exemption.  The specific statutes applicable in this case are Title 18 U.S. Code 798; Title 50 U.S. Code 403-1(i); and Section 6, Public Law 86-36 (50 U.S. Code 402 note).

The Initial Denial Authority for NSA information is the Deputy Associate Director for Policy and Records, Diane M. Janosek.  As your request is being denied, you are hereby advised of this Agency's appeal procedures.  Any person denied access to information may file an appeal to the NSA/CSS Freedom of Information Act Appeal Authority.  The appeal must be postmarked no later than 60 calendar days of the date of the initial denial letter.  The appeal shall be in writing addressed to the NSA/CSS FOIA Appeal Authority (DJP4), National Security Agency, 9800 Savage Road STE 6248, Fort George G. Meade, MD  20755-6248.  The appeal shall reference the adverse determination and shall contain, in sufficient detail and particularity, the grounds upon which the requester believes that the determination is unwarranted.  The NSA/CSS FOIA Appeal Authority will endeavor to respond to the appeal within 20 working days after receipt, absent any unusual circumstances.

Sincerely,

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

134

# EXHIBIT
# 26



LIBERTY ‖ JUSTICE | EQUALITY

April 5, 2010

NSA/CSS FOIA Appeal Authority (DJP4)
National Security Agency
9800 Savage Road STE 6248
Fort George G. Meade, MD 20755-6248

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

       **Re:**    **FOIA Appeal/ Case No. 60766**

To Whom It May Concern:

      This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of the NSA's denial of our FOIA request.

      On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the NSA "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

      In a letter dated February 5, 2010, the NSA FOIA/PA Office denied our FOIA request, stating that "[t]he classified nature of the National Security Agency's efforts prevents us from either confirming or denying the existence of intelligence records responsive to your request, or whether any specific technique or method is employed in those efforts. The fact of the existence or non-existence of responsive records is a currently and properly classified matter in accordance with Executive Order 12958, as amended." NSA Letter (attached as Exhibit B). The letter claims that FOIA exemptions 1 and 3, *see* 5 U.S.C. § 552(b)(1) and (3), justify the inability of the agency to confirm whether responsive records exist, but it fails to provide any explanation specifically tailored to the requested information as to why these exemptions apply. *Id.*

      The NSA has failed to comply with its obligations under FOIA to search for and produce records responsive to our request for a few reasons. First, regardless of whether or not it can confirm or deny the existence of responsive records, it is first obligated to "make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Indeed, an agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Here, however, the NSA provides no indication that it has searched for responsive records at all.



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg

Second, the agency's claim that it can neither confirm nor deny the existence of responsive records, known as a *Glomar* response, is insufficiently detailed as to be sufficient under the requirements of FOIA. *See Phillippi v. C.I.A.*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (request for records related to the CIA's connection to the activities of a ship named the *Hughes Glomar Explorer*). Where an agency makes a *Glomar* response, it must "explain[] in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Id.* (adapting the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (1973) to situations where an agency asserts that the mere fact of whether responsive documents exist is exempt under FOIA from disclosure). *Cf. Hunt v. C.I.A.*, 981 F.2d 1116, 1118 (9th Cir. 1992) (finding CIA affidavits were sufficiently detailed to justify its *Glomar* response under FOIA Exemption 3). Indeed, in recent FOIA litigation against the N.S.A. challenging the agency's *Glomar* response, the Second Circuit reaffirmed the *Phillippi* Court's finding, stating that the "agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption" through the submission of "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotations omitted).

Here, the NSA has provided no such detailed explanation as to why the existence of the requested information (information about three individuals and one company) is exempt. To the contrary, the letter makes the generic claim that the information is exempt because of the classified nature of the National Security Agency's efforts in general, suggesting that it believes that no NSA information would ever be subject to disclosure under FOIA and further suggesting that the agency has neither searched for the records responsive to this request, nor specifically analyzed whether they can be disclosed. *See* Exh. B (NSA Letter) at 2 (stating "[t]he classified nature of the National Security Agency's efforts prevents us from either confirming or denying the existence of intelligence records.").

For the abovementioned reasons, we hereby request that the NSA overturn its decision to deny our request and that it process our request within the requirements of FOIA, including providing us a detailed explanation tailored to our specific request for the agency's *Glomar* response.

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq /JP
Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

# EXHIBIT
# 27



**INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
400 ARMY NAVY DRIVE
ARLINGTON, VA 22202-4704

Ref: 10-0158
February 4, 2010

OCCL

Ms. Jennie Pasquarella
Staff Attorney
ACLU of Southern California
1313 West Eight Street
Los Angeles, CA 90017

Dear Ms. Paquarella:

This is an interim response to your January 29, 2010, Freedom of Information Act (FOIA) request, submitted on behalf of the American Civil Liberties Union of Southern California (ACLU/SC), seeking disclosure of any records *"...relating to or concerning (1) Mr. Naji Jawdat Hamdan; (2) Mr. Mossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan; (3) Mr. Jehad Suliman; and (4) Hapimotors (a.k.a. Honda Acura Palace or HandAcura Palace)."* We received your request on February 2, 2010, and assigned it FOIA case number 10-0158.

You requested expedited processing on the basis of a "compelling need" for the records "because the request implicates a matter of urgent public concern: namely, the nature and extent of the federal government's surveillance and detention of American citizens in the name of national security." You state that the ACLU/SC is "primarily engaged in disseminating information" and that dissemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. You also contend that expedited processing is warranted because the information sought relates to "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

By requesting expedited processing you are asking that this Office place your request ahead of all other requests that were received before your request. Requests will be taken out of chronological order based on the date of receipt and given expedited treatment only when we determine that they involve: (1) circumstances in which the lack of such treatment could reasonably be expected to pose an imminent threat to the life or safety of an individual; (2) an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information; (3) the loss of substantial due process rights; or (4) humanitarian need. See 32 C.F.R. § 286.4(d)(3).

Under DoD regulations, compelling need is defined as information that is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity. An individual primarily engaged in disseminating information means a person whose primary activity involves publishing or otherwise disseminating information to the public. Representatives of the news media normally qualify as individuals primarily engaged in disseminating information. Other persons must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public. The ACLU/SC website states that your organization works in the courts, legislatures and communities to defend and preserve the individual rights and liberties guaranteed to every person by the Constitution and laws of the United States. After carefully considering your request, I find that the ACLU/SC is not publishing or disseminating information as its primary activity. Accordingly, the ACLU/SC does not qualify as a representative in the news media.

Requests for expedited processing are granted when the requester demonstrates a compelling need for the information and shows that the information has a particular value that would be lost if not processed on an expedited basis. See 32 C.F.R. § 286.4(d)(3)(ii). After careful consideration of your request, I find that you have not demonstrated that the information will lose its value if not processed on an expedited basis. In addition, I do not find that the information you have requested is the subject of a breaking news story as you contend that the topic of your request has already received broad and sustained media coverage. Therefore, your request for expedited processing is denied.

You also requested a limitation or waiver of search and review fees pursuant to 5 U.S.C. § 552(a)(4)(A) (ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by... a representative of the new media...") and 6 C.F.R. § 5.11(d)(1) (search fees shall not be charged to representatives of the news media"). You contend that the "ACLU/SC routinely gather information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public." As stated previously, I find that the ACLU/SC is not publishing, or disseminating information as its primary activity. Accordingly, your request that fees associated with the processing of this request be limited is denied.

I determined that you should be placed in the "other" fee category, which affords you two hours of search time and 100 pages of duplication free of charge. Subsequent processing will be assessed at the established DoD fee rates of: clerical search time--$20 per hour; professional search time--$44 per hour; executive search time--$75 per hour; computer search time $20.00 per hour clerical search and $40.00 hour executive search, and document reproduction at $0.15 per page.

With regard to your request for a waiver of all costs, decisions to waive or reduce fees are made on a case-by-case basis and cannot be made until a search for responsive records has been conducted and the volume and nature of any responsive records have been determined. A fee waiver is appropriate when "disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the request" 5 U.S.C. § 552(a)(4)(iii). I will make a decision on a fee waiver after a search for responsive documents is conducted and the volume and nature of the records is determined.

If you are not satisfied with this action, you may submit an administrative appeal to Mr. John R. Crane, Assistant Inspector General, Office of Communications and Congressional Liaison, Room 1021, 400 Army Navy Drive, Arlington, VA 22202-4704. Your appeal should be postmarked within 60 days of the date of this letter, should cite case number 10-0158, and should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Dave Henshall
Senior Advisor, Information
and Privacy

# EXHIBIT
# 28



**INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
400 ARMY NAVY DRIVE
ARLINGTON, VA 22202-4704

Ref: 10-0158
February 24, 2010

OCCL

Ms. Jennie Pasquarella
Staff Attorney
ACLU of Southern California
1313 West Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This is the final response to your Freedom of Information Act (FOIA) request dated January 29, 2010. You requested disclosure of any records *"...relating to or concerning (1) Mr. Naji Jawdat Hamdan; (2) Mr. Mossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan); (3) Mr. Jehad Suliman; and (4) Hapimotors (a.k.a. Honda Acura Palace or HandAcura Palace)."*

As you may know, this Office is responsible for handling all FOIA requests for records maintained by the Department of Defense, Office of Inspector General (DoD IG). Several components of the Department of Defense (DoD), including the military departments and the various separate agencies, operate their own FOIA offices to respond to requests for their respective agency records. The FOIA addresses for these agencies can be found on the Department of Justice Web site at: http://www.usdoj.gov/oip/foiacontacts.htm. Also, for your reference, the procedures followed by these components are provided in DoD Regulation 5400.7-R, and on the Internet at: http://www.defenselink.mil/pubs/foi/.

We searched our records for documents such as those described in your request. Despite a thorough search, we were unable to locate any records responsive to your request.

If you should deem this no record response to be a denial of your request, you may administratively appeal to Mr. John R. Crane, Assistant Inspector General, Office of Communications and Congressional Liaison, Suite 1021, 400 Army Navy Drive, Arlington, VA 22202-4704. Your appeal should be postmarked within 60 days of the date of this letter, should cite case number 10-0158, and should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Dave Henshall
Senior Advisor, Information
and Privacy

140

# EXHIBIT
# 29

# ACLU

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

FOUNDATION

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Deputy Executive Director**
James Gilliam

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

April 23, 2010

Mr. John Crane
Department of Defense
Assistant Inspector General
Office of Communications and Congressional Liaison
Suite 1021
400 Army Navy Drive
Arlington, VA 22202-4704

Re:   Case Number 10-0158
      Freedom of Information Act Appeal

Dear Mr. Crane:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. §552(a)(6), and the Privacy Act, 5 U.S.C. §552a, on the ground that the Department of Defense, Office of Inspector General ("DoD IG") failed to conduct an adequate search for the records identified in our FOIA request.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the DoD IG "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." A copy of the FOIA request is attached hereto as Exhibit A.

DoD IG responded to our request on February 24, 2010, and asserted that it "searched [its] records for documents such as those described in [our] request. Despite a thorough search, [it was] unable to locate any records responsive to [our] request." DoD IG did not provide any information regarding the nature of its search, including the specific files and/or databases in which it searched for records responsive to our request, and what search terms or other search methods it used to locate our requested records. Nor did it provide us a description of its system for record-keeping, including information about all of the files and/or databases contained therein and why the files it searched would be likely to contain the information we requested. A copy of DoD IG's February 24, 2010 letter is attached as Exhibit B.

Page 2
April 23, 2010

Despite its alleged "thorough search," we do not believe that DoD IG has met its obligation to "make a good faith effort to conduct a search for [our] requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, the agency should "denote which files were searched or by whom ... [apply] a systematic approach to document location, and ... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, DoD IG failed to identify any of the files and/or databases in which it searched for our requested records and why those files and/or databases would most likely contain the records we requested, let alone describe its system for record-keeping and all of the files and/or databases contained therein. It also did not identify what method it used to conduct its search, e.g. whether it searched its files and/or databases using each of the search terms we provided in our request, or used some other "systematic approach to document location." *See Weisberg* at 371. DoD IG's failure to provide such "specific" information in its February 24 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, id., demonstrates that its search was likely not complete. As such, DoD IG should be required to conduct a subsequent search for our requested records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search, including the information described above.

For the above-mentioned reasons, our appeal should be granted and DoD IG should conduct a more thorough search, identifying the universe of files available for search and their general contents, each of those files it actually searched and their general contents, and the methodology it applied to its search for our requested records (e.g., what search terms it used in searching any electronic system of records).

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC

Laboni Hoq /JLP

Laboni Hoq
Associate
Traber &

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA
FOUNDATION

LIBERTY | JUSTICE | EQUALITY

# EXHIBIT

# 30



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

**FEB 0 5** 2010

Ref: 10-F-0569

Ms. Jennie Pasquarella
Staff Attorney
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This is in response to your January 29, 2010, Freedom of Information Act (FOIA) and Privacy Act request on behalf of Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman (the "requesters"). I note that you have also directly submitted this request to the Department of Justice, the Federal Bureau of Investigation (FBI), INTERPOL, the Department of State, the Central Intelligence Agency (CIA), the Department of Homeland Security (DHS), the Defense Intelligence Agency (DIA), the Defense Security Service (DSS), the National Security Agency (NSA), the Department of Defense Office of the Inspector General and the Director of National Intelligence (DNI). We received your request on February 1, 2010, and assigned it FOIA case number 10-F-0569.

You are seeking records which were prepared, received, transmitted, collected and/or maintained on the three "requesters" and Hapimotors, and were created from January 1, 1998, to the present. In addition, you have requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 5 U.S.C. § 552(a)(6)(E)(v)(II); a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), as a representative of the news media, and a waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

You explain in your request that the "requesters" have been the subject of questioning, monitoring and surveillance by the FBI; that the requesters have had difficulty traveling and were subject to secondary inspections at airports and questioned both leaving and returning to the United States; that Mr. Hamdan was detained overseas, arrested, charged, tried before the Federal Supreme Court in the U.A.E., convicted and sentenced to time served. However, your request establishes no link or involvement of the Department of Defense (DoD) with the requesters, other than the fact that the DoD is a part of the Federal Government. It appears that you are seeking information that may have been shared with some component of the DoD. In that case, if records existed they potentially may be intelligence reports. As you have already directly submitted your request to DNI, CIA, NSA and DIA (all intelligence related organizations), and have provided no explanation or information to link the "requesters" with other components of the DoD, I am closing your request with no further action.

143

If you are not satisfied with this action, you may appeal to the appellate authority, the Director of Administration and Management, Office of the Secretary of Defense. To submit your appeal, you should write directly to the Defense Freedom of Information Policy Office, ATTN:  Mr. James Hogan, 1155 Defense Pentagon, Washington, DC 20301-1155.  Your appeal should be postmarked within 60 calendar days of the date of this letter, should cite to case number 10-F-0569, and should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Paul J. Jacobsmeyer
Chief

144

# EXHIBIT 31



**LIBERTY | JUSTICE | EQUALITY**

April 6, 2010

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

Defense Freedom of Information Policy Office
ATTN: Mr. James Hogan
1155 Defense Pentagon
Washington, D.C. 20301-1155

> Re:   Case Number 10-F-0569
>        Freedom of Information Act Appeal

Dear Sir or Madam:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a.  Your office denied our request without conducting any search for the requested records.  Because your response has failed to identify any valid basis to refuse to conduct a reasonable search for our requested records, your office's decision to close our request and "take no further action" should be overruled.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of Defense, Freedom of Information Office ("FIO") "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors.  The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." Further, requester Naji Jawdat Hamdan has identified that he believes that "at least one U.S. official was present for at least one torture and interrogation session" to which he was subject while he was detained in Abu Dhabi.  A copy of the FOIA request is attached here as Exhibit A.

On February 5, 2010 FIO denied our request based on your assertion that our "request establishes no link or involvement of the … DoD with the requesters, other than the fact that the DoD is a part of the Federal Government."  In addition, although FIO acknowledged that the records we are seeking "may have been shared with some component of the DoD," FIO further speculated that these records "potentially may be intelligence reports" that can be obtained from other departments and agencies to which we also have served FOIA requests (including DNI, CIA, NSA and DIA).  Based on these assessments you decided to "close" our request and "take no further action" on it.  A copy of your Febraury 5, 2010 letter is attached here as Exhibit B.  We disagree with your assessments, and that they provide a basis for you to refuse to at least conduct a reasonable search for our requested documents.

**ACLU** FOUNDATION

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

**LIBERTY | JUSTICE | EQUALITY**

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg

In order to meet its obligations under FOIA, an agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Here, FIO has done no search at all for the requested records, and thus falls woefully short of meeting its FOIA obligations. Further, FIO appears to be stating that the requesters must establish a "link or involvement" between the requester and the department before it will be obligated to conduct a reasonable search for documents. We disagree that the FOIA statute or its enabling regulations require the requesters to establish such a "link or involvement" before their request will be processed.

Nonetheless, we have laid ample foundation in our request for why FIO would have responsive records. As identified in our request, Naji Jawdat Hamdan has identified that he believes that "at least one U.S. official was present for at least one torture and interrogation session" to which he was subject while he was detained in Abu Dhabi. Mr. Hamdan does not know which agency of the federal government this individual was from. However, there is ample reason to believe that the individual present during Mr. Hamdan's interrogation and torture could have been an agent of the DoD because of the role that DoD agents have played in interrogations of terrorism suspects in overseas detention facilities. *See* Press Release, NYCLU, Defense Department Personnel Impersonated State Department Officials in Guantanamo (May 6, 2005), http://www.nyclu.org/node/495; Press Release, ACLU, U.S. Operatives Killed Detainees During Interrogations in Afghanistan and Iraq (Oct. 24, 2005), http://www.aclu.org/human-rights-national-security/us-operatives-killed-detainees-during-interrogations-afghanistan-and-("documents show that detainees died during or after interrogations by Navy Seals, Military Intelligence"); Lorna Benson, *Abu Ghraib Interrogator Tells His Story*, MINNESOTA PUBLIC RADIO, Oct. 11, 2004 (former military interrogator at Abu Ghraib reported that his superiors "wanted him to push detainees much harder to get information."); Tim Golden, et al., *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, N.Y. TIMES, May 20, 2005 (agents of DoD responsible for interrogation and abuse of detainees at Bagram detention facility); Samira Simone, *Abu Ghraib Head Finds Vindication in Newly Released Memos*, CNN, Apr. 22, 2009 (Abu Ghraib head punished over harsh interrogation tactics "maintained that she and her troops were following interrogation guidelines approved by top brass.").

FIO acknowledges that the records we are seeking "may have been shared with some component of the DoD," but provides no explanation for why your department cannot produce those records. For these reasons alone, FIO's denial of our request should be overruled, and it should conduct the required search for our requested records.

Further, FIO's response also provides no support for its assertion that the records we seek "may be intelligence reports" that originated in other departments or agencies

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

as opposed to other categories of responsive records that may be in the possession of FIO. Such mere speculation that the records we seek are limited to "intelligence reports" originating in another agency or department is not a basis to refuse to conduct a reasonable search for our requested records. *See Keys v. Dept. of Homeland Security*, 570 F. Supp. 2d 59, 67 (D.D.C. 2008) ("when an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request, even if it determines that the documents originated elsewhere.") (*quoting McGee v. C.I.A.*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). At the least, FIO should conduct a search applying the proposed search terms identified in our request to determine in the first instance whether any of the requested records are in the possession of your department. Upon locating those records, only then can FIO make valid determinations as to what categories of records they are, whether the records originated in one of the other departments or agencies on whom we served a similar FOIA request and whether those departments or agencies would be better suited to respond to our request. *Id.* at 67. However, even then FIO's obligation does not end. In the event FIO has made a valid determination that our request should be handled by another agency, FIO must demonstrate that the referral does not "significantly [] impair [our] ability to obtain the records or significantly [] increase the amount of time [we] must wait to obtain them." *Id.* (*quoting McGee* at 1110). Here, there is no evidence that FIO even communicated, much less coordinated, with the other departments or agencies to ensure a timely substantive response to our request. Indeed, to date, none of the departments and agencies you claim can provide us the requested records has provided us a substantive response to our request.

For the above-mentioned reasons, we request that FIO overrule its decision to close our request and take no further action on it, and that FIO timely conduct the necessary search and provide us a substantive response to our request.

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

# EXHIBIT
# 32



**OFFICE OF THE SECRETARY OF DEFENSE**
1950 DEFENSE PENTAGON
WASHINGTON, DC 20301-1950

ADMINISTRATION AND
MANAGEMENT

Ref: 10-A-0569

Ms. Jennie Pasquarella
Staff Attorney
American Civil Liberties Union
Of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

MAY 2 5 2010

Dear Ms. Pasquarella:

This responds to your April 6, 2010, Freedom of Information Act (FOIA) appeal. You appealed the failure of the Office of Freedom of Information (OFOI) to conduct a search for records relating to your January 29, 2009, FOIA request. Your FOIA request, which was submitted directly to eighteen federal departments and agencies, sought access to records which were prepared, received, transmitted, collected and/or maintained on three named individuals, Mr. Naji Jawdat Hamdan, Mr. Hossam Hemdan, Mr. Jehad Suliman, and on Hapimotors.

In your initial request, you explained that the named individuals had been the subject of questioning, monitoring and surveillance by the FBI; that the individuals have had difficulty traveling and were subject to secondary inspections at airports and questioned both leaving and returning to the United States; and that Mr. Hamdan was detained overseas, arrested, charged, tried before the Federal Supreme Court in the U.A.E., convicted and sentenced to time served. By letter dated February 5, 2010, OFOI advised you that they were closing your request because you did not provide any information that would lead OFOI to believe that the Office of the Secretary of Defense (OSD) or the Joint Staff (JS) would maintain records responsive to your request and because you had already submitted your request to various intelligence agencies, the agencies which OFOI believed would most likely maintain responsive records, if they exist.

I have reviewed the case file at the appellate level and I have determined that OFOI was not required to conduct a random search for documents when they had no reason to believe that the OSD or the JS would maintain such documents. In your appeal, you contend that OFOI did not meet its obligations under the FOIA because OFOI did not demonstrate that it conducted a "search reasonably calculated to uncover all relevant documents." The reasonableness of an agency's search can depend on whether the agency properly determined where responsive records would likely be found. In this case, OFOI

determined that if responsive records existed, they would more than likely be maintained by the various intelligence agencies to which you already sent your request. OFOI had no obligation to coordinate your request with those agencies because those entities maintain their own FOIA programs and they will respond to you directly.

Moreover, under the FOIA, a request must reasonably describe the records sought. A record is reasonably described if the description enables a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort. The FOIA is not intended to compel government agencies to become full-time investigators on behalf of requesters when a reasonable description is not provided. Since your request does not reasonably describe records that would be maintained within the OSD or JS, I am affirming OFOI's initial decision.

You have the right to judicial review of this decision in a United States District Court, in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

William E. Brazis
Deputy Director

2

149

# EXHIBIT
# 33

**U.S. Department of Homeland Security**
Washington, DC 20528



## Homeland Security

March 5, 2010

Ms. Jennie Pasquarella
American Civil Liberties Union of Southern California
1313 West Eight Street
Los Angeles, CA 90017

Re: **DHS/OS/PRIV 10-0364**

Dear Ms. Pasquarella:

This acknowledges receipt of your January 29, 2010 Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS). Your request was received on February 3, 2010, seeking records from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and any of their sub-agencies or divisions relating to or concerning the following:

    (1) Mr. Naji Jawdat Hamdan;

    (2) Mr. Hossam Jawdat Hemdan (a.k.a Sammy Hemdan or Sam Hemdan)

    (3) Mr. Jehad Suliman; and

    (4) Hapimotors (a.k.a Honda Acura Palace or HondaAcura Palace). The business is currently located at 1848 East 55th St, Los Angeles, CA 90058 and maintains a website at www.hapimotors.com

Additionally, you requested any records relating to or concerning any of the requestors or Hapimotors that may be cross-listed, cross-referenced or contained in the main file pertaining to another individual or entity. The request also includes, but not limited to the entirety of any document that includes the name of any of the requestors mentioned in your letter.

First, please be advised that DHS was created January 24, 2003; therefore, no DHS records exist prior to that date. Records created prior to the establishment of DHS by any of the organizational components of DHS would be maintained by those components.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As the subject matter of your request is of substantial interest to two or more components of DHS, we will need to consult with those entities before we issue a final response.

Therefore, DHS will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B).

As it relates to your request for expedited treatment, your request is denied. Clearly, the lack of expedited treatment in this case will not pose an imminent threat to the life or physical safety of an individual. While you may be primarily engaged in the disseminating of information, you have not detailed with specificity why you feel there is an urgency to inform the public about the nature and extent of the Federal government's surveillance and detention of American citizens in the name of national security. This urgency would need to exceed the public's right to know about government activity generally. You did not offer any supporting evidence of an interest of the public that is any greater than the public's general interest in the Federal government's surveillance and detention activities.

As it relates to your fee waiver request, this portion of the request is also denied. The DHS FOIA Regulations, 6 CFR § 5.11(k)(2), set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met: (1) Whether the subject of the requested records concerns "the operations or activities of the government;" (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons; (4) Whether the contribution to public understanding of government operations or activities will be "significant;" (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under the FOIA of showing that the fee waiver requirements have been met. Based on my review of your January 29, 2010 request and for the reasons stated herein, I have determined that your fee waiver request is deficient because it did not adequately address factors 2-4 above. Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

Provisions of the Act allow us to recover part of the cost of complying with your request. We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors. As a non-commercial requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00, $7.00, $10.25) of the searcher. You agreed to pay assessable fees up to $100 and will be contacted before any additional fees are accrued.

You have the right to appeal the determination to deny expedited processing of your request. Should you wish to do so, you must send your appeal within 60 days of the date of this letter to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in Subpart A, Section 5.9, of the DHS Regulations. Your envelope and letter should be marked "Freedom of Information Act Appeal." The implementing Department regulations establish the criteria under which the FOIA is administered. Copies of the FOIA and regulations are available at http://www.dhs.gov/xlibrary/assets/FOIA_FedReg_Notice.pdf; Internet, accessed March 5, 2010.

If you need to contact this office again concerning your request, please refer to **DHS/OS/PRIV 10-0364**. This office can be reached at 866-431-0486.

Sincerely,

Sabrina Burroughs
Disclosure & FOIA Operations Manager

EXHIBIT
34

AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA

ACLU
FOUNDATION

LIBERTY | JUSTICE | EQUALITY

April 23, 2010

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Deputy Executive Director
James Gilliam

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

Associate General Counsel (General Law)
Department of Homeland Security
FOIA Appeals
Washington, D.C. 20528

RE:    FOIA Appeal/ FOIA Case No. DHS/OS/PRIV 10-0364

To Whom It May Concern:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), of the Department of Homeland Security (DHS) Privacy Office's decision to deny our request for expeditious processing and a fee waiver.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of Homeland Security "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

Expedited Processing

In a letter dated March 5, 2010, DHS denied our request for expedited processing without providing any explanation for its decision. DHS Letter (attached as Exhibit B).

The FOIA states that a requester may be eligible for expedited processing where "the person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i). A requester demonstrates a compelling need where the information is urgently needed to inform the public about an actual or alleged federal government activity, if the request is made by a person primarily engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E)(v)(II).

As we have already demonstrated in our request, we have a compelling need for the information that meets these specific standards for expedited processing.

First, the ACLU is "primarily engaged in disseminating information" within the meaning of the statute and the regulations. In *American Civil Liberties Union v. Dep't of Justice*, 321 F.Supp. 2d 24, 30 n.5 (D.D.C. 2004), the district court found that a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information" for the purposes of expedited

Associate General Counsel (General Law)                                                Page 2
April 23, 2010

processing. This is precisely the work of the ACLU. To restate our request,

> [d]issemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to  individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for  n e w s , along   with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.

> The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Ex. A (FOIA Request) at 10. Indeed, information dissemination to the public is so central to the work of the ACLU that our office, the ACLU of Southern California, has a Communications Department and three full time staff members and outside consultants devoted to that task.

Second, the information is urgently needed for the reasons already discussed in our request. More specifically, the information involves a "breaking news story of general public interest." As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times. *See Attorneys Say He Was Tortured, Forced to Confess*, CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen*, THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, last month a leading national magazine published a feature-length article about Mr. Hamdan. *See* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010.

Furthermore, the information sought through our request will answer many of the unresolved questions about why Mr. Hamdan was detained in the United Arab Emirates and to what extent the U.S. government was involved. This information has diminishing value to the public and the media who seek immediate answers to these questions and to hold the government accountable for its treatment of Mr. Hamdan and other individuals like him, who have been detained by foreign governments at the request of the United States.

Finally, the requested information clearly concerns actions of the Federal Government, as the entire purpose of this FOIA request is to understand exactly what role various components of the Federal Government played in Mr. Hamdan's ordeal.



154

Associate General Counsel (General Law)                                    Page 3
April 23, 2010

     For the above-mentioned reasons, our request for expedited processing should be overturned and our request should be processed in accordance with DHS's expedited processing procedures.

<u>Fee Waiver</u>

     In the letter dated March 5, 2010, DHS denied our fee waiver request because it claimed, without explanation, that our request did not adequately address three of the four factors used to determine if we qualify for a public interest fee waiver. Exh. B (DHS Letter) at 2. We disagree with that assessment.

     The DHS FOIA regulations provide that "[r]ecords responsive to a request will be furnished without charge . . . , where a component determines, based on all available information, that the requester has demonstrated that: (i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and (ii) Disclosure of the information is not primarily in the commercial interest of the requester." 6 C.F.R. § 5.11(k)(1). Our request obviously does not involve a commercial interest, so the only issue that DHS must decide is whether the requested information is in the public interest and thus falls within 6 C.F.R. § 5.11(k)(1)(i). To do so, DHS considers four factors:

     (1) Whether the subject of the requested records concerns "the operations or activities of the government."

     (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities.

     (3) Whether disclosure of the requested information will contribute to "public understanding." "The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media will satisfy this consideration."

     (4) Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. "The public's understanding of the subject in question, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent. Components shall not make value judgments about whether information that would contribute significantly to public understanding of the operations or activities of the government is 'important' enough to be made public."

     6 C.F.R. § 5.11(k)(2)(i-iv).

     We clearly meet these standards for a public interest fee waiver. First, DHS has already recognized that we are not seeking this information for a commercial purpose given your determination that we are "Representatives of the News Media." Exh. B (DOS Letter) at 3. Second, we have already established that we meet the four factors. As described above, we seek records pertaining to Naji Hamdan, his brother (Hossam Hemdan), his business partner (Jehad Suliman) and his former business (Hapimotors) in order to obtain information about the federal government's surveillance of Mr. Hamdan and eventual participation in Mr. Hamdan's detention, torture, interrogation and prosecution in the United Arab Emirates. As such, the subject of our



Associate General Counsel (General Law)                                    Page 4
April 23, 2010

request clearly concerns the operations or activities of the government. The requested information is likely to contribute to an understanding of government operations because it will expose the role that the federal government plays in the overseas detention and criminal proceedings of United States citizens accused of terrorism. This information will significantly contribute to public understanding because, as of now, the public has very little to no information about the role that our government is playing in requesting foreign governments to detain terrorism suspects, like Naji Hamdan, on its behalf and the subsequent role that it plays in that person's detention, interrogation and criminal proceedings. And, finally, this information is of enormous significance to the public because no such information has yet been publicly disclosed from our government and the information would expose a key aspect of the government's counterterrorism activity, conduct which may violate the U.S. Constitution.

In addition, as a non-commercial "Representative of the News Media" who make this FOIA request in the public interest, DHS is required to liberally construe our fee waiver request in our favor. *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (A public interest fee waiver request "is to be liberally construed in favor of waivers for noncommercial requesters."); *Federal CURE v. Lappin*, 602 F.Supp.2d 197, 203 (D.D.C. 2009).

For the abovementioned reasons, the denial of our public interest fee waiver request should be overturned.

We look forward to your written response to this appeal. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq /JLP
Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611



# EXHIBIT 35

U.S. Department of Homeland Security
Office of General Counsel
Washington, DC 20528



Homeland
Security

May 10, 2010

Jenny Pasquarella
ACLU of Southern California
1313 W 8th St
Los Angeles, CA 90017

Dear Sir or Madam:

The Department of Homeland Security has received your letter appealing the adverse determination
of your Freedom of Information Act (FOIA) request by the DHS Privacy Office concerning Mr.
Hemdan and others.  On behalf of the Deputy Associate General Counsel for General Law, we
acknowledge your appeal request and are assigning it number DHS10-046 for tracking purposes.
Please reference this number in any future communications about your appeal.

A high number of FOIA requests have been received by the Department.  Accordingly, we have
adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-
out basis.[1]  While we will make every effort to process your appeal on a timely basis, there may be
some delay in resolving this matter.  Should you have any questions concerning the processing of
your appeal, please contact Howard Plofker at howard.plofker@dhs.gov.

Sincerely,

Victoria Newhouse
Attorney-Advisor

---

[1] Appeals of expedited treatment denials will be handled on an expedited basis.

# EXHIBIT
# 36

**U.S. Department of Homeland Security**
Washington, DC 20528



August 12, 2010

Ms. Jennie Pasquarella
American Civil Liberties Union of Southern California
1313 West Eight Street
Los Angeles, CA 90017

Re: **DHS/OS/PRIV 10-0364**

Dear Ms. Pasquarella:

This is in further response to your January 29, 2010 Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS). Your request was received on February 3, 2010, seeking records from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and any of their sub-agencies or divisions relating to or concerning the following:

   (1)  Mr. Naji Jawdat Hamdan;

   (2)  Mr. Hossam Jawdat Hemdan (a.k.a Sammy Hemdan or Sam Hemdan)

   (3)  Mr. Jehad Suliman; and

   (4)  Hapimotors (a.k.a Honda Acura Palace or HondaAcura Palace). The business is currently located at 1848 East 55th St, Los Angeles, CA 90058 and maintains a website at www.hapimotors.com

Additionally, you requested any records relating to or concerning any of the requestors or Hapimotors that may be cross-listed, cross-referenced or contained in the main file pertaining to another individual or entity. The request also includes, but not limited to the entirety of any document that includes the name of any of the requestors mentioned in your letter.

To provide your clients with the greatest degree of access authorized by law, we have processed your request under both the Privacy Act, 5 U.S.C. § 552a, and the FOIA, 5 U.S.C. § 552. Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individual unless the agency has exempted the system of records from the access provisions of the Privacy Act. In this instance, the records are exempt pursuant to (j)(2) and (k)(2) of the U.S. Customs and Border Protection system of records identified to DHS/CBP-011 TECS, which is accessible from http://edocket.access.gpo.gov/2008/E8-29807.htm; Internet, accessed August 12, 2010.

A search of the following U.S. Immigration and Customs Enforcement (ICE) program offices was conducted for records that would be responsive to your request: Homeland Security Investigations (HSI), the Office of Enforcement and Removal Operations (ERO), the Office of the Executive Secretariat (OES), the Office of Principal Legal Advisor (OPLA), and the Office of Public Affairs (OPA). A search of ERO, OES, OPLA and OPA failed to locate responsive records. Additionally, a search of the Office of Inspector General and the Office of Intelligence and Analysis (OI&A) also failed to disclose any responsive records. However, a search of

the HSI produced a total of twenty-eight (28) pages.  After a review of the documents, it was also determined that portions of the documents are withheld pursuant to Title 5 U.S.C § 552 FOIA Exemptions (b)(2)High, (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  I have provided an explanation of the exemptions below:

Privacy Act Exemption (j)(2) permits the government to withhold material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

Privacy Act Exemption (k)(2) protects investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence.

FOIA Exemption 2(high) protects information applicable to internal administrative and personnel matters, such as operating rules, guidelines, and manual of procedures of examiners or adjudicators, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk.  Whether there is any public interest in disclosure is legally irrelevant.  Rather, the concern under high 2 is that a FOIA disclosure should not benefit those attempting to violate the law and avoid detection.

FOIA Exemption 5 protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context.  The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.   After carefully reviewing the responsive documents, I determined that portions of the documents qualify for protection under the deliberative process privilege which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters.  The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

FOIA Exemption 6 exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy.  This requires a balancing of the public's right to disclosure against the individual's right privacy.  The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.  The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information.  Any private interest you may have in that information does not factor into the aforementioned balancing test.

Exemption 7(C) protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy.  This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity.  That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation.  Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate.  As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information.  Please note that any private interest you may have in that information does not factor into this determination.  The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

Exemption 7(E) protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  I determined that disclosure of checkpoint locations and surveillance techniques could reasonably be expected to risk circumvention of the law.  Additionally, the techniques and procedures at issue are not well known to the public.

The decision to withhold portions of the information was made by Catrina M. Pavlik-Keenan, FOIA Director, U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security.  You have a right to appeal our withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to:  Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal" and reference our number as well as ICE's FOIA case number 2010FOIA2404.  Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia

This concludes the processing of your request within the Privacy Office.  Our March 5, 2010 letter advised you that your request was of substantial interest to two or more components of DHS.  We also tasked U.S. Customs and Border Protection (CBP) and Transportation and Security Administration (TSA) to conduct a search for responsive records.  Your request is still pending with CBP and TSA.  These components will process information independent of this office.  You may contact those offices in writing at the addresses listed below:

> U.S. Customs and Border Protection
> 799 9th Street, NW, Mint Annex,
> Washington, D.C. 20229
> Telephone: 202-325-0150
>
> Transportation Security Administration
> 601 S. 12th Street
> 11th Floor, East Tower
> Arlington, VA 22202
> Telephone: 1-866-FOIA-TSA or 571-227-2300.

Provisions of the Act allow us to recover part of the cost of complying with your request.  In this instance, because the cost associated with this response is below the $14 minimum, there is no charge.

If you need to contact this office again concerning your request, please refer to **DHS/OS/PRIV 10-0364**.  This office can be reached at 866-431-0486.

Sincerely,

Vania T. Lockett
Associate Director, Disclosure & FOIA Operations

Enclosures:  As stated, 28 pages

# EXHIBIT
# 37

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC   20511

Ms. Jennie Pasquarella
ACLU of Southern California
1313 W. Eighth Street                                        MAR 0 9 2010
Los Angeles, CA  90017

Reference: DF-2010-00042

Dear Ms. Pasquarella:

    Your 29 January 2010 letter addressed to the Director, Information Management Office, Office of the Director of National Intelligence, was received in our office on 29 January 2010. You requested, under the Freedom of Information Act (FOIA), "any records from January 1, 1998 to the present relating to or concerning:

1. **Mr. Naji Jawdat Hamdan;**
2. **Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan);**
3. **Mr. Jehad Suliman; and**
4. **Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace)."**

    We accept your request and it will be processed in accordance with the FOIA, 5 U.S.C. § 552, as amended.  We assigned your request the reference number above.

    You have also requested expedited processing.  The ODNI handles all requests in the order we receive them on a "first-in, first-out" basis.  We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations.  A "compelling need" exists:  1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity.  Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

    Should you have any questions regarding your request, please contact our FOIA Requester Service Center at 703-275-2210.

                                    Sincerely,

                                    John F. Hackett
                                    Director, Information Management Office

161

# EXHIBIT
# 38



LIBERTY | JUSTICE | EQUALITY

April 5, 2010

John F. Hackett
Director, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

RE:     FOIA Appeal/ DF-2010-00042

Dear Mr. Hackett:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of your decision to deny our request for expedited processing.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the DNI "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

On March 9, 2010, you sent us a letter acknowledging our FOIA request and stating that it will be processed in accordance with FOIA. The letter also denied our request for expedited processing; however, it fails to explain the reasons for the denial. DNI Letter (attached as Exhibit B).

Expedited processing is clearly warranted in this case. The FOIA establishes that a requestor may be eligible for expedited processing where "the person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i). A person demonstrates a compelling need where the information is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

As we have already demonstrated in our request, we have a compelling need for the requested information under the statute. First, there is an urgent need to inform the public as to the federal government's involvement in the detention, torture and prosecution of its own citizen, Mr. Naji Hamdan, in the United Arab Emirates. See FOIA Request at 9. As explained in our FOIA request, "[w]hether or not the federal government had one of its citizens detained and tortured by a foreign government is a matter of urgent public concern" because such actions would be abhorrent to the U.S. Constitution. See id. Furthermore, the information sought through our request will answer many other unresolved questions of urgent concern to the American public, including why Mr. Hamdan was detained in the

1313 WEST EIGHTH STREET   LOS ANGELES CA  90017   t 213.977.9500   f 213.977.5299   ACLU-SC.ORG



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &**
**Manheim Family Attorney**
**for First Amendment Rights**
Peter J. Eliasberg

United Arab Emirates and what the U.S. government did to secure his release and protect his rights, once he was detained. This information has diminishing value to the public and the media who seek immediate answers to these questions in order to hold the government accountable for its treatment of Mr. Hamdan. The public also seeks to make necessary inquiries into the policies and practices of the federal government with respect to whether it is also requesting the detention of many other terrorism-related suspects overseas.

In addition, the information involves a breaking news story of general public interest. As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times, among many other news outlets. *See Attorneys Say He Was Tortured, Forced to Confess*, CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen*, THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008. *See also* FOIA Request at 10-11. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, last month a leading national magazine published a feature-length article about Mr. Hamdan. *See* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010 (attached as Exhibit C).

Not only is the information urgently needed, but the request is made by a non-profit public interest organization – the ACLU – "primarily engaged in disseminating information." In *American Civil Liberties Union v. Dep't of Justice*, 321 F.Supp. 2d 24, 30 n.5 (D.D.C. 2004), the district court found that a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information" for the purposes of expedited processing. This is precisely the work of the ACLU. To restate our request,

> [d]issemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.

The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Ex. A (FOIA Request) at 10. Indeed, information dissemination to the public is so central to the work of the ACLU that our office, the ACLU of Southern California, has a Communications Department and three full time staff members and outside consultants devoted to that task.

For the foregoing reasons, the denial of our request for expedited processing should be overturned.

In addition, although your letter indicates that you will process our request in accordance with FOIA, you have not specified a timetable with which you intend or anticipate that your agency will be able to complete the search. We request that you inform us either by phone or in writing of a reasonable timetable within which we can expect the DNI to have completed its search for responsive records. While you have already failed to meet the statutory time requirements for searching for responsive records, we are willing to negotiate a reasonable timetable if it means that we can avoid litigation on this and other issues. However, is we do not hear from you in this regard by April 19, we will proceed to file an administrative appeal of your failure to provide us a timely response to our request.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq / JP
Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

1313 WEST EIGHTH STREET  LOS ANGELES CA  90017  t 213.977.9500  f 213.977.5299  ACLU-SC.ORG

# EXHIBIT
# 39

**Office of the Director of National Intelligence**
**Washington, DC  20511**

18 June 2010

Ms. Jennie Pasquarella
Staff Attorney
American Civil Liberties Union
ACLU of Southern California
1313 West Eight Street
Los Angeles, CA  90017

Reference:  DF-2010-00042

Dear Mr. Lawler:

This is a final response to your 29 January 2010 request to the Office of the Director of National Intelligence (ODNI) wherein you requested, under the Freedom of Information Act (FOIA) and Privacy Act, **"for any records from January 1, 1998 to the present...relating to or concerning:**

    **(1) Mr. Naji Jawdat Hamdan;**
    **(2) Mr. Hossham Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan)**
    **(3) Mr. Jehad Suliman; and**
    **(4) Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace).**

Your request was processed in accordance with the FOIA, 5 U.S.C § 552, as amended, and Privacy Act, 5 U.S.C. § 552a.  ODNI conducted a search for unclassified records responsive to your request and no records were located.

Pursuant to FOIA Exemptions 1 and 3, 5 U.S.C § 552 (b)(1) and (3), the ODNI can neither confirm nor deny the existence of classified records responsive to your request.  Exemption 1 protects information which is currently and properly classified in accordance with Executive Order 13526.  Exemption 3 protects information that is specifically covered by statute.  In this case, the applicable statute is the National Security Act, which protects information pertaining to intelligence sources and methods.  Accordingly, no classified records systems were searched and this response should no be taken as an indication that records do or do not exist with respect to your request.

Should you wish to appeal the denial of your request, please do so in writing to:

      Office of the Director of National Intelligence
      Information Management Office
      Washington, DC  20511

**Office of the Director of National Intelligence**
**Washington, DC  20511**


Appeals must be received within 45 days of the date of this letter.  If you have any questions, please call the Requester Service Center at (703) 275-3642.

Sincerely,

John F. Hackett
Director, Information Management Office

# EXHIBIT 40

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
of SOUTHERN CALIFORNIA
FOUNDATION

LIBERTY | JUSTICE | EQUALITY

June 22, 2010

Office of the Director of National Intelligence
Information Management Office
Washington, D.C. 20511

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Chief Counsel**
Mark D. Rosenbaum

**Deputy Executive Director**
James Gilliam

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney &
Manheim Family Attorney
for First Amendment Rights**
Peter J. Eliasberg

**Re:    FOIA Ref #: DF-2010-00042**

To Whom It May Concern:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of the Office of the Director of National Intelligence's ("ODNI") response to our FOIA request, including its failure to conduct a proper search for records.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of State "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A). We also sought expedited processing and a waiver of fees associated with the processing our Request. *Id.*

By letter dated June 18, 2010, the ODNI conducted a search for unclassified records responsive to our request, and that it did not locate any such records. It also stated that while it did not conduct a search for any classified records, it could neither confirm nor deny the existence of any such records pursuant to FOIA exemptions set forth on 5 U.S.C. § 552(b)(1) and (3). The ODNI failed to provide any explanation specifically tailored to the requested information as to why these exemptions apply. *Id.*

As to its search for unclassified records responsive to the Request, the ODNI's search is inadequate for the following reasons. While ODNI claimed to have searched for unclassified records responsive to the Request, it did not provide any information regarding the nature of its search, including the specific files and/or databases in which it searched for records responsive to our request, and what search terms or other search methods it used to locate our requested records. Nor did it provide us a description of its system for record-keeping, including information about all of the files and/or databases contained therein and why the files it searched would be likely to contain the information we requested. ODNI Letter (Exhibit B attached hereto).

Despite its alleged search, we do not believe that the ODNI has met its obligation to "make a good faith effort to conduct a search for [our] requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, the agency should "denote which files were searched or by whom ... [apply] a systematic approach to document location, and ... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, the ODNI failed to identify any of the files and/or databases in which it searched for our requested records and why those files and/or databases would most likely contain the records we requested, let alone describe its system for record-keeping and all of the files and/or databases contained therein. It also did not identify what method it used to conduct its search, *e.g.* whether it searched its files and/or databases using each of the search terms we provided in our request, or used some other "systematic approach to document location." *See Weisberg* at 371. The failure to provide such "specific" information in its June 18 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, *id.*, demonstrates that its search was likely not complete. As such, ODNI should be required to conduct a subsequent search for our requested records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search, including the information described above.

As to its search for classified records responsive to the Request, the ODNI failed to comply with its obligations under FOIA to search for and produce records responsive to our request for the following reasons. First, regardless of whether or not it can confirm or deny the existence of responsive records, it is first obligated to "make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Indeed, an agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Here, however, the ODNI admittedly did not conduct *any* search for classified records. See Exhibit B ("no classified records were searched").

Second, the agency's claim that it can neither confirm nor deny the existence of responsive records, known as a *Glomar* response, lacks the detail required of FOIA. *See Phillippi v. C.I.A.*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (request for records related to the CIA's connection to the activities of a ship named the *Hughes Glomar Explorer*). Where an agency makes a *Glomar* response, it must "explain[] in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Id.* (adapting the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (1973) to situations where an agency asserts that the mere fact of whether responsive documents exist is exempt under FOIA from disclosure). *Cf. Hunt v. C.I.A.*, 981 F.2d 1116, 1118 (9th Cir. 1992) (finding CIA affidavits were sufficiently detailed to justify its *Glomar* response under FOIA Exemption



LIBERTY | JUSTICE | EQUALITY

3). Indeed, in recent FOIA litigation against the N.S.A. challenging the agency's *Glomar* response, the Second Circuit reaffirmed the *Phillippi* Court's finding, stating that the "agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption" through the submission of "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotations omitted).

Here, the ODNI has provided no such detailed explanation as to why the existence of the requested information (information about three individuals and one company) is exempt. To the contrary, the letter is silent as to why any records maintained by the ODNI would be classified, let alone why records related to the subjects of the Request would be classified.

For the above-mentioned reasons, our appeal should be granted and ODNI should be required to conduct a more thorough search, identifying the universe of files available for search and their general contents, each of those files it actually searched and their general contents, and the methodology it applied to its search for our requested records (*e.g.*, what search terms it used in searching any electronic system of records).

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq / JLP

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611



LIBERTY | JUSTICE | EQUALITY

# EXHIBIT
# 41

**Office of the Director of National Intelligence**
**Washington, DC 20511**

Ms. Jennie Pasquarella
Staff Attorney
American Civil Liberties Union
ACLU of Southern California
1313 West Eight Street
Los Angeles, CA 90017

JUL 0 8 2010

Reference: DF-2010-00042

Dear Ms. Pasquarella:

This responds to your 22 June 2010 appeal of our initial 18 June 2010 response to your 29 January 2010 letter to the Office of the Director of National Intelligence (ODNI) wherein you requested, under the Freedom of Information Act (FOIA) and Privacy Act, **"...any records from January 1, 1998 to the present...relating to or concerning:**

    **(1) Mr. Naji Jawdat Hamdan;**
    **(2) Mr. Hossham Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan)**
    **(3) Mr. Jehad Suliman; and**
    **(4) Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace).**

Specifically, you appealed our decision that ODNI could neither confirm nor deny the existence of classified records responsive to your request. Your appeal has been accepted and will be processed in accordance with FOIA, 5 U.S.C. § 552, as amended, and Privacy Act, 5 U.S.C. § 552a.

If you have any questions, please call the Requester Service Center at (703) 275-3642.

Sincerely,

John F. Hackett
Director, Information Management Office

170