# EXHIBIT 29



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Deputy Executive Director
James Gilliam

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney & Manheim Family Attorney for First Amendment Rights
Peter J. Eliasberg

April 23, 2010

Mr. John Crane
Department of Defense
Assistant Inspector General
Office of Communications and Congressional Liaison
Suite 1021
400 Army Navy Drive
Arlington, VA 22202-4704

Re: Case Number 10-0158
Freedom of Information Act Appeal

Dear Mr. Crane:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. §552(a)(6), and the Privacy Act, 5 U.S.C. §552a, on the ground that the Department of Defense, Office of Inspector General ("DoD IG") failed to conduct an adequate search for the records identified in our FOIA request.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the DoD IG "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Johad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." A copy of the FOIA request is attached hereto as Exhibit A.

DoD IG responded to our request on February 24, 2010, and asserted that it "searched [its] records for documents such as those described in [our] request. Despite a thorough search, [it was] unable to locate any records responsive to [our] request." DoD IG did not provide any information regarding the nature of its search, including the specific files and/or databases in which it searched for records responsive to our request, and what search terms or other search methods it used to locate our requested records. Nor did it provide us a description of its system for record-keeping, including information about all of the files and/or databases contained therein and why the files it searched would be likely to contain the information we requested. A copy of DoD IG's February 24, 2010 letter is attached as Exhibit B.

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 T 213.977.9500 F 213.977.5299 ACLU-SC.ORG

Despite its alleged "thorough search," we do not believe that DoD IG has met its obligation to "make a good faith effort to conduct a search for [our] requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, the agency should "denote which files were searched or by whom ... [apply] a systematic approach to document location, and ... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, DoD IG failed to identify any of the files and/or databases in which it searched for our requested records and why those files and/or databases would most likely contain the records we requested, let alone describe its system for record-keeping and all of the files and/or databases contained therein. It also did not identify what method it used to conduct its search, e.g. whether it searched its files and/or databases using each of the search terms we provided in our request, or used some other "systematic approach to document location." *See Weisberg* at 371. DoD IG's failure to provide such "specific" information in its February 24 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, id., demonstrates that its search was likely not complete. As such, DoD IG should be required to conduct a subsequent search for our requested records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search, including the information described above.

For the above-mentioned reasons, our appeal should be granted and DoD IG should conduct a more thorough search, identifying the universe of files available for search and their general contents, each of those files it actually searched and their general contents, and the methodology it applied to its search for our requested records (*e.g.*, what search terms it used in searching any electronic system of records).

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC

Laboni Hoq /JLP
Laboni Hoq
Associate
Traber &



# EXHIBIT 30



**DEPARTMENT OF DEFENSE**
OFFICE OF FREEDOM OF INFORMATION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

FEB 05 2010

Ref: 10-F-0569

Ms. Jennie Pasquarella
Staff Attorney
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

Dear Ms. Pasquarella:

This is in response to your January 29, 2010, Freedom of Information Act (FOIA) and Privacy Act request on behalf of Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman (the "requesters"). I note that you have also directly submitted this request to the Department of Justice, the Federal Bureau of Investigation (FBI), INTERPOL, the Department of State, the Central Intelligence Agency (CIA), the Department of Homeland Security (DHS), the Defense Intelligence Agency (DIA), the Defense Security Service (DSS), the National Security Agency (NSA), the Department of Defense Office of the Inspector General and the Director of National Intelligence (DNI). We received your request on February 1, 2010, and assigned it FOIA case number 10-F-0569.

You are seeking records which were prepared, received, transmitted, collected and/or maintained on the three "requesters" and Hapimotors, and were created from January 1, 1998, to the present. In addition, you have requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 5 U.S.C. § 552(a)(6)(E)(v)(II); a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), as a representative of the news media, and a waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

You explain in your request that the "requesters" have been the subject of questioning, monitoring and surveillance by the FBI; that the requesters have had difficulty traveling and were subject to secondary inspections at airports and questioned both leaving and returning to the United States; that Mr. Hamdan was detained overseas, arrested, charged, tried before the Federal Supreme Court in the U.A.E., convicted and sentenced to time served. However, your request establishes no link or involvement of the Department of Defense (DoD) with the requesters, other than the fact that the DoD is a part of the Federal Government. It appears that you are seeking information that may have been shared with some component of the DoD. In that case, if records existed they potentially may be intelligence reports. As you have already directly submitted your request to DNI, CIA, NSA and DIA (all intelligence related organizations), and have provided no explanation or information to link the "requesters" with other components of the DoD, I am closing your request with no further action.

If you are not satisfied with this action, you may appeal to the appellate authority, the Director of Administration and Management, Office of the Secretary of Defense. To submit your appeal, you should write directly to the Defense Freedom of Information Policy Office, ATTN: Mr. James Hogan, 1155 Defense Pentagon, Washington, DC 20301-1155. Your appeal should be postmarked within 60 calendar days of the date of this letter, should cite to case number 10-F-0569, and should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

for Paul J. Jacobsmeyer
Chief

# EXHIBIT 31



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

April 6, 2010

Defense Freedom of Information Policy Office
ATTN: Mr. James Hogan
1155 Defense Pentagon
Washington, D.C. 20301-1155

Re: Case Number 10-F-0569
Freedom of Information Act Appeal

Dear Sir or Madam:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a. Your office denied our request without conducting any search for the requested records. Because your response has failed to identify any valid basis to refuse to conduct a reasonable search for our requested records, your office's decision to close our request and "take no further action" should be overruled.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of Defense, Freedom of Information Office ("FIO") "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." Further, requestor Naji Jawdat Hamdan has identified that he believes that "at least one U.S. official was present for at least one torture and interrogation session" to which he was subject while he was detained in Abu Dhabi. A copy of the FOIA request is attached here as Exhibit A.

On February 5, 2010 FIO denied our request based on your assertion that our "request establishes no link or involvement of the ... DoD with the requesters, other than the fact that the DoD is a part of the Federal Government." In addition, although FIO acknowledged that the records we are seeking "may have been shared with some component of the DoD," FIO further speculated that these records "potentially may be intelligence reports" that can be obtained from other departments and agencies to which we also have served FOIA requests (including DNI, CIA, NSA and DIA). Based on these assessments you decided to "close" our request and "take no further action" on it. A copy of your Febrauty 5, 2010 letter is attached here as Exhibit B. We disagree with your assessments, and that they provide a basis for you to refuse to at least conduct a reasonable search for our requested documents.



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

In order to meet its obligations under FOIA, an agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Here, FIO has done no search at all for the requested records, and thus falls woefully short of meeting its FOIA obligations. Further, FIO appears to be stating that the requesters must establish a "link or involvement" between the requester and the department before it will be obligated to conduct a reasonable search for documents. We disagree that the FOIA statute or its enabling regulations require the requesters to establish such a "link or involvement" before their request will be processed.

Nonetheless, we have laid ample foundation in our request for why FIO would have responsive records. As identified in our request, Naji Jawdat Hamdan has identified that he believes that "at least one U.S. official was present for at least one torture and interrogation session" to which he was subject while he was detained in Abu Dhabi. Mr. Hamdan does not know which agency of the federal government this individual was from. However, there is ample reason to believe that the individual present during Mr. Hamdan's interrogation and torture could have been an agent of the DoD because of the role that DoD agents have played in interrogations of terrorism suspects in overseas detention facilities. *See* Press Release, NYCLU, Defense Department Personnel Impersonated State Department Officials in Guantanamo (May 6, 2005), http://www.nyclu.org/node/495; Press Release, ACLU, U.S. Operatives Killed Detainees During Interrogations in Afghanistan and Iraq (Oct. 24, 2005), http://www.aclu.org/human-rights-national-security/us-operatives-killed-detainees-during-interrogations-afghanistan-and- ("documents show that detainees died during or after interrogations by Navy Seals, Military Intelligence"); Lorna Benson, *Abu Ghraib Interrogator Tells His Story*, MINNESOTA PUBLIC RADIO, Oct. 11, 2004 (former military interrogator at Abu Ghraib reported that his superiors "wanted him to push detainees much harder to get information."); Tim Golden, et al., *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, N.Y. TIMES, May 20, 2005 (agents of DoD responsible for interrogation and abuse of detainees at Bagram detention facility); Samira Simone, *Abu Ghraib Head Finds Vindication in Newly Released Memos*, CNN, Apr. 22, 2009 (Abu Ghraib head punished over harsh interrogation tactics "maintained that she and her troops were following interrogation guidelines approved by top brass.").

FIO acknowledges that the records we are seeking "may have been shared with some component of the DoD," but provides no explanation for why your department cannot produce those records. For these reasons alone, FIO's denial of our request should be overruled, and it should conduct the required search for our requested records.

Further, FIO's response also provides no support for its assertion that the records we seek "may be intelligence reports" that originated in other departments or agencies

ACLU FOUNDATION
AMERICAN CIVIL LIBERTIES UNION of SOUTHERN CALIFORNIA

LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

as opposed to other categories of responsive records that may be in the possession of FIO. Such mere speculation that the records we seek are limited to "intelligence reports" originating in another agency or department is not a basis to refuse to conduct a reasonable search for our requested records. *See Keys v. Dept. of Homeland Security*, 570 F. Supp. 2d 59, 67 (D.D.C. 2008) ("when an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request, even if it determines that the documents originated elsewhere.") (*quoting McGee v. C.I.A.*, 697 F.2d 1095, 1110 (D.C. Cir. 1983)). At the least, FIO should conduct a search applying the proposed search terms identified in our request to determine in the first instance whether any of the requested records are in the possession of your department. Upon locating those records, only then can FIO make valid determinations as to what categories of records they are, whether the records originated in one of the other departments or agencies on whom we served a similar FOIA request and whether those departments or agencies would be better suited to respond to our request. *Id.* at 67. However, even then FIO's obligation does not end. In the event FIO has made a valid determination that our request should be handled by another agency, FIO must demonstrate that the referral does not "significantly [] impair [our] ability to obtain the records or significantly [] increase the amount of time [we] must wait to obtain them." *Id.* (*quoting McGee* at 1110). Here, there is no evidence that FIO even communicated, much less coordinated, with the other departments or agencies to ensure a timely substantive response to our request. Indeed, to date, none of the departments and agencies you claim can provide us the requested records has provided us a substantive response to our request.

For the above-mentioned reasons, we request that FIO overrule its decision to close our request and take no further action on it, and that FIO timely conduct the necessary search and provide us a substantive response to our request.

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

[signature]

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

[signature]

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

# EXHIBIT 32



OFFICE OF THE SECRETARY OF DEFENSE
1950 DEFENSE PENTAGON
WASHINGTON, DC 20301-1950

ADMINISTRATION AND MANAGEMENT

Ref: 10-A-0569

Ms. Jennie Pasquarella
Staff Attorney
American Civil Liberties Union
Of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

MAY 2 5 2010

Dear Ms. Pasquarella:

This responds to your April 6, 2010, Freedom of Information Act (FOIA) appeal. You appealed the failure of the Office of Freedom of Information (OFOI) to conduct a search for records relating to your January 29, 2009, FOIA request. Your FOIA request, which was submitted directly to eighteen federal departments and agencies, sought access to records which were prepared, received, transmitted, collected and/or maintained on three named individuals, Mr. Naji Jawdat Hamdan, Mr. Hossam Hemdan, Mr. Jehad Suliman, and on Hapimotors.

In your initial request, you explained that the named individuals had been the subject of questioning, monitoring and surveillance by the FBI; that the individuals have had difficulty traveling and were subject to secondary inspections at airports and questioned both leaving and returning to the United States; and that Mr. Hamdan was detained overseas, arrested, charged, tried before the Federal Supreme Court in the U.A.E., convicted and sentenced to time served. By letter dated February 5, 2010, OFOI advised you that they were closing your request because you did not provide any information that would lead OFOI to believe that the Office of the Secretary of Defense (OSD) or the Joint Staff (JS) would maintain records responsive to your request and because you had already submitted your request to various intelligence agencies, the agencies which OFOI believed would most likely maintain responsive records, if they exist.

I have reviewed the case file at the appellate level and I have determined that OFOI was not required to conduct a random search for documents when they had no reason to believe that the OSD or the JS would maintain such documents. In your appeal, you contend that OFOI did not meet its obligations under the FOIA because OFOI did not demonstrate that it conducted a "search reasonably calculated to uncover all relevant documents." The reasonableness of an agency's search can depend on whether the agency properly determined where responsive records would likely be found. In this case, OFOI

determined that if responsive records existed, they would more than likely be maintained by the various intelligence agencies to which you already sent your request. OFOI had no obligation to coordinate your request with those agencies because those entities maintain their own FOIA programs and they will respond to you directly.

Moreover, under the FOIA, a request must reasonably describe the records sought. A record is reasonably described if the description enables a professional agency employee familiar with the subject area to locate the record with a reasonable amount of effort. The FOIA is not intended to compel government agencies to become full-time investigators on behalf of requesters when a reasonable description is not provided. Since your request does not reasonably describe records that would be maintained within the OSD or JS, I am affirming OFOI's initial decision.

You have the right to judicial review of this decision in a United States District Court, in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

William E. Brazis
Deputy Director

# EXHIBIT 33

U.S. Department of Homeland Security
Washington, DC 20528

Homeland
Security

March 5, 2010

Ms. Jennie Pasquarella
American Civil Liberties Union of Southern California
1313 West Eight Street
Los Angeles, CA 90017

Re: **DHS/OS/PRIV 10-0364**

Dear Ms. Pasquarella:

This acknowledges receipt of your January 29, 2010 Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS). Your request was received on February 3, 2010, seeking records from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and any of their sub-agencies or divisions relating to or concerning the following:

(1) Mr. Naji Jawdat Hamdan;

(2) Mr. Hossam Jawdat Hemdan (a.k.a Sammy Hemdan or Sam Hemdan)

(3) Mr. Jehad Suliman; and

(4) Hapimotors (a.k.a Honda Acura Palace or HondaAcura Palace). The business is currently located at 1848 East 55th St, Los Angeles, CA 90058 and maintains a website at www.hapimotors.com

Additionally, you requested any records relating to or concerning any of the requestors or Hapimotors that may be cross-listed, cross-referenced or contained in the main file pertaining to another individual or entity. The request also includes, but not limited to the entirety of any document that includes the name of any of the requestors mentioned in your letter.

First, please be advised that DHS was created January 24, 2003; therefore, no DHS records exist prior to that date. Records created prior to the establishment of DHS by any of the organizational components of DHS would be maintained by those components.

Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, the Department processes FOIA requests according to their order of receipt. Although DHS' goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As the subject matter of your request is of substantial interest to two or more components of DHS, we will need to consult with those entities before we issue a final response.

Therefore, DHS will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B).

As it relates to your request for expedited treatment, your request is denied.  Clearly, the lack of expedited treatment in this case will not pose an imminent threat to the life or physical safety of an individual. While you may be primarily engaged in the disseminating of information, you have not detailed with specificity why you feel there is an urgency to inform the public about the nature and extent of the Federal government's surveillance and detention of American citizens in the name of national security. This urgency would need to exceed the public's right to know about government activity generally.  You did not offer any supporting evidence of an interest of the public that is any greater than the public's general interest in the Federal government's surveillance and detention activities.

As it relates to your fee waiver request, this portion of the request is also denied.  The DHS FOIA Regulations, 6 CFR § 5.11(k)(2), set forth six factors to examine in determining whether the applicable legal standard for a fee waiver has been met:  (1) Whether the subject of the requested records concerns "the operations or activities of the government;" (2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (3) Whether disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons; (4) Whether the contribution to public understanding of government operations or activities will be "significant;" (5) Whether the requester has a commercial interest that would be furthered by the requested disclosure; and (6) Whether the magnitude of any identified commercial interest to the requestor is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requestor.

As a requester, you bear the burden under the FOIA of showing that the fee waiver requirements have been met.  Based on my review of your January 29, 2010 request and for the reasons stated herein, I have determined that your fee waiver request is deficient because it did not adequately address factors 2-4 above.  Since your request for a fee waiver has failed to satisfy each of the required factors, I am denying your fee waiver request.

Provisions of the Act allow us to recover part of the cost of complying with your request.  We shall charge you for records in accordance with the DHS Interim FOIA regulations as they apply to non-commercial requestors.  As a non-commercial requestor you will be charged 10-cents a page for duplication, although the first 100 pages are free, as are the first two hours of search time, after which you will pay the per quarter-hour rate ($4.00, $7.00, $10.25) of the searcher.  You agreed to pay assessable fees up to $100 and will be contacted before any additional fees are accrued.

You have the right to appeal the determination to deny expedited processing of your request.  Should you wish to do so, you must send your appeal within 60 days of the date of this letter to:  Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in Subpart A, Section 5.9, of the DHS Regulations.  Your envelope and letter should be marked "Freedom of Information Act Appeal."  The implementing Department regulations establish the criteria under which the FOIA is administered.  Copies of the FOIA and regulations are available at http://www.dhs.gov/xlibrary/assets/FOIA_FedReg_Notice.pdf; Internet, accessed March 5, 2010.

If you need to contact this office again concerning your request, please refer to **DHS/OS/PRIV 10-0364.** This office can be reached at 866-431-0486.

Sincerely,

Sabrina Burroughs
Disclosure & FOIA Operations Manager

# EXHIBIT 34



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Deputy Executive Director
James Gilliam

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

April 23, 2010

Associate General Counsel (General Law)
Department of Homeland Security
FOIA Appeals
Washington, D.C. 20528

RE: FOIA Appeal/FOIA Case No. DHS/OS/PRIV 10-0364

To Whom It May Concern:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), of the Department of Homeland Security (DHS) Privacy Office's decision to deny our request for expeditious processing and a fee waiver.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of Homeland Security "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

Expedited Processing

In a letter dated March 5, 2010, DHS denied our request for expedited processing without providing any explanation for its decision. DHS Letter (attached as Exhibit B).

The FOIA states that a requestor may be eligible for expedited processing where "the person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i). A requester demonstrates a compelling need where the information is urgently needed to inform the public about an actual or alleged federal government activity, if the request is made by a person primarily engaged in disseminating information. 5 U.S.C. § 552(a)(6)(E)(v)(II).

As we have already demonstrated in our request, we have a compelling need for the information that meets these specific standards for expedited processing.

First, the ACLU is "primarily engaged in disseminating information" within the meaning of the statute and the regulations. In *American Civil Liberties Union v. Dep't of Justice*, 321 F.Supp. 2d 24, 30 n.5 (D.D.C. 2004), the district court found that a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information" for the purposes of expedited

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 T 213.977.9500 F 213.977.5299 ACLU-SC.ORG

processing. This is precisely the work of the ACLU. To restate our request,

> [d]issemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.
>
> The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Ex. A (FOIA Request) at 10. Indeed, information dissemination to the public is so central to the work of the ACLU that our office, the ACLU of Southern California, has a Communications Department and three full time staff members and outside consultants devoted to that task.

Second, the information is urgently needed for the reasons already discussed in our request. More specifically, the information involves a "breaking news story of general public interest." As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times. *See Attorneys Say He Was Tortured, Forced to Confess*, CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen*, THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, last month a leading national magazine published a feature-length article about Mr. Hamdan. *See* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010.

Furthermore, the information sought through our request will answer many of the unresolved questions about why Mr. Hamdan was detained in the United Arab Emirates and to what extent the U.S. government was involved. This information has diminishing value to the public and the media who seek immediate answers to these questions and to hold the government accountable for its treatment of Mr. Hamdan and other individuals like him, who have been detained by foreign governments at the request of the United States.

Finally, the requested information clearly concerns actions of the Federal Government, as the entire purpose of this FOIA request is to understand exactly what role various components of the Federal Government played in Mr. Hamdan's ordeal.



For the above-mentioned reasons, our request for expedited processing should be overturned and our request should be processed in accordance with DHS's expedited processing procedures.

Fee Waiver

In the letter dated March 5, 2010, DHS denied our fee waiver request because it claimed, without explanation, that our request did not adequately address three of the four factors used to determine if we qualify for a public interest fee waiver. Exh. B (DHS Letter) at 2. We disagree with that assessment.

The DHS FOIA regulations provide that "[r]ecords responsive to a request will be furnished without charge . . . where a component determines, based on all available information, that the requester has demonstrated that: (i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and (ii) Disclosure of the information is not primarily in the commercial interest of the requester." 6 C.F.R. § 5.11(k)(1). Our request obviously does not involve a commercial interest, so the only issue that DHS must decide is whether the requested information is in the public interest and thus falls within 6 C.F.R. § 5.11(k)(1)(i). To do so, DHS considers four factors:

(1) Whether the subject of the requested records concerns "the operations or activities of the government."

(2) Whether the disclosure is "likely to contribute" to an understanding of government operations or activities.

(3) Whether disclosure of the requested information will contribute to "public understanding." "The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media will satisfy this consideration."

(4) Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities. "The public's understanding of the subject in question, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent. Components shall not make value judgments about whether information that would contribute significantly to public understanding of the operations or activities of the government is 'important' enough to be made public."

6 C.F.R. § 5.11(k)(2)(i-iv).

We clearly meet these standards for a public interest fee waiver. First, DHS has already recognized that we are not seeking this information for a commercial purpose given your determination that we are "Representatives of the News Media." Exh. B (DOS Letter) at 3. Second, we have already established that we meet the four factors. As described above, we seek records pertaining to Naji Hamdan, his brother (Hossam Hemdan), his business partner (Jehad Suliman) and his former business (Hapimotors) in order to obtain information about the federal government's surveillance of Mr. Hamdan and eventual participation in Mr. Hamdan's detention, torture, interrogation and prosecution in the United Arab Emirates. As such, the subject of our



request clearly concerns the operations or activities of the government. The requested information is likely to contribute to an understanding of government operations because it will expose the role that the federal government plays in the overseas detention and criminal proceedings of United States citizens accused of terrorism. This information will significantly contribute to public understanding because, as of now, the public has very little to no information about the role that our government is playing in requesting foreign governments to detain terrorism suspects, like Naji Hamdan, on its behalf and the subsequent role that it plays in that person's detention, interrogation and criminal proceedings. And, finally, this information is of enormous significance to the public because no such information has yet been publicly disclosed from our government and the information would expose a key aspect of the government's counterterrorism activity, conduct which may violate the U.S. Constitution.

In addition, as a non-commercial "Representative of the News Media" who make this FOIA request in the public interest, DHS is required to liberally construe our fee waiver request in our favor. *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir. 1987) (A public interest fee waiver request "is to be liberally construed in favor of waivers for noncommercial requesters."); *Federal CURE v. Lappin*, 602 F.Supp.2d 197, 203 (D.D.C. 2009).

For the abovementioned reasons, the denial of our public interest fee waiver request should be overturned.

We look forward to your written response to this appeal. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

# EXHIBIT 35

U.S. Department of Homeland Security
Office of General Counsel
Washington, DC 20528

Homeland
Security

May 10, 2010

Jonny Pasquarella
ACLU of Southern California
1313 W 8th St
Los Angeles, CA 90017

Dear Sir or Madam:

The Department of Homeland Security has received your letter appealing the adverse determination of your Freedom of Information Act (FOIA) request by the DHS Privacy Office concerning Mr. Homdan and others. On behalf of the Deputy Associate General Counsel for General Law, we acknowledge your appeal request and are assigning it number DHS10-046 for tracking purposes. Please reference this number in any future communications about your appeal.

A high number of FOIA requests have been received by the Department. Accordingly, we have adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis.[1] While we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter. Should you have any questions concerning the processing of your appeal, please contact Howard Plofker at howard.plofker@dhs.gov.

Sincerely,

Victoria Newhouse
Attorney-Advisor

[1] Appeals of expedited treatment denials will be handled on an expedited basis.

# EXHIBIT 36

U.S. Department of Homeland Security
Washington, DC 20528

Homeland
Security

August 12, 2010

Ms. Jennie Pasquarella
American Civil Liberties Union of Southern California
1313 West Eight Street
Los Angeles, CA 90017

Re: **DHS/OS/PRIV 10-0364**

Dear Ms. Pasquarella:

This is in further response to your January 29, 2010 Freedom of Information Act (FOIA) request to the Department of Homeland Security (DHS). Your request was received on February 3, 2010, seeking records from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department of Justice, the Department of State, the Central Intelligence Agency, the Department of Homeland Security, the Department of Defense and any of their sub-agencies or divisions relating to or concerning the following:

(1) Mr. Naji Jawdat Hamdan;

(2) Mr. Hossam Jawdat Hemdan (a.k.a Sammy Hemdan or Sam Hemdan)

(3) Mr. Jehad Suliman; and

(4) Hapimotors (a.k.a Honda Acura Palace or HondaAcura Palace). The business is currently located at 1848 East 55th St, Los Angeles, CA 90058 and maintains a website at www.hapimotors.com

Additionally, you requested any records relating to or concerning any of the requestors or Hapimotors that may be cross-listed, cross-referenced or contained in the main file pertaining to another individual or entity. The request also includes, but not limited to the entirety of any document that includes the name of any of the requestors mentioned in your letter.

To provide your clients with the greatest degree of access authorized by law, we have processed your request under both the Privacy Act, 5 U.S.C. § 552a, and the FOIA, 5 U.S.C. § 552. Information about an individual that is maintained in a Privacy Act system of records may be accessed by that individual unless the agency has exempted the system of records from the access provisions of the Privacy Act. In this instance, the records are exempt pursuant to (j)(2) and (k)(2) of the U.S. Customs and Border Protection system of records identified to DHS/CBP-011 TECS, which is accessible from http://edocket.access.gpo.gov/2008/E8-29807.htm; Internet, accessed August 12, 2010.

A search of the following U.S. Immigration and Customs Enforcement (ICE) program offices was conducted for records that would be responsive to your request: Homeland Security Investigations (HSI), the Office of Enforcement and Removal Operations (ERO), the Office of the Executive Secretariat (OES), the Office of Principal Legal Advisor (OPLA), and the Office of Public Affairs (OPA). A search of ERO, OES, OPLA and OPA failed to locate responsive records. Additionally, a search of the Office of Inspector General and the Office of Intelligence and Analysis (OI&A) also failed to disclose any responsive records. However, a search of

the HSI produced a total of twenty-eight (28) pages. After a review of the documents, it was also determined that portions of the documents are withheld pursuant to Title 5 U.S.C § 552 FOIA Exemptions (b)(2)High, (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). I have provided an explanation of the exemptions below:

Privacy Act Exemption (j)(2) permits the government to withhold material reporting investigative efforts pertaining to enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals.

Privacy Act Exemption (k)(2) protects investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence.

FOIA Exemption 2(high) protects information applicable to internal administrative and personnel matters, such as operating rules, guidelines, and manual of procedures of examiners or adjudicators, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk. Whether there is any public interest in disclosure is legally irrelevant. Rather, the concern under high 2 is that a FOIA disclosure should not benefit those attempting to violate the law and avoid detection.

FOIA Exemption 5 protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. The three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege. After carefully reviewing the responsive documents, I determined that portions of the documents qualify for protection under the deliberative process privilege which protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

FOIA Exemption 6 exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

Exemption 7(C) protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination. The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal..

Exemption 7(E) protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I determined that disclosure of checkpoint locations and surveillance techniques could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

The decision to withhold portions of the information was made by Catrina M. Pavlik-Keenan, FOIA Director, U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security. You have a right to appeal our withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter, to: Associate General Counsel (General Law), U.S. Department of Homeland Security, Washington, D.C. 20528, following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Your envelope and letter should be marked "FOIA Appeal" and reference our number as well as ICE's FOIA case number 2010FOIA2404. Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia

This concludes the processing of your request within the Privacy Office. Our March 5, 2010 letter advised you that your request was of substantial interest to two or more components of DHS. We also tasked U.S. Customs and Border Protection (CBP) and Transportation and Security Administration (TSA) to conduct a search for responsive records. Your request is still pending with CBP and TSA. These components will process information independent of this office. You may contact those offices in writing at the addresses listed below:

U.S. Customs and Border Protection<br>
799 9th Street, NW, Mint Annex,<br>
Washington, D.C. 20229.<br>
Telephone: 202-325-0150

Transportation Security Administration<br>
601 S. 12th Street<br>
11th Floor, East Tower<br>
Arlington, VA 22202<br>
Telephone: 1-866-FOIA-TSA or 571-227-2300.

Provisions of the Act allow us to recover part of the cost of complying with your request. In this instance, because the cost associated with this response is below the $14 minimum, there is no charge.

If you need to contact this office again concerning your request, please refer to **DHS/OS/PRIV 10-0364**. This office can be reached at 866-431-0486.

Sincerely,

Vania T. Lockett<br>
Associate Director, Disclosure & FOIA Operations

Enclosures: As stated, 28 pages

# EXHIBIT 37

OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC 20511

Ms. Jennie Pasquarella
ACLU of Southern California
1313 W. Eighth Street
Los Angeles, CA 90017

MAR 0 9 2010

Reference: DF-2010-00042

Dear Ms. Pasquarella:

Your 29 January 2010 letter addressed to the Director, Information Management Office, Office of the Director of National Intelligence, was received in our office on 29 January 2010. You requested, under the Freedom of Information Act (FOIA), **"any records from January 1, 1998 to the present relating to or concerning:**

1. **Mr. Naji Jawdat Hamdan;**
2. **Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan);**
3. **Mr. Jehad Suliman; and**
4. **Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace)."**

We accept your request and it will be processed in accordance with the FOIA, 5 U.S.C. § 552, as amended. We assigned your request the reference number above.

You have also requested expedited processing. The ODNI handles all requests in the order we receive them on a "first-in, first-out" basis. We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A "compelling need" exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity. Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

Should you have any questions regarding your request, please contact our FOIA Requester Service Center at 703-275-2210.

Sincerely,

John F. Hackett
Director, Information Management Office

# EXHIBIT 38



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allen K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

April 5, 2010

John F. Hackett
Director, Information Management Office
Office of the Director of National Intelligence
Washington, DC 20511

**RE: FOIA Appeal/ DF-2010-00042**

Dear Mr. Hackett:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of your decision to deny our request for expedited processing.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the DNI "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A).

On March 9, 2010, you sent us a letter acknowledging our FOIA request and stating that it will be processed in accordance with FOIA. The letter also denied our request for expedited processing; however, it fails to explain the reasons for the denial. DNI Letter (attached as Exhibit B).

Expedited processing is clearly warranted in this case. The FOIA establishes that a requestor may be eligible for expedited processing where "the person requesting the records demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i). A person demonstrates a compelling need where the information is "urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

As we have already demonstrated in our request, we have a compelling need for the requested information under the statute. First, there is an urgent need to inform the public as to the federal government's involvement in the detention, torture and prosecution of its own citizen, Mr. Naji Hamdan, in the United Arab Emirates. *See* FOIA Request at 9. As explained in our FOIA request, "[w]hether or not the federal government had one of its citizens detained and tortured by a foreign government is a matter of urgent public concern" because such actions would be abhorrent to the U.S. Constitution. *See id.* Furthermore, the information sought through our request will answer many other unresolved questions of urgent concern to the American public, including why Mr. Hamdan was detained in the



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allen K. Jones
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

United Arab Emirates and what the U.S. government did to secure his release and protect his rights, once he was detained. This information has diminishing value to the public and the media who seek immediate answers to these questions in order to hold the government accountable for its treatment of Mr. Hamdan. The public also seeks to make necessary inquiries into the policies and practices of the federal government with respect to whether it is also requesting the detention of many other terrorism-related suspects overseas.

In addition, the information involves a breaking news story of general public interest. As is detailed in our request, the story of Naji Hamdan and the U.S. government's role in his detention has been headline news, receiving exceptional media interest from the time that he was detained in August 2008 until today. For example, his story aired on CBS Nightly News, and was covered numerous times by the Washington Post and the Los Angeles Times, among many other news outlets. *See Attorneys Say He Was Tortured, Forced to Confess*, CBS NIGHTLY NEWS, July 19, 2009; Barbara Surk, *Emirates Closes Terror Trial of U.S. Citizen*, THE WASHINGTON POST, July 20, 2009; Karl Vick, *American Muslim's Case Poses a Test, U.S. Role Alleged in Detention in UAE*, THE WASHINGTON POST, Mar. 23, 2009; Raja Abdulrahim, *ACLU Seeks Release of American, Ex-Hawthorne Resident Held in UAE for 3 Months*, L.A. TIMES, Nov. 20, 2008; Raja Abdulrahim, *Family Says U.S. Man Detained in Emirates was Tortured*, L.A. TIMES, Dec. 4, 2008. *See also* FOIA Request at 10-11. In addition, media interest in Mr. Hamdan's plight has not dissipated. Indeed, last month a leading national magazine published a feature-length article about Mr. Hamdan. *See* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010 (attached as Exhibit C).

Not only is the information urgently needed, but the request is made by a non-profit public interest organization – the ACLU – "primarily engaged in disseminating information." In *American Civil Liberties Union v. Dep't of Justice*, 321 F.Supp. 2d 24, 30 n.5 (D.D.C. 2004), the district court found that a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience," is "primarily engaged in disseminating information" for the purposes of expedited processing. This is precisely the work of the ACLU. To restate our request,

> [d]issemination of information to the public is a critical and substantial component of the ACLU/SC's mission and work. The ACLU/SC disseminates information to the public through newsletters, news briefings, "Know Your Rights" documents, and other educational and informational materials. ACLU/SC also disseminates information to individuals, tax-exempt organizations, not-for-profit groups, and members through its website, http://www.aclu-sc.org. The ACLU/SC website homepage includes a section for news, along with links to information about current issues of public interest. The website also contains archives of press releases and other documents demonstrating the thorough extent to which

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 t 213.977.9500 f 213.977.5299 ACLU-SC.ORG



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney & Manheim Family Attorney for First Amendment Rights
Peter J. Eliasberg

> the ACLU/SC disseminates information to the public on numerous issues. *See* www.aclu-sc.org/news_stories.
>
> The ACLU/SC also shares information with the national ACLU office. The ACLU publishes information through multiple outlets including newsletters, action alerts, videos, and other media. ACLU publications are disseminated across the country to individuals and organizations. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail, and maintains a website of civil rights and civil liberties information at http://www.aclu.org.

Ex. A (FOIA Request) at 10. Indeed, information dissemination to the public is so central to the work of the ACLU that our office, the ACLU of Southern California, has a Communications Department and three full time staff members and outside consultants devoted to that task.

For the foregoing reasons, the denial of our request for expedited processing should be overturned.

In addition, although your letter indicates that you will process our request in accordance with FOIA, you have not specified a timetable with which you intend or anticipate that your agency will be able to complete the search. We request that you inform us either by phone or in writing of a reasonable timetable within which we can expect the DNI to have completed its search for responsive records. While you have already failed to meet the statutory time requirements for searching for responsive records, we are willing to negotiate a reasonable timetable if it means that we can avoid litigation on this and other issues. However, is we do not hear from you in this regard by April 19, we will proceed to file an administrative appeal of your failure to provide us a timely response to our request.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq /JP
Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 t 213.977.9500 f 213.977.5299 ACLU-SC.ORG

# EXHIBIT 39

**Office of the Director of National Intelligence**
**Washington, DC 20511**

18 June 2010

Ms. Jennie Pasquarella
Staff Attorney
American Civil Liberties Union
ACLU of Southern California
1313 West Eight Street
Los Angeles, CA 90017

Reference: DF-2010-00042

Dear Mr. Lawler:

This is a final response to your 29 January 2010 request to the Office of the Director of National Intelligence (ODNI) wherein you requested, under the Freedom of Information Act (FOIA) and Privacy Act, **"for any records from January 1, 1998 to the present...relating to or concerning:**

**(1) Mr. Naji Jawdat Hamdan;**
**(2) Mr. Hossham Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan)**
**(3) Mr. Jehad Suliman; and**
**(4) Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace).**

Your request was processed in accordance with the FOIA, 5 U.S.C § 552, as amended, and Privacy Act, 5 U.S.C. § 552a. ODNI conducted a search for unclassified records responsive to your request and no records were located.

Pursuant to FOIA Exemptions 1 and 3, 5 U.S.C § 552 (b)(1) and (3), the ODNI can neither confirm nor deny the existence of classified records responsive to your request. Exemption 1 protects information which is currently and properly classified in accordance with Executive Order 13526. Exemption 3 protects information that is specifically covered by statute. In this case, the applicable statute is the National Security Act, which protects information pertaining to intelligence sources and methods. Accordingly, no classified records systems were searched and this response should no be taken as an indication that records do or do not exist with respect to your request.

Should you wish to appeal the denial of your request, please do so in writing to:

Office of the Director of National Intelligence
Information Management Office
Washington, DC 20511

**Office of the Director of National Intelligence**
**Washington, DC 20511**

Appeals must be received within 45 days of the date of this letter. If you have any questions, please call the Requester Service Center at (703) 275-3642.

Sincerely,

John F. Hackett
Director, Information Management Office

# EXHIBIT 40



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Chief Counsel
Mark D. Rosenbaum

Deputy Executive Director
James Gilliam

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney &
Manheim Family Attorney
for First Amendment Rights
Peter J. Eliasberg

June 22, 2010

Office of the Director of National Intelligence
Information Management Office
Washington, D.C. 20511

**Re: FOIA Ref #: DF-2010-00042**

To Whom It May Concern:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6), and the Privacy Act, 5 U.S.C. § 552a, of the Office of the Director of National Intelligence's ("ODNI") response to our FOIA request, including its failure to conduct a proper search for records.

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of State "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request (attached as Exhibit A). We also sought expedited processing and a waiver of fees associated with the processing our Request. *Id.*

By letter dated June 18, 2010, the ODNI conducted a search for unclassified records responsive to our request, and that it did not locate any such records. It also stated that while it did not conduct a search for any classified records, it could neither confirm nor deny the existence of any such records pursuant to FOIA exemptions set forth on 5 U.S.C. § 552(b)(1) and (3). The ODNI failed to provide any explanation specifically tailored to the requested information as to why these exemptions apply. *Id.*

As to its search for unclassified records responsive to the Request, the ODNI's search is inadequate for the following reasons. While ODNI claimed to have searched for unclassified records responsive to the Request, it did not provide any information regarding the nature of its search, including the specific files and/or databases in which it searched for records responsive to our request, and what search terms or other search methods it used to locate our requested records. Nor did it provide us a description of its system for record-keeping, including information about all of the files and/or databases contained therein and why the files it searched would be likely to contain the information we requested. ODNI Letter (Exhibit B attached hereto).

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 t 213.977.9500 f 213.977.5299 ACLU-SC.ORG

Despite its alleged search, we do not believe that the ODNI has met its obligation to "make a good faith effort to conduct a search for [our] requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, the agency should "denote which files were searched or by whom .... [apply] a systematic approach to document location, and .... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, the ODNI failed to identify any of the files and/or databases in which it searched for our requested records and why those files and/or databases would most likely contain the records we requested, let alone describe its system for record-keeping and all of the files and/or databases contained therein. It also did not identify what method it used to conduct its search, *e.g.* whether it searched its files and/or databases using each of the search terms we provided in our request, or used some other "systematic approach to document location." *See Weisberg* at 371. The failure to provide such "specific" information in its June 18 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, *id.*, demonstrates that its search was likely not complete. As such, ODNI should be required to conduct a subsequent search for our requested records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search, including the information described above.

As to its search for classified records responsive to the Request, the ODNI failed to comply with its obligations under FOIA to search for and produce records responsive to our request for the following reasons. First, regardless of whether or not it can confirm or deny the existence of responsive records, it is first obligated to "make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Indeed, an agency must demonstrate that it has conducted a "search reasonably calculated to uncover all relevant documents." *Weisberg v. Department of Justice*, 705 F.2d 1344, 1350-51 (D.C. Cir. 1983). Here, however, the ODNI admittedly did not conduct *any* search for classified records. See Exhibit B ("no classified records were searched").

Second, the agency's claim that it can neither confirm nor deny the existence of responsive records, known as a *Glomar* response, lacks the detail required of FOIA. *See Phillippi v. C.I.A.*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (request for records related to the CIA's connection to the activities of a ship named the *Hughes Glomar Explorer*). Where an agency makes a *Glomar* response, it must "explain[] in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records." *Id.* (adapting the requirements of *Vaughn v. Rosen*, 484 F.2d 820 (1973) to situations where an agency asserts that the mere fact of whether responsive documents exist is exempt under FOIA from disclosure). *Cf. Hunt v. C.I.A.*, 981 F.2d 1116, 1118 (9th Cir. 1992) (finding CIA affidavits were sufficiently detailed to justify its *Glomar* response under FOIA Exemption

LIBERTY | JUSTICE | EQUALITY



3). Indeed, in recent FOIA litigation against the N.S.A. challenging the agency's *Glomar* response, the Second Circuit reaffirmed the *Phillippi* Court's finding, stating that the "agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption" through the submission of "a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotations omitted).

Here, the ODNI has provided no such detailed explanation as to why the existence of the requested information (information about three individuals and one company) is exempt. To the contrary, the letter is silent as to why any records maintained by the ODNI would be classified, let alone why records related to the subjects of the Request would be classified.

For the above-mentioned reasons, our appeal should be granted and ODNI should be required to conduct a more thorough search, identifying the universe of files available for search and their general contents, each of those files it actually searched and their general contents, and the methodology it applied to its search for our requested records (*e.g.*, what search terms it used in searching any electronic system of records).

We look forward to your timely written response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq / JLP

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611

LIBERTY | JUSTICE | EQUALITY



# EXHIBIT 41

**Office of the Director of National Intelligence**
**Washington, DC 20511**

Ms. Jennie Pasquarella
Staff Attorney
American Civil Liberties Union
ACLU of Southern California
1313 West Eight Street
Los Angeles, CA 90017

JUL 08 2010

Reference: DF-2010-00042

Dear Ms. Pasquarella:

This responds to your 22 June 2010 appeal of our initial 18 June 2010 response to your 29 January 2010 letter to the Office of the Director of National Intelligence (ODNI) wherein you requested, under the Freedom of Information Act (FOIA) and Privacy Act, **"...any records from January 1, 1998 to the present...relating to or concerning:**

**(1) Mr. Naji Jawdat Hamdan;**
**(2) Mr. Hossham Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan)**
**(3) Mr. Jehad Suliman; and**
**(4) Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace).**

Specifically, you appealed our decision that ODNI could neither confirm nor deny the existence of classified records responsive to your request. Your appeal has been accepted and will be processed in accordance with FOIA, 5 U.S.C. § 552, as amended, and Privacy Act, 5 U.S.C. § 552a.

If you have any questions, please call the Requester Service Center at (703) 275-3642.

Sincerely,

John F. Hackett
Director, Information Management Office

# EXHIBIT 42

LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney & Manheim Family Attorney for First Amendment Rights**
Peter J. Eliasberg

September 14, 2010

Associate General Counsel
U.S. Department of Homeland Security
Washington, DC 20528

Re: **FOIA Complaint:** DHS/OS/PRIV 10-0364
**FOIA Appeal:** Case Number 2010FOIA2404

To Whom It May Concern:

This is an appeal under the Freedom of Information Act (FOIA), 5 U.S.C. §552, and the Privacy Act and, 5 U.S.C. §552a, of the Department of Homeland Security's ("DHS") response to our FOIA Request as it relates to the following DHS components: Immigration and Customs Enforcement ("ICE"), Office of Inspector General ("OIG"), and Office of Intelligence and Analysis ("OI&A").

On January 29, 2010, pursuant to FOIA and the Privacy Act, we requested the disclosure of any records in the possession of the Department of State "relating to or concerning" Mr. Naji Jawdat Hamdan, Mr. Hossam Jawdat Hemdan, Mr. Jehad Suliman, and Hapimotors. The principle reason we seek such records is to shed light on "the federal government's surveillance, monitoring, questioning, investigation, and participation in the overseas detention and torture of Mr. Naji Jawdat Hamdan." FOIA Request.

DHS responded to our request on behalf of ICE, OIG and OI&A by letter dated August 12, 2010. In that letter, DHS represented that it had conducted a search of the following ICE program files: Homeland Security Investigations ("HSI"), the Office of Enforcement and Removal Operations ("ERO"), the Office of the Executive Secretariat ("OES"), the Office of Principal Legal Advisor ("OPLA"), and the Office of Public Affairs ("OPA"). DHS's search of HSI produced a total of 28 pages of records responsive to our Request, while its search of ERO, OES, OPLA and OPA located no responsive records. In addition, DHS conducted a search of OIG and OI&A and also located no responsive records. We appeal DHS's response on behalf of ICE, OIG and OI&A's as follows.

Regarding ICE, OIG and OI&A, we appeal DHS's failure to complete an adequate search for documents at each of these components. Despite DHS's alleged search for responsive records in each of these components, based in the information provided, we do not believe that DHS has met its obligation to "make a good faith effort

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 t 213.977.9500 f 213.977.5299 ACLU-SC.ORG



LIBERTY | JUSTICE | EQUALITY

**Chair**
Stephen Rohde

**President**
Douglas Mirell

**Chairs Emeriti**
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

**Executive Director**
Ramona Ripston

**Deputy Executive Director**
James Gilliam

**Chief Counsel**
Mark D. Rosenbaum

**Chief Financial Officer**
Brenda Maull

**Communications Director**
Gordon Smith

**Development Director**
Sandy Graham-Jones

**Legal Director**
Hector O. Villagra

**Managing Attorney & Manheim Family Attorney for First Amendment Rights**
Peter J. Eliasberg

to conduct a search for [our] requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dept. of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). To establish that it has done so, DHS should "denote which files were searched or by whom ... [apply] a systematic approach to document location, and ... provide information specific enough to enable [the requester] to challenge the procedures utilized." *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980).

Here, DHS failed to identify any of the ICE, OIG and OI&A files and/or databases in which it searched for our requested records and why those files and/or databases would most likely contain the records we requested, let alone describe ICE, OIG and OI&A's system for record-keeping and all of the files and/or databases contained therein. It also did not identify what method it used to conduct searches of ICE, OIG and OI&A records, *e.g.* whether it searched its files and/or databases using each of the search terms we provided in our request, or used some other "systematic approach to document location." *See Weisberg* at 371. DHS's failure to provide such "specific" information in its August 12, 2010 letter that would allow us to "challenge the procedures [it] utilized" to locate our requested records, *id.*, demonstrates that the search of ICE, OIG and OI&A records was likely not complete. As such, DHS should be required to conduct subsequent searches of ICE, OIG and OI&A records that follows a "systematic approach to document location," as set forth above. It should then not only provide us with the results of that search, but also provide us with the "specific" information we need to assess the completeness of the search, including the information described above.

Regarding the 28 pages of records DHS identified that it located based on its search of the HSI, an ICE program office, we appeal DHS's withholdings of portions of the 28 pages of records (enclosed with its August 12, 2010 letter).

First, on a number of pages, DHS has redacted the entire content on the page, redacting blocks of text, and thus likely failed to comply with the requirement to reasonably segregate those portions of the text that may not be subject to exemptions. FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The segregability requirement is important to FOIA's mandate to ensure broad public disclosure of government records. *See, e.g., Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999); *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1991) ("[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof") (citations and internal quotations omitted).

1313 WEST EIGHTH STREET LOS ANGELES CA 90017 t 213.977.9500 f 213.977.5299 ACLU-SC.ORG



LIBERTY | JUSTICE | EQUALITY

Chair
Stephen Rohde

President
Douglas Mirell

Chairs Emeriti
Danny Goldberg
Allan K. Jonas
Burt Lancaster*
Irving Lichtenstein, MD*
Jarl Mohn
Laurie Ostrow*
Stanley K. Sheinbaum
*deceased

Executive Director
Ramona Ripston

Deputy Executive Director
James Gilliam

Chief Counsel
Mark D. Rosenbaum

Chief Financial Officer
Brenda Maull

Communications Director
Gordon Smith

Development Director
Sandy Graham-Jones

Legal Director
Hector O. Villagra

Managing Attorney & Manheim Family Attorney for First Amendment Rights
Peter J. Eliasberg

Second, DHS fails to justify its claims of exemptions except by making conclusory, vague and over-sweeping recitations of the generic language of the exemptions. *See Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) ("[C]onclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden."). As you likely know, the agency bears the "burden . . . to justify the withholding of any requested documents." *Assoc. Press v. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009). The agency must provide "reasonably detailed explanations why any withheld documents fall within any exemption." *Carney v. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994). In addition, exemptions are "narrowly construed" and all doubts "are to be resolved in favor of disclosure." *ACLU v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008). Because DHS's response to our request does not meet these standards, its stated exemptions are not valid.

We are not concerned with DHS's withholding of personal identifying information other than those of the subjects of the Request in the 28 pages provided, like the names of ICE agents or telephone numbers. However, regarding the remaining information, we request that DHS provide unredacted versions of the records. In the alternative, we ask that DHS meet its obligation under the governing law by providing more specific information as to why the redacted portions of the records are being withheld.

We look forward to your timely response. Thank you for your consideration of this appeal.

Sincerely,

Jennie Pasquarella /LAH
Jennie Pasquarella
Staff Attorney
ACLU/SC
(213) 977-5236

Laboni Hoq
Associate
Traber & Voorhees
(626) 585-9611