1    TONY WEST
     Assistant Attorney General
2    JOHN R. TYLER
     JEFFREY M. SMITH
3    United States Department of Justice
     Civil Division
4    Federal Programs Branch
     P.O. Box 883
5    Washington, D.C. 20530
     Tel: (202) 514-5751
6    Facsimile: (202) 616-8202
     Jeffrey.Smith5@usdoj.gov
7
     *Attorneys for Defendants*
8
                    **UNITED STATES DISTRICT COURT**
9
                   **CENTRAL DISTRICT OF CALIFORNIA**
10

11   ————————————————————
     NAJI JAWDAT HAMDAN, *et al.*,              Case No: CV 10-6149-JHN-JEMx
12
     Plaintiffs,                                **DEFENDANTS' MOTION FOR**
13                                               **SUMMARY JUDGMENT**
     v.
14                                               DATE: December 5, 2011
     UNITED STATES DEPARTMENT OF                 TIME: 2:00 p.m.
15   JUSTICE, *et al.*,                          DEPT: Courtroom 790 Roybal
                                                       Hon. Jacqueline H. Nguyen
16   Defendants.

17

18   ————————————————————
     / / /
19   / / /
20   / / /

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

NOTICE OF MOTION FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . -xii-

MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.     Defendants Properly Invoked the Glomar Doctrine. . . . . . . . . . . . . . . . . . 4

          A.    ODNI, CIA, NSA, NSD, and OI&A Properly Invoked
              Exemption 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          B.    ODNI, CIA, NSA, and TSA Properly Invoked
              Exemption 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              1.    The National Security Act of 1947 as Amended
                    by the Intelligence Reform and Terrorist
                    Prevention Act of 2004 Protects the Information
                    Withheld by ODNI, CIA, and NSA. . . . . . . . . . . . . . . . . . 7

              2.    Two Other Statutes Protect the Existence or Non-Existence
                    of Responsive NSA Records from Disclosure. . . . . . . . . . . . 9

              3.    The Central Intelligence Agency Act Provides an Additional
                    Basis for the CIA's Assertion of Exemption 3. . . . . . . . . . . 10

              4.    TSA Properly Withheld the Information Regarding the
                    Existence or Non-Existence of Responsive Records
                    Within the No Fly and Selectee Lists and Secure Flight
                    Passenger Data Because Such Information Is Protected
                    from Disclosure by 49 U.S.C. § 114(r). . . . . . . . . . . . . . . . . 11

    II.    Defendants Engaged in Adequate Searches. . . . . . . . . . . . . . . . . . . . . . . 12

i

III.   Defendants*'* Withholdings Are Proper. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.   DIA, FBI, and TSA Properly Invoked Exemption 1. . . . . . . . . . . . 15

    B.   FBI and TSA Properly Invoked Exemption 2. . . . . . . . . . . . . . . . 16

    C.   DIA, and TSA Properly Invoked Exemption 3. . . . . . . . . . . . . . . 16

        1.   DIA Properly Withheld Information Protected by
           10 U.S.C. § 424. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2.   TSA Properly Withheld Information Protected by
           49 U.S.C. § 114(r). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D.   FBI and TSA Properly Invoked Exemption 5. . . . . . . . . . . . . . . . 17

        1.   Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . 17

        2.   Work Product Doctrine. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        3.   Attorney Client Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    E.   DIA, FBI, and TSA Properly Invoked Exemption 6. . . . . . . . . . . 20

    F.   FBI and TSA Properly Invoke Exemption 7. . . . . . . . . . . . . . . . . 22

        1.   Exemption 7(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        2.   Exemption 7(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        3.   Exemption 7(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

**TABLE OF AUTHORITIES**

2

3

**CASES**                                                              **PAGE(s)**

4

*Amnesty Int'l USA v. CIA*,

5
    2008 WL 2519908 (S.D.N.Y. June 19, 2008).. . . . . . . . . . . . . . . . . . . . . . . .  15

6

*Assassination Archives & Res. Ctr., Inc. v. CIA*,

7
    720 F. Supp. 217 (D.D.C. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

8

*Assassination Archives & Research Ctr. v. CIA*,

9
    334 F.3d 55 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

10

11

*Assembly of State of Cal. v. United States Dep't of Commerce*,

12
    968 F.2d 916 (9th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

13

*Baldrige v. Shapiro*,

14
    455 U.S. 345, 102 S. Ct. 1103, 71 L. Ed. 2d 199 (1982). . . . . . . . . . . . . . . . .  7

15

*Berman v. CIA*,

16
    501 F.3d 1136 (9th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

17

*Berman v. CIA*,

18
    378 F. Supp. 2d 1209 (E.D. Cal. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

19

20

*Binion v. U.S. Dep't of Justice*,

21
    695 F.2d 1189 (9th Cir. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 22

22

*Bowen v. FDA*,

23
    925 F.2d 1225 (9th Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

24

*CIA v. Sims*,

25
    471 U.S. 159, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985). . . . . . . . . . . . . . .  1, 8

26

27

*CREW v. NARA*,

28
    583 F. Supp. 2d 146 (D.D.C. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Chowdhury v. Northwest Airlines Corp.*,
   226 F.R.D. 608 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Church of Scientology v. U.S. Dep't of the Army*,
   611 F.2d 738 (9th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Citizens Comm'n on Human Rights v. FDA*,
   45 F.3d 1325 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Coastal Delivery Corp. v. U.S. Customs Serv.*,
   272 F. Supp. 2d 958 (C.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Council on American-Islamic Relations v. FBI*,
   749 F. Supp. 2d 1104 (S.D. Cal. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
   331 F.3d, 918 (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dep't of Defense v. FLRA*,
   510 U.S. 487, 114 S. Ct. 1006, 127 L. Ed. 2d 325 (1994). . . . . . . . . . . . 20, 21

*Dep't of the Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001). . . . . . . . . . . . . . . . . 2

*Dow Jones & Co. v. United States Dep't of Justice*,
   917 F.2d 571 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Dunaway v. Webster*,
   519 F. Supp. 1059 (N.D. Cal. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Edmonds Inst. v. U.S. Dep't of the Interior*,
   383 F. Supp. 2d 105 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*,
   384 F. Supp. 2d 100 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

*Essential Info., Inc. v. U.S. Info. Agency,*
    134 F.3d 1165 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Feshbach v. SEC,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 16

*Florida Immigrant Advocacy Ctr. v. NSA,*
    380 F. Supp. 2d 1332 (S.D. Fla. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Fonda v. CIA,*
    434 F. Supp. 498 (D.D.C. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.,*
    524 F.3d 1021 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Frugone v. CIA,*
    169 F.3d 772 (D.C. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

*Gardels v. CIA,*
    689 F.2d 1100 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

*General Dynamics Corp. v. United States,*
    131 S.Ct. 1900, 179 L.Ed.2d 957 (2011). . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gilmore v. Gonzales,*
    435 F.3d 1125 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gordon v. FBI,*
    388 F. Supp. 2d 1028 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . 5, 11

*Gordon v. FBI,*
    390 F. Supp. 2d 897 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Grand Jury Subpoena (Mark Torf)*,
  357 F.3d 900 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Halperin v. CIA*,
  629 F.2d 144 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hayden v. NSA*,
  608 F.2d 1381 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hickman v. Taylor*,
  329 U.S. 495, 67 S. Ct. 385 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Holliday v. Extex*,
  447 F. Supp. 2d 1131 (D. Haw. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hopkinson v. Shillinger*,
  866 F.2d 1185 (10th Cir. 1989),
  *overruled*, *Sawyer v. Smith*, 497 U.S. 227 (1990) . . . . . . . . . . . . . . . . . . . . . 21

*Hunt v. CIA*,
  981 F.2d 1116 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 8

*Islamic Shura Council of S. Cal. v. FBI*,
  635 F.3d 1160 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Iturralde v. Comptroller of Currency*,
  315 F.3d 311 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146, 110 S. Ct. 471, 107 L. Ed. 2d 462 (1989) . . . . . . . . . . . . . . . . 2

*Judicial Watch, Inc. v. DOJ*,
  432 F.3d 366 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kintera, Inc. v. Convio, Inc.*,
  219 F.R.D. 503 (S.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kissinger v. Reporters Comm. for Freedom of the Press*,
   445 U.S. 136, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980). . . . . . . . . . . . . . . . . . 2

*Knight v. NASA*,
   2006 WL 3780901 (E.D. Cal. Dec. 21, 2006).. . . . . . . . . . . . . . . . . . . . . . . . 14

*Lahr v. Nat'l Transp. Safety Bd.*,
   569 F.3d 964 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Lane v. Dep't of Interior*,
   523 F.3d 1128. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Lewis v. IRS*,
   823 F.2d 375 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Linder v. NSA*,
   94 F.3d 693 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lion Raisins v. Dep't of Agric.*,
   354 F.3d 1072 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*MacLean v. Dep't of Homeland Sec.*,
   543 F.3d 1145 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
   108 F.3d 1082 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
   108 F.3d 1089 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Marks v. United States*,
   578 F.2d 261 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Miller v. Casey*,
    730 F.2d 773 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Milner v. Dep't of the Navy*,
    575 F.3d 959 (9th Cir. 2009),
    *rev'd*, 131 S. Ct. 1259, 179 L. Ed. 2d 268 (2011). . . . . . . . . . . . . . . . . . . . . . . 3

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Morley v. CIA*,
    Civ. No. 03-2545, 2010 WL 1233381 (D.D.C. Mar. 30, 2010). . . . . . . . . . . . 5

*Morris v. Comm'r, IRS*,
    1997 WL 842413 (E.D. Cal. Nov. 25, 1997). . . . . . . . . . . . . . . . . . . . . . . . 14

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132, 95 S.Ct. 1504, 44 L. Ed. 2d 29 (1975). . . . . . . . . . . . . . . . 16, 17

*Natural Res. Def. Council v. Dep't of Def.*,
    388 F. Supp. 2d 1086 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Nevada v. Dep't of Energy*,
    517 F. Supp. 2d 1245 (D. Nev. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pacific Fisheries, Inc. v. United States*,
    539 F.3d 1143 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Phillippi v. CIA*,
    546 F.2d 1009 (D.C. Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Physicians for Human Rights v. U.S. Dep't of Defense*,
    __ F. Supp. 2d __, 2011 WL 1495942 (D.D.C. Apr. 19, 2011). . . . . . . . . . . . 16

*Public Citizen v. FAA*,
    988 F.2d 186 (D.C. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rights v. Dep't of the Treasury*,
    534 F. Supp. 2d 1126 (N.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

*Rodriguez v. McLeod*,
    2008 WL 5330802 (E.D. Cal. Dec. 18, 2008).. . . . . . . . . . . . . . . . . . . . . . . 12

*Rosenfeld v. U.S. Dep't of Justice*,
    57 F.3d 803 (9th Cir. 1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Sakamoto v. United States EPA*,
    443 F. Supp. 2d 1182 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shannahan v. IRS*,
    637 F. Supp. 2d 902 (W.D. Wash. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. ATF*,
    977 F. Supp. 496 (D.D.C. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. Dep't of Justice v. Landano*,
    508 U.S. 165, 113 S. Ct. 2014, 124 L. Ed. 84 (1993).. . . . . . . . . . . . . . . . . 23

*U.S. Dep't of State v. Washington Post Co.*,
    456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).. . . . . . . . . . . . . . . . 20

*U.S. ex rel. Bagley v. TRW, Inc.*,
    212 F.R.D. 554 (C.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Martin*,
    278 F.3d 988 (9th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Weber Aircraft Corp.*,
    465 U.S. 792, 104 S. Ct. 1488 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Voinche v. F.B.I.*,
    940 F. Supp. 323 (D.D.C. 1996),
    *aff'd*, 1997 WL 411685 (D.C. Cir. June 19, 1997). . . . . . . . . . . . . . . . . . . . . . 22

*Washington Post Co. v. Dep't of Health & Human Servs.*,
    690 F. 2d 252 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wheeler v. CIA*,
    271 F. Supp. 2d 132 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wilbur v. CIA*,
    355 F.3d 675 (D.C. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Winter v. NSA*,
    569 F. Supp. 545 (S.D. Cal. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wolf v. CIA*,
    569 F. Supp.2d 1 (D.D.C. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zemansky v. EPA*,
    767 F.2d 569 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

**FEDERAL STATUTES**

5 U.S.C. § 552(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. § 552(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. 552(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

5 U.S.C. § 552(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5 U.S.C. § 552(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 16

5 U.S.C. § 552(b)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 U.S.C. § 552(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5 U.S.C. § 552(b)(7)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

5 U.S.C. § 552(b)(7)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

5 U.S.C. § 552(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

10 U.S.C. § 424. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. § 798. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

49 U.S.C. § 114(r). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

49 U.S.C. § 46110(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. § 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

50 U.S.C. § 403-1(i)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

50 U.S.C. § 403g. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## OTHER AUTHORITIES

49 C.F.R. § 1520.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 26(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009). . . . . . . . . . . . . . 6

H.R. Rep. No. 89-1497, at 6 (1966),
    *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423. . . . . . . . . . . . . . . . . . . . . . . . 2

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that Defendants United States Department of Justice, the Federal Bureau of Investigation, U.S. National Central Bureau-Interpol, the National Security Division, the Central Intelligence Agency, the United States Department of Defense, the Defense Intelligence Agency, the National Security Agency, the Defense Office of Freedom of Information, the United States Department of Homeland Security, Customs and Border Protection, the Transportation Security Administration, Immigration and Customs Enforcement, the Office of Intelligence and Analysis, and the Office of the Director of National Intelligence[1] will move pursuant to Fed. R. Civ. P. 56 for summary judgment in the Courtroom of the Honorable Jacqueline H. Nguyen on December 5, 2011, at 10:00 a.m, or at such other time as the Court may direct.  This motion will seek entry of summary judgment in favor of the moving Defendants, and dismissal of all claims with respect thereto.

The grounds for this motion are that no genuine issue of material fact exists and that defendants are entitled to summary judgment as a matter of law.  The grounds for this motion are set forth in the memorandum of points and authorities submitted herewith, and upon such other and further arguments, documents, and grounds as may be advanced to the Court in the future.  This motion is made pursuant to the Scheduling Order entered by the Court at the request of the Parties.

---

[1] This Motion is thus made on behalf of all named Defendants except for the Department of State, which will move separately, and the Department of Defense Office of the Inspector General, which has been dismissed.

1   Dated: August 10, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

TONY WEST
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

*/s/ Jeffrey M. Smith*
JEFFREY M. SMITH
Senior Counsel
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C.  20530
Telephone: (202) 5l4-5751
Facsimile: (202) 616-8202
Jeffrey.Smith5@usdoj.gov

*Counsel for Defendants*

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs have made an extremely broad Freedom of Information Act (*"FOIA"*) request asking virtually every intelligence, national security, law enforcement, and homeland security office in the United States government to produce every record that has anything to do with any of three individuals and a company – Naji Hamdan, an American citizen resident in Lebanon who has been convicted of terrorism related charges in the United Arab Emirates, his brother Hossam Hemdan, an automotive parts business once owned by Hamdan, and Jehad Suliman, a manager of that business – with no other limitations on subject matter.  The fifteen moving Defendants (as well as the Department of State which intends to move separately) have fulfilled their FOIA responsibilities, conducting broad searches and, where applicable, producing substantial amounts of responsive, non-exempt records.

Nevertheless, Plaintiffs have refused to dismiss their claims principally because they have not obtained confidential national security and law enforcement information that may or may not exist, and that, if it does exist, is not properly obtainable by FOIA.  Because Plaintiffs' legal positions are inconsistent with prevailing law, and would result in the disclosure of the very national security and law enforcement sensitive information that FOIA is intended to protect, their positions should be rejected.  And, because Defendants have fulfilled their responsibilities under FOIA, their Motion for Summary Judgment should be granted.

## ARGUMENT

FOIA provides public access to government records.  *See CIA v. Sims*, 471 U.S. 159, 166-67, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985).  *"Congress recognized, however, that public disclosure is not always in the public interest," id.* at 166-67, and FOIA *"contemplates that some information may legitimately be kept from the public." Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009).  Indeed, it is self evident that  *"protecting our national security sometimes requires keeping information about our military, intelligence, and diplomatic efforts secret," General Dynamics Corp. v. United*

1    *States*, 131 S. Ct. 1900, 1905, 179 L. Ed.2d 957 (2011), and this proposition is embedded

2    in FOIA.  *See* 5 U.S.C. 552(b)(1).  Moreover, *"*FOIA itself permits the government to

3    withhold from plaintiffs many types of documents that are not classified,*"* including,

4    *inter alia*, records whose disclosure would cause a clearly unwarranted invasion of

5    personal privacy and law enforcement records *"*where the production of such law

6    enforcement records would impede a valid government purpose or harm an individual*'s*

7    interest.*"*  *Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1167 (9th Cir. 2011).

8    FOIA is therefore designed *" '*to reach a workable balance between the right of the public

9    to know and the need of the Government to keep information in confidence to the extent

10   necessary without permitting indiscriminate secrecy.*' "*  *John Doe Agency v. John Doe*

11   *Corp.*, 493 U.S. 146, 152, 110 S. Ct. 471, 107 L. Ed. 2d 462 (1989) (quoting H.R. Rep.

12   No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423).

13         To strike this balance, Congress included in FOIA nine exemptions that protect

14   certain documents from public disclosure.  *See* 5 U.S.C. § 552(b).  *"*A district court only

15   has **jurisdiction** to compel an agency to disclose **improperly withheld** agency records,*"*

16   *i.e.*, records that do *"*not fall within an exemption.*"*  *Minier v. CIA*, 88 F.3d 796, 803

17   (9th Cir. 1996) (emphasis in original); *see also* 5 U.S.C. § 552(a)(4)(B); *Kissinger v.*

18   *Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150, 100 S. Ct. 960, 63 L. Ed.

19   2d 267 (1980).  Thus, *"*[r]equiring an agency to disclose exempt information is not

20   authorized by FOIA.*"*  *Minier*, 88 F.3d at 803 (quoting *Spurlock v. FBI*, 69 F.3d 1010,

21   1016 (9th Cir. 1995)).  While the court should narrowly construe FOIA*'s* exemptions,

22   *see Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.

23   Ct. 1060, 149 L. Ed. 2d 87 (2001), the exemptions *"*are intended to have meaningful

24   reach and application,*"* *John Doe*, 493 U.S. at 152.

25         FOIA cases are typically resolved through motions for summary judgment

26   pursuant to Fed. R. Civ. P. 56. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134

27   (9th Cir. 2008); *Natural Res. Def. Council v. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094-

28   95 (C.D. Cal. 2005).  *"*Courts are permitted to rule on summary judgment . . . solely on

1   the basis of government affidavits describing the documents sought." *Lion Raisins v.*
2   *Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004).  The Government bears the burden
3   of proving that the withheld records fall within the exemptions it invokes, but it "need
4   not specify its objections [to disclosure] in such detail as to compromise the secrecy of
5   the information." *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir. 1987); *Berman v. CIA*,378
6   F. Supp. 2d 1209, 1214 (E.D. Cal. 2005).  Instead, "[t]he agency may meet its burden by
7   submitting a detailed affidavit showing that the information logically falls within the
8   claimed exemptions." *Minier*, 88 F.3d at 800 (internal quotation omitted).

9        Furthermore, the Court must accord a presumption of good faith to an agency
10  affidavit submitted in support of claimed exemptions. *Lawyers' Comm. for Civil*
11  *Rights v. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008); *see*
12  *also Milner v. Dep't of the Navy*, 575 F.3d 959, 963 (9th Cir. 2009) ("a district
13  court must accord substantial weight to [agency] affidavits," absent controverting
14  evidence of bad faith), *rev'd on other grounds*, 131 S. Ct. 1259, 179 L. Ed. 2d 268
15  (2011).  All that is required is that "the affiants [be] knowledgeable about the
16  information sought" and that "the affidavits [be] detailed enough to allow the court to
17  make an independent assessment of the government's claim." *Lane*, 523 F.3d at 1135
18  (quoting *Lion Raisins*, 354 F.3d at 1079).  "If the affidavits contain reasonably detailed
19  descriptions of the documents and allege facts sufficient to establish an exemption, the
20  district court need look no further." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d
21  1325, 1329 (9th Cir. 1995).

22       Courts afford even greater deference to the agency's declarations in cases relating
23  to national security because national security is "a uniquely executive purview." *Ctr.*
24  *for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d, 918 926-27 (D.C. Cir. 2003).
25  Because "courts have little expertise in either international diplomacy or counter-
26  intelligence operations, [they] are in no position to dismiss the [agency's] facially
27  reasonable concerns" about the harm that disclosure could cause to national security.
28  *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999).  Thus, for exemptions related to

national security, *"the district court [is] required to accord 'substantial weight' to [the agency's] affidavits"* as long as they are not *"controverted by contrary evidence in the record or by evidence of [agency] bad faith."* *Hunt v. CIA,* 981 F.2d 1116, 1119 (9th Cir. 1992) (citing *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  Similarly, courts accord *"special deference"* to law enforcement agencies' assertions of exemptions pertaining to law enforcement records.  *Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1193 (9th Cir. 1983); *Council on American-Islamic Relations v. FBI*, 749 F. Supp. 2d 1104, 1117 (S.D. Cal. 2010).

The same material may be subject to more than one exemption.  *"[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other."*  *Larson v. Dep't of State*, 565 F.3d 857, 862-63 (D.C. Cir. 2009); *see also Minier*, 88 F.3d at 800-01.

## I.    Defendants Properly Invoked the Glomar Doctrine

In some instances, an agency's mere acknowledgment of responsive records may *"cause harm cognizable under an FOIA exception."*  *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).  In these cases, a *"government agency may issue a 'Glomar Response,'*[1] *that is, refuse to confirm or deny the existence of certain records."*  *Minier*, 88 F.3d at 800 (citing *Hunt*, 981 F.2d at 1118).  A Glomar response is appropriate where confirmation of the existence *vel non* of responsive records is itself exempt from disclosure under FOIA.  *Id.*  In a Glomar case, the question is not whether the underlying documents are themselves exempt from disclosure under FOIA, but rather whether the fact of the existence or non-existence of responsive documents is exempt from disclosure.  *See Phillippi v. CIA*, 546 F.2d 1009, 1013 n.7 (D.C. Cir. 1976) (*"[T]he 'document' the Agency is currently asserting the right to withhold is confirmation or denial of the existence of the requested records."*).

---

[1] The Glomar response takes its name from *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976), where the court upheld the CIA's refusal to confirm or deny the existence of records connected to activities of a ship named the Hughes Glomar Explorer.

1    Courts have consistently upheld Glomar responses where, as here, confirming or
2    denying the existence of records would either reveal classified information protected by
3    FOIA Exemption 1, disclose information protected by statute in contravention of FOIA
4    Exemption 3; and or disclose law enforcement techniques protected by Exemption 7(E).
5    *See*, *e.g.*, *Minier*, 88 F.3d at 800-01 (Exemption 3); *Hunt*, 981 F.2d at 1118
6    (Exemption 3); *Larson, et al. v. Department of State, et al.*, 565 F.3d 857, 861-62 (D.C.
7    Cir. 2009) (Exemptions 1, 3); *Frugone*, 169 F.3d at 774-75 (Exemptions 1, 3); *Morley v.*
8    *CIA*, Civ. No. 03-2545, 2010 WL 1233381, at *9-*10 (D.D.C. Mar. 30, 2010)
9    (Exemption 3); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005) (Exemption
10   7(E)); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 140 (D.D.C. 2003) (Exemption 1).
11   In the instant case, Glomar responses with regard to certain sensitive record
12   systems by Defendants ODNI, NSA, CIA, NSD, OI&A, and TSA, are necessary to
13   ensure that these Defendants do not reveal exempt information simply through a pattern
14   of responses.  *See, e.g.*, SOUF ¶¶ 11-12, 19-24, 31.  If an agency only invoked a Glomar
15   response when it possessed responsive records, and notified requesters when it did not
16   have responsive records, the Glomar response would inform a requester that the agency
17   possesses information about a given person, and this could provide valuable information
18   to our Nation's adversaries.   Furthermore, if the Glomar response were not invoked, the
19   mere processing of any responsive, but exempt, records could reveal classified and
20   exempt information even when the underlying records were protected from disclosure.
21   For instance, in producing an itemized *Vaughn* index, the agency would need to reveal
22   "a short description of the content of each individual document," which could reveal
23   classified and exempt information.  *Edmonds Inst. v. U.S. Dep't of the Interior*, 383 F.
24   Supp. 2d 105, 109 (D.D.C. 2005).  The Glomar response provides an agency the ability
25   to protect its legitimate national security and law enforcement concerns.
26
27
28

1   **A.    ODNI, CIA, NSA, NSD, and OI&A Properly Invoked Exemption 1**

2          ODNI, CIA, NSA, NSD, and OI&A properly invoked Exemption 1, which protects

3   from disclosure records that are: *"*(A) specifically authorized under criteria established

4   by an Executive order to be kept secret in the interest of national defense or foreign

5   policy and (B) are in fact properly classified pursuant to such Executive order.*"*  5

6   U.S.C. § 552(b)(1).  Executive Order (*"E.O."*) No. 13,526, 75 Fed. Reg. 707 (Dec. 29,

7   2009), which governs the classification of national security information, *"*specifically

8   countenances the Glomar Response, permitting a classifying agency to refuse to confirm

9   or deny the existence or nonexistence of requested records whenever the fact of their

10  existence or nonexistence is itself classified.*"  Wilner v. NSA*, 592 F.3d 60, 71 (2d Cir.

11  2009) (discussing E.O. 12,958, the predecessor to E.O. 13,526 that included the same

12  operative language).

13         In this case, whether or not records exist that are responsive to plaintiffs *'* FOIA

14  request is classified information within the purview of E.O. 13,526, and thus is exempt

15  from disclosure pursuant to FOIA Exemption 1, because the withheld information

16  satisfies four conditions:

17         (1) an original classification authority is classifying the information; (2) the

18         information is owned by, produced by or for, or is under the control of the

19         United States Government; (3) the information falls within one or more of

20         the categories of information listed in section 1.4 of th[e] order; and (4) the

21         original classification authority determines that the unauthorized disclosure

22         of the information reasonably could be expected to result in damage to the

23         national security, which includes defense against transnational terrorism,

24         and the original classification authority is able to identify or describe the

25         damage.

26  E.O. 13,526 § 1.1(a).  With regard to the fourth condition, the Court must give particular

27  deference to the agencies *'* determinations about potential damage to national security.

28  *See, e.g.*, *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990); *Frugone*, 169 F.3d at

1  775.  Each of the Defendants asserting an Exemption 1 Glomar easily satisfies each of

2  these conditions.  *See* SOUF ¶¶ 11-12, 19-24, 31, 66, 212.

3         Because the existence or non-existence of the material sought is itself classified,

4  each of the Glomar responses is proper pursuant to FOIA Exemption 1.

5  **B.    ODNI, CIA, NSA, and TSA Properly Invoked Exemption 3**

6         Defendants also properly invoked Exemption 3, which applies to records that are

7  *"*specifically exempted from disclosure*"* by other federal statutes *"*if that statute

8  establishes particular criteria for withholding the information or refers to the particular

9  types of material to be withheld.*"*  5 U.S.C. § 552(b)(3).  In promulgating FOIA,

10  Congress included Exemption 3 to recognize the existence of collateral statutes that limit

11  the disclosure of information held by the government, and to incorporate such statutes

12  within FOIA*'*s exemptions.  *See Baldrige v. Shapiro*, 455 U.S. 345, 352-53, 102 S. Ct.

13  1103, 71 L. Ed. 2d 199 (1982); *Essential Info., Inc. v. U.S. Info. Agency*, 134 F.3d 1165,

14  1166 (D.C. Cir. 1998).  Under Exemption 3, *"*the sole issue for decision is the existence

15  of a relevant statute and the inclusion of withheld material within the statute*'*s

16  coverage.*"  Fitzgibbon*, 911 F.2d at 761-62.

17        The declarations submitted with this Motion demonstrate that the asserting

18  Defendants are entitled to summary judgment pursuant to the *"*two-part inquiry [that]

19  determines whether Exemption 3 applies to a given case.*"  Minier,* 88 F.3d at 800-01

20  (citing *Sims*, 471 U.S. at 167).  Under this two-step process: *"*First, a court must

21  determine whether there is a statute within the scope of Exemption 3.  Then, it must

22  determine whether the requested information falls within the scope of the statute.*"  Id.*

23  **1.    The National Security Act of 1947 as Amended by the Intelligence**

24         **Reform and Terrorist Prevention Act of 2004 Protects the Information**

25         **Withheld by ODNI, CIA, and NSA**

26        The National Security Act of 1947, 50 U.S.C. § 403-1(i)(1), is a statute that falls

27  *"*within the scope*"* of Exemption 3.  Section 102A(i)(1) of that Act (as amended by the

28  Intelligence Reform and Terrorist Prevention Act of 2004) mandates that the Director of

1  National Intelligence *"protect intelligence sources and methods from unauthorized

2  disclosure."* 50 U.S.C. § 403-1(i)(1).  The Supreme Court has held that *"'intelligence*

3  *sources and methods,'* clearly *'refers to particular types of matters,'* 5 U.S.C.

4  § 552(b)(3)(B), and thus that the National Security Act of 1947 qualifies as a

5  withholding statute pursuant to FOIA Exemption 3.  *Sims*, 471 U.S. at 167 (collecting

6  cases) (*"The 'plain meaning'* of the relevant statutory provisions is sufficient to resolve

7  the question."*).

8       The National Security Act, moreover, provides *"wide-ranging authority"* to

9  protect intelligence sources and methods.  *Id.* at 177.  The Supreme Court observed that

10  Congress did not limit the scope of *"intelligence sources and methods"* in any way.  *Id.*

11  Rather, Congress *"simply and pointedly protected all sources of intelligence that*

12  provide, or are engaged to provide, information the Agency needs to perform its statutory

13  duties with respect to foreign intelligence."*  *Id.* at 169-70.  As the Ninth Circuit has

14  recognized, the National Security Act operates as a *"near-blanket FOIA exemption."*

15  *Hunt*, 981 F.2d at 1120, 1121 (quotation omitted); *accord Berman v. CIA*, 501 F.3d

16  1136, 1140 (9th Cir. 2007).

17       Moreover, the mandate to withhold information under Exemption 3 pursuant to the

18  NSA is broader than authority to withhold under Exemption 1 pursuant to Executive

19  Order (*"E.O."*) No. 13,526.  *See Gardels*, 689 F.2d at 1107 (executive order governing

20  classification *"not designed to incorporate into its coverage the CIA's full statutory*

21  power to protect all of its *'intelligence sources and methods'"*).  For example, unlike

22  E.O. 13,526, the National Security Act does not require a determination that the

23  disclosure of information would be expected to result in damage to the national security.

24  *Compare* 50 U.S.C. §§ 403-1(i)(1), 403g, *with* E.O. 13,526, § 1.1(a)(4); *see also*

25  *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 58 n.3 (D.C. Cir. 2003).

26       ODNI, CIA, and NSA have each demonstrated that the information at issue,

27  namely the existence or non-existence of responsive records, is exempt pursuant to the

28  Executive Branch's *"wide-ranging"* statutory authority (and responsibility) to protect

1    intelligence sources and methods.  *See* SOUF ¶¶ 13, 25, 35. These Defendants have thus

2    demonstrated that *"the requested information falls within the scope of the statute,"*

3    *Minier*, 88 F.3d at 800-01, because responding to plaintiffs' FOIA request *"can*

4    reasonably be expected to lead to unauthorized disclosure of intelligence sources and

5    methods." *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980).

6           **2.      Two Other Statutes Protect the Existence or Non-Existence of**

7                     **Responsive NSA Records from Disclosure**

8           The existence or non-existence of responsive NSA records is exempt from

9    disclosure pursuant to two statutes in addition to the National Security Act of 1947.

10   First, this information is also exempt pursuant to the National Security Agency Act of

11   1959, which provides that *"[n]othing in this Act or any other law . . . shall be construed*

12   to require the disclosure of the organization or any function of the National Security

13   Agency, [or] of any information with respect to the activities thereof." 50 U.S.C. § 402

14   note.  In enacting the National Security Agency Act, Congress determined that disclosure

15   of any information relating to NSA activities is potentially harmful to national security.

16   *Lahr*, 569 F.3d at 985; *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979).  Federal

17   courts have held that the protection provided by this statutory privilege is, by its very

18   terms, absolute.  *See, e.g.*, *Linder v. NSA*, 94 F.3d 693 (D.C. Cir. 1996).  Section 6 states

19   unequivocally that, notwithstanding any other law, including FOIA, NSA cannot be

20   compelled to disclose any information with respect to its activities.  *See Hayden*, 608

21   F.2d at 1390.  Further, NSA is not required to demonstrate specific harm to national

22   security when invoking this statutory privilege but need only show that the information

23   relates to the organization or any function of the Agency.  *Lahr*, 569 F.3d at 985 (*"The*

24   agency need not make a specific showing of potential harm to national security because

25   Congress has already, in enacting the statute, decided that disclosure of NSA activities is

26   potentially harmful." (quotation omitted)).  To invoke this privilege, NSA must

27   demonstrate only that the information sought to be protected falls within the scope of the

28   statute.  *Hayden*, 608 F.2d at 1390.  NSA's functions and activities are therefore

1  protected from disclosure regardless of whether or not the information is classified. *Id.*

2  The National Security Agency Act exempts the information at issue here from disclosure

3  because "[a]cknowledging the existence or nonexistence of the information Plaintiffs

4  request would reveal NSA's organization, function, and activities." SOUF ¶ 33.

5    Yet another statute providing for the exemption from FOIA of the existence or

6  non-existence of responsive NSA documents is 18 U.S.C. § 798, which prohibits the

7  disclosure of classified information (i) concerning the communications intelligence

8  activities of the United States or (ii) obtained by the process or communication

9  intelligence derived from the communications of any foreign government. *See* 18 U.S.C.

10  § 798(a). The statute defines "communications intelligence" as "all procedures and

11  methods used in the interception of communications and the obtaining of information

12  from such communications by other than the intended recipients." 18 U.S.C. § 798(b).

13  Because this statute clearly identifies specific information that is to be kept from the

14  public, it qualifies for FOIA Exemption 3. *See Florida Immigrant Advocacy Ctr. v. NSA*,

15  380 F. Supp. 2d 1332, 1340 (S.D. Fla. 2005) ("Other exempting statutes include . . . 18

16  U.S.C. § 798."); *Winter v. NSA*, 569 F. Supp. 545 (S.D. Cal. 1983) (finding that 18

17  U.S.C. § 798 is a "statute[] within Exemption 3"). 18 U.S.C. § 798 exempts the

18  information at issue here from disclosure because disclosure of whether NSA had

19  records relating to a particular requestor would "reveal the limitations of NSA's SIGINT

20  capabilities." SOUF ¶ 34.

21    **3.    The Central Intelligence Agency Act Provides an Additional Basis for**

22          **the CIA's Assertion of Exemption 3**

23    The Central Intelligence Agency Act of 1949 provides that the CIA shall be

24  exempt from any law which would "require the publication or disclosure of the

25  organization, functions, names, official titles, salaries, or numbers of personnel

26  employed by the Agency." 50 U.S.C. § 403g. The Ninth Circuit has held that this

27  statute qualifies as an Exemption 3 statute. *Minier v. CIA*, 88 F.3d 796, 801 (9th Cir.

28  1996). Because, "acknowledging the existence or nonexistence of the requested records

would require the CIA to disclose information about its core functions," in contravention of the Central Intelligence Agency Act of 1949, this information is exempt pursuant to FOIA Exemption 3.  SOUF ¶ 26.

**4. TSA Properly Withheld the Information Regarding the Existence or Non-Existence of Responsive Records Within the No Fly and Selectee Lists and Secure Flight Passenger Data Because Such Information Is Protected from Disclosure by 49 U.S.C. § 114®**

49 U.S.C. § 114® provides that "[n]otwithstanding section 552 of title 5 [*i.e.*, FOIA], the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security . . . if the Under Secretary decides that disclosing the information would . . . be detrimental to the security of transportation." 49 U.S.C. § 114(r)(1)(c).  TSA has implemented this responsibility by designating certain categories of information as Sensitive Security Information. *See* 49 C.F.R. § 1520.5.  Information that falls within the ambit of Sensitive Security Information is exempt from disclosure pursuant to Exemption 3. *E.g.*, *Public Citizen v. FAA*, 988 F.2d 186, 195 (D.C. Cir. 1993); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384  F. Supp. 2d 100, 110 n. 10 (D.D.C. 2005); *Gordon v. FBI*, 390 F. Supp. 2d 897, 899-900 (N.D. Cal. 2004).

Whether information about particular individuals is or is not present within the No Fly and Selectee Lists and/or the Secure Flight Passenger Data is protected Sensitive Security Information and thus TSA's Glomar response is proper.  SOUF ¶159; *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005) ("Requiring the government to reveal whether a particular person is on the watch lists would enable criminal organizations to circumvent the purpose of the watch lists by determining in advance which of their members may be questioned."); 49 C.F.R. § 1520.5(b)(9)(ii) (prohibiting from disclosure "[i]nformation and sources of information used by a passenger or property screening program or system, including an automated screening system."). TSA's final determination to designate particular information as Sensitive

1   Security Information is reviewable only in the court of appeals and not through a FOIA

2   action.  See 49 U.S.C. § 46110(a) (*"a person disclosing a substantial interest in an order*

3   *issued by [TSA] in whole or in part under this part, part B, or subsection (l) or (s) of*

4   *section 114 may apply for review of the order by filing a petition for review in the*

5   *United States Court of Appeals for the District of Columbia Circuit or in the court of*

6   *appeals of the United States for the circuit in which the person resides or has its principal*

7   *place of business."*[2]); *MacLean v. Dep't of Homeland Sec.*, 543 F.3d 1145, 1149 (9th

8   Cir. 2008); *Gilmore v. Gonzales*, 435 F.3d 1125, 1133 (9th Cir. 2006); *Chowdhury v.*

9   *Northwest Airlines Corp.*, 226 F.R.D. 608, 610-15 (N.D. Cal. 2004).

10  **II.     Defendants Engaged in Adequate Searches**

11          In those instances where a Glomar response is not appropriate, a responding

12  agency is required to conduct a search that is *"reasonably calculated to uncover*

13  *responsive documents."  Lahr v. Nat'l Transportation Safety Bd.*, 569 F.3d 964, 987 (9th

14  Cir. 2009); *accord Citizens Comm'n on Human Rights v. FDA,* 45 F.3d 1325, 1328 (9th

15  Cir. 1995).  *"'[A]ffidavits describing agency search procedures are sufficient for*

16  purposes of summary judgment . . . if they are relatively detailed in their description of

17  the files searched and the search procedures, and if they are nonconclusory and not

18  impugned by evidence of bad faith."  Citizens Comm'n*, 45 F.3d at 1328 (quotation

19  omitted).  In determining the sufficiency of a search, *"'the issue to be resolved is not*

20  whether there might exist any other documents possibly responsive to the request, but

21  rather whether the ***search*** for those documents was ***adequate*.'"  Id.* (quotation omitted)

22  (emphasis in original).  In general, the sufficiency of a search is determined by the

23  *"appropriateness of the methods"* used to carry it out, *"not by the fruits of the search."*

24  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  Accordingly,

25  the failure of an agency *"to turn up a particular document, or mere speculation that as yet*

26

27          [2] Although section 46110 refers to TSA final orders issued pursuant to *"subsection*
        *(1) or (s) of section 114,"* subsection (s) of section 114 was later redesignated as

28  subsection ®.  See Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, Div. E,
        § 568(a), 121 Stat. 1844, 2092 (2007).

1    uncovered documents might exist, does not undermine the determination that the agency

2    conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675,

3    678 (D.C. Cir. 2004).  Here, the declarations demonstrate that Defendants conducted

4    legally adequate searches of their non-classified records.  As described below, these

5    declarations are "'relatively detailed in their description of the files searched and the

6    search procedures, . . . nonconclusory and not impugned by evidence of bad faith.'"

7    *Citizens Comm'n*, 45 F.3d at 1328.

8        Search declarations are sufficient for summary judgment if they appropriately

9    describe "the files searched and the search procedures, and if they are nonconclusory and

10   not impugned by evidence of bad faith." *Zemansky v. EPA*, 767 F.2d 569, 573 (9th Cir.

11   1985) (quotation omitted); *accord Citizens Comm'n*, 45 F.3d at 1328; *Rodriguez v.*

12   *McLeod*, 2008 WL 5330802, at *5 (E.D. Cal. Dec. 18, 2008) ("Affidavits describing the

13   agency's search procedures are sufficient 'if they are reasonably detailed in their

14   description of the files searched and the search procedure.'" (quoting *Zemansky*)).  Thus,

15   the required contents of an adequate search declaration consist of two things: (1) a

16   reasonably detailed, nonconclusory description of the files searched, and (2) a reasonably

17   detailed, nonconclusory description of the procedure utilized to conduct the search.  *E.g.*,

18   *Sakamoto v. United States EPA*, 443 F. Supp. 2d 1182, 1197-98 (N.D. Cal. 2006) (search

19   declaration was sufficient where it stated that the agency concluded the most likely

20   location for responsive documents was a particular office, and described the search of

21   that office).

22       The adequacy of an agency's search "is judged by a standard of reasonableness."

23   *Zemansky*, 767 F.2d at 571.  In determining the sufficiency of a search, "'the issue to be

24   resolved is not whether there might exist any other documents possibly responsive to the

25   request, but rather whether the search for those documents was adequate.'" *Citizens*

26   *Comm'n*, 45 F.3d at 1328.  "[T]here is no requirement that an agency search every

27   record system or that a search be perfect." *Lawyers' Comm. for Civil Rights of San*

28   *Francisco Bay Area v. United States Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1130

1   (N.D. Cal. 2008) (citing *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990), and

2   *Meeropol v. Meese*, 790 F.2d 942, 955-56 (D.C. Cir. 1986)).  Rather, the search is

3   sufficient if it was *"conducted in good faith using methods that are likely to produce the*

4   *information requested if it exists."  Lawyers' Comm.*, 534 F. Supp. 2d at 1130.  A search

5   must be reasonably calculated to find any responsive documents, but it need not be

6   perfect or exhaustive, and an agency is not required to search a record system simply

7   because a plaintiff speculates that it could contain responsive documents when the

8   agency has determined, in good faith, that this is not reasonably likely.  *See, e.g.*,

9   *Shannahan v. IRS*, 637 F. Supp. 2d 902, 913 (W.D. Wash. 2009) (upholding a search that

10  was *"reasonable, although not exhaustive"*); *Meeropol v. Meese*, 790 F.2d 942, 956

11  (D.C. Cir. 1986) (holding that *"a search need not be perfect, only adequate"*).

12      Indeed, a FOIA request that purports to require an agency to search every record

13  system or every office is impermissible.  *See Marks v. United States*, 578 F.2d 261, 263

14  (9th Cir. 1978); *Morris v. Comm'r, IRS*, 1997 WL 842413, at *1 (E.D. Cal. Nov. 25,

15  1997).  In *Marks*, the Ninth Circuit rejected the plaintiff's contention that the FBI was

16  required to conduct a broad search of multiple offices, holding that *"even if [plaintiff] is*

17  considered to have requested an all-encompassing search of the records of every field

18  office of the FBI, the FOIA does not mandate that the FBI comply.*"  578 F.2d at 263.

19  The Ninth Circuit explained that FOIA's statutory requirement that a proper request

20  contain a *"reasonable description relates not only to subject matter,"* but *"also relates to*

21  place of search.*"  Id.*  Thus, a FOIA request that purported to require an ill-defined

22  search throughout the agency would be improper and an agency is not required to

23  conduct such a search.  *Id.*;[3] *see also Assassination Archives & Res. Ctr., Inc. v. CIA*, 720

---

24      [3] The *Marks* court favorably cited an earlier district court holding that a *"[r]equest*
25  for all documents filed under plaintiff's name or which *'concern her'* but do not mention
    her name is too broad.*"*  578 F.2d at 263 (citing *Fonda v. CIA*, 434 F. Supp. 498 (D.D.C.
26  1977); *see also id.* (favorably citing *Mason v. Callaway*, 554 F.2d 129 (4th Cir. 1977)).
    This strongly suggests that Plaintiffs' broad request, which is functionally identical to
27  the request in *Fonda* (aside from the fact that it concerns three individuals and an entity
    whereas *Fonda* concerned just one individual) is improper and that Defendants were not
28  required to search at all in the absence of a narrowing of the request.

DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT                    -14-

1   F. Supp. 217, 219 (D.D.C. 1989) (*"FOIA was not intended to reduce government

2   agencies to full time investigators on behalf of requesters."*); *accord Knight v. NASA*,

3   2006 WL 3780901, at *5 (E.D. Cal. Dec. 21, 2006) (holding that *"there is no*

4   *requirement that an agency search all possible sources in response to a FOIA request*

5   *when it believes all responsive documents are likely to be located in one place"*); *Wolf v.*

6   *CIA*, 569 F. Supp.2d 1, 8 (D.D.C. 2008) (*"An agency's search must be reasonably*

7   *calculated to uncover all relevant documents, but the agency need not search every*

8   *conceivable record system."* (internal quotation omitted)).

9        The broad FOIA request submitted by Plaintiffs to fourteen government

10   components has led to a nearly innumerable number of extensive searches of record

11   systems throughout the law enforcement, homeland security, national security, and

12   intelligence offices of our government.  Defendants have met and exceeded the

13   requirements for adequate searching set forth in *Marks*, *Zemansky*, *Lahr*, and other Ninth

14   Circuit caselaw.  *See* SOUF ¶¶ 7-8 (ODNI), 16-17 (CIA), 37-41 (DIA), 62-65 (NSD), 69-

15   77 (FBI), 127-139 (TSA), 209-211 (OI&A).[4]  Because Defendants have presented

16   *"relatively detailed"* descriptions, *Citizens Comm'n*, 45 F.3d at 1328, of searches that

17   were reasonably calculated to locate any responsive records subject to FOIA that might

18   exist (save for those that may exist in systems where a *Glomar* response was properly

19   provided), Defendants have conducted adequate searches.

20   **III.   Defendants' Withholdings Are Proper**

21   **A.   DIA, FBI, and TSA Properly Invoked Exemption 1**

22        As described above, Exemption 1 protects from disclosure information that is

23   properly classified.  *See supra* Part I.A.  DIA, FBI, and TSA have each properly invoked

24

25   _____

26        [4] DoD OFOI did not conduct a search because as laid out in detail in the Statement
     of Uncontroverted Material Facts, OFOI determined after reviewing Plaintiffs' multiple

27   submissions that there was no reason to believe that any responsive records would be
     contained in the records systems that OFOI is responsible for.  SOUF ¶¶ 51-58.  Of

28   course, *"FOIA does not demand a search that would be futile."*  *Amnesty Int'l USA v.*
     *CIA*, 2008 WL 2519908, at *11 (S.D.N.Y. June 19, 2008).

**DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT**                     -15-

this exemption to withhold properly classified material.  SOUF ¶¶ 43-45 (DIA), 79-100 (FBI), 141 & TSA *in camera* submission (TSA).

**B.    FBI and TSA Properly Invoked Exemption 2**

Exemption 2 protects from disclosure information that is *"*related solely to the internal personnel rules and practices of an agency.*"*  5 U.S.C. § 552(b)(2).  In this case, FBI and TSA have properly invoked this exemption to withhold routine, internal personnel information, namely personnel phone numbers, office numbers, internal e-mail addresses, and references to an internal TSA security procedure.  SOUF ¶¶ 101, 142-144.

**C.    DIA and TSA Properly Invoked Exemption 3**

As described above, Exemption 3 protects from disclosure information that specifically exempted from disclosure*"* by other federal statutes if that statute establishes particular criteria for withholding the information or refers to the particular types of material to be withheld.  5 U.S.C. § 552(b)(3); *see also supra* Part I.B.  Under Exemption 3, *"*the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.*"*  *Fitzgibbon*, 911 F.2d at 761-62.

**1.    DIA Properly Withheld Information Protected by 10 U.S.C. § 424**

10 U.S.C. § 424 provides that *"*no provision of law shall be construed to require the disclosure of [either] (1) the organization or any function of [the Defense Intelligence Agency]; or (2) the number of persons employed by or assigned or detailed to [the Defense Intelligence Agency] or the name, official title, occupational series, grade or salary of any such person.*"*  As its text makes clear, this statute *"*falls within the scope of Exemption 3.*"*  *Physicians for Human Rights v. U.S. Dep't of Defense*, __ F. Supp. 2d __, 2011 WL 1495942, at *7 (D.D.C. Apr. 19, 2011).  Accordingly, DIA acted properly by withholding employee phone numbers, office names and/or symbols, and e-mail addresses and web addresses on DIA's classified network, as well as specific information that would divulge an intelligence collection function of DIA in a way that would risk harm to national security.  SOUF ¶¶ 46-48.

**2.   TSA Properly Withheld Information Protected by 49 U.S.C. § 114®**

As described above, 49 U.S.C. § 114® and its implementing regulations protect Sensitive Security Information from disclosure.  *See supra* Part I.B4.  TSA thus properly withheld such information pursuant to Exemption 3.  SOUF ¶¶ 145-158 & TSA *in camera* submission.

**D.   FBI and TSA Properly Invoked Exemption 5**

Under Exemption 5, the FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency.  *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975)). The exemption "thus covers the attorney-client privilege, the attorney work-product privilege, and the executive 'deliberative process' privilege." *Id.*

**1.   Deliberative Process Privilege**

The deliberative process privilege is intended "'to prevent injury to the quality of agency decisions' by ensuring that the 'frank discussion of legal or policy matters' in writing, within the agency, is not inhibited by public disclosure." *Maricopa*, 108 F.3d at 1092 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 150-51).  The privilege generally protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150. It is premised upon the notion that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *Id.* at 150-51 (internal quotation omitted). Thus, agencies may invoke the privilege: (1) to encourage open, frank discussions on matters of policy between agency employees; (2) to protect against premature disclosure of proposed decisions before they

1  are finally adopted; and (3) to protect against public confusion that might result from

2  disclosure of reasons and rationales that were not in fact ultimately the grounds for an

3  agency's action. *See id.* at 150-54; *Assembly of State of Cal. v. United States Dep't of*

4  *Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).

5         To come within the scope of the deliberative process privilege, *"*a document must

6  be both *'*predecisional*'* and *'*deliberative.*'"  Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d

7  964, 979 (9th Cir. 2009) (internal quotation omitted).  Information is *"*predecisional*"* if

8  it was *"*prepared in order to assist an agency decisionmaker in arriving at his decision.*"*

9  *Id.* (including, for example, *"*recommendations, draft documents, proposals, suggestions,

10  and other subjective documents*"*).  Information withheld by an agency is *"*deliberative*"*

11  if *"*disclosure of the materials would expose an agency's decisionmaking process in such

12  a way as to discourage candid discussion within the agency and thereby undermine the

13  agency's ability to perform its functions.*"  Id.* at 979-80, 982.

14      **2.    Work Product Doctrine**

15         The attorney work product doctrine protects materials prepared by an attorney or

16  other representatives in litigation and anticipation of litigation, including the materials of

17  government attorneys generated in litigation and prelitigation counseling.  *See* Fed. R.

18  Civ. P. 26(b)(3); *In re Grand Jury Subpoena (Mark Torf)*, 357 F.3d 900, 906 (9th Cir.

19  2004); *see also Nevada v. Dep't of Energy*, 517 F. Supp. 2d 1245, 1260 (D. Nev. 2007)

20  (doctrine applies to civil, criminal, and administrative proceedings).  Documents

21  protected by the attorney work product doctrine include *"*the files and the mental

22  impressions of an attorney . . . reflected . . . in interviews, statements, memoranda,

23  correspondence, briefs, . . . and countless other tangible and intangible ways.*"  Hickman*

24  *v. Taylor*, 329 U.S. 495, 510-11, 67 S. Ct. 385 (1947).

25         The doctrine therefore protects information generated by or for legal counsel that

26  *"*can be fairly said to have been prepared or obtained because of the prospect of

27  litigation.*"  In re Grand Jury Subpoena of Torf*, 357 F.3d at 907.  The phrase *"*in

28  anticipation of litigation*"* extends beyond an attorney's preparation for a case in existing

**DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT**                    -18-

1  litigation, and includes protection for materials *"prepared in anticipation of foreseeable*

2  *litigation, even if no specific claim is contemplated."* *Feshbach v. SEC*, 5 F. Supp. 2d

3  774, 782 (N.D. Cal. 1997); *see also CREW v. NARA*, 583 F. Supp. 2d 146, 159-60

4  (D.D.C. 2008) (*"litigation need not be imminent or certain in order to satisfy the

5  anticipation-of-litigation prong of the [attorney work-product] test"* in FOIA case).  Both

6  *"fact"* work product and *"opinion"* work product are protected.  *Pacific Fisheries, Inc.

7  v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008) (citing Fed. R. Civ. P. 26(b)(3)).[5]

8  Fact work product consists of factual material that is prepared in anticipation of litigation

9  or trial. *E.g., Holliday v. Extex*, 447 F. Supp. 2d 1131, 1138 (D. Haw. 2006); *Kintera,

10  Inc. v. Convio, Inc.*, 219 F.R.D. 503, 507 (S.D. Cal. 2003).  Opinion work product

11  includes the selection, organization, and characterization of facts that reveals the

12  theories, opinions, or mental impressions of a party or the party *'s* representative. *E.g.,

13  Holliday*, 447 F. Supp at 1138; *U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 563

14  (C.D. Cal. 2003).

15      For the work product doctrine to have vitality, attorneys must be permitted to

16  *"work with a certain degree of privacy, free from unnecessary intrusion by opposing

17  parties and their counsel,"* and to *"assemble information, sift what [they] consider[ ] to

18  be the relevant from the irrelevant facts, prepare [their] legal theories and plan [their]

19  strateg[ies] without undue and needless interference."* *Hickman*, 329 U.S. at 510-11.

20      **3.    Attorney Client Privilege**

21      Communications protected by the attorney-client privilege, like those protected by

22  the work product and deliberative process privileges, are exempt from disclosure under

23  Exemption 5.  *United States v. Weber Aircraft Corp*., 465 U.S. 792, 799, 104 S. Ct. 1488

24  (1984).  The attorney-client privilege protects confidential communications made

25  between clients and their attorneys when the communications are related to a legal matter

26

27      _____

   [5] Importantly, *"if a document is covered by the attorney work-product privilege,
   the government need not segregate and disclose its factual contents."* *Pacific Fisheries*,

28  539 F.3d at 1148; *see also Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 371 (D.C. Cir.
   2005) (same).

**DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**                    -19-

1    for which the client has sought legal advice or services. *United States v. Martin*, 278

2    F.3d 988, 999 (9th Cir. 2002).  It protects not only confidential information provided by

3    a client to the attorney, but also the legal advice provided by the attorney to the client as

4    well as communication between attorneys reflecting client-supplied information. *Id.*;

5    *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp.2d 100, 114 (D.D.C. 2005).  The privilege

6    applies with full force in the context of federal agencies, in which agency clients and

7    agency attorneys have privileged attorney-client relationships. *Coastal States Gas*

8    *Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).  In this setting, "the

9    attorney-client privilege helps improve the quality of agency decisionmaking by

10   safeguarding the free flow of information that is a necessary predicate for sound advice."

11   *Feshbeck*, 5 F. Supp.2d at 784.

12                                        * * *

13        FBI and TSA have properly withheld material subject to these three privileges, and

14   have set forth in detail how withheld documents and portions of documents are protected

15   by one or more of these privileges.  SOUF ¶¶ 102-103, ¶¶ 160-192.

16   **E.    DIA, FBI, and TSA Properly Invoked Exemption 6**

17        Exemption 6 exempts from disclosure information about individuals in "personnel

18   and medical and similar files" when the disclosure of such information "would

19   constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

20   "Exemption 6 is intended to protect 'individuals from the injury and embarrassment that

21   can result from the unnecessary disclosure of personal information.'" *Bowen v. FDA*,

22   925 F.2d 1225, 1228 (9th Cir. 1991) (quoting *U.S. Dep't of State v. Washington Post*

23   *Co.*, 456 U.S. 595, 599, 102 S. Ct. 1957, 1960, 72 L. Ed.2d 358 (1982)).  The Supreme

24   Court has thus interpreted the phrase "similar files" broadly, and held that Exemption 6

25   applies to personal information contained in any government file so long as that

26   information "applies to a particular individual." *Washington Post Co.*, 456 U.S. at 602;

27   *accord Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024

28   (9th Cir. 2008).  This "minimal" threshold "ensures that FOIA's protection of personal

**DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT**                    -20-

privacy is not affected by the happenstance of the type of agency record in which personal information is stored.*" Washington Post Co. v. Dep't of Health & Human Servs.*, 690 F. 2d 252, 260 (D.C. Cir. 1982).

Exemption 6 requires the agency to balance the individual*'s right to privacy against the public interest in disclosure. *Dep't of Defense v. FLRA*, 510 U.S. 487, 495, 114 S. Ct. 1006, 127 L. Ed. 2d 325 (1994). *"The privacy interest protected by Exemption 6 'encompass[es] the individual's control of information concerning his or her person.'" Id.* at 500 (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 769, 109 S. Ct. 1468, 103 L. Ed. 774 (1989)). In contrast, *"the only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Id.* at 497 (quotation and alteration omitted). *"In other words, 'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct' is not the type of information to which FOIA permits access." Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025 (9th Cir. 2008) (quoting *FLRA*, 510 U.S. at 495).[6] Government employees similarly maintain privacy interests against, *inter alia, "*embarrassment, shame, stigma, and harassment*" that could result from public association between them a particular government action. *Id.* at 1026.

DIA properly asserted Exemption 6 to withhold the names of non-DIA government employees because release of these names would invade their privacy by identifying their relationship with an intelligence agency. SOUF ¶ 49. The FBI has properly asserted Exemption 6 to withhold names and other identifying information of FBI Special Agents, FBI support personnel, local law enforcement personnel, non-

---

[6] The purpose for which the information is sought is irrelevant, and any disclosure pursuant to FOIA must be analyzed as if it is a disclosure *"to the entire public." Forest Serv. Emps.*, 524 F.3d at 1025; *accord Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1987); *Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958, 964 (C.D. Cal. 2003).

1  government third parties, and other agency employees.  *Id.* ¶¶ 105-113.  TSA similarly

2  has properly withheld names and other personal information of lower level government

3  employees and third parties.  *Id.* ¶¶ 193-198.

4  **F.    FBI and TSA Properly Invoke Exemption 7**

5            Exemption 7 protects from disclosure *"records or information compiled for law*

6  *enforcement purposes"* that fits within one of six categories, three of which are relevant

7  here.  Exemption 7 protects a broad array of information used for law enforcement

8  purposes.  In 1986, Congress enlarged the protection provided by Exemption 7 by

9  expanding its coverage from *"investigatory records"* compiled for law enforcement

10 purposes to all *"records or information"* compiled for law enforcement purposes.

11 *See Hopkinson v. Shillinger*, 866 F.2d 1185, 1222 n.27 (10th Cir. 1989), *overruled on*

12 *other grounds*, *Sawyer v. Smith*, 497 U.S. 227 (1990).  Thus, records generated for

13 general law enforcement purposes but not related to a specific investigation come within

14 Exemption 7's protection.  *See, e.g., Voinche v. F.B.I.*, 940 F. Supp. 323, 332 (D.D.C.

15 1996) (holding information relating to safety procedures afforded to Supreme Court and

16 its justices protected under Exemption 7(E)), *aff'd*, 1997 WL 411685 (D.C. Cir. June 19,

17 1997).   When an agency has a *"clear law enforcement mandate,"* it need show *"only a*

18 *'rational nexus'* between its law enforcement duties and the document for which

19 Exemption 7 is claimed.*"  Binion v. U.S. Dep't of Justice*, 695 F.2d 1189, 1194 (9th Cir.

20 1983); *accord Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995);

21 *Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 748 (9th Cir. 1980);

22 *Dunaway v. Webster*, 519 F. Supp. 1059, 1076 (N.D. Cal. 1981) (*"*[A]n agency with a

23 clear law enforcement purpose . . . need only be held to a minimal showing that the

24 activity which generated the documents was related to the agency's [law enforcement]

25 function.*"*).

26            *"*The government's burden is easier to satisfy under Exemption 7, than it is for

27 other exemptions.*"  Council on American-Islamic Relations v. FBI*, 749 F. Supp. 2d

28 1104, 1117 (S.D. Cal. 2010) (citing *Rosenfeld*, 57 F.3d at 808).  Moreover, *"*[i]n the

1   Ninth Circuit, law enforcement agencies such as the FBI are accorded 'special deference'

2   in an Exemption 7 determination.' *Id.* (citing *Binion*, 695 F.2d at 1193). There is no

3   question that FBI and TSA each has a clear law enforcement mandate and that records at

4   issue have a rational nexus to their law enforcement functions. SOUF ¶ 104, ¶¶ 193-206.

5      **1.**    **Exemption 7(C)**

6        Like Exemption 6, Exemption 7(C) protects the privacy interests of third parties.

7   *See* 5 U.S.C. § 552(b)(7)(C) (exempting from disclosure "records and information

8   compiled for law enforcement purposes" to the extent that release "could reasonably be

9   expected to constitute an unwarranted invasion of personal privacy"). Because "the

10  privacy interests of citizens are highest when disclosure would reveal information

11  collected about them in conjunction with a criminal inquiry," Exemption 7(C) provides

12  even broader privacy protection that does Exemption 6. *Lahr v. Nat'l Transp. Safety*

13  *Bd.*, 569 F.3d 964, 973-75 (9th Cir. 2009).

14       As with Exemption 6, the personal privacy rights protected by Exemption 7(C)

15  "encompass a broad range of concerns relating to an individual's control of information

16  concerning his or her person." *Id.* at 974 (quotation omitted). Also like Exemption 6,

17  "the ***only*** relevant public interest in the FOIA balancing analysis is the extent to which

18  disclosure of the information sought would shed light on an agency's performance of its

19  statutory duties or otherwise let citizens know what their government is up to." *Id.*

20  (quotation omitted) (emphasis in original). The Court "need not conclude that an

21  invasion of privacy would occur with certainty, but only that it could reasonably be

22  expected." *Id.* at 977. Information within law enforcement records that identifies

23  private citizens or law enforcement agents is generally protected by Exemption 7(C).

24  *See id.* at 975-79 (citing cases). FBI and TSA have properly asserted Exemption 7(C) to

25  protect the same personal information for which they asserted Exemption 6. SOUF ¶¶

26  104-113, ¶¶ 193-198.

27

28

1

     **2.      Exemption 7(D)**

2

     Confidential law enforcement sources are protected by Exemption 7(D) which

3 permits the withholding or redacting of law enforcement records the release of which

4 *"*could reasonably be expected to disclose the identity of a confidential source . . . and,

5 in the case of a record or information compiled by criminal law enforcement authority in

6 the course of a criminal investigation . . . information furnished by a confidential

7 source.*"* 5 U.S.C. § 552(b)(7)(D).  A confidential source is one who *"*provided

8 information under an express assurance of confidentiality or in circumstances from

9 which such an assurance could be reasonably inferred.*"* *U.S. Dep't of Justice v.*

10 *Landano*, 508 U.S. 165, 172, 113 S. Ct. 2014, 124 L. Ed. 84 (1993) (internal quotation

11 and citation omitted).   Exemption 7(D) is an absolute protection which requires no

12 balancing of public and private interests. *Dow Jones & Co. v. United States Dep't of*

13 *Justice*, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  FBI thus acted properly by refusing,

14 pursuant to Exemption 7(D), to disclose information relating to and which could tend to

15 identify one or more confidential sources.  SOUF ¶ 114-121.

16

     **3.      Exemption 7(E)**

17

     Exemption 7(E) applies where release of information (1) where release *"*would

18 disclose techniques and procedures for law enforcement investigations or prosecutions,*"*

19 or (2) where release *"*would disclose guidelines for law enforcement investigations or

20 prosecutions if such disclosure could reasonably be expected to risk circumvention of the

21 law.*"* 5 U.S.C. § 552(b)(7)(E).  The protection afforded by Exemption 7(E) for

22 information related to law enforcement techniques is categorical. *See Smith v. ATF*, 977

23 F. Supp. 496, 501 (D.D.C. 1997).  A guideline may be properly withheld under

24 Exemption 7(E) if it alone, or in conjunction with other information, could allow

25 circumvention of the law. *Coastal Delivery Corp. v. United States Customs Serv.*, 272 F.

26 Supp. 2d 958, 963-65 (C.D. Cal. 2003).

27

     FBI properly withheld investigative techniques and procedures, the location and

28 identity of FBI units, and the dates, types, and bases for investigations.  SOUF ¶¶ 122-

124.  Similarly, TSA has properly withheld law enforcement techniques and procedures whose disclosure would risk circumvention of the law.  *Id.* ¶¶ 199-206.

## CONCLUSION

For the reasons state above, the moving Defendants have fulfilled their obligations pursuant to FOIA, and this Court should therefore grant their Motion for Summary Judgment.[7]

Dated: August 10, 2011           Respectfully Submitted,

TONY WEST
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

*/s/ Jeffrey M. Smith*
JEFFREY M. SMITH
Senior Counsel
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C.  20530
Telephone: (202) 5l4-5751
Facsimile: (202) 616-8202
Jeffrey.Smith5@usdoj.gov

*Counsel for Defendants*

---

[7] Plaintiffs have inquired as to whether any Defendants have documents that would be responsive to their FOIA request but for the fact that they are excluded from FOIA's scope pursuant to 5 U.S.C. § 552(c), which provides that agencies may treat certain, specified law enforcement and national security records *"as not subject to the requirements"* of FOIA.  *See also* Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act, at 18-30 (available at www.justice.gov/oip/86agmemo.htm#exclusions).  Because *"it is essential to the viability of the exclusion mechanism that requesters not be able to deduce whether an exclusion was employed at all in a given case,"* it is *"the government's standard litigation policy in the defense of FOIA lawsuits that wherever a FOIA plaintiff raises a distinct claim regarding the suspected use of an exclusion, the government routinely will submit an *in camera* declaration addressing that claim, one way or the other."*  *Id.* at 29-30.  Plaintiffs' question is thus addressed in Defendants' *ex parte, in camera* submission.