## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONA MALLOUK *et al.*, )<br><br>Petitioners, )<br><br>v. )<br><br>BARACK H. OBAMA *et al.*, )<br><br>Respondents. ) | ALL INFORMATION CONTAINED<br>HEREIN IS UNCLASSIFIED<br>DATE 03-14-2011 BY 65179/DMH/BAW/STP/bls<br><br>08-cv-2003 (JR) |

### RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION TO DISCLOSE *EX PARTE* EVIDENCE

### INTRODUCTION

In their Motion to Disclose *Ex Parte* Evidence, petitioners, the purported next-friends of Naji Hamdan ("Hamdan"), seek an order compelling the disclosure of classified national security information. Petitioners are not entitled to the classified information they seek, and their motion must be denied. As an initial matter, petitioners' motion should be denied because the Court can dismiss the habeas petition in this case without consideration of the of the classified information which petitioners seek; consideration of that information is not essential to deciding this case. In any event, the Government has determined that the unauthorized disclosure of the information petitioners seek could reasonably be expected to cause serious damage to the national security of the United States. The United States Supreme Court and the United States Court of Appeals for the District of Columbia Circuit have made clear that a litigant in a civil case has no right to sensitive information affecting national security. Indeed, it is well settled that, under the separation of powers established by the Constitution, the Executive Branch maintains exclusive responsibility for the protection and control of national security information. Accordingly, any

ACLU - Hamdan-593

order of the Court that purports to grant petitioners access to classified information, or that directs the United States to do so, would raise serious separation of powers questions, and would unnecessarily risk the compromise of classified information vital to the national security.

## FACTUAL AND PROCEDURAL BACKGROUND

Naji Hamdan is an American citizen living in the United Arab Emirates ("UAE"). Pet. for Writ of Habeas Corpus ("Pet.") ¶ 1. UAE authorities arrested Hamdan in August 2008, and have subsequently charged him with three terrorism-related offenses under the domestic criminal law of the UAE. *Id.* ¶ 36; Pets.' Notice 1 (Dkt. No. 3). On November 19, 2008, petitioners filed a petition for a writ of habeas corpus with this Court alleging, *inter alia*, that Hamdan's arrest and detention has occurred "at the behest of the United States government." Pet. ¶ 1. The only specific allegations in the habeas petition concerning the alleged involvement of the United States Government in Hamdan's arrest relate to alleged surveillance and interrogation of Hamdan by the Federal Bureau of Investigation ("FBI") in the years before his arrest, and to interactions among Hamdan's family, petitioners' counsel, and Department of State employees following Hamdan's arrest. Pet. ¶¶ 1, 26-35, 39-41, 44.

On January 12, 2009, respondents moved to dismiss the habeas petition, arguing that the Court lacks jurisdiction to entertain the petition and that, in any event, the Court lacks the authority to intervene in an on-going foreign criminal proceeding. *See generally* Mot. to Dismiss Pet. for Writ of Habeas Corpus ("Mot. to Dismiss") (Dkt. No. 16). In support of that motion, respondents submitted the declaration of Michael J. Heimbach, the Assistant Director of the Counterterrorism Division of the FBI. *Id.*, Ex. B ("Heimbach Decl.").[1] The Heimbach

---

[1] Respondents also submitted the Declaration of Michelle Bernier-Toth, the Director of the Office of American Citizens Services and Crisis Management in the Office of Overseas

2

ACLU - Hamdan-594

declaration states that the FBI did not direct the UAE's investigation of Hamdan, did not request that the UAE arrest Hamdan, did not interrogate or observe any interrogation of Hamdan while he has been in UAE custody, and has not expressed any opinion to the UAE concerning the continued detention or trial of Hamdan. Heimbach Decl. ¶¶ 9-12. The Heimbach declaration also contains certain information which has been classified pursuant to Executive Order 12,958, as amended by Executive Order 13,292. *Id.* ¶¶ 4, 8, 13-15. The unauthorized disclosure of that information "reasonably could be expected to cause serious damage to the national security" of the United States. *Id.* ¶ 4.[2] Respondents provided petitioners a redacted version of the Heimbach declaration, redacting all classified information, and lodged an unredacted version with the Court Security Officer for the Court's *ex parte, in camera* review.

## ARGUMENT

### I. THE COURT NEED NOT REACH THE CONSTITUTIONAL ISSUE TO DISPOSE OF PETITIONERS' HABEAS CLAIM.

Relying primarily on the of the due process clause of the Fifth Amendment to the United States Constitution, petitioners now allege that they are entitled to disclosure of the classified information contained in the Heimbach declaration. *See generally* Mot. to Disclose. As a general rule, "a court should avoid, not seek out, a constitutional issue the resolution of which is not essential to the disposition of the case before it." *Eldred v. Reno*, 239 F.3d 372, 378 (D.C. Cir. 2001). While respondents believe the Court should be aware of the classified information

---

Citizens Services, which is in the Department of State's Bureau of Consular Affairs in Washington, D.C. Mot. to Dismiss, Ex. A ("Bernier-Toth Declaration"). That declaration confirmed the active UAE criminal proceedings against Hamdan.

[2] Section B of the Heimbach declaration, which is entitled "Basis for Classification and Harm to National Security that Would Result from Disclosure," explains why the information at issue has been properly classified. *Id.* ¶¶ 13-15.

3

ACLU - Hamdan-595

contained in the Heimbach declaration, as respondents explain in their Motion to Dismiss the

Petition for Writ of Habeas Corpus, the Court can dispose of the habeas petition in this case

without relying on that information. Accordingly, the Court need not decide the question of

whether petitioners enjoy a constitutional right of access to classified information.[3] The Court,

therefore, should deny petitioners' motion for the disclosure of classified information, and

dismiss petitioners' habeas petition.

      As an initial matter, even without considering the Heimbach declaration at all, the Court

can conclude that habeas jurisdiction is absent because, as shown in the Bernier-Toth declaration,

Hamdan is in active criminal proceedings by the UAE. Bernier-Toth Decl. ¶ 12; Mot. to Dismiss

4-12. Moreover, the unclassified portions of the Heimbach declaration confirm that the FBI did

not: (i) "direct the UAE to investigate Hamdan" or direct the UAE's investigation; (ii) "request

that the UAE detain or arrest Hamdan;" (iii) "interrogate[] []or observe[] any interrogation of

Hamdan while he has been in UAE custody;" or (iv) "express[] any opinion to the UAE about

Hamdan's continued detention or trial by the UAE." Heimbach Decl. ¶¶ 9-12. These statements

rebut the specific jurisdictional allegations contained in the habeas petition. *See, e.g.*, Pet. ¶ 1.

Additionally, as explained in the Motion to Dismiss, petitioners have failed to supply the

"considerable" quantum of evidence, which Judge Bates, in *Abu Ali v. Ashcroft,* found to be a

necessary requisite for pursuing a constructive custody theory of habeas jurisdiction. 350 F.

Supp. 2d 28, 67 (D.D.C. 2004); Mot. to Dismiss 4-12. These shortcomings warrant dismissal of

the habeas petition, and the Court need only consider the unclassified portions of the Heimbach

---

     [3] Indeed, even if the Court holds that consideration of the classified, *ex parte* portions of
the Heimbach declaration is not appropriate, the proper course forward would not be to order the
disclosure of that material, but, rather, to decide how the parties should proceed without the use
of that material.

4

ACLU - Hamdan-596

declaration to reach that conclusion.

Additionally, as respondents have explained, habeas jurisdiction does not exist where a foreign sovereign possesses actual custody of the individual seeking habeas relief, particularly in a case such as this where petitioners themselves recognize that Hamdan is being held for prosecution under UAE's domestic criminal authority. Mot. to Dismiss 12-17. A separate sovereign and its officials are not subject to the direction of the United States. *See United States ex rel. Keefe v. Dulles*, 222 F.2d 390 (D.C. Cir. 1954); *Wilson v. Girard*, 354 U.S. 524, 529 (1957). It is undisputed that the Government of the UAE maintains physical custody of Hamdan. Pet. ¶ 1. Because Hamdan's restraint is imposed by a foreign sovereign, United States courts lack jurisdiction over the matter. Thus, the Court need not consider any portion of the Heimbach declaration to conclude that respondents lack authority to order the Government of the UAE to produce Hamdan. Mot. to Dismiss 12-17.

Finally, even assuming jurisdiction exists in this matter, the Supreme Court has clearly held that a "sovereign nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction." *Munaf*, 128 S. Ct. at 2221-22 (quoting *Wilson*, 354 U.S. at 529). *Munaf* explicitly establishes that habeas relief is not available to an American citizen who has freely traveled to a foreign sovereign, is alleged to have engaged in criminal conduct in that sovereign's territory, and is under criminal prosecution by the government of that sovereign. *Id*. at 2228. *Munaf* clearly controls the instant petition. Accordingly, the Court need not consider any portion of the Heimbach declaration to conclude that *Munaf* precludes this Court from granting petitioners habeas relief, 128 S. Ct. at 2228; Mot. to Dismiss 17-23, and petitioners' motion for access to the classified portions of the Heimbach declaration should be denied.

ACLU - Hamdan-597

II.    **PETITIONERS' CHALLENGE TO THE EXECUTIVE'S DECISION NOT TO
GRANT THEM ACCESS TO CLASSIFIED INFORMATION SHOULD BE
REJECTED.**

Should the Court engage the constitutional question of access to confidential information,

it would find it to be well-settled that, under the separation of powers established by the

Constitution, the Executive Branch enjoys exclusive responsibility for the protection and control

of national security information. *See, e.g., Dept. of the Navy v. Egan,* 484 U.S. 518, 527 (1988)

("The President . . . is the 'Commander in Chief of the Army and Navy of the United States' . . .

[h]is authority to classify and control access to information bearing on national security . . . flows

primarily from this constitutional investment of power . . . and exists quite apart from any

explicit congressional grant.") (quoting U.S. Const., Art. II, § 2).  In accordance with this

responsibility, the decision to grant or deny access to such information rests exclusively within

the discretion of the Executive.  *Id.* at 529; *see also Dorfmont v. Brown,* 913 F.2d 1399, 1401

(9th Cir. 1990) ("The decision to grant or revoke a security clearance is committed to the

discretion of the President by law.").  It is, therefore, beyond the power of the courts to second-

guess the merits of an Executive Branch decision to deny someone access to classified

information.  *See CIA v. Sims,* 471 U.S. 159, 180 (1985) ("[I]t is the responsibility of [the

Executive], not that of the judiciary, to weigh the variety of complex and subtle factors in

determining whether [to disclose sensitive information].").  The information petitioners seek may

only be accessed by a person in whose favor a determination of eligibility for access has been

made (*i.e.* the person receives a security clearance); where the person has signed an approved

non-disclosure agreement; and where the person has a "need-to-know."  *See* Exec. Order No.

12,958, § 4.1, 60 Fed. Reg. 19825 (Apr. 17, 1995), *as amended by* Exec. Order No. 13,292, 68

Fed. Reg. 15,315 (Mar. 25, 2003).  The Executive has not approved petitioners or their counsel

6

ACLU - Hamdan-598

for access to the classified information they seek. Accordingly, their request for disclosure of that information must be denied.

As a corollary to the principle that the Executive is exclusively responsible for the protection and control of national security information, a federal district court may not order the Executive to grant opposing counsel or any other person access to classified information. *See, e.g., Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (finding it impermissible for trial court to "perform its own calculus as to whether or not harm to the national security . . . would result from disclosure" of information affecting national security); *In re United States*, 1 F.3d 1251 (Table), 1993 WL 262656 at * 9 (Fed. Cir. 1993) (finding that, under separation of powers principles, "decisions of the Executive [regarding who may have access to classified information] may not be countermanded by *either* coordinate Branch") (emphasis in original). Because the constitutional principles of separation of powers are violated "where one branch invades the territory of another," *New York v. United States*, 505 U.S. 144, 182 (1992), the relief petitioners request, if granted, would invade the territory of the Executive Branch by directly undermining its ability to carry out the core executive function of protecting national security. *See, e.g., Egan*, 484 U.S. at 527; *Stehney v. Perry*, 101 F.3d 925, 931-32 (3d Cir. 1996) (finding that judicial review of the merits of an Executive Branch decision to grant or deny a security clearance would violate separation of powers principles). Accordingly, while, as here, an Article III judge may be provided with classified information, any order of the Court that purports to grant access to classified information to petitioners or petitioners' counsel, or that directs the United States to do so, would raise serious separation of powers questions, and would unnecessarily risk the compromise of classified information vital to the national security. *See Halkin v. Helms*, 598 F.2d 1, 7 (D.C. Cir. 1978) ("It is not to slight lawyers, judges or anyone else to suggest that any []

7

ACLU - Hamdan-599

disclosure [of classified information] carries with it the serious risk that highly sensitive information may be compromised.") (internal quotations omitted).

In light of these separation of powers concerns, the D.C. Circuit has repeatedly rejected demands that opposing counsel or parties be permitted access to classified national security material presented to the court *ex parte* and *in camera*. *See, e.g., People's Mojahedin Org. v. Dep't of State*, 327 F.3d 1238, 1242-43 (D.C. Cir. 2003) ("[T]he Executive Branch has control and responsibility over access to classified information and has [a] 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business.") (internal quotations omitted); *Stillman v. CIA*, 319 F.3d 546, 549 (D.C. Cir. 2003) (national security concerns required *ex parte, in camera* review of the government's classified declaration in prepublication review case); *Holy Land Found. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (permitting *ex parte, in camera* review of declarations in light of "the primacy of the Executive in controlling and exercising responsibility over access to classified information, and the Executive's 'compelling interest' in withholding national security information from unauthorized persons in the course of executive business") (internal citation omitted); *National Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 208-09 (D.C. Cir. 2001) (notice of designation as a foreign terrorist organization "need not disclose the classified information to be presented *in camera* and *ex parte* to the court . . . [t]his is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect").[4]

---

[4] *See also Patterson v. FBI*, 893 F.2d 595, 600 (3d Cir. 1990) ("If . . . the agency is unable to articulate publicly the specific disclosure it fears and the specific harm that would ensue, then *in camera* inspection of a more detailed affidavit must be resorted to.") (internal quotations omitted); *Sterling v. Tenet*, 416 F.3d 338, 348 (4th Cir. 2005) (denying private

ACLU - Hamdan-600

The Executive's determination as to who may be provided access to classified

information, and under what circumstances, is "sensitive and inherently discretionary."

*Dorfmont*, 913 F.2d at 1401 (quoting *Egan*, 484 U.S. at 528); *see also New York Times Co. v.

United States*, 403 U.S. 713, 728-29 (1971) (Stewart, J., concurring) ("If the Constitution gives

the Executive a large degree of unshared power in the conduct of foreign affairs and the

maintenance of our national defense, then under the Constitution the Executive must have the

largely unshared duty to determine and preserve the degree of internal security necessary to

exercise that power successfully."). Thus, predictive judgments about who would, or would not,

present a security risk

> must be made by those with the necessary experience in protecting
> classified information. For "reasons . . . too obvious to call for
> enlarged discussion," the protection of classified information must
> be committed to the broad discretion of the agency responsible, and
> this must include broad discretion to decide who may have access
> to it. Certainly, it is not reasonably possible for an outside
> nonexpert body to review the substance of such a judgment and to
> decide whether the agency should have been able to make the
> necessary affirmative determination with confidence. Nor can such
> a body determine what constitutes an acceptable margin of error in
> assessing the potential risk.

*Egan*, 484 U.S. at 529 (quoting *Sims*, 471 U.S. at 170). A "federal court is an 'outside nonexpert

body'" which has "no more business reviewing the merits of a decision to grant or revoke a

security clearance" than any other "outside nonexpert body." *Dorfmont*, 913 F.2d at 1401.

The decision to grant an individual access to classified national security information is

---

counsel access to classified information regarding the methods and operations of the CIA);
*Pollard v. FBI*, 705 F.2d 1151, 1153 (9th Cir. 1983) ("*In camera* proceedings, particularly in
[Freedom of Information Act] cases involving classified documents, are usually non-adversarial,
with the party who is seeking the documents denied even this limited access to the documents he
seeks to obtain.").

ACLU - Hamdan-601

firmly committed to the exclusive discretion of the Executive Branch. *Egan*, 484 U.S. at 527.

The district court, therefore, cannot review the merits of the Executive's decision to deny an

individual access to such information. *Dorfmont*, 913 F.2d at 1401. Accordingly, petitioners'

motion for disclosure of the classified information contained in the Heimbach declaration must

be denied.

### III.     PETITIONERS HAVE NO CONSTITUTIONAL RIGHT TO ACCESS CLASSIFIED INFORMATION.

Even if the Court were to consider petitioners' contention that the due process clause of

the Fifth Amendment of the U.S. Constitution creates a right of access to classified information

in civil litigation, it would find the contention to be without merit. It is well-established that

petitioners have no property or liberty interest in access to classified national security

information. *Doe v. Cheney*, 885 F.2d 898, 909-10 (D.C. Cir. 1989). While petitioners argue

that the balancing test the Supreme Court articulated in *Mathews v. Eldridge*, 424 U.S. 319, 332

(1976), which governs issues of procedural due process, weighs in favor of disclosure of

confidential information, courts addressing the factors of that test in this context have routinely

held that the interests of a private litigant are subordinate to the Executive's duty to preserve our

national security. *See, e.g., Halkin v. Helms*, 690 F.2d 977, 1001 (D.C. Cir. 1982). Accordingly,

petitioners' motion for disclosure of classified national security information must be denied.

The Due Process Clause of the Fifth Amendment imposes constraints on decisions of the

United States Government that deprive individuals of "liberty" or "property" interests. *Mathews*,

424 U.S. at 332.[5]  Thus, in making their due process claim, petitioners must establish a liberty or

---

[5]  To the extent petitioners assert a liberty interest in freedom from detention, as
explained above, the United States Government has not imposed any constraints on that interest.
*See supra* § I; Mot. to Dismiss 4-12.  Rather, Hamdan is under the detention of the Government

ACLU - Hamdan-602

property interest in access to the classified national security information contained in the Heimbach declaration. The Supreme Court and the lower courts, however, have made clear that no liberty or property interest provides a private litigant with a constitutional right to access to national security information. *See Egan*, 484 U.S. at 528; *Doe*, 885 F.2d at 909-10 (no property interest in a security clearance); *Jones v. Dep't of Navy*, 978 F.2d 1223, 1225 (Fed. Cir. 1992) (finding that "there is no access 'right' to classified documents"), *Dorfmont*, 913 F.2d at 1403-04 (finding that there is no right to a security clearance); *Jamil v. Secretary, Dep't of Defense*, 910 F.2d 1203, 1209 (4th Cir. 1990) ("[B]ecause of the inherently discretionary judgment required in the decisionmaking process, "no one has a 'right' to a security clearance"); *Hill v. Dep't of Air Force* 844 F.2d 1407, 1411 (10th Cir. 1988) ("Whatever expectation an individual might have in a clearance is unilateral at best, and thus cannot be the basis for a constitutional right"); *Rosen v. NLRB*, 735 F.2d 564, 572 (D.C. Cir. 1984) (finding that there is no due process right to use and disseminate confidential -- much less classified -- information). Accordingly, the due process clause of the Fifth Amendment does not constrain the Executive's control of sensitive national security information, and it does not entitle petitioners to access such information. *Egan*, 484 U.S. at 528.

Moreover, even if the Court were to apply the *Mathews* balancing test in this context, it must conclude that petitioners have no due process right of access to classified national security information. *Mathews* held that "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by

---

of the UAE and the UAE is prosecuting him for alleged criminal conduct. *See* Pet. ¶¶ 1, 36; Pets.' Notice 1. Thus, any challenge Hamdan wishes to make to the legitimacy of his detention must be made in accordance with the procedural protections of the domestic law of that country.

ACLU - Hamdan-603

the official action; second, the risk of an erroneous deprivation of such interest through the procedures used . . .; and finally, the Government's interest[.]" 424 U.S. at 335. Courts have consistently weighed the government's interest in protecting the national security more heavily than the private litigant's interest in pursuing their suit. *See, e.g.*, *Halkin*, 690 F.2d at 1001 ("[T]he Constitution compels the subordination of [the litigant's] interest in the pursuit of [his or her] claims to the executive's duty to preserve our national security."); *see also Haig v. Agee*, 453 U.S. 280, 307 (1981) ("[N]o governmental interest is more compelling than the security of the nation."); *Wayte v. United States*, 470 U.S. 598, 612 (1985) ("Unless a society has the capability and will to defend itself from the aggression of others, constitutional protections of any sort have little meaning."). As the Supreme Court has recognized, "[t]he Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam).

        Consistent with the Government's interest in protecting national security information, in cases where the Government, informed by classified information, has taken action that adversely affects an individual's property interest, the D.C. Circuit has held that "due process require[s] the disclosure [to plaintiffs] of only the unclassified portions of the administrative record" because the "Executive Branch has control and responsibility over access to classified information and has [a] 'compelling interest' in withholding national security information from unauthorized persons[.]" *People's Mojahedin Org. of Iran*, 327 F.3d at 1242 (citation and internal quotation marks omitted); *accord Holy Land Found. for Relief & Development v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003).

        Among other cases, petitioners rely on the Supreme Court's recent holding in

ACLU - Hamdan-604

*Boumediene v. Bush*, 128 S. Ct. 2229 (2008),[6] to support their contention that both the Fifth

Amendment and the Suspension Clause entitle them to access to classified national security

information. *See* Mot. to Disclose 5. The *Boumediene* Court, however, specifically

acknowledged that any constitutional habeas procedures – which by their nature are flexible –

must accommodate the government's compelling interest in protecting sensitive classified

information. The Court expressly "recognize[d] . . . that the Government has a legitimate interest

in protecting sources and methods of intelligence gathering," and it therefore directed the

"District Court [to] use its discretion to accommodate this interest to the *greatest extent*

*possible*." *Boumediene*, 128 S. Ct. at 2267 (emphasis added).[7]

     Indeed, several other cases upon which petitioners rely confirm that the Government's

interest in protecting classified national security information supercedes a civil litigant's due

process interests. For example, in *United States v. Abuhamra*, the Second Circuit noted that

---

[6] In *Boumediene*, the Supreme Court held that detainees held under the control of the United States Armed Forces at the United States Naval Base at Guantanamo Bay, Cuba, were entitled the constitutional protection of habeas corpus. 128 S. Ct. at 2262. The Court further held that the Detainee Treatment Act's ("DTA") procedures for reviewing the status of Guantanamo Bay detainees did not adequately and effectively substitute for habeas. *Id.* at 2274. Unlike the petitioners in *Boumediene*, Hamdan is not in the custody of the Untied States Armed Forces, respondents do not allege that he is subject to the provisions of the DTA, and he is not challenging the constitutional adequacy of the procedures created by the DTA. *See* Pet. ¶ 7

[7] In support of this direction, the Court cited *United States v. Reynolds*, 345 U.S. 1, 10 (1953). In *Reynolds*, the Court "recogniz[ed] an evidentiary privilege . . . where 'there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged.'" *Boumediene*, 128 S. Ct. at 2267 (describing the holding of *Reynolds*). The submission of some material to the habeas court *in camera* and *ex parte* is far more "accommodat[ing]" to habeas petitioners than the exercise of an evidentiary privilege over material that would damage national security if released, because the exercise of a privilege could require termination of the proceedings without a resolution of the merits. *See Reynolds*, 345 U.S. at 11 ("even the *most compelling necessity* cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake") (emphasis added); *see also Totten v. United States*, 92 U.S. 105 (1875).

ACLU - Hamdan-605

disclosure of the *ex parte* information at issue "would not have compromised national security" and, had national security information been implicated, "we would be obliged to conduct a very different analysis of Abuhamra's due process claim." 389 F.3d 309, 324 (2d Cir. 2004) (Mot. to Disclose 3-6); *see also Abourezk v. Reagan*, 785 F.2d 1043, 1060 (D.C. Cir. 1986) (Mot. to Disclose 5) (instructing the district court to provide plaintiff "access to the decisive evidence to the fullest extent possible, *without jeopardizing legitimately raised national security interests*") (emphasis added).

Accordingly, petitioners' claims of constitutional entitlement to classified information, assuming they can assert any, are without merit. Petitioners' motion for the disclosure of the classified national security information contained in the Heimbach declaration, therefore, must be denied.

## CONCLUSION

For the foregoing reasons, petitioners' Motion to Disclose *Ex Parte* Evidence should be denied.

Dated:  February 17, 2009                  Respectfully submitted,

                                          MICHAEL F. HERTZ
                                          Assistant Attorney General

                                          TERRY M. HENRY
                                          Assistant Branch Director

                                          */s/ Alexander K. Haas*
                                          ALEXANDER K. HAAS (CA Bar 220932)

                                          */s/ Stephen J. Buckingham*
                                          STEPHEN J. BUCKINGHAM (MD Bar)
                                          Trial Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue N.W.

14

ACLU - Hamdan-606

Washington, DC  20530
Tel:  (202) 305-9334—Fax:  (202) 305-3138

*Attorneys for Respondents*

ACLU - Hamdan-607

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Opposition to Petitioners' Motion to Disclose *Ex Parte* Evidence was served on February 17, 2009, by electronic filing to

Arthur B. Spitzer
ACLU of the National Capital Area
1400 20th St. NW, Ste. 119
Washington, DC 20036
(202) 457-0800

Ahilan T. Arulanantham
Jennie Pasquarella
ACLU Foundation of Southern California
1313 West Eighth St.
Los Angeles, CA 90017
(213) 977-9500

                              */s/ Stephen J. Buckingham*
                              STEPHEN J. BUCKINGHAM

16

ACLU - Hamdan-608

**FOIA COPY**

1 | Ahilan T. Arulanantham (SBN 237841)
2 | aarulanantham@aclu-sc.org
  | Jennifer L. Pasquarella (SBN 263241)
3 | jpasquarella@aclu-sc.org
4 | ACLU FOUNDATION OF SOUTHERN CALIFORNIA
  | 1313 West Eighth Street
5 | Los Angeles, California 90017
6 | Tel: (213) 977-5236
  | Fax: (213) 977-5297
7 |
8 | Bert Voorhees (SBN 137623)
  | bv@tvlegal.com
9 | Laboni A. Hoq (SBN 224140)
10 | lhoq@tvlegal.com
  | TRABER & VOORHEES
11 | 128 N. Fair Oaks Avenue
12 | Pasadena, California 91103
  | Tel: (626) 585-9611
13 | Fax: (626) 585-1400
14 |
15 | Attorneys for Plaintiffs

FILED
CLERK, U.S. DISTRICT COURT

AUG 1 8 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 03-14-2011 BY 65179/DMH/BAW/STP/bls

16 | UNITED STATES DISTRICT COURT

17 | CENTRAL DISTRICT OF CALIFORNIA

18 |
19 |
20 | NAJI JAWDAT HAMDAN, HOSSAM
21 | HEMDAN, ACLU OF SOUTHERN
   | CALIFORNIA,
22 |
   | Plaintiffs,
23 |
24 | v.
25 | UNITED STATES DEPARTMENT OF
26 | JUSTICE; FEDERAL BUREAU OF
   | INVESTIGATION, a component of the
27 | U.S. Department of Justice; U.S.
28 | NATIONAL CENTRAL BUREAU -
   | INTERPOL, a component of the U.S.

CV10 6149 JHN (JEMx)

CASE NO.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Freedom of Information Act, 5 U.S.C. §552

ACLU - Hamdan-609

| | |
|---|---|
| 1 | Department of Justice; NATIONAL |
| 2 | SECURITY DIVISION, a component of the U.S. Department of Justice; |
| 3 | DEPARTMENT OF STATE; UNITED |
| 4 | STATES CENTRAL INTELLIGENCE AGENCY; UNITED STATES |
| 5 | DEPARTMENT OF DEFENSE; |
| 6 | DEFENSE INTELLIGENCE AGENCY, a component of the U.S. Department of |
| 7 | Defense; NATIONAL SECURITY |
| 8 | AGENCY, a component of the U.S. Department of Defense; OFFICE OF |
| 9 | INSPECTOR GENERAL, a component of the U.S. Department of Defense; |
| 10 | DEFENSE OFFICE OF FREEDOM OF |
| 11 | INFORMATION, a component of the U.S. Department of Defense; U.S. |
| 12 | BUREAU OF CUSTOMS & BORDER |
| 13 | PROTECTION, a component of the U.S. Department of Homeland Security; |
| 14 | TRANSPORTATION SECURITY |
| 15 | ADMINISTRATION, a component of the U.S. Department of Homeland Security; |
| 16 | OFFICE OF DIRECTOR OF NATIONAL |
| 17 | INTELLIGENCE, |
| 18 | Defendants. |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

ACLU - Hamdan-610

# INTRODUCTION

1.        This case arises from the detention and torture of Naji Hamdan, and the intensive surveillance of his brother Hossam Hemdan.  After years of surveillance by the U.S. government, Naji Hamdan was detained and tortured at a secret prison in the United Arab Emirates.  He filed a lawsuit in federal district court alleging that the U.S. government was complicit in his abduction.  Shortly afterwards, he was released from the secret prison.

2.        More than six months ago, on January 29, 2010, plaintiffs ACLU of Southern California ("ACLU-SC"), Mr. Naji Jawdat Hamdan and Mr. Hossam Hemdan submitted a request pursuant to the Freedom of Information Act, 5 U.S.C. §552, to a number of federal agencies.  Their Request seeks to uncover information about why the federal government subjected Mr. Naji Hamdan and Mr. Hossam Hemdan to constant surveillance and questioning over the course of a decade and what role the federal government played in the overseas detention and torture of Mr. Naji Hamdan.  Plaintiffs know that the government has a significant number of documents responsive to their request given their interactions with defendant agencies that generated documents, including, for example, records of voluntary FBI and CBP interviews, ACLU correspondence, Department of State consular memos, and an affidavit submitted by the FBI in Mr. Hamdan's prior lawsuit.  Despite the passage of time, plaintiffs have not received a single record in response to their Request.

ACLU - Hamdan-611

3.　　　　Disclosure of the requested records will help inform public debate about an issue of great public concern: the U.S. government's overseas detention and torture practices in the war on terrorism. In particular, plaintiffs seek to shed light on the U.S. government's practice of contracting foreign governments to detain, interrogate and often torture individuals it suspects – rightly or wrongly – of having connections to terrorism because it cannot lawfully do so itself. Plaintiffs believe Naji Hamdan was arrested by United Arab Emirates ("U.A.E.") authorities at the behest of the U.S. government and detained in a secret location for three months where he was tortured and interrogated with the U.S. government's approval. After the ACLU-SC filed a lawsuit in U.S. court seeking his release, Mr. Hamdan was released from the secret prison, but transferred to a prison in Abu Dhabi and charged with vague crimes of terrorism by U.A.E. authorities. For nearly one year, Mr. Hamdan waited to be prosecuted in sham criminal proceedings in the U.A.E., at the direction, plaintiffs believe, of the U.S. government.

4.　　　　Plaintiffs bring this civil action to compel defendant agencies to respond to their Request, perform an adequate search for responsive records, and disclose all records not clearly exempted from disclosure under FOIA. Plaintiffs also seek to compel defendant agencies to process the Request on an expedited basis and waive all fees associated with the Request in accordance with FOIA. To date, although plaintiffs have exhausted their administrative remedies, defendant agencies have failed to comply with these requirements.

ACLU - Hamdan-612

## JURISDICTION AND VENUE

5.     This Court has both subject matter jurisdiction over the FOIA claims asserted here and personal jurisdiction over the parties to this action pursuant to 5 U.S.C. §552(a)(4)(B); §552 (a)(6)(E)(iii).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 5 U.S.C. §§701-706.

6.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

7.     Plaintiff Naji Jawdat Hamdan is a U.S. citizen of Lebanese descent.  Mr. Hamdan moved to the United States in the early 1980s and lived primarily in the Los Angeles Area until 2006, at which time he and his family moved to the U.A.E.  In Los Angeles, Mr. Hamdan owned and operated a successful autoparts business, called Hapimotors or Honda Acura Palace.  Mr. Hamdan was subjected to FBI surveillance for nearly a decade prior to his detention by the U.A.E. authorities in August 2008.  Mr. Hamdan currently resides in Beirut, Lebanon.

8.     Plaintiff Hossam Hemdan is a U.S. citizen of Lebanese descent.  Mr. Hemdan moved to the United States in approximately 1987 and has lived in the Los Angeles area since that time.  Mr. Hemdan is Naji Hamdan's brother and is now the owner of Hapimotors.

9.     Plaintiff ACLU of Southern California ("ACLU-SC") is a non-profit, non-partisan organization dedicated to the defense of civil rights and civil liberties.  The ACLU-SC is committed to ensuring that the U.S. government acts in compliance with

ACLU - Hamdan-613

1   the Constitution and federal laws, including its international legal obligations.  The

2   ACLU-SC is also committed to principles of transparency and accountability in

3

4   government, and seeks to ensure that the American public is informed about the

5   conduct of its government in matters that affect civil liberties and human rights.  As

6   part of its work, ACLU-SC disseminates information to the public through newsletters,

7

8   news briefings, "Know Your Rights" documents, and other educational and

9   informational materials.  ACLU-SC also disseminates information to individuals, tax-

10  exempt organizations, not-for-profit groups, and members through its website,

11

12  http://www.aclu-sc.org.  In addition, ACLU-SC shares information with the national

13  ACLU office, which has a membership of 500,000.  The national ACLU publishes and

14  disseminates information through multiple outlets including newsletters, action alerts,

15  videos, emails, its website http://www.aclu.org, and other media to individuals and

16

17  organizations throughout the country.  The ACLU-SC maintains its principal office in

18  Los Angeles, California.

19

20          10.     Defendant United States Department of Justice ("DOJ") is a Department

21  of the Executive Branch of the United States and is an agency within the meaning of 5

22  U.S.C. §552(f)(1).  The DOJ is responsible for enforcing the law and defending the

23

24  interests of the United States according to the law, ensuring public safety against

25  threats foreign and domestic, providing federal leadership in preventing and

26  controlling crime, seeking punishment for those guilty of unlawful behavior, and

27

28  ensuring fair and impartial administration of justice for all Americans.

ACLU - Hamdan-614

11.    Defendant Federal Bureau of Investigation ("FBI") is a component of the DOJ and is an agency within the meaning of 5 U.S.C. §552(f)(1). The FBI is responsible for the investigation of federal crimes and is a domestic intelligence agency. The FBI also investigates activity abroad under certain circumstances. On or about July 2008, FBI agents flew to the U.A.E. to interrogate Naji Hamdan in Abu Dhabi. They also conducted numerous interviews of Naji Hamdan and Hossam Hemdan in the United States.

12.    Defendant United States National Central Bureau of the International Criminal Police Organization ("USNCB - Interpol") is a component of the DOJ and is an agency within the meaning of 5 U.S.C. §552(f)(1). USNCB-Interpol serves as the U.S.'s representative to the International Criminal Police Organization ("INTERPOL"). USNCB – Interpol is responsible for coordinating and transmitting requests for criminal investigative and humanitarian assistance between U.S. federal, state and local law enforcement authorities and their foreign counterparts. Upon information and belief, INTERPOL issued a warrant regarding Naji Hamdan.

13.    Defendant National Security Division ("NSD") is a component of the DOJ and is an agency within the meaning of 5 U.S.C. §552(f)(1). NSD was created in order to consolidate the DOJ's national security efforts, and consists of the Counterterrorism and Counterespionage Sections, the Office of Intelligence, the Law and Policy Office, the Office of Justice for Victims of Overseas Terrorism, and the Executive Office.

ACLU - Hamdan-615

14.     Defendant United States Department of State ("DOS") is a Department of the Executive Branch of the United States and is an agency within the meaning of 5 U.S.C. §552(f)(1). The DOS engages in international relations, foreign policy-making, and international diplomacy. A DOS official in the U.A.E. spoke with and visited Naji Hamdan on several occasions, and observed his criminal trial in the U.A.E.

15.     Defendant United States Central Intelligence Agency ("CIA") is a federal intelligence agency within the meaning of 5 U.S.C. §552(f)(1). The CIA is responsible for national security intelligence and covert operations. The CIA has participated in the interrogation and torture of detainees held abroad at the behest of the U.S. government.

16.     Defendant United States Department of Defense ("DOD") is a Department of the Executive Branch of the United States and is an agency within the meaning of 5 U.S.C. §552(f)(1). The DOD is responsible for coordinating and supervising all activities of government relating to the U.S. armed forces and responds to general national security concerns.

17.     Defendant Defense Intelligence Agency ("DIA") is a component of the DOD and is an agency within the meaning of 5 U.S.C. §552(f)(1). The DIA is responsible for military intelligence, and coordinating the intelligence activities of the individual branches of the armed forces by providing military intelligence to warfighters, defense planners, and defense and national security policymakers.

ACLU - Hamdan-616

18.     Defendant National Security Agency ("NSA") is a component of the DOD and is an agency within the meaning of 5 U.S.C. §552(f)(1). The NSA focuses on cryptology, cryptanalysis, cryptography, and intelligence gathering through the collection and analysis of foreign communications and signals intelligence.

19.     Defendant Defense Office of the Inspector General ("DOD-OIG") is a component of the DOD and is an agency within the meaning of 5 U.S.C. §552(f)(1). The DOD-OIG is primarily tasked with internal investigation and auditing of the DOD in order to prevent waste, abuse, fraud, and criminal activity. The torture of an American citizen abroad would likely constitute "abuse," as well as criminal activity under 18 U.S.C. § 2340.

20.     Defendant Defense Office of Freedom of Information ("DOD-OFOI") is a component of the DOD and is an agency within the meaning of 5 U.S.C. §552(f)(1). The DOD-OFOI is responsible for the formulation and implementation of FOIA policy for the DOD.

21.     Defendant United States Bureau of Customs and Border Protection ("CBP") is component of the U.S. Department of Homeland Security ("DHS") and is an agency within the meaning of 5 U.S.C. §552(f)(1). CBP is responsible for regulating and facilitating trade and travel, as well as for enforcing U.S. immigration and drug laws. CBP officials interrogated both Naji Hamdan and Hossam Hemdan at the airport on several occasions.

ACLU - Hamdan-617

Case 2:10-cv-06149-DSF-JEM  Document 29-33  Filed 08/10/11  Page 26 of 84  Page ID
#:1502
Case 2:10-cv-06149-JHN -JEM  Document 1  Filed 08/18/10  Page 10 of 48  Page ID #:10

22.     Defendant Transportation Security Administration ("TSA") is a
component of the DHS and is an agency within the meaning of 5 U.S.C. §552(f)(1).
The TSA is responsible for security in all modes of transportation.

23.     Defendant Office of the Director of National Intelligence ("ODNI") is an
agency within the meaning of 5 U.S.C. §552(f)(1).  The ODNI is headed by the
Director of National Intelligence who serves as the principal advisor to the President,
the National Security Council, and the Homeland Security Council for intelligence
related to national security matters.

## STATUTORY FRAMEWORK

24.     The Freedom of Information Act, 5 U.S.C. §552 ("FOIA"), mandates
disclosure of records held by a federal agency in response to a request for such records
by a member of the public, unless those records fall within nine narrow statutory
exemptions.

25.     The basic purpose of the FOIA is to enable the public to hold the
government accountable for its actions, through transparency and public scrutiny of
governmental operations and activities.  Through access to government information
FOIA helps the public better understand the government, thereby enabling a vibrant
and functioning democracy.

26.     Any member of the public may make a request for records to an agency of
the United States under the FOIA.  An agency that receives a FOIA request must
notify the requestor within 20 business days after the receipt of such request.  5 U.S.C.

ACLU - Hamdan-618

1   §552(a)(6)(A)(i).  In its response the agency must inform the requestor whether or not

2
3   it intends to comply with the request, provide reasons for its determination, and inform

4   the requestor of his or her right to appeal the determination.  *Id.*

5       27.      The FOIA requires an agency to make a reasonable search for responsive

6
7   records.  *Weisberg v U.S. Dep't of Justice,* 627 F.2d 365, 371 (D.C. Cir. 1980).

8       28.      The FOIA requires an agency to timely disclose all records responsive to

9   a FOIA request that do not fall within nine narrowly-construed statutory exemptions.

10
11  5 U.S.C. § 552(a)(3)(A); § 552(b)(1)-(b)(9).

12      29.      A FOIA requestor is deemed to have exhausted his or her administrative

13  remedies if the agency fails to comply with the statutory time limits for responding to a

14
15  request.  5 U.S.C. § 552(a)(6)(C)(I).  At that point, the requester may immediately file

16  suit in federal court and to obtain the requested documents.  *Spannaus v. DOJ,* 824

17  F.2d 52, 58 (D.C. Cir. 1987).

18
19      30.      A district court has jurisdiction to enjoin the agency from withholding

20  records, to order production of records that are subject to disclosure, and to grant a

21  public interest fee waiver of any costs associated with the production of such records.

22
23  5 U.S.C. §§ 552(a)(4)(B); 552(a)(4)(A)(iii).

24      31.      Documents shall be furnished without charge or at a reduced charge if

25  disclosure of the information is in the public interest because it "is likely to contribute

26
27  significantly to public understanding of the operations or activities of the government,"

28  and is "not primarily in the commercial interest of the requester."  5 U.S.C.

ACLU - Hamdan-619

11

1   §552(a)(4)(A)(iii). Requests for fee waivers are to be "liberally construed in favor of

2
3   waivers for noncommercial requesters." *Federal CURE v. Lappin*, 602 F.Supp.2d 197,
4   203 (D.D.C. 2009) (citation and quotation omitted).

5       32.     A requestor can also seek a waiver of search and review fees on the
6
7   grounds that the requester is a "representative of the news media" and the records are
8   not sought for a commercial purpose. *See* 5 U.S.C. §552(a)(4)(A)(ii). A
9   representative of the news media is "any person or entity that gathers information of
10  potential interest to a segment of the public, uses its editorial skills to turn the raw
11
12  materials into a distinct work, and distributes that work to an audience." *Id.*

13      33.     A FOIA requestor who has been denied records or a waiver of fees
14
15  associated with the search and production of records may appeal such denials to the
16  agency. The agency must make a determination on the appeal within 20 business days
17  of receipt of the appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

18      34.     FOIA also requires an agency to produce records on an expedited basis
19
20  when there is a "compelling need" for expedition. 5 U.S.C. §552(a)(6)(E)(i). A
21  compelling need is established if a person "primarily engaged in disseminating
22
23  information shows an "urgency to inform the public concerning actual or alleged
24  Federal Government activity." 5 U.S.C. §552(a)(6)(E)(v)(ii). *See also* 32 C.F.R.
25  §1900.34(c)(2) (CIA regulations); 18 C.F.R. §16.5(d)(1)(ii) (DOJ regulations); 22
26
27  C.F.R. §171.12(b)(2)(DOS regulations); 6 C.F.R. §5.5(d) (DHS regulations). A FOIA
28  requestor may also be entitled to expedited processing on the grounds that the records

Case 2:10-cv-06149-JHN -JEM Document 1 Filed 08/18/10 Page 13 of 48 Page ID #:13

1   sought relate to a "breaking news story of general public interest." 22

2   C.F.R.§171.12(b)(2)(i) (DOS regulations); 32 C.F.R. §286.4(d)(3)(ii)(A) (DOD

3

4   regulations). *See also* 28 C.F.R. §16.5(d)(1)(iv) (DOJ regulations providing for

5   expedited processing in relation to a "matter of widespread and exceptional media

6   interest in which there exist possible questions about the government's integrity which

7   affect public confidence"); 32 C.F.R. §1900.34(c)(2) (CIA regulations providing for

8

9   expedited processing when "the information is relevant to a subject of public urgency

10  concerning an actual or alleged Federal government activity").

11

12                              **FACTUAL BACKGROUND**

13                                     **Proxy Detention**

14
15  35.      Plaintiffs' filed their Request in order to uncover the facts behind the U.S.

16  government's involvement in the overseas detention and torture of plaintiff Naji

17  Hamdan, a practice known as "proxy detention."

18
19  36.      The U.S. government has increasingly used foreign governments as their

20  proxy to detain and interrogate terrorism suspects abroad outside the rule of law. This

21  practice has increased in recent years, particularly as the government has closed CIA

22  blacksites and reduced the practice of extraordinary rendition. *See* Eric Schmitt &

23

24  Mark Mazzetti, *U.S. Relies More on Aid of Allies in Terror Cases*, N.Y. TIMES, May

25  23, 2009 ("American officials say that in the last years of the Bush administration and

26  now on Mr. Obama's watch, the balance has shifted toward leaving all but the most

27

28  high-level terrorist suspects in foreign rather than American custody.").

ACLU - Hamdan-621

13

37.     Proxy detention is a matter of significant public concern, both in the United States and abroad.  It is unknown to the public how widespread this practice is and how many people are currently in the custody of foreign governments at the United States' request.  A 2010 United Nations Human Rights Council Joint Study found that at least 35 individuals were held in proxy detention sites in Jordan, Egypt, Syria, Morocco, and Djibouti, with an unknown number of individuals possibly being held in Ethiopia and Uzbekistan.  U.N. Human Rights Council, *Joint Study on Global Practices in Relation to Secret Detention in the Context of Countering Terrorism*, U.N. Doc. A/HRC/13/42 (Feb. 19, 2010).  The Study also found that several hundred detainees were held in Pakistan as part of a "secret detention programme." *Id.* at 78.  It stressed that, "[g]iven the prevailing secrecy regarding the CIA rendition programme, exact figures regarding the numbers of prisoners transferred to the custody of other Governments by the CIA without spending any time in CIA facilities are difficult to ascertain." *Id.* at 70.  The public is aware of the identities of only a few U.S. citizens who were detained and interrogated by a foreign government at the behest of the United States. *See, e.g., Abu Ali v. Ashcroft,* 350 F.Supp.2d 28 (D.D.C. 2004); Scott Shane, *American Sues F.B.I., Saying He Was Detained in Africa*, N.Y. TIMES, Nov. 10, 2009; Jonathan S. Landay & Shashank Bengali, *CIA Didn't Try to Stop Secret Deportation of U.S. Citizen, Officials Say*, MCCLATCHY WASHINGTON BUREAU, Mar. 19, 2007; Stephanie McCrummen and Dana Linzer, *American To Be Freed By Ethiopia Faces Hurdle*, WASH. POST, April 13, 2007.

ACLU - Hamdan-622

14

Case 2:10-cv-06149-JHN -JEM   Document 1   Filed 08/18/10   Page 15 of 48   Page ID #:15

## Surveillance and Overseas 'Proxy Detention' of Plaintiff Naji Hamdan

38.      Naji Hamdan is an American citizen, who was born in Lebanon on May 26, 1966.  He moved to the United States in the early 1980s and lived mostly in the Los Angeles area until 2006.  Mr. Hamdan is a practicing Muslim.

39.      Mr. Hamdan studied in the United States at Northrup University, and later started a successful auto parts business, called Hapimotors or Honda Acura Palace in Los Angeles, California.  He also was a founding leader of the Islamic Center of Hawthorne, a mosque in Hawthorne, California.  Mr. Hamdan frequently served as a volunteer imam at that mosque.

40.      The FBI conducted surveillance of Mr. Hamdan for nearly a decade.  FBI agents first visited him at his home in December 1999, at which point agents asked him if he knew Osama Bin Laden or of any imminent terrorist plots.  *See* Teresa Watanabe & Eric Lichtblau, *FBI Accused of Terror Overreaction*, L.A. TIMES, Jan. 10, 2000, at B-1, *available at* http://articles.latimes.com/2000/jan/10/local/me-52684 (quoting Naji Hamdan).  The FBI approached him again shortly after September 11, 2001, and returned to his home and his workplace on approximately six occasions in the following years.  The FBI also questioned Mr. Hamdan's friends, relatives and business associates, including Plaintiff Hossam Hemdan and Jehad Suliman (the then manager of Hapimotors), about Mr. Hamdan's activities, political beliefs, and religion.  In addition and as a result of this surveillance, air travel became increasingly difficult

ACLU - Hamdan-623

15

for Mr. Hamdan; U.S. officials frequently stopped and questioned him in secondary inspection at airports both leaving and returning to the United States.

41.     In August 2006, Mr. Hamdan relocated his family to the U.A.E. where he opened another auto business. At the time of his departure for the U.A.E., federal officials intercepted him at the airport and interrogated him for several hours prior to departure.

42.     The FBI's interest in Mr. Hamdan intensified after his relocation to the U.A.E. In March 2007, Mr. Hamdan returned to the United States on a one-week visit. Upon arrival at LAX airport, federal agents questioned him for more than four hours. Throughout the duration of his week-long trip, the FBI followed him with an entourage of three to four FBI cars, which were easily identifiable by Mr. Hamdan and the friends and associates he met. While the FBI did not question him during that trip, many of the people with whom Mr. Hamdan met were subsequently visited by the FBI and questioned about their conversations with him.

43.     On his return to the U.A.E., Mr. Hamdan stopped in Lebanon where his wife and children were staying. En route back to the U.A.E., Lebanese intelligence officials arrested him at the airport in Beirut for no apparent reason and detained him for one week, during which time Lebanese officials questioned him, accused him of terrorist involvement, and subjected him to inhumane and physically abusive treatment. Months later, Mr. Hamdan had his case reviewed by a Lebanese judge who examined his file and, upon information and belief, stated that he knew of no reason

ACLU - Hamdan-624

16

Lebanese authorities detained Mr. Hamdan in the first place. Mr. Hamdan later learned from a family friend who works in the Lebanese intelligence service that he was detained at the behest of a prominent foreign government, possibly by a request delivered through INTERPOL. Given his extensive FBI surveillance, Mr. Hamdan believes that the prominent foreign government that sought his detention in Lebanon must be the United States. Shortly after he was released, two FBI agents visited his brother, Plaintiff Hossam Hemdan, in Los Angeles and questioned him about Mr. Hamdan's detention in Lebanon.

44. In July, the FBI agents again visited Hossam Hemdan and asked if he could help arrange a meeting between them and his brother Mr. Hamdan at the U.S. Embassy in Abu Dhabi. Mr. Hamdan agreed to the meeting. On July 26, 2008, two FBI agents from the Los Angeles Field Office, Joshua Price and Jerry Price, flew to the U.A.E. and questioned Mr. Hamdan at the Embassy for several hours.

45. A month and a half later, on August 26, 2008, U.A.E. State Security forces (the "Amn al-Dawla") arrested Mr. Hamdan at his home without explanation. The officials put a hood over his head, forced him into a vehicle, and took him to a secret location somewhere outside of Abu Dhabi.

46. Mr. Hamdan was detained incommunicado in this secret location for three months without charge. During that time, U.A.E. officials subjected Mr. Hamdan to severe forms of torture in order to extract false confessions to an ever-changing array of terrorist activities and affiliations. His captors placed him in a refrigerated,

ACLU - Hamdan-625

17

underground room with almost no clothing for prolonged periods of time; he was blindfolded and severely beaten on his back, legs, head and the soles of his feet; kicked in his liver with military boots despite his disclosure to his torturers that he had a liver condition; strapped to an electric chair and told that they would use it if he didn't confess; and told that they would bring his wife there and rape her if he did not confess to what they wanted to hear.

47.     During his lengthy interrogation sessions while in secret detention, his captors asked him about subjects related to his life in the United States, subjects about which only the FBI was likely to have information. Mr. Hamdan believes that, on at least one occasion, an agent of the United States government participated in his interrogation and at least acquiesced to the torture against him. Although he was blindfolded, Mr. Hamdan believes the interrogator was American because he spoke to him in perfect English with an American accent and did not speak Arabic. Mr. Hamdan could also see by looking down through the gap in his blindfold that the likely U.S. official wore western clothing, not the robes and military boots of the U.A.E. interrogators.

48.     Although Mr. Hamdan's wife immediately informed the U.S. Embassy in Abu Dhabi that the U.A.E. officials had arrested him, Mr. Hamdan was only first visited by a consular official, Sean Cooper, approximately a month and a half after his arrest.

ACLU - Hamdan-626

18

49.      On November 19, 2008, the ACLU-SC filed a lawsuit in federal district court in Washington, D.C. alleging that Mr. Hamdan was in the constructive custody of the U.S. because Mr. Hamdan's U.A.E. detention was at the behest of the United States.  One week after filing the lawsuit, Mr. Hamdan was criminally charged with three vague counts of terrorism and transferred from the secret detention site to Al Wathba prison in Abu Dhabi.  Thereafter, Mr. Hamdan remained in prison for eleven months until his case was heard before the U.A.E. Supreme Court.  At his criminal trial, U.A.E. prosecutors introduced no evidence that proved the charged crimes.  Finally, in October 2009, the U.A.E. Supreme Court convicted him, but without specifying what charges he was convicted of and on what grounds, and sentenced him to "time served."  In October 2009, the U.A.E. deported him to Lebanon, where he currently resides with his family.

50.      Events since the filing of plaintiffs' Request have only served to highlight the importance and urgency of the Request.  On February 1, 2010, Mr. Hamdan received a notice from the TSA informing him that he "pose[s] or [is] suspected of posing a security threat" and that the agency was in the process of revoking his Airframe and Power-plant Mechanic's license from the Federal Aviation Administration ("FAA").

51.      Recent human rights reports published since the filing of plaintiffs' Request have also highlighted the intense public interest in Mr. Hamdan's case.  *See, e.g.*, AMNESTY INTERNATIONAL, AMNESTY INTERNATIONAL REPORT 2010: THE STATE

1   OF THE WORLD'S HUMAN RIGHTS 338 (2010); HUMAN RIGHTS WATCH, WORLD REPORT

2   2010 571 (2010); U.S. DEP'T OF STATE, COUNTRY REPORTS ON HUMAN RIGHTS

3
    PRACTICES (2010) *at* http://www.state.gov/g/drl/rls/hrrpt/. *See also* AMNESTY
4

5   INTERNATIONAL, AMNESTY INTERNATIONAL REPORT 2009: THE STATE OF THE WORLD'S

6   HUMAN RIGHTS 340 (2009).

7
                         **Surveillance of Plaintiff Hossam Hemdan**
8

9       52.     Hossam Hemdan is an American citizen, who was born in Lebanon on

10  April 4, 1970.  He moved to the United States in approximately 1987 and has resided
11
    in the Los Angeles area ever since.  Mr. Hemdan currently lives in Hawthorne,
12

13  California and owns and manages a car emissions testing company called Redondo
14
    Smog in Hawthorne, California and Hapimotors (or Honda Acura Palace) in Los
15

16  Angeles.

17      53.     Mr. Hemdan, like his brother, was subjected to FBI questioning,
18
    monitoring and surveillance beginning in 1999.  Over the course of several years, Mr.
19

20  Hemdan received numerous visits by the FBI at his home and workplace for

21  questioning, often about his brother Naji.  On several occasions, he noticed FBI

22  vehicles parked outside his shop.
23
        54.     From 2006 until 2009, Mr. Hemdan regularly experienced difficulties
24

25  leaving and entering the United States at airports and was routinely pulled into
26
    secondary inspection by federal authorities for questioning, including extensive
27

28  questioning about Naji Hamdan.

55.     From 2006 until approximately 2009, Mr. Hemdan had trouble receiving

his mail at his home, which was owned by his brother Mr. Hamdan until his departure

in 2006, and has reason to believe that the FBI intercepted his mail.

### Plaintiffs' FOIA Request

56.     On January 29, 2010, plaintiffs mailed their Request to the following

government agencies, including certain of their components: DOJ, FBI, USNCB-

Interpol, NSD, DOS, CIA, DOD, DIA, NSA, DOD-OIG, DHS, CBD, ICE, TSA, I&A,

and ODNI.  A copy of the Request is attached as Exhibit 1 to this complaint.[1]

57.     Plaintiffs' Request seeks information about the federal government's

surveillance, monitoring, questioning, and investigation of Mr. Hamdan, as well as

information about its participation in Mr. Hamdan's overseas detention and torture.

The Request also seeks information about the surveillance and questioning of Mr.

Hossam Hemdan and Mr. Jehad Suliman on account of their close association with Mr.

Hamdan.

58.     The Request specifically seeks any records from January 1, 1998 to the

present which were prepared, received, collected, and/or maintained by any of the

agencies listed in the complaint, relating to or concerning four subjects: (a) Mr. Naji

Jawdat Hamdan; (b) Mr. Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam

---

[1]  Note that the date listed on the FOIA Request contains a typographical error – the year was 2010, not 2009.

ACLU - Hamdan-629

1  Hemdan), (c) Mr. Jehad Suliman; and (4) Hapimotors (a.k.a. Honda Acura Palace or

2  HondAcura Palace).  *See* Exhibit 1.

3

4     59.     Plaintiffs' Request seeks information and documents relating to a number

5  of questions of serious public concern regarding the U.S. government's continued

6  reliance on proxy detention in the war on terror, such as:

7

8     • Did the U.S. government request that the governments of Lebanon or the U.A.E.

9       detain Mr. Hamdan?

10

11    • Did any U.S. government agent participate in Mr. Hamdan's interrogation

12      and/or torture sessions?

13    • Did the U.S. government know the U.A.E. authorities were torturing Mr.

14      Hamdan?

15

16    • Did the U.S. government direct the U.A.E. to release Mr. Hamdan from the

17      secret prison but to criminally charge him?

18

19    • Does the U.S. routinely use the U.A.E. as a partner in proxy detention?  How

20      widespread is the practice?  How many other individuals have been or are

21      currently being detained at the behest of the United States?

22

23    • What instructions does the U.S. give to foreign partners in proxy detention when

24      it makes a request?  Does the government take any steps to ensure that

25      individuals are not tortured, held indefinitely or subject to inhumane or

26      degrading treatment or conditions?

27

28

ACLU - Hamdan-630

## Plaintiffs' Request for Expedited Processing

60.     Plaintiffs' Request seek s expedited processing because it implicates matters of public urgency, namely, the nature and extent of the federal government's surveillance and detention of American citizens in the name of national security.

61.     In connection with their request for expedited processing, plaintiffs also explained that ACLU-SC is primarily engaged in disseminating information.  For example, ACLU-SC distributes newsletters, action alerts, videos and maintains a website that publishes information of public concern at no charge.

62.     Plaintiffs further explained in their Request that the records they seek relate to matters of widespread and exceptional media interest, as evidenced by articles and broadcast news covering both Naji Hamdan's own experience with proxy detention, as well as the broader news story of the federal government's continued use of this secretive practice.  Plaintiffs identified a number of both regional and national news sources that covered Naji Hamdan's experience with proxy detention, including McClatchy Newspapers, the Associated Press, the Los Angeles Times, the Sacramento Bee, the Washington Post, ABC News, and CBS News.  Even after plaintiffs served their Request, media coverage of this story has continued.  *See* Anna Louise Sussman, *Naji Hamdan's Nightmare*, THE NATION, Mar. 4, 2010.

## Plaintiffs' Fee Waiver Request

63.     In their Request, plaintiffs seek a waiver of all search, review and duplication fees on the grounds that disclosure of the requested records is "in the

1   public interest because it is likely to contribute significantly to public understanding of

2   the operations or activities of the government and is not primarily in the commercial

3

4   interest of the requester." 5 U.S.C. §552(a)(4)(A)(iii).  *See* 22 C.F.R. §171.17(a) (DOS

5   regulations); 28 C.F.R. §16.11(k)(1) (DOJ regulations); 32 C.F.R. §1900.13(b)(2)

6   (CIA regulations); 32 C.F.R. §286.28(d)(1) (DOD regulations); 6 C.F.R.. §5.11(k)(1)

7

8   (DHS regulations).  Plaintiff ACLU-SC is a non-profit organization that intends to

9   disseminate the information it seeks in the Request to the public at no cost.

10      64.      Plaintiffs also seek a waiver of all search, review and duplication fees on

11

12   grounds that plaintiff ACLU-SC qualifies as a "representative of the news media" and

13   the records are not sought for commercial use. 5 U.S.C. §552(a)(4)(A)(ii).  *See* 22

14   C.F.R. §§171.11(o), 171.15(c) (DOS regulations); 28 C.F.R. §16.11(b), (c), (d)(1)

15

16   (DOJ regulations); 32 C.F.R. §286.28(e)(7) (DOD regulations); 32 C.F.R.

17   §§1900.02(h)(3), 1900.13(i)(2) (CIA regulations); 6 C.F.R. §5.1(b)(6) (DHS

18

19   regulations).  Plaintiff ACLU-SC is a representative of the news media because it

20   gathers information of potential interest to the public, uses its editorial skills to turn the

21   raw materials into a distinct work, and distributes that work to an audience.

22

23      65.      Despite the fact that plaintiffs' Request alone demonstrates that their

24   attempt to collect and disseminate information regarding the federal government's

25   "proxy detention" of Naji Hamdan meets the requirements for a fee waiver, several

26   agencies and/or their components still have yet to decide whether plaintiffs are entitled

27

28   to a fee waiver, including:  DOJ, FBI, DIA, NSA, DOD-OFOI, CBD, TSA, I&A,

ACLU - Hamdan-632

1   ODNI.  In addition, the following agencies and/or their components have either denied

2
3   plaintiffs' fee waiver request without adequate grounds or deferred ruling on their fee

4   waiver request, which issue plaintiffs have administratively exhausted prior to filing

5   this suit:  NSD, DOS, CIA (as to Hapimotors), DOD-OIG, DHS and ICE.

6
    ## EXHAUSTION OF ADMINISTRATIVE REMEDIES
7
    ### DOJ - FBI
8

9   66.       The DOJ acknowledged receipt of the Request by letter dated February

10  22, 2010 and indicated that it had referred the Request to its component, the FBI.  A
11
12  copy of the letter is attached here as Exhibit 2.[2]

13  67.       By letters dated February 17, 2010, the FBI acknowledged receipt of the
14
15  Request as to each of the four subjects of the Request (Naji Jawdat Hamdan, Hossam

16  Hemdam, Jehad Suliman and Hapimotors).  The letters indicated in form responses

17  that the FBI was "searching the indices of [its] Central Records System for the
18
19  information [plaintiffs] requested, and will inform [plaintiffs] of the results as soon as

20  possible."  Copies of these letters are attached here as Exhibit 3.

21  68.       By three letters dated March 9, 2010, the FBI denied Plaintiffs' request
22
23  for expedited processing of their Request.  Copies of these letters are attached here as

24  Exhibit 4.  Neither of the FBI's February 17 and March 9 letters address plaintiffs'

25  request for a waiver of fees associated with the processing of their Request.

26  _____

27  2  The correspondence attached as exhibits to this complaint includes the original
       correspondence but omits any attached exhibits to that correspondence to eliminate
28     redundancy.

Case 2:10-cv-06149-DSF-JEM   Document 29-33   Filed 08/10/11   Page 42 of 84   Page ID
#:1518
Case 2:10-cv-06149-JHN -JEM   Document 1   Filed 08/18/10   Page 26 of 48   Page ID #:26

69.     By letter dated April 16, 2010, plaintiffs timely appealed the FBI's denial

of their request for expedited processing, and its failure to timely provide a substantive

response to their Request, either by producing the requested records or providing

proper grounds upon which the records could not be produced.  A copy of this letter is

attached as Exhibit 5.

70.     By letter dated May 24, 2010, the FBI granted plaintiffs' appeal of their

request for expedited processing and indicated that the Request "will be processed as

quickly as practicable."  Regarding the FBI's failure to provide a substantive response

to the Request within the statutory timeframe, the FBI did not identify any exceptional

circumstances justifying its delay and instead indicated that plaintiffs were not required

to administratively appeal this delay and could proceed to file a lawsuit.  A copy of this

letter is attached here as Exhibit 6.

71.     In three letters dated July 21, 2010, the FBI informed plaintiffs that their

Request as it relates to Naji Hamdan, Hossam Hemdan and Jehad Suliman is

"[c]urrently being reviewed by an analyst."  The letters do not identify how long that

review would take and when plaintiffs could expect to receive a substantive response

to the Request.  A copy of these letters is attached here as Exhibit 7.

72.     As more than six months have elapsed since plaintiffs served their

Request on the FBI with no substantive response, plaintiffs have exhausted their

administrative remedies with respect to the FBI.  *See* 5 U.S.C. §§552(a)(3);

552(a)(6)(A)(i); 552(a)(6)(C)(i).

ACLU - Hamdan-634

**DOJ – USNCB-Interpol**

73.      By letter dated February 19, 2010, USNCB-Interpol responded to

plaintiffs' Request by indicating that it had conducted a search for the requested

records and had located no responsive records.  USNCB-Interpol's response did not

address plaintiffs' request for a fee waiver or expedited processing.  A copy of the

letter is attached here as Exhibit 8.

74.      By letter dated April 20, 2010, plaintiffs timely appealed USNCB-

Interpol's response to the Request on the grounds that it had failed to demonstrate that

it had conducted an adequate search for the requested records, including by failing to

"denote which files were searched or by whom... [applying] a systematic approach to

document location, and... provide[ing] information specific enough to enable [the

requestor] to challenge the procedures utilized." *Weisberg v U.S. Dept. of Justice,* 627

F.2d 365, 371 (D.C. Cir. 1980).  Plaintiffs also provided additional facts demonstrating

the likelihood that USNCB-Interpol would have records responsive to the Request,

including facts demonstrating that Naji Hamdan's detention in Lebanon in early

January 2008 may have been pursuant to a warrant for his arrest by USNCB-Interpol.

A copy of plaintiffs' appeal is attached as Exhibit 9.

75.      By letter dated May 25, 2010, the DOJ denied plaintiffs' appeal on the

conclusory finding that USNCB-Intepol had conducted an "adequate, reasonable

search for records responsive to" the Request.  The DOJ did not furnish any affidavits

or other evidence with the necessary facts to show that USNCB-Interpol's search was

27

ACLU - Hamdan-635

1    legally sufficient.  A copy of this letter is attached as Exhibit 10.   Therefore, plaintiffs

2    have exhausted their administrative remedies with regard to USNCB-Interpol.

3

4                                          **DOJ - NSD**

5         76.       By letter dated June 11, 2010 plaintiffs filed their FOIA Request to NSD.

6    A copy of this letter is attached as Exhibit 11.

7

8         77.       By letter dated June 24, 2010, NSD acknowledged receipt of the Request,

9    indicating that the Request would be processed as quickly as possible and that

10   plaintiffs' request for expedited processing and a fee waiver was under consideration.

11

12   A copy of this letter is attached as Exhibit 12.

13        78.       As several months have elapsed since plaintiffs served their Request on

14   the NSD with no substantive response, plaintiffs have exhausted their administrative

15

16   remedies with respect to the NSD.  *See* 5 U.S.C. §§552(a)(3); 552(a)(6)(A)(i);

17   552(a)(6)(C)(i).

18

19                                            **DOS**

20        79.       By letter dated March 12, 2010, the DOS acknowledged receipt of the

21   Request and indicated that it will begin processing plaintiffs' Request.  However, DOS

22

23   denied plaintiffs' requests for a fee waiver and expedited processing.  The DOS

24   classified plaintiffs as "Representatives of the News Media" such that in processing

25   their Request it would charge them the amount necessary to "recover the cost of

26

27   duplicating the record(s) sought only, after the first 100 pages of duplication."   A copy

28   of this letter is attached as Exhibit 13.

ACLU - Hamdan-636

80.    By letter dated April 13, 2010, plaintiffs timely appealed the DOS's

denial of plaintiffs' request for fee waiver and expedited processing. Plaintiffs

appealed DOS's denial of the fee waiver and expedited processing on the basis that

they clearly meet the standards set forth under the DOS regulations. *See* 22 C.F.R.

§§171.17(a)(1)(i-iv); 171.12(b)(2). A copy of this appeal is attached as Exhibit 14.

81.    By letter dated May 7, 2010, DOS responded to plaintiffs' appeal by

upholding its denial of their request for expedited processing. It held that, based on

information submitted by plaintiffs, it would defer the decision to grant or deny the

request for a fee waiver until it could "determine whether the disclosure of any records

responsive to the request is in the public interest, consistent with the application of 22

C.F.R. §171.17." A copy of this letter is attached as Exhibit 15.

82.    As more than six months have elapsed since plaintiffs served their

Request on the DOS with no substantive response, plaintiffs have exhausted their

administrative remedies with respect to the DOS. *See* 5 U.S.C. §§552(a)(3);

552(a)(6)(A)(i); 552(a)(6)(C)(i).

**CIA**

83.    By letter dated February 25, 2010, the CIA denied plaintiffs' Request with

regard to Hapimotors pursuant to FOIA exemptions (b)(1) and (b)(3) by stating that it

can "neither confirm nor deny the existence or nonexistence of records responsive to"

Hapimotors, which is known as a *Glomar* response. *See Phillippi v. C.I.A.*, 546 F.2d

1009 (D.C. Cir. 1976). It further stated that "[t]he fact of the existence or nonexistence

of requested records is currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended." A copy of this letter is attached as Exhibit 16.

84.    By letter dated April 5, 2010, plaintiffs timely appealed the CIA's denial of their Request with regard to Hapimotors on two grounds. First, the CIA failed to demonstrate that it had met its obligation to make a good faith search for the requested records. Second, the CIA failed to meet the requirements of a *Glomar* response (or the claim that it can neither confirm nor deny the existence of responsive records) including by failing to provide a "detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009). A copy of plaintiffs' appeal is attached here as Exhibit 17.

85.    By letter dated April 23, 2010, the CIA acknowledged receipt of plaintiffs' appeal of its denial of the Request regarding Hapimotors, and indicated that it was unlikely that it could process the appeal within the required 20 days. A copy of this letter is attached here as Exhibit 18.

86.    By letters dated April 27, 2010 and May 6, 2010, the CIA acknowledged receipt of plaintiffs' additional Privacy Act information for Hossam Hemdan and Naji Hamdan, respectively, and informed them that it would process their Request as to information regarding Naji Hamdan and Hossam Hemdan in accordance with FOIA without charging fees. The letters did not address plaintiffs' request for expedited processing. (Plaintiffs did not submit Privacy Act information for Jehad Suliman and

30

ACLU - Hamdan-638

do not seek CIA records relating to Mr. Suliman). A copy of these letters are attached

here as Exhibit 19.

87.     By letters dated June 28, 2010, the CIA provided a "final response" to the

Request as it relates to Naji Hamdan and Hossam Hemdan. It stated that it conducted a

search for documents that reflect an "open" or "acknowledged" agency affiliation and

was unable to locate any such records. It also stated with respect to records that would

reveal a classified connection to the CIA, it could neither confirm nor deny the

existence of such responsive records, but that any such records would be subject to

FOIA exemptions (b)(1) and (b)(3) and Privacy Act exemptions (j)(1) and (k)(1).

Copies of these letters are attached here as Exhibit 20.

88.     On July 16, 2010, plaintiffs appealed the CIA's response to plaintiffs'

Request as it relates to Naji Hamdan and Hossam Hemdan on two grounds. First, the

CIA failed to demonstrate that it had met its obligation to make a good faith search for

the requested records. Second, the CIA failed to meet the requirements of a *Glomar*

response including by failing to provide a "detailed affidavit showing that the

information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592

F.3d 60, 68 (2d Cir. 2009). A copy of plaintiffs' appeal is attached here as Exhibit 21.

89.     Several months have elapsed since plaintiffs filed their appeal of the

CIA's denial of the Request as it relates to Hapimotors. In addition, over 20 days have

elapsed since plaintiffs filed their appeal of the CIA's denial of the Request as it relates

to Naji Hamdan and Hossam Hemdan. Therefore, plaintiffs have exhausted their

ACLU - Hamdan-639

1   administrative remedies with respect to the CIA.  *See* 5 U.S.C. §§552(a)(6)(A)(i)-(ii)

2   and 552(a)(6)(C)(i).

3

4   ## DOD - DIA

5   90.      By letter dated February 18, 2010 the DIA acknowledged receipt of

6   plaintiffs' Request, denied plaintiffs' request for expedited processing and informed

7

8   them that there "is currently a substantial delay in processing requests."  DIA's

9   response did not address plaintiffs' request for a waiver of fees associated with the

10  processing of their Request.  A copy of this letter is attached as Exhibit 22.

11

12  91.      By letter dated April 19, 2010, plaintiffs appealed the DIA's denial of

13  their request for expedited processing and their failure to timely provide plaintiffs a

14

15  substantive response to their Request.  As referenced in their appeal, prior to filing the

16  appeal, plaintiffs' counsel spoke to a representative at the customer service desk of the

17  DOD FOIA office, who informed counsel that there were 1,561 requests ahead of them

18

19  and it would take "at least one year" for the agency to process their Request.  A copy

20  of plaintiffs' appeal is attached here as Exhibit 23.

21  92.      By letter dated April 28, 2010, the DIA issued an "interim response" to

22  plaintiffs' appeal of the DIA's denial of their request for expedited processing and its

23

24  failure to provide plaintiffs a substantive response to their Request.  It stated that DIA

25  was "unable to respond" to plaintiffs' Request within the 20 day statutory time period

26  given the following "unusual circumstances": "(a) the need to search for and collect

27

28  records from a facility geographically separated from this office; (b) the potential

ACLU - Hamdan-640

1  volume of records responsive to your request; and (c) the need for consultation with

2

3  one or more agencies which have substantial interest in either the determination or the

4  subject matter of our records." A copy of this letter is attached here as Exhibit 24.

5      93.      As several months have elapsed since plaintiffs served their Request on

6

7  the DIA with no substantive response, plaintiffs have exhausted their administrative

8  remedies with respect the DIA. *See* 5 U.S.C. §§552(a)(3)552(a)(6)(A)(i);

9  552(a)(6)(C)(i).

10                            **DOD - NSA**

11

12     94.      By letter dated February 5, 2010, the NSA denied plaintiffs' Request

13  pursuant to FOIA exemptions (b)(1) and (b)(3) by stating that it can "neither confirm

14  nor deny the existence or nonexistence of records responsive to" Hapimotors, also

15

16  known as a *Glomar* response. A copy of this letter is attached as Exhibit 25.

17     95.      By letter dated April 5, 2010, plaintiffs timely appealed the NSA's denial

18

19  of their Request on two grounds. First, the NSA failed to demonstrate that it had met

20  its obligation to make a good faith search for the requested records. Second, the NSA

21  failed to meet the requirements of a *Glomar* response, including failing to provide

22

23  "detailed affidavit showing that the information logically falls within the claimed

24  exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009). A copy of

25  plaintiffs' appeal is attached here as Exhibit 26.

26

27     96.      As several months have elapsed since plaintiffs served their appeal of the

28  NSA's denial of their Request with no substantive response, plaintiffs have exhausted

ACLU - Hamdan-641

33

1   their administrative remedies with respect to the NSA. *See* 5

2   U.S.C. §§552(a)(6)(A)(ii); 552(a)(c)(C)(i).

3

## DOD - OIG

4

5   97.      By letter dated February 4, 2010 DOD-OIG provided plaintiffs with an

6
    "interim response" to the Request by denying plaintiffs' request for expedited
7

8   processing, denying their request for waiver of fees associated with its search for their

9   requested records, and deferring the decision whether to waive costs.  A copy of this

10  letter is attached here as Exhibit 27.

11

12  98.      By letter dated February 24, 2010, DOD-OIG provided a "final response"

13  to the Request, indicating that it had conducted a search for the requested records and

14  had located no responsive records.  A copy of the letter is attached here as Exhibit 28.

15

16  99.      By letter dated April 23, 2010, plaintiffs timely appealed DOD-OIG's

17  final response to the Request on the grounds that it had failed to demonstrate that it had

18  conducted an adequate search for the requested records, including by failing to "denote

19
    which files were searched or by whom... [applying] a systematic approach to document
20

21  location, and... provid[ing] information specific enough to enable [the requestor] to

22  challenge the procedures utilized." *Weisberg v U.S. Dept. of Justice*, 627 F.2d 365,

23
24  371 (D.C. Cir. 1980).  A copy of plaintiffs' appeal is attached here as Exhibit 29.

25  100.     As several months have elapsed since plaintiffs served their appeal of the

26
    DOD-OIG's denial of their Request with no substantive response, plaintiffs have
27

28

1  exhausted their administrative remedies with respect the DOD-OIG.  *See*

2  5 U.S.C. §552(a)(6)(A)(ii).

### DOD - OFOI

5  101.    By letter dated February 5, 2010, DOD-OFOI closed plaintiffs' Request

6  with "no further action" on the basis that plaintiffs had not established any "link or

7

8  involvement of the [DOD] with the requesters," and that plaintiffs had also directed

9  their Request to intelligence agencies including the ODNI, CIA, NSA and DIA.

10  DOD-OFOI did not address plaintiffs' request for a fee waiver or expedited

11

12  processing.  A copy of this letter is attached here as Exhibit 30.

13  102.    By letter dated April 6, 2010, plaintiffs appealed the DOD-OFOI's

14

15  response to their Request on the grounds that it had failed to conduct an adequate

16  search for the requested records; that plaintiffs are not obligated to establish a "link"

17  between the requesters and the agency from whom they sought records, despite having

18

19  provided ample foundation for why DOD-OFOI would likely be in possession of the

20  requested records; and that DOD-OFOI provided no explanation for its assertion that

21  the requested records more likely resided with other agencies to which the Request

22  was also directed.  A copy of plaintiffs' appeal is attached here as Exhibit 31.

23

24  103.    By letter dated May 25, 2010, DOD denied plaintiffs' appeal.  Without

25  citation to any authority, DOD-OFOI stated that it was not required to conduct a search

26  for documents when it had no reason to believe that the Office of the Secretary of

27

28  Defense (OSD) or the Joint Staff (JS) would maintain such records.  It also held that

1  the Request was denied because it "does not reasonably describe records that would be

2  maintained within the OSD or JS," although DOD-OFOI had not initially raised this as

3  a basis to "administratively close" the Request. A copy of this letter is attached here as

4

5  Exhibit 32.

6      104.    DOD acknowledged in its May 25, 2010 denial of plaintiffs' appeal that

7  plaintiffs have the right to judicial review of this decision pursuant to 5 U.S.C.

8

9  §552(a)(4)(B).

10

11                                   **DHS**

12     105.    By letter dated March 5, 2010, DHS responded to the Request by

13  invoking a 10 day extension to respond because the subject of the Request was of

14

15  substantial interest to two or more components of the DHS, and by denying plaintiffs'

16  request for expedited processing and a fee waiver. A copy of this letter is attached

17  here as Exhibit 33.

18

19     106.    By letter dated April 23, 2010, plaintiffs appealed DHS's denial of

20  expedited processing and a fee waiver. A copy of plaintiffs' appeal is attached here as

21  Exhibit 34.

22

23     107.    By letter dated May 10, 2010, DHS acknowledged receipt of plaintiffs'

24  appeal, stating that "there may be some delay in resolving the matter." A copy of this

25  letter is attached here as Exhibit 35.

26

27     108.    By letter dated August 12, 2010, DHS provided plaintiffs with a further

28  response to the Request. DHS identified that it had conducted a "search of ... Office

                                    36    ACLU - Hamdan-644

1   of Intelligence and Analysis (OI&A) – a DHS component to which plaintiffs had

2
3   directed their Request – which "failed to disclose any responsive records."  DHS also

4   identified that it also had conducted a search for records with various U.S. Immigration

5   and Customs Enforcement ("ICE") program offices, and that it located 28 documents

6
7   responsive to the request but that portions of those documents were subject to various

8   FOIA and Privacy Act exemptions.  Plaintiffs intend to administratively exhaust their

9   remedies against ICE and OI&A to the extent they have failed to conduct an adequate

10  search for the requested records, or to the extent ICE's assertion of the stated

11
12  exemptions to disclosure are not justified, and thereafter possibly amend this complaint

13  to add ICE and/or OI&A as parties to this action.  A copy of DHS's August 12, 2010

14
15  letter is attached here as Exhibit 36.

16      · 109.      In its August 12, 2010 letter, DHS also stated that while it tasked two

17  other components – CBP and TSA – to conduct a search for responsive records,

18
19  plaintiffs' request is still pending as to these components.  *See* Exhibit 36.

20                                          **DHS - CBP**

21      110.      As set forth in DHS's August 12, 2010 letter, Exhibit 36, CBP received

22
23  the Request on or about February 3, 2001, but has never responded to it.  As more than

24  six months has elapsed since CBP received the request with no response, plaintiffs

25  have exhausted their administrative remedies with respect the CBP.  *See*

26
27  5 U.S.C. §§552(a)(6)(A)(i) and 552(a)(6)(C)(i).

28

 ACLU - Hamdan-645

1

### DHS - TSA

2

3    111.    As set forth in DHS's August 12, 2010 letter, Exhibit 36, TSA received

4    the Request on or about February 3, 2001, but has never responded to it.  As more than

5    six months has elapsed since TSA received the request with no response, plaintiffs

6    have exhausted their administrative remedies with respect to the TSA.  *See*

7

8    5 U.S.C. §§552(a)(6)(A)(i) and 552(a)(6)(C)(i).

9

### ODNI

10    112.    By letter dated March 9, 2010, ODNI acknowledged receipt of plaintiffs'

11

12    Request, indicating that the Request would be processed in accordance with FOIA.

13    ODNI denied plaintiffs' request for expedited processing, but did not address their

14    request for a fee waiver.  A copy of this letter is attached here as Exhibit 37.

15

16    113.    By letter dated April 5, 2010, plaintiffs appealed ODNI's denial of their

17    request for expedited processing.  A copy of this letter is attached here as Exhibit 38.

18    ODNI did not respond to the appeal.

19

20    114.    By letter dated June 18, 2010, ODNI issued a "final response" stating that

21    it had searched for unclassified records responsive to plaintiffs' Request and did not

22    locate any such records.  It also stated that while it did not search for classified records

23

24    responsive to the Request, pursuant to FOIA exemptions 5 U.S.C. §552(b)(1) and (3),

25    it can neither confirm nor deny the existence of classified records responsive to the

26    Request.  A copy of this letter is attached here as Exhibit 39.

27

28

ACLU - Hamdan-646

115.     By letter dated June 22, 2010, plaintiffs appealed ODNI's response to their Request on two grounds.  First, the ODNI failed to demonstrate that it had met its obligation to make a good faith search for the requested records.  Second, the ODNI failed to meet the requirements of a *Glomar* response, including by failing to provide a "detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner, et al. v. N.S.A.*, 592 F.3d 60, 68 (2d Cir. 2009).  A copy of plaintiffs' appeal is attached here as Exhibit 40.

116.     By letter dated July 8, 2010, ODNI acknowledged receipt of plaintiffs' appeal and indicated that it would be processed in accordance with FOIA and the Privacy Act.  A copy of this letter is attached as Exhibit 41.

117.     As several months have elapsed since plaintiffs filed their appeal of ODNI's response to the Request, plaintiffs have exhausted their administrative remedies with respect the ODNI.  *See* 5 U.S.C. §552(a)(6)(A).

## CLAIMS FOR RELIEF

### First Claim
### Violation of FOIA for Failure to Adjudicate Request for Records
### (DOJ, FBI, NSD, DOS, CIA, DIA, CBP, TSA, ODNI)

118.     Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained in the above paragraphs.

119.     Defendants' failure to respond to plaintiffs' Request violates 5 U.S.C. §552(a)(6)(A)(i).

## Second Claim
### Violation of FOIA for Failure to Adequately Search for and Promptly Release Records
### (All Defendants)

120.     Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained in the above paragraphs.

121.     Defendants failed to make an adequate search for records responsive to plaintiffs' FOIA Request and to promptly release the responsive records sought by plaintiffs, in violation of 5 U.S.C. § 552(a)(3)(A)-(D).

## Third Claim
### Violation of FOIA for Improper Denial of Expedited Processing
### (USNCB-Interpol, NSD, DOS, CIA, DIA, NSA, DOD-OIG, DOD-OFOI, CBP, TSA, ODNI)

122.     Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained in the above paragraphs.

123.     Defendants' denial of plaintiffs' request for expedited processing of the Request violates 5 U.S.C. §552(a)(6)(E)(v)(II) and corresponding agency regulations.

## Fourth Claim
### Violation of FOIA for Improper Disposition of Fee Waiver Request
### (DOJ, FBI, NSD, DOS, CIA, DIA, NSA, DOD-OIG, DOD-OFOI, CBP, TSA, ODNI)

124.     Plaintiffs reallege and incorporate, as though fully set forth herein, each and every allegation contained in the above paragraphs.

125.     Defendants failed to grant plaintiffs' fee waiver request in violation of 5 U.S.C. §§552(a)(4)(A)(ii)-(iii) and corresponding agency regulations.

ACLU - Hamdan-648

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendant agencies as follows:

     (a)    For declaratory relief declaring that defendant agencies' failure to properly search for and disclose the records requested by plaintiffs is unlawful;

     (b)    For injunctive relief ordering defendant agencies to expedite processing of plaintiffs' FOIA Request and, upon such processing, to make available the requested records to plaintiffs;

     (c)    For injunctive relief ordering defendant agencies to grant plaintiffs' request for a fee waiver;

     (d)    For plaintiffs' reasonable attorney fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) and any other applicable statute; and

     (e)    For such other relief as the Court may deem just and proper.

DATED:  August 18, 2010

                       ACLU FOUNDATION OF SOUTHERN
                       CALIFORNIA
                       AHILAN ARULANANTHAM
                       JENNIFER L. PASQUARELLA

                       By:

                                 Jennifer L. Pasquarella
                       Attorneys for Plaintiffs

                       NAJI JAWDAT HAMDAN
                       HOSSAM HEMDAN
                       ACLU OF SOUTHERN CALIFORNIA

ACLU - Hamdan-649

1

2 TRABER & VOORHEES

3 BERT VOORHEES

 LABONI A. HOQ

4

5 By:

6

7     Laboni A. Hoq

8 Attorneys for Plaintiffs

9 NAJI JAWDAT HAMDAN

10 HOSSAM HEMDAN

 ACLU OF SOUTHERN CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42

ACLU - Hamdan-650

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Jacqueline Nguyen and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV10- 6149 JHN (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
| --- | --- | --- |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

ACLU - Hamdan-651

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Case 2:10-cv-06149-JHN -JEM   Document 1   Filed 08/18/10   Page 44 of 48   Page ID #:44

Name & Address:
Ahilan T. Arulanantham, Jennifer L. Pasquarella,
ACLU Foundation of Southern California
1313 W. Eighth Street,
Los Angeles, CA 90017 Tel: 213.977.9500
(Continued on Attachment 1)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 03-14-2011 BY 65179/DMH/BAW/STP/bls

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Naji Jawdat HAMDAN, Hossam HEMDAN, ACLU
OF SOUTHERN CALIFORNIA

                                    PLAINTIFF(S)

              v.

UNITED STATES DEPARTMENT OF JUSTICE;
(Continued on Attachment 1)

                                    DEFENDANT(S).

CASE NUMBER

CV10 6149 JHN (JEMx)

SUMMONS

TO:   DEFENDANT(S): United States Department of Justice;  (Continued on Attachment 1)

        A lawsuit has been filed against you.

        Within ___60___ days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer
or motion must be served on the plaintiff's attorney, Jennifer L. Pasquarella_____, whose address is
1313 W. Eighth Street, Los Angeles, California 90017_____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.  You also must file
your answer or motion with the court.

                                    Clerk, U.S. District Court


Dated: ____AUG 1 8 2010____        By: **CHRISTOPHER POWERS**
                                        _____
                                              Deputy Clerk

                                            *(Seal of the Court)*


*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed
60 days by Rule 12(a)(3)].*

CV-01A (12/07)                    SUMMONS        ACLU - Hamdan-652

## ATTACHMENT 1 TO SUMMONS

Additional Plaintiff's Attorneys:

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 03-14-2011 BY 65179/DMH/BAW/STP/b1s

Bert Voorhees
Laboni A. Hoq
TRABER & VOORHEES
128 N. Fair Oaks Avenue
Pasadena, CA  91103
Tel: 626.585.9611

Defendants continued:

FEDERAL BUREAU OF INVESTIGATION, a component of the U.S.
Department of Justice; U.S. NATIONAL CENTRAL BUREAU - INTERPOL, a
component of the U.S. Department of Justice; NATIONAL SECURITY
DIVISION, a component of the U.S. Department of Justice; DEPARTMENT OF
STATE; UNITED STATES CENTRAL INTELLIGENCE AGENCY; UNITED
STATES DEPARTMENT OF DEFENSE; DEFENSE INTELLIGENCE
AGENCY, a component of the U.S. Department of Defense; NATIONAL
SECURITY AGENCY, a component of the U.S. Department of Defense; OFFICE
OF INSPECTOR GENERAL, a component of the U.S. Department of Defense;
DEFENSE OFFICE OF FREEDOM OF INFORMATION , a component of the
U.S. Department of Defense; U.S. BUREAU OF CUSTOMS & BORDER
PROTECTION, a component of the U.S. Department of Homeland Security;
TRANSPORTATION SECURITY ADMINISTRATION, a component of the U.S.
Department of Homeland Security;  OFFICE OF DIRECTOR OF NATIONAL
INTELLIGENCE.

ACLU - Hamdan-653

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself □) | DEFENDANTS |
|---|---|
| Naji Jawdat Hamdan, Hossam Hemdan, ACLU of Southern California | United States Department of Justice; Federal Bureau of Investigation, a component of the U.S. Department of Justice; (Continued on Attachment I) |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Ahilan T. Arulanantham, Jennifer L. Pasquarella, ACLU Foundation of Southern California, 1313 W. Eighth Street, Los Angeles, CA 90017 Tel: 213.977.9500 (Continued on Attachment I) | ALL INFORMATION CONTAINED HEREIN IS UNCLASSIFIED DATE 03-14-2011 BY 65179/DMH/BAW/STP/b1s |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- □ 1 U.S. Government Plaintiff
- □ 3 Federal Question (U.S. Government Not a Party)
- ☑ 2 U.S. Government Defendant
- □ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☑ 1 Original Proceeding
- □ 2 Removed from State Court
- □ 3 Remanded from Appellate Court
- □ 4 Reinstated or Reopened
- □ 5 Transferred from another district (specify):
- □ 6 Multi-District Litigation
- □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** □ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** □ Yes ☑ No          □ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiffs file this civil action under the Freedom of Information Act, 5 U.S.C. Section 552

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 530 General | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 535 Death Penalty | |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | BANKRUPTCY | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 470 Racketeer Influenced and Corrupt Organizations | | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 480 Consumer Credit | □ 151 Medicare Act | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 490 Cable/Sat TV | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| □ 810 Selective Service | | □ 360 Other Personal Injury | □ 441 Voting | □ 610 Agriculture | □ 820 Copyrights |
| □ 850 Securities/Commodities/ Exchange | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 362 Personal Injury-Med Malpractice | □ 442 Employment | □ 620 Other Food & Drug | □ 830 Patent |
| □ 875 Customer Challenge 12 USC 3410 | □ 160 Stockholders' Suits | □ 365 Personal Injury-Product Liability | □ 443 Housing/Acco-mmodations | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 890 Other Statutory Actions | □ 190 Other Contract | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | | SOCIAL SECURITY |
| □ 891 Agricultural Act | □ 195 Contract Product Liability | | □ 445 American with Disabilities - Employment | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 892 Economic Stabilization Act | □ 196 Franchise | | □ 446 American with Disabilities - Other | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 894 Energy Allocation Act | □ 210 Land Condemnation | □ 462 Naturalization Application | □ 440 Other Civil Rights | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| ☑ 895 Freedom of Info. Act | □ 220 Foreclosure | □ 463 Habeas Corpus-Alien Detainee | | □ 690 Other | □ 865 RSI (405(g)) |
| □ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | □ 230 Rent Lease & Ejectment | □ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| □ 950 Constitutionality of State Statutes | □ 240 Torts to Land | | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| | □ 245 Tort Product Liability | | | | □ 871 IRS-Third Party 26 USC 7609 |
| | □ 290 All Other Real Property | | | | |

CV10 6149

FOR OFFICE USE ONLY: Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)          CIVIL COVER SHEET          Page 1 of 2

ACLU - Hamdan-654

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Hamdan - Los Angeles County<br>ACLU of Southern California - Los Angeles County | Hamdan - Lebanon |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  |  |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _August 17, 2010_

Notice to Counsel/Parties:  The CV-71 (JS-44)  Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

## ATTACHMENT 1 TO CIVIL COVER SHEET

Additional Plaintiff's Attorneys:

Bert Voorhees
Laboni A. Hoq
TRABER & VOORHEES
128 N. Fair Oaks Avenue
Pasadena, CA 91103
Tel: 626.585.9611

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 03-14-2011 BY 65179/DMH/BAW/STP/bls

Defendants continued:

U.S. NATIONAL CENTRAL BUREAU - INTERPOL, a component of the U.S.
Department of Justice; NATIONAL SECURITY DIVISION, a component of the
U.S. Department of Justice; DEPARTMENT OF STATE; UNITED STATES
CENTRAL INTELLIGENCE AGENCY; UNITED STATES DEPARTMENT OF
DEFENSE; DEFENSE INTELLIGENCE AGENCY, a component of the U.S.
Department of Defense; NATIONAL SECURITY AGENCY, a component of the
U.S. Department of Defense; OFFICE OF INSPECTOR GENERAL, a component
of the U.S. Department of Defense; DEFENSE OFFICE OF FREEDOM OF
INFORMATION , a component of the U.S. Department of Defense; U.S.
BUREAU OF CUSTOMS & BORDER PROTECTION, a component of the U.S.
Department of Homeland Security; TRANSPORTATION SECURITY
ADMINISTRATION, a component of the U.S. Department of Homeland Security;
OFFICE OF DIRECTOR OF NATIONAL INTELLIGENCE.

ACLU - Hamdan-656

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MONA MALLOUK, *et al.,*

                    Appellants,

    v.

BARACK H. OBAMA, *et al.,*

                    Appellees.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 03-14-2011 BY 65179/DMH/BAW/STP/b1s

No. 09-5325

## APPELLANTS' UNOPPOSED MOTION FOR VOLUNTARY DISMISSAL

Pursuant to Fed. R. App. P. 42(b), appellants hereby move to dismiss this appeal.

On October 12, Naji Hamdan, the United States citizen who is the subject of this petition for habeas corpus, was sentenced by a court in the United Arab Emirates to eighteen months in prison. After receiving credit for the time he has already spent in custody, it is expected that he will be released from prison and deported from the U.A.E. in the near future.

Counsel for the appellees (respondents below) have indicated that the appellees do not oppose the granting of this motion.

Appellants have paid all fees that are due. Each side shall bear its own costs.

           Respectfully submitted,

           */s/ Arthur B. Spitzer*

           Arthur B. Spitzer (D.C. Bar No. 235960)
           Fritz Mulhauser   (D.C. Bar No. 455377)
           American Civil Liberties Union
            of the Nation's Capital
           1400 20th Street NW, Suite 119
           Washington DC 20036
           Tel (202) 457-0804
           Fax (202) 452-1868

                ACLU - Hamdan-657

Ahilan Arulanantham
Jennie Pasquarella
ACLU of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel:  (213) 977-9500
Fax:  (213) 977-5297

Counsel for Appellants

October 27, 2009

ACLU - Hamdan-658

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

1. **Parties and Amici.** The petitioners in the district court were Mona Mallouk and Hossam Hemdan, as next friends of Naji Hamdan. The respondents were Barack H. Obama, President of the United States; Eric H. Holder, Jr., Attorney General of the United States; and Robert S. Mueller, III, Director of the Federal Bureau of Investigation. There were no intervenors or amici.

2. **Rulings Under Review.** The rulings under review are the decisions of the district court (James Robertson, J.) denying the petition for a writ of habeas corpus on August 4, 2009, and denying petitioners' motion for reconsideration on August 19, 2009. Neither is reported. Both are attached.

3. **Related Cases.** Undersigned counsel is not aware of any related cases.

### DISCLOSURE STATEMENT

No party to this appeal is a corporation, association, joint venture, partnership, syndicate, or other similar entity.

Respectfully submitted,

*/s/ Arthur B. Spitzer*

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the Nation's Capital
1400 20th Street NW, Suite 119
Washington DC 20036
Tel (202) 457-0804
Fax (202) 452-1868

ACLU - Hamdan-659

Case 2:10-cv-06149-DSF-JEM   Document 29-33   Filed 08/10/11   Page 68 of 84   Page ID
Case 1:08-cv-02003-JR    Document 28   Filed 08/04/2009    Page 1 of 3
#:1544

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONA MALLOUK, *et al.*,          :
                                 :
          Petitioners,           :
                                 :
     v.                          :  Civil Action No. 08-2003 (JR)
                                 :
BARACK H. OBAMA, *et al.*,       :
                                 :
          Respondents.           :

<u>MEMORANDUM</u>

On June 8, 2009, I heard argument for and against the
habeas petition filed on behalf of Naji Hamdan, an American
citizen imprisoned in the United Arab Emirates (UAE).  The
hearing focused on two issues: whether I had jurisdiction to hear
Hamdan's petition and, if I did, whether I could grant habeas
relief since Hamdan has been charged with criminal offenses by
the UAE, a sovereign nation.  The petition prayed, not for
release, but rather for a mandatory injunction requiring the
United States government to "stop requesting" Hamdan's detention
and to inform the UAE courts of American participation, if any,
in Hamdan's alleged interrogation and torture.  The government
denied any participation in Hamdan's detention and interrogation.

I ruled on June 8 that the habeas petition would be
dismissed, essentially because Hamdan has been charged by the UAE
for domestic criminal offenses, *see Munaf v. Geren*, 128 S. Ct.
2207, 2221-24; *see also Kiyemba v. Obama*, 561 F.3d 509, 515 (D.C.
Cir. 2009), but I did not dismiss the entire case because

ACLU - Hamdan-660

Case 2:10-cv-06149-DSF-JEM   Document 29-33   Filed 08/10/11   Page 69 of 84   Page ID
#:1545
Case 1:08-cv-02003-JR   Document 28   Filed 08/04/2009   Page 2 of 3

petitioners advanced the alternative argument that 28 U.S.C.
§ 1331 gave me jurisdiction over Hamdan's claim of a
constitutional violation and that the All Writs Act, 28 U.S.C.
§ 1651, provided an avenue to grant relief on that claim.  I
invited supplemental briefing on that argument.

    The "state-created danger" claim goes like this:
(1) the United States government caused Hamdan's arbitrary
detention and torture by requesting that the UAE detain him, but
(2) Hamdan had a substantive due process right to protection by
the American government from known, or likely abuse by UAE
security officials, so that (3) by requesting Hamdan's detention,
the United States government heightened the risk of danger and
violated Hamdan's substantive due process right.  *See Butera v.
District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001) (an
individual can assert a substantive due process claim against
egregious conduct by District of Columbia officials who
"affirmatively act to increase or create the danger" which causes
the individual's harm).  The due process claim, petitioners
argue, gives rise to 28 U.S.C. § 1331 federal question
jurisdiction, and the All Writs Act, 28 U.S.C. § 1651, allows for
any appropriate relief.

    The Due Process clause provides no general right to
affirmative government aid or protection, however.  The "state-
created danger" or "state endangerment" concept is an exception

- 2 -

ACLU - Hamdan-661

to that rule, developed in a § 1983 case involving state actors, *see Butera*, 235 F.3d at 647.  A "state endangerment" claim against the federal government has never been recognized, and the concept has been rejected by at least one judge of this Court. *See Sadowski v. Bush*, 293 F. Supp. 2d 15, 18 n.1 (D.D.C. 2003).

The assertion of 28 U.S.C. § 1331 jurisdiction fares no better.  Petitioners concede that the All Writs Act does not provide an independent ground for jurisdiction, but only allows for relief that may be "necessary or appropriate *in aid of*" the court's jurisdiction.  28 U.S.C. § 1641(a) (emphasis added).  Thus, even if habeas corpus is a "civil action" for purposes of § 1331 (a proposition for which petitioners cite no case support), the dismissal of the habeas petition here leaves nothing in the "Constitution, laws or treaties of the United States" for petitioners' claim to "arise under."

Petitioners' allegations of abuse and worse at the hands of UAE security officials may well merit further political and public inquiry, but there is no basis on this record for further action by this Court.

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge



- 3 -



ACLU - Hamdan-662

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

____1____      Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☒Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C)-1,5,6 | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5)-2 | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6)-1,5,6 | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of_____.

_____    Page(s) withheld for the following reason(s):_____

_____

_____

☒ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-663_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee  X
X       for this page     X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

JAN 1 2 2009

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MONA MALLOUK *et al.*, )
)
Petitioners, )
)
v. )  Civil Action No. 08-2003 (JR)
)
GEORGE W. BUSH *et al.*, )
)
Respondents. )
)

## RESPONDENTS' MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

Petitioners have filed a petition seeking a writ of habeas corpus from this Court. This Court does not have jurisdiction to entertain Petitioners' claims and, in any event, Petitioners are not entitled to the relief they seek. The Petition for Writ of Habeas Corpus, therefore, should be dismissed. A memorandum of law follows.

Dated: January 12, 2009

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

TERRY M. HENRY
Assistant Branch Director

/s/ Alexander K. Haas
ALEXANDER K. HAAS (CA Bar 220932)

/s/ Stephen H. Buckingham
STEPHEN H. BUCKINGHAM (MD Bar)
Trial Attorneys
United States Department of Justice

ACLU - Hamdan-664

Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, DC 20530
Tel: (202) 305-9334—Fax: (202) 305-3138

*Attorneys for Respondents*

ACLU - Hamdan-665

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss Petition for Writ of Habeas Corpus and the memorandum of law and exhibits in support thereof was served electronically and by federal express on January 12, 2009, to:

Arthur B. Spitzer
American Civil Liberties Union
1400 20th St. NW
Suite 119
Washington, DC 20036-5920
Telephone:     (212) 457-0800
Facsimile:      (212) 452-1868
ArtSpitzer@aol.com

Ahilan T. Arulanantham
Jennie Pasquarella
ACLU Foundation of Southern California
1313 West Eighth Street
Los Angeles, CA 90017
Tel: (213) 977-9500
Fax: (213) 977-5297
aarulanantham@aclu-sc.org

/s/ Stephen J. Buckingham
STEPHEN J. BUCKINGHAM

- 3 -

ACLU - Hamdan-666

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MONA MALLOUK *et al.*,  )
)
  Petitioners,  )
)
v.  )  Civil Action No. 08-2003 (JR)
)
GEORGE W. BUSH *et al.*,  )
)
  Respondents.  )
)

## (PROPOSED) ORDER GRANTING RESPONDENTS' MOTION TO DISMISS

Having considered Respondents' Motion to Dismiss the Petition for Writ of Habeas

Corpus, Respondents' motion is hereby

GRANTED, and it is

ORDERED that the Petition for Writ of Habeas Corpus is hereby DISMISSED with

prejudice.

_____        _____
Date                                          HON. JAMES ROBERTSON
                                                 United States District Judge

ACLU - Hamdan-667

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____   Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____   Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____   Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

__29__   Page(s) were not considered for release as they are duplicative of ACLU-Hamdan-302-330 .

_____   Page(s) withheld for the following reason(s):_____

_____

_____

☒ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-668-696

XXXXXXXXXXXXXXXXXX
X     Deleted Page(s)      X
X     No Duplication Fee   X
X        for this page     X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

_____ Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☐ Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____ Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____ Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

__4__ Page(s) were not considered for release as they are duplicative of ACLU-Hamdan-222-225 .

_____ Page(s) withheld for the following reason(s):_____

_____

_____

☒ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-697-700_____

XXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)       X
X    No Duplication Fee    X
X    for this page         X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

__4__        Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

⊠Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ⊠(b)(7)(C)-1,6 | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ⊠(b)(5)-2 | ☐(b)(9) | ☐(k)(6) |
| ⊠(b)(6)-1,6 | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____   Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____   Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

_____   Page(s) were not considered for release as they are duplicative of_____.

_____   Page(s) withheld for the following reason(s):_____

_____

_____

⊠ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-701-704_____

XXXXXXXXXXXXXXXXXXX
X     Deleted Page(s)        X
X     No Duplication Fee    X
X        for this page        X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

# FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

_____    Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☐Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

__35__    Page(s) were not considered for release as they are duplicative of ACLU-Hamdan-226-259 .

_____    Page(s) withheld for the following reason(s):_____

_____

_____

☒ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-705-739 _____

XXXXXXXXXXXXXXXXXXX
X     Deleted Page(s)      X
X     No Duplication Fee   X
X       for this page      X
XXXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

☐☐☐☐☐ **(OGC) (FBI)**

**To:** ☐☐☐☐☐(OGC) (FBI)
**Subject:** (Mallouk) Processing of documents for DOJ

b6 -1
b7C -1

☐☐

After our conversation regarding providing documents to DOJ for review, I would prefer to run the documents through CDRU before DOJ gets a copy. CDRU can then keep a formal record of exactly what was produced to DOJ.

If possible, can you coordinate the production with Unit Chief ☐☐☐☐☐ I am sure that he will be able to expedite the process so that DOJ won't lose any time to review materials to draft their response.

Sincerely,

☐☐

ACLU - Hamdan-740

1

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

### FEDERAL BUREAU OF INVESTIGATION
### FOIA/PA DELETED PAGE INFORMATION SHEET

__3__   Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☒Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C)-1,6 | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5)-2 | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6)-1,6 | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____   Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____   Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

_____   Page(s) were not considered for release as they are duplicative of_____.

_____   Page(s) withheld for the following reason(s):_____

_____

☒ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-741-743_____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)       X
X    No Duplication Fee   X
X        for this page       X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX

The best deals of the year.
SAMSUNG HDTVs from $500 and up. See them now ➌

## Los Angeles Times

http://www.latimes.com/news/printedition/california/la-me-aclu20-2008nov20.0,3493114.story
*From the Los Angeles Times*

## ACLU seeks release of ex-Hawthorne resident being held in the United Arab Emirates

Naji Hamdan, a U.S. citizen, was arrested three months ago on the United States' behalf, the group's lawsuit alleges.
By Raja Abdulrahim

November 20, 2008

The American Civil Liberties Union petitioned the U.S. government Wednesday for the release of a U.S. citizen who, the group alleges, has been under FBI scrutiny for years and has been imprisoned without charge in the United Arab Emirates for three months.

Naji Hamdan, 42, a former Hawthorne resident, was arrested Aug. 29 by Emirates state police at the request of the U.S. government, effectively putting Hamdan in U.S. custody, says the writ of habeas corpus filed by the ACLU in federal court in Washington, D.C., on Wednesday.

The ACLU hopes the lawsuit will compel the government to admit it was involved in Hamdan's detention and will lead to his release, said Ahilan Arulanantham of the ACLU.

Hamdan was arrested in the Emirates three weeks after two FBI agents flew from Los Angeles to the U.S. Embassy in Abu Dhabi to question him, according to the lawsuit and Hamdan's brother, Hossam Hemdan, who spells his last name differently.

Arulanantham, director of immigrants' rights and national security for the ACLU of Southern California, said that the FBI had a years-long history of questioning and detaining Hamdan and that the State Department was slow to meet with him in the Emirates.

He said those pointed to U.S. involvement in Hamdan's imprisonment.

"We are confident about it because of the pattern," Arulanantham said.

FBI officials would not comment on the lawsuit and would not say whether the bureau had questioned Hamdan in the past.

"In terrorism matters, we routinely work with foreign counterparts, and in some cases, with the permission of the host government, FBI agents have been permitted to interview people who may possess relevant information. Being interviewed by the FBI does not mean the person is in U.S. custody," said an FBI statement released this week. "The FBI does not ask foreign nations to detain U.S. citizens on our behalf in order to circumvent their rights."

A State Department Bureau of Consular Affairs spokeswoman, citing privacy concerns, would not say whether the U.S. government was involved in Hamdan's current detention or whether officials were seeking his release.

The spokeswoman would confirm only that a U.S. citizen was in custody in the Emirates. She said a consular officer had met with the citizen on Oct. 19.

Richard Olson, U.S. ambassador to the Emirates, and the U.S. consulate sent letters to Rep. Maxine Waters (D-Los Angeles) and Hamdan's wife, Mona Mallouk, confirming that a U.S. consul met with Hamdan while he was in custody and planned to meet with him again, according to court documents.

"There have not been any charges filed against Mr. Hamdan at this time," Consul R. Sean Cooper wrote to Waters' office on Nov. 5. "This extended detention, while very unusual from our American perspective, does not run counter to the laws of the United Arab Emirates."

Hamdan, a naturalized U.S. citizen born in Lebanon, lived in the Hawthorne area for two decades before he moved with his wife and children to the Emirates in 2006 to expand his business. He still has an auto-parts business -- Honda Acura Palace on 55th Street in Los Angeles -- and occasionally returns to the area. His brother lives nearby.

Hamdan's brother and the ACLU contend that in 2007, when Hamdan returned to Los Angeles to check on his business, the FBI kept him under surveillance. The year before, when Hamdan tried to board a flight at Los Angeles International Airport, he was detained and questioned for several hours before being released, according to the ACLU. He was also questioned in 1999 at his home.

Hamdan visited his family in Lebanon this summer, but when he tried to return to the Emirates, he was arrested by Lebanese government police and interrogated for four days, his brother said.

Hamdan served on the board of trustees of the Islamic Center of Hawthorne. The center's president, Ahmed Azam, described Hamdan as "a well-known and well-respected man."

Mallouk, Hamdan's wife, has gone to Lebanon with their three children to stay with relatives.

"I am so scared for my husband. We are Americans, but the U.S. government won't tell us why he is arrested and when he will be released," she said in an ACLU statement.

Abdulrahim is a Times staff writer.

ACLU - Hamdan-744

raja.abdulrahim@latimes.com

---

If you want other stories on this topic, search the Archives at latimes.com/archives.
**TMSReprints**
Article licensing and reprint options

Copyright 2008 Los Angeles Times | Privacy Policy | Terms of Service
Home Delivery | Advertise | Archives | Contact | Site Map | Help

partners:

ACLU - Hamdan-745

OPCA-20 (12-3-96)

XXXXXX
XXXXXX
XXXXXX

## FEDERAL BUREAU OF INVESTIGATION
## FOIA/PA DELETED PAGE INFORMATION SHEET

____1____    Page(s) withheld entirely at this location in the file.  One or more of the following statements, where indicated, explain this deletion.

☒Deletions were made pursuant to the exemptions indicated below with no segregable material available for release to you.

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5)-1 | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

☐  Information pertained only to a third party with no reference to the subject of your request or the subject of your request is listed in the title only.

☐  Document(s) originated with another Government agency(ies).  These documents were referred to that agency(ies) for review and direct response to you.

_____    Page(s) contain information furnished by another Government agency(ies).  You will be advised by the FBI as to the releasability of this information following our consultation with the other agency(ies).

_____    Page(s) withheld inasmuch as a final release determination has not been made.  You will be advised as to the disposition at a later date.

_____    Page(s) were not considered for release as they are duplicative of_____.

_____    Page(s) withheld for the following reason(s):_____

_____

_____

☒ The following number(s) is (are) to be used for reference regarding these pages:

FBI-ACLU-746 _____

XXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee    X
X    for this page    X
XXXXXXXXXXXXXXXXXX

XXXXXX
XXXXXX