# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAJI JAWDAT HAMDAN, *et al.*, ) | Case No. CV 10-6149-JHN-JEMx |
| ) | |
| Plaintiffs, ) | DECLARATION OF MARGARET P. GRAFELD |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES DEPARTMENT OF ) JUSTICE, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

I, Margaret P. Grafeld, declare and state as follows:

1.  I am the Deputy Assistant Secretary for Global Information Services and am responsible for the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department"). In this capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been employed by the Department of State since 1974, and have served with the Department's Information Access Program for most of my tenure with the Department. I am authorized to classify and declassify national security information. I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the records in the case file established for processing the subject request, and upon information furnished to me in the course of my official duties.

2.  The core responsibilities of IPS include: (1) responding to records access requests made by the public (under the FOIA, the Privacy Act, the mandatory classification review requirements of the Executive Order on classified national security information, or the Ethics in

Government Act), Members of Congress, and other government agencies, and those that have been made pursuant to judicial process, such as subpoenas, court orders, and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's Library; and (8) the application of technology that supports these activities.

3.   This declaration explains the Department's search for and review of records responsive to the FOIA request at issue in this litigation. A description of the administrative processing of this request follows, as well as a detailed description of the information withheld and applicable FOIA exemptions applied.

## I. ADMINISTRATIVE PROCESSING OF PLAINTIFFS' FOIA REQUESTS

### FOIA Request Number 201000711

4.   By letter dated January 29, 2010 (Exhibit 1), Jennie Pasquarella of the American Civil Liberties Union of Southern California submitted a FOIA request to the Department  on behalf of her clients, Naji Jawdat Hamdan, Hossam Hemdan, and Jehad Suliman, for "any records from January 1, 1998 to the present, which were prepared, received, transmitted, collected and/or maintained by the Department and any of its sub-agencies or divisions relating to or concerning:  Naji Jawdat Hamdan, Hossam Jawdat Hemdan (a.k.a. Sammy Hemdan or Sam Hemdan), Jehad Suliman; and Hapimotors (a.k.a. Honda Acura Palace or HondAcura Palace)". The Plaintiffs provided a list of suggested search terms for electronic searches.  Plaintiffs provided statements under penalty of perjury authorizing the Department to release information about themselves to attorneys from the ACLU of Southern California.  Further, Plaintiffs

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

requested a limitation or waiver of processing fees.  In the event a waiver or reduction of fees was denied, Plaintiffs asked to be notified if the anticipated costs exceeded $100.  Plaintiffs also requested expeditious handling for this FOIA request.

5.  By letter dated March 12, 2010 (Exhibit 2), IPS acknowledged receipt of the request and assigned it case control number 201000711.  Plaintiffs were advised that the processing of their request had begun and that they would be notified as soon as responsive material was retrieved and reviewed.  Plaintiffs were advised that the cut-off date for retrieving records was either the date they had specified as a particular time frame or the date that searches were initiated.  IPS further advised Plaintiffs that by making a FOIA request they had agreed to pay all applicable fees up to $25.00 unless a fee waiver was granted.  Plaintiffs were also advised that their request had been placed in the "representatives of the news media" category for fee purposes, which requires assessing duplication costs after the first 100 pages of duplication.  IPS also advised Plaintiffs that their requests for a fee waiver and expeditious processing were denied and that they could appeal the denials with 30 days of receipt of this letter.  IPS advised Plaintiffs unusual circumstances may arise for extending the time limit.

6.  By letter dated December 17, 2010 (Exhibit 3), IPS advised Plaintiffs that searches had been initiated of the following Department  record systems:  the Central Foreign Policy Records (the principal record system of the Department), the Bureau of Diplomatic Security, the Bureau of Intelligence and Research, the Office of the Legal Advisor, the Office of Overseas Citizens Services, the Office of Passport Services, the Bureau of Near Eastern Affairs, the Office of Counterterrorism, the Office of the Ambassador-at-large for War Crimes Issues, the Office of the Secretary, the Office of the Deputy Secretary of State, and the U.S. Embassies in Abu Dhabi and Beirut and the U.S. Consulate General in Dubai.  These were the offices, overseas posts, or

other records systems within the Department that my office determined may reasonably be expected to contain the records requested.  Plaintiffs were also advised that searches of the U.S. Consulate General in Dubai, the Bureau of Near Eastern Affairs, the Office of the Ambassador-at-large for War Crimes Issues, and the Central Foreign Policy Records had been completed and resulted in the retrieval of 41 responsive documents.  Of these, 22 documents were released in full, 18 were released with excisions, and one was withheld in full.

7.  By letter dated February 17, 2011 (Exhibit 4), IPS advised Plaintiffs that the search and review of the records of the Bureau of Diplomatic Security, the Bureau of Intelligence and Research, the office of the Legal Adviser for Consular Affairs, the Office of the Executive Secretariat, the Office of the Coordinator for Counterterrorism, and the U.S. Embassy in Beirut had been completed and resulted in the retrieval of 36 responsive documents.  Plaintiffs were advised that the search of the records of the U.S. Embassy in Abu Dhabi had also been completed, and for ease of review, had been divided into two parts.  The review of the first part, consisting of 38 documents had been completed.  Of these 74 documents, 21 were released in full, 20 were released with excisions, and 33 were withheld in full.

8.  By letter dated April 18, 2011 (Exhibit 5), IPS advised Plaintiffs that the search and review of the records of the Office of the Deputy Secretary of State and the review of the records retrieved from the U.S. Embassy in Abu Dhabi and the Office of Passport Services had been completed and resulted in the retrieval of 539 responsive documents.  Of these, 322 were released in full, 113 were released with excisions, and 104 were withheld in full.  However, IPS's letter incorrectly noted the total number of responsive documents located.  The total number of responsive documents located was 545.  Of these 322 documents were released in full, 119 released with excisions, and 104 were withheld in full.

4

9.  By letter dated April 29, 2011 (Exhibit 6), IPS advised Plaintiffs that the search and review of the records of the Office of the Legal Adviser for Law Enforcement and Intelligence had been completed and resulted in the retrieval of 356 responsive documents.  Of these, 102 were released in full, 43 were released with excisions, and 211 were withheld in full.  Plaintiffs were advised that the search and review of the records of the office of Overseas Citizens Services ("OCS") had also been completed and resulted in the retrieval of 136 responsive documents.  Of these, 51 were released in full, 48 were released with excisions, and 37 were withheld in full.  Plaintiffs were also advised that 19 documents retrieved from the U.S. Embassy in Abu Dhabi (ABUD 5, 6, and 9) and the Office of the Deputy Secretary of State (D1) required interagency coordination before a final determination could be made.  The review was completed and nine documents were released in full and 10 were released with excisions.  However, IPS's letter incorrectly noted the total number of documents released in full and documents withheld in part in the OCS, Abu Dhabi (ABUD 5, 6 and 9) and the Office of the Deputy Secretary (D1) segments.  In the OCS segment 50 documents were released in full and 49 were released with excisions.  In the Abu Dhabi (ABUD 5, 6, and 9) and the Office of the Deputy Secretary (D1) segments, 10 documents were released in full and nine were released with excisions.

10.  By letters dated July 1, 2011 and July 29, 2011 (Exhibits 7 and 8), IPS provided Plaintiffs with descriptions of how searches were conducted within the Department for each component reasonably expected to contain the records requested.  In the July 1, 2011 letter IPS advised Plaintiffs that although the searches already undertaken by the Department were reasonably calculated to uncover the records that were the subject of the request, it had also initiated a search of the records of the Office of the Counselor to the Department of State and that search was underway.

11.  By letter dated September 2, 2011 (Exhibit 9), IPS advised Plaintiffs that the search and review of the records of the Office of the Counselor had been completed and resulted in the retrieval of six responsive documents.  All six of these documents were released in full.

## II. THE SEARCH PROCESS

12.  When the Department receives a FOIA request, IPS evaluates the request and determines which offices, overseas posts, or other records systems within the Department may reasonably be expected to contain the records requested.  This determination is based on the description of the records requested, and requires a familiarity with the Department's records system holdings, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts.  Factors such as the nature, scope, and complexity of the request itself are also relevant.

13.  After reviewing the Plaintiffs' request, IPS determined that the offices that were reasonably likely to have responsive document were the Central File, the Bureau of Diplomatic Security (DS), the Office of Overseas Citizens Services (OCS), the Office of Passport Services (PPT), the Office of the Coordinator for Counterterrorism (S/CT), the Office of the Ambassador at Large for War Crimes Issues (S/WCI), the Office of the Deputy Secretary of State (D), the Office of the Deputy Secretary for Resources and Management, the Office of the Counselor to the Department  of State (C), the  U.S. Embassy in Abu Dhabi, the U.S. Embassy in Beirut, the U.S. Consulate General Dubai, the Bureau of Near Eastern Affairs (NEA), the Bureau of Intelligence and Research (INR), the Office of the Secretary(S), and the Office of the Legal Adviser(L).

A.   The Central Foreign Policy Records

14.   The records of the Department are maintained in both centralized and decentralized record systems.  The Central Foreign Policy Records ("Central File") is the Department's centralized records system and contains over 30 million documents of a substantive nature that establish, discuss, or define foreign policy, set precedents, or require action or use by more than one office.  Among other things, the Central File includes official record copies of almost all incoming and outgoing telegrams between the Department and Foreign Service posts, as well as other select substantive correspondence documents, including diplomatic notes; correspondence to and from the White House, members of Congress, and other federal agencies; position papers and reports; memoranda of conversations; and interoffice memoranda.  Because the Central File is the Department's most comprehensive and authoritative compilation of documents, it is by far the record system most frequently searched in response to FOIA requests.

15. Searches of the Central File are conducted through an automated interface, known as the State Archiving System (SAS), which searches the full text of millions of telegrams and other substantive documents in the Central File.  For all documents in the Central File that are not directly full-text searchable through SAS, including some other correspondence documents, SAS will search the text of a customized index reference that directs a searcher to a full copy of the document.  Thus, a SAS search will encompass all documents in the Central File.  The search of the Central File was conducted by a researcher in IPS who is familiar with its contents and organization and with the subject matter of the request.

16.   In this case IPS conducted searches of the Central File for records responsive to this FOIA request.  Specifically, IPS conducted full text searches in the Central File using the

following keywords: "naji jawdat hamdan", "hossam hemdan", "jehad suliman" and "honda acura palace". A supplemental search of the Central File was conducted using the following keywords: naji jawdat hamdan, naji hamdan, hamdan naji, n. hamdan, naji j. hamdan, hamdan naji jawdat, hamdan naji, hamdan n, hamdan j, hossam hemdan, hemdan hossam, hossam hamdan, sam*hemdan, hemdam sam*, sam* hemdan, samm* hemdan, hemdan samm*, samm* jawdat hemdan, hemdan samm* jawdat or j* had sul*iman, sul*iman j*had, or Honda acura palace, hondacura palace, hapimotor*, hapimotors.com, authentic auto part*, Honda acura, hondacura. The asterisk (*) is a wildcard character that can be used as a substitute for any combination of letters in a search, thereby increasing the flexibility and efficiency of searches. For example, a search for "sam* hemdan would retrieve the following names: sam hemdan, samy hemdan, sami hemdan, samm hemdan, sammie hemdan, sammy hemdan. The date range for these searches was from January 1998 through October 6, 2010.

### B.  Other Records

17.  Offices within the Department also maintain files concerning foreign policy and other functional matters related to the daily operations of those offices. These files consist generally of working copies of documents, information copies of documents maintained in the Central File and other documents prepared by or furnished to the office in connection with the performance of its official duties, as well as electronic copies of documents and e-mail messages.

18.  In this case, in addition to the searches of the Central File described above, searches were also conducted of the records of the Bureaus of Diplomatic Security (DS), the Office of Overseas Citizens Services (OCS), the Office of Passport Services (PPT), the Office of the Coordinator for Counterterrorism (S/CT), the Office of the Ambassador at Large for War Crimes Issues (S/WCI), the Office of the Deputy Secretary of State (D), the Office of the Deputy

Secretary for Resources and Management, the  U.S. Embassy in Abu Dhabi, the U.S. Embassy in Beirut, the U.S. Consulate General Dubai, the Bureau of Near Eastern Affairs (NEA), the Bureau of Intelligence and Research (INR), the Office of the Secretary(S), and the Office of the Legal Adviser(L).  These searches were performed by individuals who were familiar with both the subject matter of Plaintiffs' request and also the contents and organization of the records systems searched.

19.  The Bureau of Diplomatic Security (DS) is the principal law enforcement and security arm of the Department and has a broad scope of global responsibilities, with protection of people, information and property as its top priority.  Overseas, DS develops and implements security programs to safeguard all personnel working in every U.S. diplomatic mission around the world.  In the United States, DS protects the Secretary of State, the U.S. Ambassador to the United Nations, and foreign dignitaries who visit the United States.  DS also develops and implements security programs to protect domestic  Department facilities, conducts personnel security investigations, issues security clearances, and assists foreign embassies and consulates in the United States with the security for their missions and personnel.  DS agents stationed in Field Offices located around the country and at overseas posts sometimes liaise with other federal and local law enforcement officials on a variety of issues including criminal and counterterrorism investigations.  It is only this function that would give rise to any reasonable possibility that DS would retain records responsive to the Plaintiffs' FOIA request.  Search requests were sent to several DS components: the Counter Intelligence (DS/ICI/CI), Criminal Investigations (DS/ICI/CR), Protective Investigations and Intelligence (DS/TIA/PII), Los Angeles Field Office (DS/DO/FLD/LAFO), Office of Intelligence and Threat Analysis (DS/TIA/ITA), and International Programs (DS/IP).  The Bureau of Diplomatic Security

searched its electronic and paper files under the following names:  "Naji Jawdat Hamdan",

"Hamdan, Naji Jawdat" Naji Hamdan", "Hamdan, Naji, "N. Hamdan", Naji J. Hamdan",

"Hamdan, Naji J.", "Hossam Hemdan", "Hemdan, Hossam", "Hossam, Hamdan" "Hamdan,

Hossam", "Sam Hemdan", "Hemdan, Sam, "Samy Hemdan", "Hemdan, Samy", "Sammy

Hemdan", "Hemdan, Sammy", "Sammy Jawdat Hamdan", "Hemdan, Sammy Jawdat", "Jehad

Suliman", "Suliman, Jehad", "Honda Acura Palace", "HondAcura Palace",  "Hapimotors",

"Hapimotors.com" and "Authentic auto parts."  The DS components searched paper files, active

email inboxes, the Investigative Management System (IMS) and the Criminal Investigative

Liaison Tracking System (CILTS).

     20.   The Office of Overseas Citizens Services (OCS) is in the Department's Bureau of

Consular Affairs and is responsible for assisting and promoting the welfare of U.S. citizens

traveling and residing abroad.  It assists consular officers overseas in provisions of services to

U.S. citizens.  OCS provides emergency and non-emergency services to assist overseas U.S.

citizens and persons in the United States who are concerned about them in the event of arrest,

death, destitution, disaster or medical emergency.  OCS searched its unclassified and classified

email systems, the American Citizens Services (ACS) hard copy paper file and the ACS

electronic files using the following search terms:  "Naji Jawdat Hamdan", "Naji Hamdan",

"Jawdat Hamdan", "Hossam Hemdan", "Sam Hemdan", "Sammy Hemdan"; and Jehad Suliman.

     21.   The Office of Passport Services (PPT) is charged with issuing passports to U.S.

citizens, and issues some 15 million passports per year through 25 domestic agencies.  Passport

issuance by overseas U.S. Embassies and Consular posts is now supported by three domestic

national processing centers.  The Passport Information Electronic Records System (PIERS) is an

electronic database that includes the records of some 144 million passports that have been issued

from 1978 to the present.  PPT conducted a search in the PIERS, Passport Lookout Tracking System(PLOTS) and the Travel Document Issuance System (TDIS) databases using the following names:  Naji Jawdat Hamdan; Hossam Jawdat Hemdan, Sam Hemdan and Sammy Hemdan; and Jehud Suliman and the dates and places of birth provided in the Plaintiffs' January 29, 2009 FOIA request letter.  When multiple or shortened versions of the first names are presented, the PPT will search using the surname only, using each variation, with the date and place of birth to search their databases.

22.  The Office of the Coordinator for Counterterrorism (S/CT) coordinates and supports the development and implementation of all U.S. Government policies and programs aimed at countering terrorism overseas.  S/CT reported that it searched its paper and electronic files.  The following search terms were used in its electronic search:  "Hamdan", "Hemdan", "Suliman", "Hapi," and "Honda" in the electronic files, including e-mails, from 1998 to the present.

23.  The Office of Ambassador at Large for War Crimes Issues (S/WCI) conducted a search of its paper and electronic records, using the key words "prisoners" and "military prison." This search was conducted only in an overabundance of caution; its mission is to formulate U.S. policy responses to atrocities committed in areas of conflict, including the former Yugoslavia, Rwanda, Sierra Leone, Cambodia and Iraq.

24.  The Department's Executive Secretariat (S/ES) maintains centralized records of the Secretary of State and of certain high ranking Department officials.  This records system is a unique collection of material used to support the work of the highest levels of the Department. S/ES searched the electronic Secretariat Tracking and Retrieval Systems (STARS) and STEPS (the STARS history database), and the Top Secret files using the following keywords:

11

"Hamdan", "Hemdan", "Suliman", "Hapimotors", "Honda", and "Authentic.".   STARS is an automated system used to track, control and record documents containing substantive foreign policy information passing to, from, and through the offices of the Secretary of State, the Deputy Secretary of State and other Department principal officers.  STARS contains copies of action, briefing, and information memoranda; briefing books; diplomatic notes; telegrams; memorandums of conversation; memorandums of the record; incoming and outgoing correspondence; reports; talking points; e-mail messages with attachments; and other documentation from the time period requested.  A search of that office's paper files was also conducted using the time frame and subject matter provided by the Plaintiffs.

25.  The Office of  Deputy Secretary of State (D) conducted an electronic records search within its shared drive and email records using the following search terms:  "Naji Jawdat Hamdan", "Hamdan, Naji Jawdat", " Naji Hamdan", Hamdan, Naji", "N. Hamdan", Hamdan, N", "Naji J. Hamdan", "Hamdan, Naji", "Hossam Hemdan", "Hemdan, Hossam", Hossam Hamdan", Hamdan, Hossam", Sam Hemdam", Hemdam, Sam", "Samy Hemdan", "Hemdan, Samy", "Sammy Hemdan", "Hemdan, Sammy", "Sammy Jawdat Hemdan", "Hemdan, Sammy Jawdat", Jehad Suliman", "Suliman, Jehad", "Honda Acura Palace", "HondAcura Palace". "Hapimotors", "Hapimotors.com", and "Authentic auto parts."

26.  The Office of Deputy Secretary for Management and Resources (M) stores records in chronological, electronic files on the Secretariat Tracking and Retrieval System (STARS) and the Executive Tracking Log (ETL).  Searches were conducted of its paper and electronic records using the following search terms:  "Naji";  "Jawdat";  "Hamdan";  "Hossam"; "Hemdan"; "Sam"; "Samy";  "Sammy";  "Jehad";  "Suliman";  "Honda";  "Acura";  and "Hapimotors."

27.  The U.S. Embassy in Abu Dhabi, Beirut and the U.S. Consulate General in Dubai promote bilateral ties between the United States and U.A.E.  In general, United States embassies and consulates, such as the U.S. Embassies in Abu Dhabi, Beirut, and the U.S. Consulate General in Dubai, conduct activities that are aimed at promoting U.S. foreign policy objectives and protecting U.S. interests overseas, including U.S. citizens abroad.

28.  The U.S. Embassy in Abu Dhabi searched its paper and electronic records using the following search terms:  "Naji Jawdat Hamdan", "Hossam Jawdat Hemdan", "Sammy Hemdan", "San Hemdan", "Jehad Suliman", "Hapimotors", "Honda Acura Palace", and "HondaAcura Palace."

29.  The U.S. Embassy in Beirut and the U.S. Consulate General in Dubai conducted searches for records that mentioned the individuals or the company named in the FOIA request.

30.  The Bureau of Near Eastern Affairs deals with U.S. foreign policy and U.S. diplomatic relations in the Near East.  Regional policy issues that NEA handles include Iraq, Middle East peace, and political and economic reform.  The Bureau Office of Near Eastern Affairs conducted searches of its electronic and paper, classified and unclassified files under the search criteria of country, subject matter, and names of Foreign Service officers generating relevant records during this time frame.

31.  The Bureau of Intelligence and Research (INR) draws on all-source intelligence to provide independent analysis of events to Department policy makers, ensures that intelligence activities support foreign policy and national security purposes, and serves as the focal point in the Department for ensuring policy review of sensitive counterintelligence and law enforcement activities.  INR searched both electronic and paper, classified and unclassified files under the following search criteria within the subject matter and chronologically organized files:  Naji

13

Jawdat Hamdan, Hamdan, Naji Jawdat, Naji Hamdan, Hamdan, Naji, N. Hamdan, Hamdan, N., Naji J. Hamdan, Hamdan, Naji J., Hossam Hemdan, Hemdan, Hossam, Hossam Hamdan, Hamdan, Hossam, Sam Hemdan, Hemdan, Sam, Samy Hemdan, Hemdan, Samy, Sammy Hemdan, Hemdan, Sammy, Sammy Jawdat Hemdan, Hemdan, Sammy Jawdat, Jehad Suliman, Suliman, Jehad, Honda Acura Palace, HondaAcuraPalace, Hapimotors, Hapimotors.com, Authentic auto parts.  The Bureau of Intelligence and Research maintains no records on U.S. citizens.

32.  The Office of the Legal Adviser (L) is the Department's general counsel office and furnishes advice on all legal issues, domestic and international, arising in the course of the Department's work.  The Office of Legal Adviser conducted searches of its electronic and paper, classified and unclassified using the names:  "Hamdan", "Hemdan", and "Naji" as search criteria.  The Office of the Legal Adviser's electronic files are arranged to retrieve name-specific information or by date within country/subject matter files.

33.  The Counselor of the Department (C) is a principal officer who serves the Secretary as a special advisor and consultant on major problems of foreign policy and who provides guidance to the appropriate bureaus with respect to such matters.  The Office of the Counselor conducted searches of both its electronic and paper, classified and unclassified files using the key words "Hamdan", "Hemdan" and "Suliman".  The electronic and hard copy records of the Office of the Counselor are arranged by date within subject.

34.  One thousand, one hundred and seventy-seven responsive documents were found as a result of the Department's searches, as described in paragraphs 14 through 30, above.  Of these, 533 documents were released in full, 258 were released in part, and 386 were denied in full.

35.  There are no additional locations in the Department with a reasonable likelihood of retaining additional responsive material.


### III. FOIA EXEMPTIONS CLAIMED

FOIA Exemption (b)(1) – Classified Information

36.  Title 5 U.S.C. Section 552 (b)(1) states that the FOIA does not apply to matters that are:

> (A)  specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.


Executive Order 13526


37.  State Department information in 43 documents to which the (b)(1) exemption has been applied continues to meet the classification criteria of Executive Order 13526.  Information in documents in this case withheld under exemption (b)(1) is classified Confidential or Secret.


38.  Section 1.2(a)(2) of E.O. 13526 states that:


"Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.


39.  Section 1.2(a) (3) of E.O. 13526 states that:


"Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe.

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

40.  Section 6.1(j) of E.O. 13526 states that:

Damage to the national security means harm to the national defense or foreign relations of the United States from the unauthorized disclosure of information, taking into consideration such aspects of the information as the sensitivity, value, utility and provenance of that information.

Section 1.4(b) – Foreign Government Information

41.  Section 1.4(b) of E.O. 13526 states in pertinent part that:

Information may not be considered for classification unless it concerns:… (b) foreign government information; … (d) foreign relations or foreign activities of the United States, including confidential sources; ….

42.  Section 6.1(c) of E.O. 13526 states in pertinent part that:

"Foreign government information" means:
(1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence.

43.  An essential understanding that governs all diplomatic intercourse, and that constitutes an essential element in all successful diplomatic exchanges, is that confidentiality will be observed.  Mutual trust in this realm is vital for the development of cordial and productive diplomatic relations.  Unwillingness or inability to maintain confidentiality in diplomatic exchanges would inevitably chill our relations with other countries and lead to diminished access to sources of information important to the successful formulation and implementation of U.S. foreign policy, and thereby would damage the national security.

44.  The ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy.  Disclosure of foreign

government information provided in confidence would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges. Governments would become less willing in the future to furnish information important to the conduct of U.S. foreign relations, and in general less disposed to cooperate with the United States in the achievement of foreign policy objectives of common interest.  Disclosure of this information "reasonably could be expected to result in damage to the national security".

<u>Section 1.4(d) – Foreign Relations, Including Confidential Human Sources</u>

45.  Withheld information recounts details of the relationship between the United States, the United Arab Emirates and other foreign countries.  The documents cover a number of issues in bilateral relations including security cooperation.  Some of the information is intended to inform policy makers in Washington of the situation on the ground and therefore contains frank comments as well as analyses that, if released, reasonably could be expected to damage U.S. relations with the countries concerned.  Other documents contain information derived from sources who provided the information with the expectation that their identities will be protected. Release of this information reasonably could seriously disadvantage the confidential sources. Failure to preserve the expected confidentiality could risk future access not only to these sources, but also to others who might provide sensitive information to U.S. officials.  This classification category has also been applied to foreign government information in addition to the 1.4(b) category, as release of information from foreign governments could damage U.S. foreign relations.

<u>FOIA Exemption (b)(5) – Deliberative Process and Attorney-Client Privileges</u>

46.  Title 5 U.S.C. Section 552(b) (5) states that the FOIA does not apply to:

17

> inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency....

47.  This exemption is designed to protect the candid views and advice of U.S. Government officials in their pre-decisional deliberations respecting policy formulation and administrative direction.  Disclosure of material containing such deliberations or of material on which such deliberations are based would prejudice the free flow of internal recommendations and other necessary exchanges.  It would severely hamper the ability of responsible officials to formulate and carry out executive branch programs.  Disclosure of this information, which is inter- or intra-agency and pre-decisional and contains selected factual material intertwined with opinion, would inhibit candid internal discussion and the expression of recommendations and judgments regarding current problems and preferred course of action.  There are no reasonably segregable facts which may be released.  The withheld information is, accordingly, exempt from release under FOIA exemption (b)(5).  Material has also been withheld pursuant to the attorney-client and attorney work product privileges.  Where material contains attorney-client or attorney work product material, it reflects information prepared by Department lawyers in contemplation of litigation and also material that reflects consultations undertaken in confidence between U.S. Government officials and the Department's lawyers charged with offering legal advice on the issues involved, or with the Department of Justice lawyers advising their client, the Department of State.

### FOIA Exemption (b)(6) – Personal Privacy

48.  Title 5 U.S.C. Section § 552 (b) (6) states that the FOIA does not apply to:

> ....personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. . . .

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

49.  The courts have interpreted the "similar files" language of exemption (b)(6) broadly to encompass all personal information that pertains to an individual, without regard to whether the information was located in a particular type of file.  Documents in this case contain information that has been withheld under this privacy exemption by excising names and other identifying personal information.

50.  To the extent that documents in this case contained personally identifying information, a personal privacy interest exists.  I have weighed the public interest in disclosure against the interest in preserving the privacy of individuals named or described in those documents.  With respect to information withheld under FOIA exemption (b)(6), I have determined that the interest in preserving the privacy of the personal information outweighs any public interest in disclosure of the personal information.  Indeed, releasing this information would not serve the "core purpose" for which Congress enacted FOIA; i.e., to "shed light on an agency's performance of its statutory duties."[i]  Thus, the disclosure of information withheld under FOIA exemption (b)(6) in this case would result in a clearly unwarranted invasion of personal privacy.  Accordingly, this information is exempt from release under exemption (b)(6).

<u>FOIA Exemption (b)(7)(C) – Privacy and Law</u>

51.  Title 5 U.S.C. Section § 552 (b)(7) states that the FOIA does not apply to:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (c) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

52.  The (b)(7)(C) exemption has been applied in this case where the documents served a law enforcement purpose and where withholding information is necessary to protect  the names of law enforcement personnel, particularly Federal Bureau of Investigation (FBI) personnel, who

19

were involved in a law enforcement action as described in the released material or in the *Vaughn*

description.  Release of this information which is routinely withheld in FOIA cases by the FBI,

would constitute an unwarranted invasion of their personal privacy.  Moreover, release of this

information would not serve the "core purpose" for which Congress enacted FOIA; i.e. to "shed

light on an agency's performance of its statutory duties."  The information is, therefore, exempt

from disclosure under FOIA exemption (b)(7)(C).  The withheld material under this exemption

has been carefully reviewed and no additional non-exempt information may be released.

FOIA Exemption (b)(7)(E) – Law Enforcement Techniques

53.  Title 5 U.S.C. Section 552 (b)(7) states that the FOIA does not apply to:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information … (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law …

54.  The (b)(7)(E)  An important function of the Department of State is the

implementation and enforcement of laws and regulations concerning the integrity of the passport

system.  Information has been withheld from one document (O24) that describes the working of

a technique used to detect and counter passport fraud.  This document was created for the

purpose of enforcing passport laws.  Information has been withheld that would divulge

techniques used for law enforcement, particularly as it relates to internal U.S. government

techniques for identifying possible passport fraud.

## IV. **PRIVACY EXEMPTIONS**

55.  Section 552a (k) (1) of the Privacy Act states that:

The head of an agency may promulgate rules, in accordance with the requirements

20

(including general notice) of sections 553(b)(1, (2), and (3), (C) and (e) of this title, to exempt any system of records within the agency from subsections (c)(3), (d), (e)(1), (e)(4)(G), (H), and (I) and (F) of this section if the system of records is –
(1)  subject to the provisions of section 552(b)(1) of this title

56.  In 22 CFR 171.36 the Department has published the notice required to withhold classified material under Section 552a (k) (1) of the Privacy Act.  All information described herein as exempt under FOIA exemption (b)(1) is also exempt under Privacy Act exemption (k)(1).

57.  Section 552a (d) (5) of the Privacy Act states that "nothing in this section shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding."  Information has been withheld from a number of documents in this case based upon the fact that there was actual and anticipated civil action initiated against the United States by Mr. Hamdan and members of his family.

58.  Information has been withheld from a number of documents in this case because it is about persons other than Mr. Hamdan, the requester in this case, and because its release would constitute a clearly unwarranted invasion of their personal privacy.  While a requester under the Privacy Act has the right to request and receive information about himself, release to the requester of information about other persons requires that they consent to the release of information about themselves.  In the case of information about third persons that has been withheld, none of these persons has consented to the release of information.

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

## IV. DOCUMENT DESCRIPTIONS FOR DOCUMENTS WITHHELD IN FULL

**Group 1 (Office of Legal Adviser documents)**

59.  Document EE2B is a draft letter, drafted by the Bureau of Consular Affairs (CA) to the American Civil Liberties Union (ACLU).  Undated. Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act (PA) exemption (d)(5).

60.  This document is a draft of a letter from CA to the ACLU concerning Mr. Hamdan. As an edited draft, the document is pre-decisional in nature.  Furthermore, some of the withheld information contains predecisional deliberations among U.S. Government officials regarding policy formulation in response to the Hamdan detention.  Disclosure of material containing such deliberations would prejudice the free flow of internal recommendations and other necessary exchanges and hamper the ability of responsible officials to formulate and carry out executive branch programs.  It is therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).

61.  The document was also prepared in reasonable anticipation of civil litigation (such litigation in fact may have already begun when the letter was drafted), and is therefore also exempt from release under the Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be  segregated and released.

Documents EE22, EE51, EE57, EE58, EI56 and DF15:

62.  Document EE22 is an email exchange between a lawyer in the Office of the Legal Adviser (L) and a Department of State (Department or DOS) client. Dated June 18, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

63.  Document <u>EE51</u> is an email exchange between lawyers in L and a DOS client. Dated August 3, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

64.  Document <u>EE57</u> is an email exchange between lawyers in L and a DOS client. Dated September 11, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

65.  Document <u>EE58</u> is an email exchange between a lawyer in the L and a DOS client. Dated September 17, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

66.  Document <u>EI56</u> is an email exchange between a lawyer in L and a DOS client. Dated May 21, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

67.  Document <u>DF15</u> is an email between a lawyer in L and a DOS client.  Dated July 24, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

68.  All the documents described above, <u>EE22, EE51, EE57, EE58, EI56</u> and <u>DF15</u>, are email exchanges between one or more lawyers in L and a DOS client concerning edits and clearing of the contents of a letter from the Deputy Secretary of State (D) to the ACLU, the organization representing Hamdan in a federal lawsuit. Because the letter is still in draft, the discussions are pre-decisional; they are also protected by the attorney-client privilege, both of which are justifications for withholding under FOIA exemption(b) (5).  These emails are also prepared in reasonable anticipation of civil litigation involving the Department, which was already ongoing at the time, i.e. *Mallouk et al v. Obama et al* (*Mallouk v. Obama*), a suit

challenging Mr. Hamdan's overseas detention in the United Arab Emirates (UAE).  Therefore, they are also exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

69.  Document EE29 is an email exchange between a lawyer in L and a DOS client. Dated July 24, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

70.  In this brief exchange, two Department lawyers comment on the judge in the federal case, *Mallouk v. Obama*.  This exchange is protected under the attorney work product privilege and therefore exempt under FOIA exemption (b) (5).  It is also an exchange occurring in the course of litigation, and therefore is exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

71.  Document EE40 is an email exchange between a lawyer in L and a DOS client. Dated August 3, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

72.  This document is an email exchange in which a Department lawyer discusses with a DOS client an evidentiary matter in the federal lawsuit, *Mallouk v. Obama*.  This exchange is protected under the attorney-client privilege and thus exempt under the (b) (5) exemption of the FOIA.  It is also an exchange prepared in the course of litigation, and therefore is exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

73.  Document EE52 is an email exchange originating in L.  Dated August 26, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

74.  This document is a brief exchange between a Department attorney and a Federal Bureau of Investigation (FBI) attorney regarding clearance on a Hamdan-related briefing document.  The exchange is protected under the attorney work product privilege and exempt under FOIA exemption (b) (5).  It is also an exchange occurring in the course of litigation, and, therefore, is exempt under Privacy Act exemption (d) (5).  Because release of the names of the FBI attorneys appearing in the exchange would constitute an unwarranted invasion of the personal privacy of these individuals, the names are exempt from release under FOIA exemption (b) (6).  Because the document is prepared for FBI law enforcement purposes, the release of the names would also constitute a clearly unwarranted invasion of personal privacy under FOIA exemption (b) (7) (c).  Moreover, because these names do not constitute a record about the requester, Mr. Hamdan,  they are thus exempt from release under the PA.   There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

75.  Document EE91 is an email exchange between attorneys in L, DOJ and the FBI. Dated October 13, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

76.  The substance of this exchange concerns the significance of Mr. Hamdan's sentencing in the United Arab Emirates (UAE) and how it relates to the ongoing U.S. litigation. The exchange is protected under the attorney work product privilege as well as the attorney-client privilege, and thus exempt under FOIA exemption (b) (5). It is also an exchange occurring

in the course of litigation, and therefore is exempt under the Privacy Act exemption (d) (5).

There is no additional information in this document not subject to a FOIA exemption that may be

segregated and released.

77.  Document EI14A is a draft memo.  Dated April 27, 2009.  Four pages.

UNCLASSIFIED. Withheld in full. FOIA exemption  (b)(5) and Privacy Act exemption (d)(5).

78.   This document is a draft version of an Information Memo to the Deputy Secretary

(D)  regarding details of Mr. Hamdan's detention and his federal lawsuit. As an edited draft, it is

pre-decisional in nature and therefore exempt from release under FOIA exemption (b) (5).  It is

also a memo prepared in conjunction with litigation, and is therefore exempt under Privacy Act

exemption (d) (5).  There is no additional information in this document not subject to a FOIA

exemption that may be segregated and released.

79.  Document EI23 is an email exchange between a lawyer in L and a DOS client. Dated

May 8, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and

Privacy Act exemption (d) (5).

80.  This document requests the assistance of one of the Department's attorneys in

obtaining clearance on the most recent version of an Information Memo for D.  The exchange is

protected under the attorney-client privilege, and thus is exempt from release under FOIA

exemption (b) (5).  It is also an email prepared in anticipation of litigation, and is therefore

exempt under Privacy Act exemption (d) (5).  There is no additional information in this

document not subject to a FOIA exemption that may be segregated and released.

81.  Document EI57 is an email exchange among DOJ, FBI and DOS lawyers.  Dated

May 21, 2009.  Three pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and

Privacy Act exemption (d) (5).

82.  This document is an exchange concerning legal strategy in the *Mallouk v. Obama* federal lawsuit.  It is protected under the attorney work product and attorney-client privileges, and thus is exempt from release under the FOIA exemption (b) (5).  It is also an email chain prepared in the course of ongoing litigation, and is therefore exempt under the Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be  segregated and released.

83.  Document EI59 is a pre-decisional email exchange between DOS lawyers and clients. Dated May 27, 2009.  Four pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

84.  This document discusses the content and timing of a reply letter that the Embassy in Abu Dhabi is planning to send to the ACLU.  As a pre-decisional discussion, it is protected under both the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in anticipation or in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption (d) (5).   There is no additional information in this document not subject to a FOIA exemption that may be  segregated and released.

85.  Document EI78 is a pre-decisional email exchange among DOS and DOJ lawyers. Dated June 3, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

86.  This document is a discussion among attorneys concerning planning for a moot court session in the *Mallouk v. Obama* litigation.  It is protected under the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in anticipation or in the course of ongoing litigation, and is therefore exempt under

Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

87.  Document EL20 is a pre-decisional email exchange between a DOS lawyer and client.  Dated May 5, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

88.  This document discusses the contents of the Information Memo being prepared for D regarding Mr. Hamdan's detention in the UAE as well as the ongoing *Mallouk v. Obama* lawsuit. It is protected under the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

89.  Document EL41 is a pre-decisional email exchange among DOS lawyers and clients. Dated May 8, 2009.  Four pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

90.  This document discusses edits to the Information Memo being prepared for D regarding Mr. Hamdan's detention in the UAE as well as the ongoing *Mallouk v. Obama* lawsuit. It is protected under the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption(d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

91.  Document EL46 is a pre-decisional email exchange among DOS officials, including an attorney in L.  Dated May 20, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

92. This document discusses the content and timing of the proposed reply to the ACLU by the Embassy in Abu Dhabi. It is protected under the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5). It is also prepared in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption (d) (5). There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

93. Document EL71 is a pre-decisional email exchange between a DOS lawyer and client. Dated August 26, 2009. Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5). XX. This document provides an update from L to the UAE desk officer on the response letter to the ACLU and the litigation in federal court, against the backdrop of an upcoming visit of a high level individual from the UAE. It is protected under the attorney-client privilege, and thus is exempt from release under FOAI exemption(b) (5). It is also prepared in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption (d) (5). There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

94. Document L1g is an email exchange between a DOS lawyer and client. Dated April 24, 2009. Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

95. This document is a request from L to CA for documents related to the *Mallouk v. Obama* litigation. It is protected under the attorney-client privilege, and thus is exempt from release under FOIA exemption(b) (5). It is also prepared in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption (d) (5). There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

96.  Document L46 is a pre-decisional email exchange between DOS lawyers.  Dated October 7, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

97.  This document discusses possible actions to be taken before the sentencing of Mr. Hamdan in the UAE.  The exchange is protected under the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

98.  Document LL10 is a pre-decisional email exchange among DOS lawyers and clients. Dated January 5, 2009.  Three pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

99.  This document discusses the preparation of a declaration of CA in the *Mallouk v. Obama* litigation.  The exchange is protected under the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

100.  Document LL18 is an email exchange among DOS and DOJ lawyers and clients. Dated January 6, 2009.  Four pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

101.  This document is a discussion concerning document production, the CA declaration, and other issues raised by DOJ in connection with the *Mallouk v. Obama* lawsuit.

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

The information is protected under the deliberative process, attorney work product and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

102.  Document LL23 is an email exchange between DOS and DOJ lawyers.  Dated January 12, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

103.  This document concerns edits and the filing of the brief by the DOJ in the *Mallouk v. Obama* litigation.  The information is protected under the deliberative process, attorney work product and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

104.  Document LL26 is an email exchange between DOS and DOJ lawyers.  Dated January 12, 2009.  One page. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

105.  This document discusses comments by DOS lawyers on the brief to be filed by the Department of Justice in the *Mallouk v. Obama* litigation.  The information is protected under the deliberative process, attorney work product and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional

31

information in this document not subject to a FOIA exemption that may be segregated and released.

106.  Document DF12 is an email exchange among DOJ, FBI and DOS attorneys, forwarded to CA and D for information.  Dated May 20, 2009.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b) (5) and Privacy Act exemption (d) (5).

107.  This document discusses a possible filing in response to the Plaintiffs' supplemental filing in the *Mallouk v. Obama* litigation.  The information is protected under the deliberative process, attorney work product and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be  segregated and released.

**Group 2 (Abu Dhabi documents)**

108.  Document D53 is an email chain among DOS officers at the Embassy in Abu Dhabi.  Dated May 4, 2009.  Four pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

109.  This document is a discussion among officers at the Embassy in Abu Dhabi of the drafts in circulation of the Information Memo to D concerning Mr. Hamdan's detention and the lawsuit, *Mallouk v. Obama*.  This discussion is pre-decisional in nature, and thus is protected under the deliberative process privilege and exempt under the FOIA exemption (b)(5).  Because the Information Memo was prepared in reasonable anticipation of litigation, the document is also exempt from release under the Privacy Act exemption (d)(5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

110.  Document D63 is an email chain among DOS officers at the Embassy in Abu Dhabi and the desk officer for the UAE at the Department in Washington, D.C.  Dated April 25, 2009. Two pages. UNCLASSIFIED. Withheld in full. FOAI exemption (b)(5) and Privacy Act exemption (d)(5).

111.  This document is an exchange concerning the draft Information Memo to D regarding Mr. Hamdan's detention and the lawsuit, *Mallouk v. Obama*.  This discussion is pre-decisional in nature, and thus is protected under the deliberative process privilege and exempt under FOIA exemption (b)(5).  Because the Information Memo was prepared in reasonable anticipation of litigation, the document is also exempt from release under Privacy Act exemption (d)(5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

112.  Document D80 is an email chain among attorneys at DOS and DOJ and the DCM at the Embassy in Abu Dhabi.  Dated December 31, 2008.  Two pages. UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

113.  This document is a discussion regarding the Department's draft declaration in the *Mallouk v. Obama* litigation.  The first email in the chain is a series of questions/observations by the DOJ attorney in the case.  This material is pre-decisional in nature, and thus is exempt from release under the deliberative process privilege and FOIA exemption (b)(5).  It is also protected under the attorney-client privilege and the attorney work product privilege, and therefore exempt under  FOIA exemption(b)(5).  Because the State Department's draft declaration was prepared in conjunction with litigation, the document is also exempt from release under the Privacy Act exemption (d)(5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

33

114.  Document F143 is an email chain originating with DOJ to attorneys and others in the Department. Dated June 9, 2009. Two pages. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

115.  In this document, a DOJ attorney informs his DOS clients and others outside the Department of the latest developments in the *Mallouk v. Obama* court case, and comments on their significance.  The information is protected under the deliberative process, attorney work product and attorney-client privileges, and thus is exempt from release under FOAI exemption (b) (5).  It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption(d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be  segregated and released.

116.  Document G111 is an email chain originating with the attorney at DOJ overseeing the *Mallouk v. Obama* case.  Dated December 8, 2008.  One page. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

117.  This document is a request from DOJ for document production.  The document is protected under the attorney-client privilege, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

118.  Document H11 is an email exchange among an attorney from L and other DOS officials.  Dated January 8, 2009.  Four pages. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

119.  This document discusses the document production request from DOJ to the American Embassy in Abu Dhabi.  The document is protected under the attorney-client

privilege, and thus is exempt from release under FOIA exemption  (b) (5).  It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be  segregated and released.

120.  Document H27 is an email exchange between the Consul and the Ambassador at the American Embassy in Abu Dhabi.  Dated January 9, 2009.  One page. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

121.  This document discusses CA's draft declaration in the *Mallouk v. Obama* litigation. This pre-decisional document is protected under the deliberative process privilege, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).   There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

122.  Document H30 is an email exchange among various Department officials.  Dated January 9, 2009.  Two pages. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

123.  This document is a discussion among Department officers, including an attorney in L, who are editing the draft CA declaration in the *Mallouk v. Obama* litigation.  This pre-decisional document is protected under the attorney-client and the deliberative process privileges, and thus is exempt from release under FOAI exemption (b) (5).  It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).   There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

124.  Document H32 is an email exchange among various Department officials.  Dated January 9, 2009.  Two pages. UNCLASSIFIED. Withheld in full.  FOIA exemptions (b)(5) and Privacy Act exemption (d)(5).  Document H32 differs from H30 only in one email in the chain, and the two documents are not duplicates.

125.  This document is a discussion among Department officers, including an attorney in L, who are editing the draft CA declaration in the *Mallouk v. Obama* litigation.  This pre-decisional document is protected under the attorney-client and the deliberative process privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).   There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

126.   Document I26 is an email exchange among various Department officials and the DOJ attorney handling the *Mallouk v. Obama* litigation.  Dated December 18, 2008.  Two pages. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

127.   In this document, Department officials respond to queries put by the DOJ attorney handling the *Mallouk v. Obama* litigation.  The exchange is protected by the attorney-client privilege and thus is exempt from release under FOIA exemption (b)(5). It is also prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).   There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

128.  Document I37 is an email from the Consul at the American Embassy in Abu Dhabi to CA at the Department in Washington, DC. Dated December 18, 2008.  One page. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

129.  This document discusses the draft of a diplomatic note prepared by the American Embassy in Abu Dhabi for delivery to the UAE and requests additional input from DOJ and CA in Washington.  This pre-decisional exchange is protected both by the deliberative process privilege and the attorney-client privilege and thus is exempt from release under FOAI exemption (b)(5). It is also prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

130.  Document I59 is an email exchange between the Consul at the American Embassy in Abu Dhabi and the DCM. Dated December 29, 2008.  One page. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

131.  This document discusses a document production request from DOJ in the *Mallouk v. Obama* litigation.  It is protected from release by the attorney-client privilege and thus is exempt from release under FOIA exemption (b)(5). It is prepared in conjunction with on-going civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

132.  Document K28 is a draft reply to a Congressional inquiry concerning the detention of Mr. Hamdan in the UAE. Undated.  One page. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

133.  As a draft, this document is per se pre-decisional and protected by the deliberative process privilege; thus, it is exempt from disclosure under FOIA exemption (b)(5).  It is also prepared in reasonable anticipation of civil litigation or after civil litigation had already begun,

37

and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

134.  Document K31 is a draft declaration of CA in the *Mallouk v. Obama* litigation (notwithstanding incorrect styling of the case as Mallouk v. Bush).   Dated 2009.  Five pages. UNCLASSIFIED. Withheld in full.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5).

135.  As a draft, This document is by definition pre-decisional and therefore protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5). It is also protected from release as attorney work product under FOIA exemption (b)(5). Additionally, it is a document prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).  There is no additional information in this document not subject to a FOIA exemption that may be segregated and released.

136.  Document A39 is an email querying several Department officials at the American Embassy in Abu Dhabi. Dated August 5, 2009.  One page. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemption (b)(5), (b)(1) and Privacy Act exemptions (d) (5) and (k)(1).

137.  This document transmits a query from L at the Department regarding input from the Embassy to the draft response to the ACLU's letter to the Secretary of State.  The contents of the email are pre-decisional in nature, and thus protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  It is also protected under the attorney-client privilege and thus exempt under the FOIA exemption (b)(5).  Additionally, it is a document prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).  XX.  Portions of the document discuss a potential interaction with the government of the UAE.  Release of these portions would necessarily cause damage to the

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

conduct of diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

138.  Document A43 is a draft information memo to D. Dated May 5, 2009.  Four pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1), (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

139.  This document concerns the detention of Mr. Hamdan in the UAE and the lawsuit brought by Mr. Hamdan's wife, Mona Mallouk. As a draft, the document is by definition pre-decisional; it is therefore protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  The document is also protected under the attorney-client and attorney work product privileges since it was prepared by CA under the direction of attorneys in L, to provide information to D (the client). Thus, it is exempt from release under FOIA exemption (b)(5).  Additionally, it is a document prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).

140.  Portions of the document contain brief comment on the workings of the Ministry of the Interior of the UAE and describe confidential Embassy communications with the UAE. Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption  (k)(1). There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

141.  Document DF1C is a handwritten note to D, along with his four-word reply. Undated.  One page. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5)and (k)(1).

142.  This document provides information to D about the proposed language in the draft letter to the ACLU from the Secretary of State concerning Mr. Hamdan, inquires about the desire to meet with L and provides D's brief reply. This exchange is pre-decisional with regards to the draft letter to the ACLU and thus protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  It is also protected under the attorney-client privilege and exempt from release under the FOIA exemption (b)(5).  Additionally, it is a document prepared in reasonable anticipation of civil litigation, and is therefore exempt under Privacy Act exemption (d) (5).

143.  The first sentence of the document comments on intelligence matters. As a result, this sentence is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

144.  Document O72 is an email exchange among lawyers in the Department and other Department officials.  Dated May 5, 2009.  Two pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemption (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

145.  This document is a discussion of edits to the Information Memo to D concerning the detention of Mr. Hamdan in the UAE and the on-going litigation case *Mallouk v. Obama*.

This discussion is pre-decisional in nature, and thus protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  The advice provided by Department lawyers to their clients is also protected under the attorney-client privilege and thus exempt under FOIA exemption (b)(5).  Additionally, the document was prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5) exemption of the Privacy Act.

146.  Portions of the document discuss confidential Embassy communications with the UAE.  Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and, therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

147.  Document O76 is an email exchange among lawyers in the Department and other Department officials.  Dated May 5, 2009.  Two pages.  Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

148.  This document is a discussion of edits to the Information Memo to D concerning the detention of Mr. Hamdan in the United Arab Emirates and the on-going litigation case *Mallouk v. Obama*. This discussion is pre-decisional in nature, and thus protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  The advice provided by Department lawyers to their clients is also protected under the attorney-client privilege and thus exempt under FOIA exemption (b)(5).  Additionally, the document was

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5)

149.  Portions of the document discuss confidential Embassy communications with the UAE.  Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

150.  Document O76 contains some portions that are the same as Document O72, but the two are not duplicates.

151.  Document O88 is an email exchange, with attachment, between CA, Department officials at the U.S. Mission to the UN (USUN) and the Executive Secretariat (S/ES).  Dated May 6, 2009.  Three pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1), (b)(5), (b) (6) and (b) (7) (C)and Privacy Act exemptions (d)(5) and (k)(1).

152.  This document is a pre-decisional email exchange concerning the USUN's edits to the Information Memo for D about the detention of Mr. Hamdan in the UAE and the litigation case *Mallouk v. Obama*.  The attachment is a draft reply to the ACLU concerning the U.S. government's request that the UAE investigate Mr. Hamdan's reports of mistreatment.  All three pages are protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5) exemption of the FOIA.   Additionally, the document was prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).

42

153.  Additionally, the names of officers clearing on the draft attachment have been withheld as release would constitute a clearly unwarranted invasion of their personal privacy and is, therefore, exempt from release under FOIA exemption (6) (b). The name of an FBI officer who cleared has also been withheld under FOIA exemption (b) (7) (C).

154.  One sentence of the attachment discusses U.S. foreign policy concerns and confidential Embassy communications with the UAE.  Release of this sentence would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

155.  Document EL5A is a draft of a reply to the ACLU concerning the U.S. government's request that the UAE investigate Mr. Hamdan's reports of mistreatment.  Undated. One page. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

156.  As a draft, this document is protected under the deliberative process privilege and exempt from release under the FOIA exemption (b)(5).   Additionally, the document was prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).

157.  One sentence of this draft discusses U.S. foreign policy concerns and confidential Embassy communications with the UAE.  Release of this sentence would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is

43

currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1). There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

158.  Document EL5A is the same draft text as in the attachment of Document O88 above. However, the edits to the draft are different.

159.  Document EL9 is an email from CA to several Department  officials. Dated May 5, 2009. One page. Originally and currently UNCLASSIFIED. Withheld in full. FOIA exemption (b)(5) and Privacy Act exemption (d)(5). This document is also subsumed under documents EL12 and O76.

160.  This document discusses clearances/edits to the Information Memo to D concerning the detention of Mr. Hamdan in the UAE and the litigation case Mallouk v. Obama. As such, the material is pre-decisional and therefore protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  Additionally, it is a document prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5). There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

161.  Document EL11 is an email exchange among lawyers in the Department of State and other Department of State Officers. Dated May 5, 2009. Two pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full. FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

162.  This document is a discussion of edits to the Information Memo to D concerning the detention of Mr. Hamdan in the UAE and the on-going litigation case *Mallouk v. Obama*.

This discussion is pre-decisional in nature, and thus protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).   The advice provided by Department lawyers to their clients is also protected under the attorney-client privilege and thus exempt under FOIA exemption(b)(5).   Additionally, the document was prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).

163.   Portions of the document discuss confidential Embassy communications with the UAE.  Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).   There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

164.  Document EL12 is an email exchange among lawyers in the Department and other Department officials.  Dated May 5, 2009.  Three pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOAI exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

165.  This document is a discussion of edits to the Information Memo to D concerning the detention of Mr. Hamdan in the UAE and the on-going litigation case *Mallouk v. Obama*. This discussion is pre-decisional in nature, and thus protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  The advice provided by Department lawyers to their clients is also protected under the attorney-client privilege and thus exempt under FOIA exemption (b)(5).  Additionally, the document was prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).

166.  Portions of the document discuss confidential Embassy communications with the UAE.  Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

167.  Document EL16 is an email exchange among lawyers in the Department and other Department officials.  Dated May 5, 2009.  Two pages.  Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

168.  This document is a discussion of edits to the Information Memo to D concerning the detention of Mr. Hamdan in the United Arab Emirates and the on-going litigation case *Mallouk v. Obama*. This discussion is pre-decisional in nature, and thus protected under the deliberative process  privilege and exempt from release under FOIA exemption (b)(5).  Additionally, the document was prepared after civil litigation had already begun, and is therefore exempt under Privacy Act exemption (d) (5).

169.  Portions of the document discuss confidential Embassy communications with the UAE.  Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

46

**Documents EL26A and EL 28B:**

170.  Document EL26A is a draft information memo to D. Dated May 5, 2009.  Four pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5) and (k)(1).

171.  Document EL28B is a draft information memo to D. Dated May 5, 2009.  Four pages. Originally and currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions (d)(5)and (k)(1).

172.  These two documents are different edited versions of the same draft Information Memo for D.  The Information Memo concerns the detention of Mr. Hamdan in the UAE and the lawsuit brought by Mr. Hamdan's wife, Mona Mallouk. As drafts, these documents are by definition pre-decisional; they are therefore protected under the deliberative process privilege and exempt from release under FOIA exemption (b)(5).  The documents are also protected under the attorney-client and attorney work product privileges since they were prepared by CA under the direction of attorneys in L, to provide information to D (the client). Thus, they are exempt from release under FOIA exemption (b)(5).  Additionally, as documents prepared after civil litigation had already begun, they are exempt under Privacy Act exemption (d) (5)

173.  Portions of the documents contain brief comment on the workings of the Ministry of the Interior of the UAE and describe confidential Embassy communications with the UAE. Release of these portions would necessarily cause damage to the diplomatic relations between the U.S. and the UAE.  As a result, this material is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1)

and Privacy Act exemption (k)(1).  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

174.  Document EL70 is an email between two attorneys in L. Dated August 26, 2009. One page. Originally and currently classified SECRET under E.O. 13526, Section 1.4(d). Withheld in full.  FOIA exemptions (b)(1) and (b)(5), and Privacy Act exemptions  (d)(5) and (k)(1).

175.  This document discusses a draft response letter to the ACLU.  As a pre-decisional discussion conducted between two Department lawyers, it is protected under both the deliberative and attorney-client privileges, and thus is exempt from release under FOIA exemption (b) (5).  It is also prepared in the course of ongoing litigation, and is therefore exempt under Privacy Act exemption (d) (5).

176.  The document also contains a paragraph pertaining to intelligence matters, which if released could be expected to cause serious damage to U.S. foreign policy interests.  Hence, this material is currently and properly classified under section 1.4(d) of  E.O. 13526 and therefore, is also exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1). There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

## DOCUMENT DESCRIPTIONS FOR DOCUMENTS WITHHELD IN PART

177.  Document No. A4 (2185) is an e-mail exchange dated May 12, 2009, consisting of two e-mails among Department of State (Department or DOS) officers.  One page.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL under E.O. 13526, Section 1.4 (d).

48

Withheld in part.  FOIA exemption (b)(1) and withheld in part under Privacy Act exemption (k)(1).

178.  This document consists of an e-mail exchange among the UAE Desk Officer and various officers in the Bureau of Consular Affairs (CA) regarding a draft memorandum to the Deputy Secretary (D) and a draft e-mail to the American Civil Liberty Union (ACLU).  It discusses prospective Embassy Abu Dhabi communications with the Government of the United Arab Emirates (UAEG or UAE).  Release of the withheld information about managing an aspect of relations with that country would damage US relations with the UAEG.  The information is currently and properly classified under Section 1.4(d) of E.O. 13526 and is  therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act (PA) exemption (k)(1).

179.  Document No. A5 (2186-90) is an e-mail chain dated May 5,6,7,8 and 9, 2009, consisting of seven e-mails among DOS officers.  Five pages.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL in part under E.O. 13526, Section 1.4 (d).  Withheld in part.  FOIA exemptions (b)(1), (b)(5), and Privacy Act exemptions  (d)(5) and (k)(1).

180.  This e-mail chain, in addition to containing the text of telegram 09 Abu Dhabi 338, which has been released in full, consists of e-mails among the Department's  Executive Secretariat(S/ES-S), U.S. Mission to the United Nations(USUN,)and the American Embassy Abu Dhabi regarding a draft memorandum to D and a draft e-mail to the ACLU.  They discuss Embassy Abu Dhabi communications with the UAEG concerning the detention of Naji Hamdan, including prospective communications.  Release of the withheld information could undermine US diplomatic relations with the UAEG.  The information is currently and properly classified under Section 1.4(d) of E.O. 13526 and  therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  Furthermore, some of the withheld

information contains predecisional deliberations among U.S. Government officials regarding policy formulation as regards response to the Hamdan detention.  Disclosure of material containing such deliberations would prejudice the free flow of internal recommendations and other necessary exchanges and hamper the ability of responsible officials to formulate and carry out Executive Branch programs.  It is therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).

181.  Document No. A7 (2191) is an e-mail exchange dated May 4, 2009, among DOS officers.  Originally and currently classified SECRET under E.O. 13526, Section 1.4 (d).  Withheld in part.  FOIA exemptions (b)(1), (b)(5), (b)(6), (b)(7)(C) and Privacy Act exemptions(k)(1) and (d)(5).

182.  This document consists of an e-mail from the Deputy Chief of Mission (DCM) of American Embassy Abu Dhabi to the UAE Desk Officer regarding a draft memo to D and an e-mail from the DCM which forwarded said e-mail to the Under Secretary for Management (M).  The text of the first e-mail discusses still sensitive aspects of U.S.-UAE cooperative relations, disclosure of which would harm those relations.  The withheld information is properly classified under Section 1.4(d) of E.O. 13526 and therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  Additionally, some of the withheld information contains pre-decisional deliberations between U.S. Government officials regarding how to inform senior policy-level officials of the issues involved in the Hamdan detention.  Disclosure of this information would hamper the ability of responsible officials to fully debate choices in the resolution of issues. The information is therefore also exempt from disclosure under FOIA exemption (b)(5). The material also relates to possible administrative or legal action involving a

50

U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). The withheld material additionally contains the identity of an FBI official and its release would constitute an unwarranted invasion of the personal privacy of the law enforcement officer.  It is therefore exempt under FOIA exemption (b)(7)(C) and (b)(6) and, because it concerns a person other than the requester, under  Privacy Act exemption (k)(1) also.  The second e-mail contains a personal mobile phone number. Disclosure of this information would constitute a clearly unwarranted invasion of the personal privacy of the individual concerned. The information is, therefore, exempt from disclosure under FOIA exemption (b)(6) and, because it concerns a person other than the requester, under the Privacy Act exemption (k)(1)also.  There is no additional information in this document not subject to a FOIA exemption that may be declassified, segregated and released.

183.   <u>Document No. B7 (22-24)</u> is an e-mail chain dated January 14 and 19, 2010,consisting of four e-mails among a journalist and Embassy Abu Dhabi officers.  Three pages.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL under E.O. 13526, Section 1.4 (d).  Withheld in part.  FOIA exemptions(b)(1)and (b)(5).

184.   This document consists of an e-mail from a journalist to an American Embassy Abu Dhabi Information Resource Officer and subsequent e-mails among that officer, the DCM and the Ambassador.  The withheld information in one e-mail discusses a sensitive aspect of U.S. – UAE relations and disclosure of that information would harm those relations.  The withheld information is properly classified under Section 1.4(d) of E.O. 13526 and is therefore exempt from disclosure under FOIA exemption (b)(1).  Withheld information in the other e-mails consists of pre-decisional, deliberative discussions among Embassy officers about how to respond to a journalist's query.  Release of this information would be harmful to the deliberative

process and it is therefore exempt from disclosure under FOIA exemption (b)(5).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

185.  Document No. O24(1176-77) are two e-mails dated January 16, 2008 and February 5, 2009 from the American Citizen Services (ACS) officer in Beirut to Embassy Beirut colleagues and Overseas Citizens Services(CA/OCS), respectively.  Two pages.  Originally UNCLASSIFIED, currently classified SECRET under E.O. 13526, Section 1.4 (d).  Withheld in part.  FOIA exemptions (b)(1)and (b)(7)(E) and Privacy Act exemption(k)(1).

186.  This document consists of two e-mails sent almost a year apart.  The first is addressed from the ACS officer at the American Embassy Beirut to her Beirut colleagues.  The second is to CA/OCS.  A portion of the withheld information in both regards a sensitive aspect of U.S. – Lebanese relations.  The withheld information is properly classified under Section 1.4(d) of E.O. 13526 and is therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  In addition, a portion of withheld information in the first e-mail concerns law enforcement investigative techniques used by the Department of State in implementing its responsibilities of maintaining the integrity of the passport system and detect and counter passport fraud.  It is therefore exempt from disclosure under FOIA exemption (b)(7)(E).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

187.  Document No. O45 (198-99) is an e-mail exchange dated April 24 and 27, 2009.  Two pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(5),  (b)(6), (b)(7)(C) and PA exemption (d)(5).

188.  This document is an e-mail chain consisting of five e-mails among CA/OCS officers, DOS, Department of Justice (DOJ) and FBI attorneys and the consul at American Embassy Abu Dhabi.  The withheld information is in regard to the clearing of a memorandum to

52

D regarding Mr. Hamdan.  The withheld information is deliberative and predecisional information and also constitutes attorney work product. The withheld information is therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).  The name and e-mail address of an FBI employee have also been withheld.  Disclosure of this information would constitute an unwarranted invasion of the personal privacy of this law enforcement official and it is therefore exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C) and because it relates to a person other than the requester is also exempt under the PA.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

189.  <u>Document No. O51 (1221-30)</u> is an e-mail chain dated from April 9 to April 28, 2009 beginning with an ACLU e-mail and the subsequent 18 e-mails among DOS or Department and DOJ officers.  Ten pages.  Originally and currently UNCLASSIFIED.  Withheld in part. FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

190.  This document consists of an initial e-mail from an ACLU attorney and e-mail discussions between the recipient of that e-mail, the Consul in Abu Dhabi and discussions among that officer, CA/OCS, Office of Policy Review and Interagency Liaison,(CA/PRI), Office of Policy Coordination and Public Affairs (CA/P and Office of the Legal Advisor, Consular Affairs (L/CA).  The withheld information relates to drafts of a reply to the original e-mail from ACLU. As such, it is predecisional in nature and part of the deliberative process and its release would have a chilling effect on the deliberative process.  It is therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act

exemption (d)(5) (PA).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

191.  <u>Document No. O80 (1270-76)</u> is an e-mail dated May 5, 2009, with attachments from CA staff to (S/ES) staff.  Seven pages.  Originally and currently classified CONFIDENTIAL under E.O. 13526, Sections 1.4 (b) and 1.4 (d).  Withheld in part.  FOIA exemptions (b)(1), (b)(5), (b)(6), (b)(7)(C) and Privacy Act exemptions(d)(5) and (k)(1).

192.  This document consists of an e-mail with two draft documents attached.  One of the documents is a draft memorandum to D concerning the UAE detention of Mr. Hamdan and legal action initiated by the ACLU.  The other attached document is an attachment to the first and contains commentary on procedures and the text of a proposed reply to the ACLU.  The draft memorandum contains information about confidential conversations between U.S. officials and officials of the UAE.  These conversations took place in the expectation of confidentiality and release of the information would harm US-UAE relations.  Information withheld in the draft reply document concerns a sensitive aspect of US-UAE relations.  This information is properly classified under Sections 1.4(b) and (d) of E.O. 13526 and is therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  Both documents are predecisional and deliberative relating to a response to action by the ACLU and their release would have a harmful effect on the deliberative process.  The withheld material is therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemptions (d)(5) and (k)(1). The names of an officer in the Department's Bureau of Intelligence and Research (INR) and an FBI officer (a law enforcement officer) are withheld on the clearance page.  In the case of the INR officer, release of this

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

information could lead to possible harassment and would therefore constitute a clearly unwarranted invasion of personal privacy and is therefore exempt from release under FOIA exemption (b)(6).  Disclosure of the name of the FBI officer would be an unwarranted invasion of personal privacy and is therefore exempt under FOIA exemptions (b)(6) and (b)(7)(C).  In both cases the information relates to a person other than the requester and is therefore exempt also under the PA.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

193.  Document No. O87 (1277-83) is an e-mail dated May 6, 2009, with attachments from the CA/OCS Special Assistant to CA Officers.  Seven pages.  Originally classified CONFIDENTIAL under E.O. 13526, Sections 1.4 (b) and 1.4 (d), currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(5), (b)(1), (b)(6), (b)(7)(C) and Privacy Act exemptions (d)(5) and (k)(1).

194.  This document consists of an e-mail with two draft documents attached.  With the exception of the  covering e-mail, this document is a duplicate of document O80 described immediately above.  The same exemptions have been applied to this document.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

195.  Document No. O90 (1284-86) is an e-mail dated May 6, 2009 with an attachment from a CA/OCS officer to a line officer is S-S/ES.  Three pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

196.  This document consists of a one-page e-mail which forwards a two-page draft memorandum as an attachment.  The draft memorandum concerns the incarceration of Mr. Hamdan.  As a draft, it is deliberative and predecisional and its release would harm the deliberative process.  It is therefore exempt from disclosure under FOIA exemption (b)(5).  The

material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

197.  <u>Document O134 (1330-36)</u> is an e-mail exchange dated May 14, 20 and 21, 2009 with two attachments.  Seven pages.  Originally and currently classified CONFIDENTIAL under E.O. Sections 1.4(b) and (d).  Withheld in part.  FOIA exemptions (b)(1), (b)(5), (b)(6), (b)(7)(C)and Privacy Act exemptions (d)(5) and (k)(1).

198.  This document is an e-mail chain consisting of six e-mails among S/ES-S staffers, CA staffers, the UAE desk officer, the D Special Assistant and the CA/OCS Special Assistant, with two memoranda as attachments.  The first memorandum is from CA to D and the second, an attachment to the first, is a reply to a request to the consul at American Embassy Abu Dhabi from the ACLU.  Withheld material in the e-mail concerns discussions about the reply to the ACLU.  It is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). Withheld material in the first memorandum concerns sensitive aspects of U.S. – UAE relations.  Disclosure of this material would harm relations between the U.S. and the UAE It is properly classified under Sections 1.4(b) and (d) of E.O. 13526 and is therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  Also withheld are the names of an INR and an FBI clearing officer.  In the case of the INR officer, release of this information could lead to possible harassment and would therefore constitute a clearly unwarranted invasion of personal privacy and is therefore exempt from release under FOIA exemption (b)(6).  Disclosure of the name of the FBI officer would be an unwarranted invasion of personal privacy

and is therefore exempt under FOIA exemptions (b)(6) and (b)(7)(C).  In both cases the information relates to a person other than the requester and is therefore exempt also under the PA.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

199.  Document O139 (1337-65) is an e-mail exchange dated May 26, 27 and 28, 2009. Twenty-nine pages.  Originally and currently UNCLASSIFIED.  Withheld  in part.  FOIA exemption (b)(5) and Privacy Act exemption (d)(5) (PA).

200.  This document is an e-mail chain consisting of 14 e-mails (and six attached cables from American Embassy Abu Dhabi to the Department (or DOS) among an ACLU attorney, the Consul at American Embassy Abu Dhabi, Department (or DOS)  officers and  DOJ  attorneys. The document has been largely released. The withheld material concerns instructions to the consul regarding a meeting and involves clearances from several offices within DOS and DOJ. This material is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The withheld material also includes opinions and advice from DOS and DOJ attorneys and is exempt from release also as attorney work product and under the attorney-client privilege. The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

201.  Document No. D41 (92-93) is an e-mail chain dated May 20 and 21, 2009, consisting of four e-mails among DOJ, FBI and Department (or DOS) officers.  Two pages. Originally and currently UNCLASSIFIED.  FOIA exemption (b)(1) and Privacy Act exemption(d)(5).

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

202.  This document consists of an e-mail from a DOJ officer to FBI and other DOJ officers, an e-mail forwarding that e-mail to the UAE Desk Officer at the Department and a subsequent e-mail exchange between that officer and the DCM of American Embassy Abu Dhabi.  The withheld material involves discussions among DOJ attorneys and concerns the response to a court initiative.  The withheld material is deliberative and predecisional and is exempt from release under the deliberative process, attorney-client and attorney work product privileges of FOIA exemption 5.  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

203.  Document No. D49 (11-22) is an e-mail chain dated from April 9 to May 5, 2009, beginning with an ACLU e-mail and subsequent 27 e-mails among DOS and DOJ officers.  Twelve pages.  Originally and currently  UNCLASSIFIED.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

204.  This document consists of an initial e-mail from an ACLU attorney and e-mail discussions between the recipient of that e-mail, who was Consul in Abu Dhabi, and discussions among that officer, officers is CA/OCS, CA/PRI, CA/P, DOJ, L/CA, the DCM and the U.S. Ambassador to Abu Dhabi(Ambassador).  The discussions relate to details of the nature and text of a reply to the original e-mail from ACLU.  The withheld material is predecisional in nature and part of the deliberative process and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There

is no additional information not subject to a FOIA exemption that may be segregated and released.

205.   Document No. D90 (147-50) is an e-mail chain dated December 15, 16 AND 17, 2009, consisting of nine e-mails among DOS officers.  Four pages.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL under E.O. 13526, Sections 1.4 (b) and (d).  Withheld in part.  FOIA exemptions (b)(5),(b)(1) and Privacy Act exemptions (d)(5) and (k)(1).

206.   This document consists of an e-mail chain among the Consul at U.S.  Embassy Abu Dhabi, CA/OCS, the DCM and the Ambassador.  The e-mails concern the charges against Mr. Hamdan and, in part, information provided with the expectation of confidentiality by the UAE and covers also a sensitive aspect of relations between the U.S. and the UAE.  Disclosure of this information would have a chilling effect on exchange of information between the two governments and risk damage to the relations between the two countries.  It is classified under sections 1.4(b) and (d) of E.O. 13526 and therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  The withheld material concerns discussions about possible conflicts between Mr. Hamdan's stated wishes regarding a letter he gave the Consul for his brother and the Privacy Act waiver he had completed, as well as discussions regarding DOJ clearance regarding a demarche in Mr. Hamdan's behalf.  This material is deliberative and pre-decisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

207.  Document No. DF23 (212-4) is an e-mail dated October 29, 2009 from the Special Assistant to (D) e.  Three pages.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL under E.O. 13526, Section 1.4(d).  Withheld  in part.  FOIA exemption (b)(1).

208.  This document is the D's Morning Report, sent by his Special Assistant.  Only a small segment of the report is responsive to the FOIA request.  Most of it, including the small withheld portions, is not responsive.  The first withheld portion involves a sensitive issue in relations among the U.S. and two European countries.  The second withheld portion involves a sensitive issue between two other European countries with which the U.S. has close relations.  Disclosure of the withheld information would be resented by the countries concerned and would risk damage to those relations. The withheld information is currently and properly classified under section 1.4(d) of E.O. 13526 and therefore exempt from disclosure under FOIA exemption (b)(1).

209.  Document No. EE74 (1506-7) is an e-mail chain dated October 5 and 6, 2009 consisting of six e-mails among Department (or DOS) officers.  Two pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

210.  This document is an e-mail chain consisting of five e-mails among DOS  attorneys in the office of the Legal Adviser (L).  The withheld information is a discussion of actions to be taken in behalf of Mr. Hamdan.  The withheld material is predecisional and deliberative and also constitutes attorney work product.  It is therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There

60

is no additional information not subject to a FOIA exemption that may be segregated and released.

211.  Document No. EE98 (1564-65) is an e-mail chain dated October 29, 2009 among Department (or DOS) officers. Two pages.  Originally and currently.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

212.  This document consists of an e-mail chain consisting of three e-mails among the Consul at the U.S. Embassy in Abu Dhabi and Officers in the Department relating to Mr. Hamdan's conviction and deportation from the UAE.  The withheld portion is about a draft e-mail to ACLU.  It is deliberative and predecisional and therefore exempt under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

213.  Document No. EE100 (1566-67) is an e-mail exchange dated October 29, 2009. Two pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(6) and (b)(7)(C).

214.  This document is an e-mail from a Department (or DOS) attorney to FBI attorneys enclosing the unredacted text of a cable reporting Mr. Hamdan's deportation and also a courtesy response.  The only withheld portions are the names of FBI attorneys and their e-mail addresses. Disclosure of this information regarding these law enforcement officers would constitute an unwarranted invasion of their personal privacy.  The withheld portions are therefore exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C), and because it concerns persons other

than the requester is exempt also under the Privacy Act exemption (k)(1).  There is no additional information not subject to the FOIA exemption that may be segregated and released.

215.  Document No. EI63 (1635-40) is an e-mail exchange dated May 28, 2009.  Three pages (notwithstanding ACLU supplied Bates numbers).  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

216.  This document is an e-mail chain consisting of three e-mails among the Consul at American Embassy Abu Dhabi and DOS and DOJ attorneys.  The withheld portion discusses the preparation for a court hearing.  It is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

217.  Document No. EI64 (1638-40) is an e-mail chain dated May 28, 2009.  Three pages.  Originally and currently  UNCLASSIFIED.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

218.  This document is an e-mail chain consisting of four e-mails among the Consul at U.S.  Embassy Abu Dhabi and DOS and DOJ attorneys.  The withheld portion discusses the preparation for a court hearing.  It is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

219.  Document No. F41 (*no Bates number*) is an e-mail exchange among U.S. Embassy Abu Dhabi personnel dated October 29, 2009.  Two pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(6), (b)(7)(C), (b)(5) and Privacy Act exemption (d)(5)(PA).

220.  This document is an e-mail chain consisting of five e-mails among a locally-employed staff member at U.S.  Embassy Abu Dhabi, the consul and the DCM.  The withdrawn material concerns details of a possible demarche to the UAEG.  It is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). Also withheld is the identity of the Legal Attaché, an employee of the FBI, and a law enforcement officer.  Release of this information would constitute an unwarranted invasion of that person's privacy and is exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

221.  Document No. F136 (382-90) is an e-mail exchange dated May 26, 27 and 28, 2009 and June 3, 4, 11 and 12, 2009.  Nine pages.  Originally and currently UNCLASSIFIED. Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

222.  This document is an e-mail chain consisting of 20 e-mails among an ACLU attorney, the Consul at U.S.  Embassy Abu Dhabi, DOS officers and DOJ attorneys.  It concerns instructions to the Consul regarding a meeting that had been requested with him and obtaining clearances from several offices within DOS and DOJ.  The withheld material is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore

*Hamdan v. Dept. of Justice, et al.,*
No. 10-6149-JHN-JEMx
*Grafeld Declaration*

also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

223.  Document No. F267 (620-22) is an e-mail exchange dated April 23, 2009.  Three pages.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL in part under E.O.13526, Section 1.4 (d).  Withheld in part.  FOIA exemptions (b)(5), (b)(6) and Privacy Act exemption(d)(5).

224.  This document is an e-mail chain consisting of five e-mails among CA staffers and the consul at the U.S.  Embassy in Abu Dhabi.  It concerns discussions as to the content for a proposed memorandum to the Under Secretary for Management (M).  The withheld material is deliberative and predecisional and is therefore exempt from disclosure under FOIA exemption (b)(5). The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).  One of the redacted elements is the mobile phone number of the Consul.  Release of this information would constitute an unwarranted invasion of personal privacy and it is therefore exempt from disclosure under FOIA exemption (b)(6) and because it concerns a person other than the requester, under the Privacy Act exemption (k)(1)also. There is no additional information not subject to a FOIA exemption that may be segregated and released.

225.  Document No.G18 (1739-41) is an e-mail exchange dated October 23 and 24, 2009.  Three pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(6), and (b)(7)(C).

226.  This document is an e-mail chain consisting of seven e-mails among a journalist, DOS officers and the Consul and DCM at the U.S. Embassy in Abu Dhabi.  The redaction on the second page concerns personal information about a private individual not connected to the

instant case.  Disclosure of this information would be an  unwarranted invasion of the personal privacy of that individual and the withheld information is therefore exempt from disclosure under FOIA exemption (b)(6) and, because it concerns a person other than the requester, the Privacy Act exemption (k)(1) also.  The first item withheld on the first page is the identity of the assistant Legal Attaché at U.S.  Embassy in Abu Dhabi, a law enforcement officer.  Disclosure of this information would be an unwarranted invasion of his personal privacy and is therefore exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C).  The second item withheld on that page is the mobile phone number of the Consul. Disclosure of this information would be an unwarranted invasion of his personal privacy and it is therefore exempt from disclosure under FOIA exemption (b)(6) and because it concerns a person other than the requester, under Privacy Act exemption (k)(1)also. This document has undergone line-by-line review and there is no additional information not subject to a FOIA exemption that may be segregated and released.

227.  <u>Document No. G100 (1764-67)</u> is an e-mail exchange dated December 4, 2008.  Four pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(5), (b)(6), (b)(7)(C) and Privacy Act exemptions (d)(5) and (k)(1).

228.  This document is an e-mail chain consisting of nine e-mails among public affairs officers, the DCM and the Ambassador at U.S. Embassy Abu Dhabi.  The withheld material consists in part of discussions concerning press guidance regarding an inquiry from an Arabic language newspaper. This information is deliberative and predecisional and therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).  The withheld material also includes the identity of the assistant legal attaché, a law enforcement officer at U.S. Embassy Abu Dhabi.  Disclosure

65

of this information would constitute an unwarranted invasion of his personal privacy and is therefore exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C) and because it concerns a person other than the requester, Privacy Act exemption (k)(1)  also.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

229.  <u>Document No. I7 (884-85)</u> is an e-mail dated December 15, 2008.  Two pages. Originally UNCLASSIFIED, currently classified CONFIDENTIAL under E.O. 13526, Sections 1.4 (b) and 1.4 (d).  Withheld in part.  FOIA exemption (b)(1) and Privacy Act exemption (k)(1) .

230.  This document is an e-mail from a staff member to the Consul at American Embassy Abu Dhabi.  The withheld information was obtained from an official of the UAE government in confidence concerning an aspect of relations between the US and the UAE. Disclosure of this information would damage the ability to get such information in the future and harm relations with the individual and the government more generally.  The withheld information is properly classified under E.O. 13526 under sections 1.4(b) and (d) and therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

231.  <u>Document No. J55 (1874)</u> is a letter dated October 29, 2008, from the American Ambassador to Abu Dhabi to Mrs. Mona Hamdan.  One page.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(6) and (b)(7)(C).

232.  The only information withheld from this document is the identity of the assistant Legal Attaché, a law enforcement officer, at American Embassy Abu Dhabi.  Disclosure of this information would constitute an unwarranted invasion of personal privacy.  It is therefore exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C) and because it concerns a person

66

other than the requester, the Privacy Act also.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

233.  <u>Document No. J59 (1003-04)</u> is an e-mail exchange dated September 1 and September 11, 2009, among employees at American Embassy Abu Dhabi.  Two pages.  Originally UNCLASSIFIED, currently classified CONFIDENTIAL under E.O 13526, Section 1.4(d).  Withheld  in part.  FOIA exemptions (b)(1)  and Privacy Act exemption (k)(1).

234.  This document is an e-mail chain consisting of four e-mails among the duty officer, the consul and a locally employed staff member.  The withheld material concerns information about and commentary on dealing with a part of the UAE government and also a hand-written note on the document is the name of a UAE government source.  Disclosure of this information would harm relations with the UAE and it is therefore properly classified under section 1.4(d) of E.O. 13526 and therefore exempt from disclosure under FOIA exemption (b)(1) and Privacy Act exemption (k)(1).  There is no additional information not subject to a FOIA exemption that may be segregated and released.

235.  <u>Document No. L41 (2320-24)</u> is an e-mail exchange dated July 29 and 30 and September 22 and 23, 2009, among DOS, DOJ and the American Embassy in Abu Dhabi.  Five pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemption (b)(5) and Privacy Act exemption(d)(5).

236.  This document is an e-mail chain among DOJ and DOS attorneys, CA/OCS and the Consul and Vice Consul at American Embassy Abu Dhabi.  Withheld portions discuss options in providing consular assistance to Mr. Hamdan and how best to keep (DOS) Washington offices informed of events concerning his trial.  These discussions are deliberative and predecisional and are therefore exempt from disclosure under FOIA exemption (b)(5).  The material also relates to

possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5). There is no additional information not subject to a FOIA exemption that may be segregated and released.

237.  Document No. LE10 (1978-80) is an e-mail exchange dated March 4 and April 10 and 22, 2009, among DOJ and DOS attorneys.  Three pages.  Originally and currently UNCLASSIFIED.  Withheld in part.  FOIA exemptions (b)(5), (b)(6), (b)(7)(C) and Privacy Act exemption (d)(5).

238.  This document is an e-mail chain among DOJ, FBI, L/LEI and L/CA attorneys. The textual withheld material is a discussion among attorneys regarding a possible reply to a motion in litigation.  The information is deliberative and predecisional and it also constitutes attorney work product and is therefore exempt from disclosure under FOIA exemption (b)(5). The material also relates to possible administrative or legal action involving a U.S. citizen and it is therefore also exempt from disclosure under Privacy Act exemption (d)(5).  Redactions in address, salutation and signature lines are the names of FBI officers.  Disclosure of the identity of these law enforcement officers would constitute a clearly unwarranted invasion of the personal privacy of these law enforcement officers.  It is therefore exempt from disclosure under FOIA exemptions (b)(6) and (b)(7)(C) and because it concerns persons other than the requester, under the Privacy Act also.  There is no additional information not subject to a FOIA exemption that may be segregated and released.

## CONCLUSION

In summary, the Department conducted multiple searches in an exhaustive effort to locate the records sought by the Plaintiffs.  One thousand, one hundred and seventy-seven responsive documents were found as a result of the Department's searches. Of these, 533 documents were released in full, 258 were released in part, and 386 were denied in full.

All of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information, and it has been determined that no segregation of meaningful information in the withheld documents can be made without disclosing information warranting protection under the law.

* * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ⎯⎯⎯ day of October 2011

Margaret P. Grafeld

69